1   MILBERG WEISS BERSHAD
      HYNES & LERACH LLP
2   THEODORE J. PINTAR (131372)
    STEVEN W. PEPICH (116086)
3   401 B Street, Suite 1700
    San Diego, CA 92101
4   Telephone: 619/231-1058
    619/231-7423 (fax)
5        - and -
    ALBERT H. MEYERHOFF (54134)
6   355 South Grand Avenue, Suite 4170
    Los Angeles, CA 90071
7   Telephone: 213/617-9007
    213/617-9185 (fax)
8        - and -
    NANCY M. JUDA
9   1100 Connecticut Avenue, N.W.
    Suite 730
10  Washington, DC 20036
    Telephone: 202/822-6762
11  202/828-8528 (fax)

12  Attorneys for Plaintiffs

13  [Additional counsel appear on signature page.]

14

15                  UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17                       OAKLAND DIVISION

18  PAUL VELIZ, et al., On Behalf of Themselves        ) No. C-03-1180-SBA
    and All Others Similarly Situated,                 )
19                                                      ) CLASS ACTION
                      Plaintiffs,                       )
20                                                      ) MOTION OF PLAINTIFFS PAUL VELIZ,
               vs.                                      ) ET AL., FOR FACILITATED NOTICE
21                                                      ) PURSUANT TO 29 U.S.C. §216(b);
    CINTAS CORPORATION, an Ohio                         ) MEMORANDUM OF LAW IN SUPPORT
22  corporation, et al.,                                ) THEREOF
                                                        )
23                    Defendants.                       ) Hearing Date: August 5, 2003
                                                        ) Time:          1:00 p.m.
24  ────────────────────────────────────               ) Place:         Oakland, Courtroom 3

25

26

27

28

1

## TABLE OF CONTENTS

2

3
**Page**

MOTION AND NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. ISSUANCE OF *HOFFMAN-LAROCHE* NOTICE IS APPROPRIATE HERE . . . . . 10

    A.   The District Court is Authorized to Issue Notice to the Potential Opt-Ins . . . . 10

    B.   Plaintiffs Are Entitled To Notice Based On A Minimal Showing That
        They Are Similarly Situated To Other Employees. . . . . . . . . . . . . . . 11

    C.   Cintas Route Drivers Throughout the U.S. Are Similarly Situated . . . . . . . 14

    D.   Plaintiffs Are Similarly Situated With Respect To The Factors Relevant to
        the "Outside Salesman" Exemption . . . . . . . . . . . . . . . . . . . . . . . 16

        1.   All Route Drivers Have the Same Chief Duty or Primary Function . . . 17

        2.   Plaintiffs and Other Route Drivers Are Similarly Situated With
            Respect To the Amount of Non-Exempt Work They Perform . . . . . . 19

        3.   Cintas Treats All Non-Californian Route Drivers Similarly . . . . . . . 20

        4.   To the Extent That Cintas Now Admits That California Route
            Drivers Are Exempt, The California Plaintiffs and Other California
            Route Drivers Are Similarly Situated . . . . . . . . . . . . . . . . . . 21

    E.   The Proposed Notice is Fair and Adequate . . . . . . . . . . . . . . . . . . . 22

    F.   The Proposed Limited Discovery is Essential to Ensure Timely Notice . . . . . 22

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1

# TABLE OF AUTHORITIES

2

3

**CASES**                                                                       **Page**

4
*Ackerman v. Coca-Cola Enterprises, Inc.,*
   179 F.3d 1260 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 17, 19

5
*Allen v. Marshall Field & Co.,*
   93 F.R.D. 438 (N.D. Ill. 1982) . . . . . . . . . . . . . . . . . . . . 13, 14

6

7
*Ballaris v. Wacker Siltronic Corp.,*
   No. 00-1627-KI,
   2001 U.S. Dist. LEXIS 13354

8
   (D. Or. Aug. 24, 2001) . . . . . . . . . . . . . . . . . . . . . . . . 13

9
*Belcher v. Shoney's, Inc.,*
   927 F. Supp. 249 (M.D. Tenn. 1996) . . . . . . . . . . . . . . . . . 14, 22

10

11
*Bradford v. Bed Bath & Beyond, Inc.,*
   184 F. Supp. 2d 1342 (N.D. Ga. 2002) . . . . . . . . . . . . . . . 12, 14, 20

12
*Camper v. Home Quality Mgmt., Inc.,*
   200 F.R.D. 516 (D. Md. 2000) . . . . . . . . . . . . . . . . . . . . 13

13

14
*Church v. Consolidated Freightways, Inc.,*
   137 F.R.D. 294 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . 12, 14

15
*Daggett v. Blind Enterprises of Oregon,*
   No. CV 95-421-ST,

16
   1996 U.S. Dist. LEXIS 22465
   (D. Or. Apr. 18, 1996) . . . . . . . . . . . . . . . . . . . . . . 12, 14, 18

17

18
*De Asencio v. Tyson Foods, Inc.,*
   130 F. Supp. 2d 660 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . 13

19
*Dybach v. Florida Dep't of Corrections,*
   942 F.2d 1562 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . 14, 18

20

21
*Edelen v. Shoney's, Inc.,*
   No. 3:97-1211,
   1998 U.S. Dist. LEXIS 4460

22
   (M.D. Tenn. Mar. 26, 1998) . . . . . . . . . . . . . . . . . . . . . 20

23
*Garner v. G.D. Searle Pharm. & Co.,*
   802 F. Supp. 419

24
   (M.D. Ala. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 22

25
*Grayson v. K Mart Corp.,*
   79 F.3d 1086 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . 12, 13, 23

26

27
*Harrison v. Enterprise Rent-A-Car,*
   No. 98-233-CIV-T-24(A),
   1998 U.S. Dist. LEXIS 13131

28
   (M.D. Fla. July 1, 1998) . . . . . . . . . . . . . . . . . . . . . 14, 20

**Page**

*Hipp v. Liberty National Life Ins. Co.*,
164 F.R.D. 574 (M.D. Fla. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hipp v. Liberty National Life Ins. Co.*,
252 F.3d 1208 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Hoffman-LaRoche, Inc. v. Sperling*,
493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Kane v. Gage Merchandising Services, Inc.*,
138 F. Supp. 2d 212 (D. Mass. 2001) . . . . . . . . . . . . . . . . . . . . . 20

*Lambert v. Ackerley*,
180 F.3d 997 (9th Cir. 1999),
*cert. denied*, 528 U.S. 1116 (2000) . . . . . . . . . . . . . . . . . . . . . . . 11

*Magana v. Northern Mariana Islands*,
107 F.3d 1436 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mooney v. Aramco Services Co.*,
54 F.3d 1207 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moss v. Crawford & Co.*,
201 F.R.D. 398 (W.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 21

*Pirrone v. North Hotel Associates*,
108 F.R.D. 78 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Realite v. Ark Restaurants Corp.*,
7 F. Supp. 2d 303 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . 13, 14

*Reich v. Davis*,
50 F.3d 962 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Reich v. Dep't of Conservation & Natural Resources*,
28 F.3d 1076 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Severtson v. Phillips Beverage Co.*,
137 F.R.D. 264 (D. Minn. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Shaffer v. Farm Fresh, Inc.*,
966 F.2d 142 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Shain v. Armour & Co.*,
40 F. Supp. 488 (W.D. Ky. 1941) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tyler v. Labor Leasing, Inc.*,
872 F. Supp. 941 (M.D. Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . 18

*Wertheim v. Arizona*,
No. Civ. 92-453,
U.S. Dist. LEXIS 21292
(D. Ariz. Sept. 28, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Page**

*Yates v. Wal-Mart Stores, Inc.,*
   58 F. Supp. 2d 1217 (D. Colo. 1999) . . . . . . . . . . . . . . . . . . . . . . 10

*Zhao v. Benihana,*
   No. 01 Civ. 1297 (KMW),
   2001 U.S. Dist. LEXIS 10678
   (S.D.N.Y. May 7, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**STATUTES, RULES AND REGULATIONS**

29 U.S.C.
   §207(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   §213(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15
   §215(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
   §216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
   §255(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   §256(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   §1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 C.F.R.
   §541.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17
   §541.503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   §541.504(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   §541.505(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 19

Federal Rules of Civil Procedure
   Rule 20(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   Rule 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12
   Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12


**SECONDARY AUTHORITIES**

BNA, Fair Labor Standards Act
   §18.IV.D.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 15

1

## MOTION AND NOTICE OF MOTION

2       Please take notice that on August 5, 2003, at 1:00 p.m, in the courtroom of the Honorable

3   Saundra Brown Armstrong of the above-mentioned Court at 1301 Clay Street, Oakland, California,

4   Plaintiffs Paul Veliz, *et al.*, will and hereby do move for an order directing that this case may proceed

5   as a collective action under Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

6   §216(b), and that notice be sent to all persons similarly situated so that they may be informed of the

7   action and have a meaningful opportunity to "opt-in" to the action as plaintiffs also asserting FLSA

8   claims.   This motion is made pursuant to 29 U.S.C. §216(b) and is based on the following

9   memorandum of points and authorities, and the accompanying declarations of Theresa M. Traber,

10  Amber Kelly, Bryan Cruse, Earl Woods, Eric Anderson, Aaron Zadnik, Tom Jaramillo and James

11  White.

12

## MEMORANDUM OF LAW

13  ## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

14      Plaintiffs are 35 current and former employees[1] of defendant Cintas Corporation who have

15  worked for defendant as route drivers, usually called "Service Sales Representatives" (hereafter

16  "route drivers" or "SSRs"), delivering uniforms and other products to Cintas customers in numerous

17  states throughout the country.[2]   In this action, plaintiffs challenge Cintas' unlawful nationwide

18  practices of misclassifying route drivers as employees who are "exempt" from the protections of state

19  and federal overtime laws and refusing, on that basis, to pay legally-mandated overtime premiums.

20

21

22  [1]      Specifically, the plaintiffs named in the complaint include: Paul Veliz and James White, who
worked for Cintas in California; Tom Jamarillo who worked in Colorado; Mark Fragola who worked
in Connecticut; Mark Chainuck, Jeff Jay, Tade L. Wasmer and Aaron M. Zadnick who worked in

23  Illinois; John Cruz who works in Indiana; Bryan Cruse who worked in Missouri; Bobby C. Hodge,
Noel Lloyd, Kelly Smith and Earl G. Woods Jr. who worked in Michigan; Wayne Edwards, Wilfredo

24  Huertas Jr., Amber Kelly, Derek Samuels and Sam Williams who worked in New Jersey; and Julian
Nazareth who works in New York. First Amended Complaint for Injunctive Relief and Damages

25  ("FAC"), ¶¶ 8-27.  There are also 15 individual FLSA plaintiffs who joined this action by filing
Consent to Sue forms pursuant to 29 U.S.C. § 216(b).

26

[2]      While most similarly-situated employees have worked for Cintas under the title of Service

27  Sales Representative, Cintas sometimes also uses other titles to describe this job position.  Thus,
plaintiffs seek to represent all "Service Sales Representatives, Commission Route Salespersons,

28  Commission Route Sales Representatives, Route Drivers and other persons performing a service
and/or delivery function on a non-hourly basis."  FAC, ¶ 2.

1    Plaintiffs' Third Claim for Relief is brought as a collective action pursuant to the Fair Labor

2    Standards Act.[3] The FLSA entitles workers such as plaintiffs to sue collectively on behalf of

3    themselves and others "similarly situated" for unpaid overtime premiums. 29 U.S.C. §216(b).

4    Unlike a class action under Fed. R. Civ. P. 23, in which individuals are members of a class until they

5    affirmatively "opt-out," each individual member of an FLSA collective action must affirmatively

6    "opt-in" by filing a written consent to become a party plaintiff; and, absent equitable or contractual

7    tolling, the statute of limitations is not tolled until each individual has filed a Consent to Sue.

8    29 U.S.C. §216(b); 29 U.S.C. §256(b). Accordingly, notifying individual route drivers of this

9    litigation so they can opt in by filing Consent to Sue forms is critical to preserving and protecting

10   their rights.

11   Through this motion, plaintiffs seek authorization to proceed as a collective action for

12   overtime compensation under Section 216(b) of the FLSA, on behalf of the thousands of current and

13   former route drivers who have worked for Cintas at any time from March 19, 2000 to the present.

14   Plaintiffs also request that the Court order notice be sent to all route drivers who are similarly

15   situated to plaintiffs so as to provide them with the opportunity to "opt in," pursuant to *Hoffman-*

16   *LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989), along with an order directing Cintas to post notices

17   in its workplaces and to produce last known addresses for all current and former route drivers in

18   order to facilitate prompt and effective notice. In conjunction with this notice, plaintiffs ask that the

19   Court toll the statute of limitations on these FLSA claims from the date this motion was filed through

20   the deadline for filing a Consent to Sue form to avoid any prejudice to potential plaintiffs' rights

21   pending the hearing on this motion. FAC, ¶ 2.

22   The Supreme Court held in *Hoffman-LaRoche* that in collective actions under the FLSA and

23   ADEA, the named plaintiffs are entitled to discover the identity of all "similarly situated" individuals

24   with potential claims, and to have notice sent to those potential plaintiffs informing them of the

25

26

27   [3]    In addition, plaintiffs bring related claims under the applicable state overtime laws and under
     the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.*, for
28   themselves and for a class of SSRs, seeking class action treatment under Fed. R. Civ. P. 23(b)(2) and
     (3). Plaintiffs will seek certification of the state law and ERISA classes under Rule 23 at a later time.

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                          - 2 -

1 pendency of the lawsuit and their right to opt in by a court-ordered deadline. 493 U.S. at 172-74.[4]

2 The Supreme Court established this procedure to help vindicate the important statutory rights

3 protected by the FLSA and to further judicial efficiency – both by facilitating the ability of

4 individuals asserting similar claims to adjudicate their rights before a single court at a single time,

5 and by allowing that court to establish a fixed "cut-off" date after which no new individual plaintiffs

6 can join the existing action. *Id.* at 172. *Hoffman-LaRoche* did not create any new procedures for

7 adjudicating substantive rights. It merely created a *procedural mechanism* for identifying and

8 notifying potential plaintiffs whose claims may be similar to those of the individuals who had already

9 joined the litigation. The purpose of the notice is simply to alert potentially aggrieved individuals

10 that if they want to pursue a similar claim in the pending lawsuit they must file a Consent to Sue

11 before the judicially-set deadline.

12 Upon a minimal, pre-discovery showing by plaintiffs that other, similarly-situated workers

13 exist who might wish to join the present action, the twin goals of judicial efficiency and eradicating

14 unlawful overtime practices are best served by a procedure that advises those individuals of their

15 rights, tolls the statute of limitations on their claims, and provides them a reasonable period of time

16 to decide whether to join the existing lawsuit.

17 In this case, there is strong evidence, even at this early stage of the litigation, that the Cintas

18 route drivers whom plaintiffs seek to represent are similarly situated in all material respects. Cintas

19 has regularly classified route drivers as a group as employees who are "exempt" from the protections

20 of the overtime provisions of the FLSA. Cintas has the burden of establishing any exemption from

21 overtime law, and Cintas will likely attempt to justify this classification by arguing that route drivers

22 fall within the "outside salesman" exemption under Section 13(a)(1) of the FLSA, 29 U.S.C.

23 §213(a)(1). Route drivers throughout the country are similarly situated with regard to all factors

24 relevant to establishing this purported exemption. As a group, their primary job duties focus, not

25

26 [4] *Hoffman-La Roche* was brought under the Age Discrimination in Employment Act
("ADEA"). Because the ADEA expressly incorporates the enforcement provisions of the FLSA,
27 courts may look to cases brought under either statute with respect to the proper interpretation of
Section 216 of the FLSA. *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 n. 5 (4th Cir. 1992)
28 ("[S]ince the ADEA incorporates §16(b) of the FLSA into its enforcement scheme, the same rules
govern judicial management of class actions under both statutes").

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                  - 3 -

1    on outside sales, but on the delivery, pickup and processing of uniforms and other products under

2    service contracts secured and negotiated by Cintas' sales personnel. The minimal time they spend

3    on outside sales involves taking orders from existing customers for incidental items from the Cintas

4    catalog. Finally, despite the fact that plaintiffs are primarily delivery persons who service existing

5    customers, Cintas requires route drivers to work many hours of overtime without paying them the

6    overtime compensation to which they are legally entitled.

7         Plaintiffs' declarations and exhibits support an order by this Court authorizing plaintiffs'

8    FLSA claims to be litigated as a collective action for purposes of discovery, directing Cintas to post

9    notices and to produce the last known addresses of all similarly-situated route drivers, and granting

10   plaintiffs' request to provide notice to those route drivers. In light of the similarity of plaintiffs'

11   claims to those of other Cintas route drivers, these other drivers should promptly be notified that this

12   case is pending so they have the opportunity to decide whether to opt into this case. Otherwise, their

13   claims may be barred or diminished by the FLSA statute of limitations.

14        An order directing notice and an opt-in period will not only protect the interests of the route

15   drivers, it will also facilitate consolidated resolution of overtime claims based on law and facts that

16   are common to all route drivers, and it will avoid the potential proliferation of individual lawsuits

17   that could result in disparate rulings and wasted judicial and party resources. The notice plaintiffs

18   have proposed is suitable for the designed task, as it provides objective, accurate information to

19   prospective opt-in plaintiffs regarding the nature of the lawsuit, the effect of the statute of limitations

20   on their claims, and how to exercise their right to join.

21   **II.    FACTUAL BACKGROUND**

22        Cintas is, by its own account, "the largest uniform supplier in North America, with more than

23   500,00 clients ... [and] 365 facilities in the U.S. and Canada, ... employ[ing] more than 27,000

24   people." Through its business divisions, Cintas provides "uniforms to a wide variety of businesses

25   nationwide" and distributes "a range of outsourcing services including entrance mats, sanitation

26   supplies, cleanroom services and first aid and safety products and services."[5]

27   _____

28   [5]  Exhibit 1, "Cintas Corporate Profile," p. 4; Exhibit 2, "Cintas Business Divisions," pp. 6-7.
     Unless otherwise noted, plaintiffs' exhibits are attached to the Declaration of Theresa M. Traber,
     which is submitted herewith in support of plaintiffs' motion.

1    Cintas has three primary business divisions which market the company's uniforms, facilities

2    products, and first aid programs to customers nationwide and then service the negotiated contracts

3    through route drivers who make regular deliveries to customers, pick up uniforms and other items

4    for laundering, alteration, and repair, maintain inventory control for all customers, and respond to

5    customer complaints and requests.[6]  These divisions are the Rental, First Aid and Safety, and

6    Facilities Services Divisions.[7]  Each of these divisions employ specialized sales personnel, separate

7    and apart from route drivers, to sell the company's products and services and negotiate service

8    contracts.[8]  In addition, Cintas employs an entirely separate inside sales force devoted solely to

9    designing and negotiating service contracts primarily for large national and regional companies.[9]

10    Completely separate from the Cintas sales force are employees, like plaintiffs, who make up

11    its service department.  A search of service career opportunities on the Cintas website reveals that

12    the Service Sales Representatives are the key service employees who deliver the companies' products

13    to its customers.  In the posted job description, SSRs or route drivers are described as those who

14    "deliver the products, services and enthusiasm for which we are recognized."[10]  Job postings

15    emphasize the customer service character of the SSR position by indicating first that "[c]ustomer

16    service and customer satisfaction are the number one priorities for the Company" and second that

17    SSRs "are critical to developing and maintaining this priority and are the backbone of our customer

18    service program."[11]

19

20

---

21    [6]    Cintas also has a small division specializing in providing apparel and equipment for sterile
       and non-sterile cleanrooms.  Exhibit 2, p. 6.

22    [7]    Exhibit 2, pp. 6-7; Exhibit 3, "Uniform Programs," pp. 8-11; Exhibit 4, "Cintas Facility
       Services," pp. 12-13; Exhibit 5, "About Cintas First Aid & Safety: Program Benefits," pp. 14-15.

23

24    [8]    Exhibit 7, Current Job Opportunities for Sales, 6/4/2003, pp. 18-19, 23-40 (openings for
       Facilities Services Sales Representatives), pp. 19, 41-53 (openings for Sales Representative –
       Industrial and Sales Trainee to sell rental services and ancillary products).

25

       [9]    Exhibit 6, "National Accounts Sales Division," pp. 16-17.

26

       [10]    Exhibit 10, p. 126.

27

28    [11]    Exhibit 8, pp. 81, 97.  In sharp contrast to the SSR job description, the Cintas website
       describes its Sales Representatives, who are not part of this case, by reference to sales qualifications,
       sales experience, sales job duties and opportunities for "incredible sales success." Exhibit 11, p. 128.

1    Route drivers are supervised not by Sales Managers but by Service Managers or Service

2    Operations Managers. Exhibit 8, pp. 65-68. As an example, a position for a Service Operations

3    Manger in Jacksonville, Florida is described by Cintas as a job in which the manager "will help hire,

4    train, supervise, and coach a team of highly motivated, customer service focused Route Service

5    Reps." *Id.*, p. 68. Because the focus of the job is "customer service," not sales, the manager must

6    have a "strong customer service attitude" and preferably "customer service skills and experience in

7    the route sales-delivery industry." *Id.* Similarly, route drivers are trained by Service Training

8    Coordinators who need "a Training or Instructor background and experience in a customer service

9    environment." *Id.*, p. 114.

10    As with the completely separate sales personnel (who are not part of this case), there are

11    SSRs assigned to each of the primary divisions.[12] Plaintiffs estimate that more than 9,000

12    individuals have worked as SSRs during the last three years. FAC, ¶ 35. Regardless of the division

13    assignment or the geographic area where the job is centered, however, Cintas' job qualifications and

14    description for the SSR position remain essentially the same.

15    Thus, for example, a Facility Services route driver in Richmond, Virginia is described as

16    "both a route delivery and customer service position," accompanied by the following description:

17        Qualifications for this position include: enthusiastic, friendly and outgoing
        personality, customer service orientation, strong work ethic, interest in sales, and
18        willingness to get hands dirty. You are more than a driver, because the Route Service
        Sales Rep at Cintas delivers clean uniforms and mats to industrial customers on a
19        daily basis, and sells additional products/services.

20    Exhibit 8, p. 69. While "[p]revious experience in a service environment with route sales/delivery

21    is a PLUS," the only requirements listed are "a clean driving record, high school diploma or GED,

22    and a desire to achieve goals." *Id.* Virtually identical job descriptions and qualification lists are

23

24

25

26

---

27    [12]    Exhibit 8, Current Job Opportunities for Service Jobs, *e.g.*, pp. 69-70, 99 (openings for
        Facility Services SSRs), pp. 71-76, 83-89, 101-111 (openings for First Aid & Safety SSRs), pp. 74-
28    111 (openings for Industrial SSRs); Exhibit 9, Current Job Opportunities for Service Sales
        Representatives, pp. 118-125 (openings for Industrial SSRs; p. 118 (opening for First Aid SSR).

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                    - 6 -

1  included in the notices announcing Service Sales Representative positions throughout the country

2  and in all divisions where SSRs are employed.[13]

3    The actual job duties of Cintas' route drivers also reveal that they primarily focus on customer

4  service and delivery. Each of the plaintiffs who have submitted declarations in support of this

5  motion report that their primary job was "to deliver products to customers and service their

6  accounts."[14] Thus, for example, Bryan Cruse from Springfield, Missouri described his job duties as

7  follows:

8    As an SSR, my job was to drive a delivery truck and deliver and pick up dust
  mats and other supplies from Cintas's restaurant customers. I typically arrived at the

9    plant at 4:30 a.m. and began separating invoices and putting them in order for the
  day. I would then check my delivery truck for any shortages of mats and other

10    supplies. I would then deliver clean mats, towels and mops to restaurants and pick
  up dirty mats, mops and towels. I would also change air fresheners and refill soap

11    and paper towels in the restaurant bathrooms.

12  Cruse Decl., ¶3. Mr. Cruse made clear that most of the products and services he delivered were

13  provided under contracts that had already been negotiated by Cintas inside sales staff and that, as an

14  SSR, he did not negotiate any service contracts with new customers, like the sales personnel in

15  Cintas' in-house sales department. Although he did make minimal sales to Cintas' existing

16

17  [13] Exhibit 8, p. 70 (Opening for Facility Services SSR in Kansas City-Olathe, Kansas); p. 74
(Openings for Rental and First Aid Division SSRs in Raleigh/Durham, North Carolina); p. 76

18  (Openings for Rental and First Aid Division SSRs in St. Louis, Missouri); p. 78 (SSR opening in
Tacoma, Washington); pp. 79, 99 (Openings for SSRs and Facilities Services Reps in Minneapolis,

19  Minnesota); p. 80 (SSR opening in Austin, Texas); p. 83 (Openings for Rental and First Aid Division
SSRs in Long Beach, California); p. 85 (Openings for Rental and First Aid Division SSRs in

20  Gadsden, Alabama); p. 87 (Openings for Rental and First Aid Division SSRs in Omaha, Nebraska);
p. 89 (Openings for Rental and First Aid Division SSRs in Forth Worth, Texas); p. 91 (SSR opening

21  in Chicago-Schaumburg, Illinois); p. 93 (SSR opening in West Palm Beach, Florida); p. 94 (SSR
opening in Evansville, Indiana); p. 95 (SSR opening in Chicago – Romeoville, Illinois); p. 100 (SSR

22  opening in Providence, Rhode Island); p. 101 (Openings for Rental and First Aid Division SSRs in
Detroit – Macomb, Michigan); p. 103 (Openings for Rental and First Aid Division SSRs in

23  Birmingham, Alabama); pp. 105, 109 (Openings for Rental and First Aid Division SSRs in Dayton
and Lancaster, Ohio); p. 107 (Openings for Rental and First Aid Division SSRs in Rockford,

24  Illinois); p. 111 (Openings for Rental and First Aid Division SSRs in Indianapolis, Indiana); pp. 113,
125 (SSR openings in Louisville and Paducah, Kentucky); p. 118 (Openings for Rental and First Aid

25  Division SSRs in Houston, Texas); p. 120 (SSR opening in Knoxville, Tennessee); p. 123 (SSR
opening in Piscataway, New Jersey); p. 124 (SSR opening in Boston, Massachusetts). For similar

26  job descriptions tailored to the First Aid and Safety Division, see p. 71 (SSR in Greensboro, North
Carolina); p. 73 (SSR in San Antonio, Texas).

27

28  [14] Declaration of Amber Kelly, ¶3; Declaration of Bryan Cruse, ¶3; Declaration of Earl Woods,
¶3; Declaration of Eric Anderson, ¶3; Declaration of Aaron Zadnik, ¶3; Declaration of James White,
¶3.

1    customers, these sales were not a significant part of his job duties, taking up more than 15 minutes

2    a day only on rare occasions. *Id.*, ¶¶9-11.

3           Other plaintiffs from New Jersey, Michigan, Illinois, Colorado and California report the same

4    job duties and allocation of responsibilities during their tenures as Cintas route drivers.[15]  What is

5    more, all of these plaintiffs state that the other SSRs who worked with them at their respective Cintas

6    facilities had the same job duties as well.[16]

7           As to their pay, the plaintiffs uniformly report that, although they regularly worked more than

8    40 hours a week during their employment as Cintas route drivers, they did not receive overtime

9    compensation for all hours in excess of 40.  Plaintiffs also state that the other route drivers working

10   at their respective facilities regularly worked overtime hours without receiving the legally required

11   premium for all such hours.  Most plaintiffs report that this failure to receive overtime compensation

12   followed Cintas' unlawful corporate policy of classifying all route drivers as employees who were

13   exempt from overtime protections and, thus, not entitled to overtime compensation.[17]  Also revealed

14   in the plaintiffs' declarations is Cintas' regular practice of requiring route drivers to make additional

15   deliveries to customers in their own vehicles after they have completed their regular routes.  Because

16   of Cintas' policy of classifying route drivers as exempt, the company did not make any effort to

17   record or keep track of the many overtime hours they spent completing their routes and making extra

18   deliveries.[18]

19          Because of a previously-settled lawsuit, California-based Cintas route drivers have a slightly

20   different factual basis for their claims, but they raise identical FLSA claims and are similarly-situated

21

22   [15]    Kelly Decl., ¶¶9-11; Woods Decl., ¶¶9-11; Anderson Decl., ¶¶9-11; Zadnik Decl., ¶¶9-11;
23   Jaramillo Decl., ¶¶9-11; White Decl., ¶¶9-11.

24   [16]    Cruse Decl., ¶4 (16 SSRs at Springfield, Missouri plant); Kelly Decl., ¶4 (30 SSRs at
     Piscataway, New Jersey plant); Woods Decl., ¶4 (8 SSRs at Flint, Michigan plant); Anderson Decl.,
     ¶4 (30 SSRs at Romeoville, Illinois plant); Jaramillo Decl., ¶4 (25 SSRs at Denver, Colorado plant);
25   White Decl., ¶4 (35 SSRs at Ontario, California plant).

26   [17]    The fact that Cintas treated its route drivers as exempt from overtime protections is also
     evident from their job postings which regularly list the available pay as including a "guaranteed base
27   salary plus opportunity for commission on sales."  Exhibit 8, p. 69; *see also*, pp. 70, 78-80.

28   [18]    Cruse Decl., ¶¶5-8; Kelly Decl., ¶¶5-8; Woods Decl., ¶¶5-8; Anderson Decl., ¶¶5-8; Zadnik
     Decl., ¶¶5-8; Jaramillo Decl., ¶¶5-8; White Decl., ¶¶5-6, 8.

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                                    - 8 -

1   within the group.[19]  On May 14, 2001, Philip Vaca and Enrique Castillo filed an action in Los

2   Angeles Superior Court asserting California overtime claims on behalf of a class of all Cintas route

3   drivers in California.  A similar class action was filed several months later by Fernando Barajas.

4   After class-wide discovery and intensive settlement discussions, Cintas agreed with plaintiffs to

5   make a joint request for judicial certification of a class of all route drivers who worked for Cintas

6   in California at anytime from May 14, 1997 through June 1, 2002.  In conjunction with this request

7   for class certification, which the Court granted, the parties also sought and obtained Court approval

8   for a settlement in which Cintas agreed to pay $10 million to satisfy all wage and hour claims of the

9   class, as well as attorneys' fees and costs associated with the lawsuit.  Final approval of the

10  settlement was granted on February 5, 2003, and the funds were distributed in May, 2003.[20]

11      Because the *Vaca* settlement only included payments for work through June 1, 2002,

12  California plaintiffs like Paul Veliz and James White assert valid FLSA claims in this action for

13  Cintas' failure to pay proper overtime compensation after that date.  Around the time of the

14  settlement of the prior lawsuit, Cintas altered its payment plan for California route drivers but

15  plaintiffs contend that the plan does not comply with the company's obligations to pay overtime

16  under state or federal law.[21]  The California plaintiffs have been subject to the same compensation

17  plan instituted by Cintas within California as of June 1, 2002 from that time to the present.  Further,

18  they have continued to work overtime in order to complete their regular routes and additional

19  deliveries, but plaintiffs contend that they have not been given the requisite premium pay to which

20  they are entitled for each hour of overtime they work.  Plaintiffs also contend that they were regularly

21  forced to work "off the clock," by putting in overtime hours which were not recorded or paid for

22  under Cintas' revised payment plan.[22]

23  _____

[19]     Under *Hoffman-LaRoche*, it is sufficient that other employees be similarly situated to *any*
24  plaintiff. Here, not only are California route drivers similarly situated in all material respects to route
    drivers across the country, they are also similarly situated to the two (2) named California plaintiffs.
25
[20]     Traber Decl., ¶6, and Exhibit 12 attached thereto.
26
[21]     Cintas' new compensation plan was not a negotiated term of the state court settlement, nor
27  was it examined or approved by the Court in *Vaca v. Cintas Corporation*.  *See* Traber Decl., ¶7;
    Exhibit 12.
28
[22]     White Decl., ¶¶5, 6, 8, 12.

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                                    - 9 -

**III.   ISSUANCE OF *HOFFMAN-LAROCHE* NOTICE IS APPROPRIATE HERE**

This Court should approve plaintiffs' proposed form of notice, to be distributed to all route drivers who have worked for Cintas at any time from March 19, 2000 to the present anywhere in the United States.[23] Notice is appropriate in this collective action because all route drivers are similarly situated – they fulfill the same role within Cintas and are assigned by Cintas to perform the same duties. Moreover, Cintas has an admitted policy of uniformly classifying all non-California route drivers as "exempt" employees to deny them any premium pay for hours worked over 40 per week.

**A.   The District Court is Authorized to Issue Notice to the Potential Opt-Ins**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216 (b); *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). "The evident purpose of the Act [FLSA] is to provide one law suit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other." *Shain v. Armour & Co.*, 40 F. Supp. 488, 490 (W.D. Ky. 1941). Such actions, considered collective actions, benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact." *Hoffman-LaRoche*, 493 U.S. at 170. *See also Yates v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999) ("judicial efficiency demands" consolidation of individual overtime claims in a collective action). Further, a collective action provides plaintiffs

---

[23]   The statute of limitations for willful violations of the FLSA is three years. 29 U.S.C. §255(a). A violation of the FLSA is willful whenever an employer knows or shows reckless disregard for "'the matter of whether its conduct was prohibited by the statute.'" *See Reich v. Dep't of Conservation & Natural Resources*, 28 F.3d 1076, 1084 (11th Cir. 1994) (citation omitted). Through its managers and supervisors, Cintas must have known that its route drivers regularly worked hours in excess of 40 per week without overtime pay. In light of Cintas' recognition that the route driver is primarily "a route delivery and customer service position," *e.g.*, Exhibit 8, p. 69, the company's classification of these employees as exempt has been, at the very least, reckless, and a willful violation of the FLSA. The wilful character of the violation is made even more egregious because although Cintas' agreed in early 2002 to settle the overtime claims of a class of route drivers in California for $10 million, it failed to change its treatment of route drivers outside California, continuing to consider them exempt and to deny them overtime compensation on that basis. *See* Traber Decl., ¶ 6; Exhibit 12.

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                                    - 10 -

1  the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffman-*
2  *LaRoche*, 493 U.S. at 170.

3  Additionally, early court-authorized notice protects against "misleading communications"
4  by the parties, resolves the parties' disputes regarding the content of any notice, prevents the
5  proliferation of multiple individual lawsuits, assures that joinder of additional parties is
6  accomplished promptly and efficiently and expedites resolution of the dispute. *Hoffman-LaRoche*,
7  493 U.S. at 170-172; *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 419, 422 (M.D. Ala. 1991).
8  Prompt notice also serves the critical function of informing potential claimants of their right to file
9  their consents pursuant to Section 216(b) before the running of the applicable FLSA statute of
10  limitations.

11  To address the problem of FLSA rights made stale through lack of knowledge, the Supreme
12  Court has held that courts in actions under the FLSA may facilitate the issuance of a notice informing
13  potential opt-in plaintiffs of the pending collective action. *Hoffman-LaRoche*, 493 U.S. at 170.
14  Court approval and facilitation of notice serve the goals of "avoiding a multiplicity of duplicative
15  suits and setting cutoff dates to expedite disposition of the action." *Hoffman-LaRoche*, 493 U.S. at
16  171. In *Pirrone v. North Hotel Associates*, 108 F.R.D. 78, 82 (E.D. Pa. 1985), for example, the court
17  held that notice to all similarly-situated employees was appropriate "in light of the broad remedial
18  purpose of the FLSA, the explicit provision in the Act for representative actions, the practical
19  realities of management of class actions, and the courts' interest in avoiding multiplicity of lawsuits."
20  In so holding, the court recognized that "the FLSA was enacted to protect employees.... The class
21  action procedure, however, would have little or no significance if notice was not permitted in some
22  form." *Id.* at 82. *See also Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999), *cert. denied*, 528
23  U.S. 1116 (2000) (holding that because the FLSA is remedial and humanitarian, it must be
24  interpreted broadly).

25  **B.    Plaintiffs Are Entitled To Notice Based On A Minimal Showing That**
       **They Are Similarly Situated To Other Employees.**
26
27  The standard for collective action notice is a "lenient one." *Mooney v. Aramco Services Co.*,
28  54 F.3d 1207, 1213-14 (5th Cir. 1995). It is "'considerably less stringent'" than the proof required

1   pursuant to Fed. R. Civ. P. 20(a) for joinder or Fed. R. Civ. P. 23 for class certification. *Grayson*

2   *v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (citation omitted). *See also Church v.*

3   *Consolidated Freightways, Inc.*, 137 F.R.D. 294, 304 (N.D. Cal. 1991) (rejecting Rule 23

4   requirements in a §16(b) ADEA action); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d

5   1342, 1345 (N.D. Ga. 2002) (the "similarly situated" standard "is less stringent than Rule 20(a)'s

6   'same transaction or occurrence' requirement for joinder and than Rule 23(b)(3)'s requirement that

7   a class may only be certified if 'common questions predominate'").[24] An employee need only show

8   that he is suing his employer for himself and for other "similarly situated" employees to warrant

9   FLSA collective action treatment. *Grayson*, 79 F.3d at 1096.

10          To demonstrate that potential FLSA claimants are "similarly situated," plaintiffs merely need

11   *some* evidence that other workers, in addition to plaintiffs, were likely subjected to the same

12   employment practices that give rise to plaintiffs' allegations under the FLSA. Identical treatment,

13   or proof of a single, overarching, uniformly-applied policy, is not required. The goal is simply to

14   identify others who *might* logically have a "similar" claim, and to provide those workers a reasonable

15   and timely opportunity to present that claim in the existing litigation. As the leading treatise

16   explains:

17          In FLSA actions, persons who are similarly situated to the plaintiffs must
     raise a similar legal issue as to coverage, exemption, or nonpayment of minimum
18          wages or overtime arising from at least a manageably similar factual setting with
     respect to their job requirements and pay provisions, *but their situations need not*
19          *be identical*. Differences as to time actually worked, wages actually due, and hours
     involved are, of course, not significant to this determination.
20

21   ────────────────
     [24] One district court explained the different standards for collective action notice and Rule 23
22   class certification as follows:

23          Many of the FRCP 23 protections are not necessary for a §216(b) class action
     given the "opt in" requirement. A plaintiff who "opts in" presumably has decided
24          that the benefits of joining the class outweigh any benefits of bringing an individual
     action. In other words, there is no need for the court to determine whether a class
25          action is the most efficient method to proceed because each individual plaintiff has
     already concluded that a sufficiently common issue of fact or law exists and that he
26          or she will be adequately represented. In addition, the due process protections of
     FRCP 23 are not as crucial when absent class members are not bound by the
27          judgment.

28   *Daggett v. Blind Enterprises of Oregon*, No. CV 95-421-ST, 1996 U.S. Dist. LEXIS 22465, at *15-
     16 (D. Or. Apr. 18, 1996).

1  BNA, *Fair Labor Standards Act*, §18.IV.D.3, at 1166-67 (footnotes omitted, emphasis added).

2  Notice "need not await a final determination that the 'similarly situated' requirement is

3  satisfied. Such a requirement would indeed place an ADEA [or FLSA] action in the 'chicken and

4  egg limbo' ..." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991). Instead,

5  plaintiffs meet their burden of demonstrating that they are similarly situated "by making a ***modest***

6  factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of

7  a common policy or plan that violated the law." *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303,

8  306 (S.D.N.Y. 1998) (emphasis added). The court may determine that plaintiffs and others are

9  similarly situated based only on the allegations of the complaint and a few affidavits or declarations

10 from plaintiffs. *See, e.g., Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982)

11 (allegations in complaint sufficient); *Ballaris v. Wacker Siltronic Corp.*, No. 00-1627-KI, 2001 U.S.

12 Dist. LEXIS 13354 (D. Or. Aug. 24, 2001) (two affidavits sufficient); *De Asencio v. Tyson Foods,*

13 *Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (four affidavits sufficient); *Camper v. Home Quality*

14 *Mgmt., Inc.*, 200 F.R.D. 516, 529 (D. Md. 2000) (four declarations sufficient); *Zhao v. Benihana*,

15 No. 01 Civ. 1297 (KMW), 2001 U.S. Dist. LEXIS 10678, at *12 (S.D.N.Y. May 7, 2001) (one

16 affidavit based on plaintiff's "best knowledge" sufficient). The court need not wait for the

17 completion of discovery before authorizing notice. *Realite*, 7 F. Supp. 2d at 306. Nor should an

18 employer's rebuttal evidence bar §216(b) notice; plaintiffs' substantial allegations need only

19 successfully engage the employer's affidavits to the contrary. *Grayson*, 79 F.3d at 1099 n. 17.

20 Issuance of notice does not require an adjudication of the merits of plaintiffs' claims, but

21 rather depends solely upon the existence of similarly-situated employees who are likely to assert

22 similar claims or to be subject to similar defenses. *See Garner*, 802 F. Supp. at 423 nn.3, 4 (Equal

23 Pay Act). "The court is not required, nor would it be well-advised, to adjudicate this case on its

24 merits before resolving the issue of class notification. A primary purpose of notification is to locate

25 other similarly-situated employees who may wish to bring their claims to the court's attention ***before***

26 this litigation is resolved." *Id.* at 423 n.4. "To impose a strict standard of proof [at the certification

27 stage] would unnecessarily hinder the development of collective actions and would undermine the

28 'broad remedial goals' of the ... FLSA." *Id.* at 422 (citing *Hoffman-La Roche*, 493 U.S. at 173).

1       All that is required is that the named plaintiffs be "similarly situated" with employees who

2   may opt in to the case. The "similarly situated" standard for an overtime case is thus met where the

3   class members share similar job requirements and pay provisions. *Dybach v. Florida Dep't of*

4   *Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249,

5   251 (M.D. Tenn. 1996). "The positions and claims of the employees need not be identical."

6   *Daggett*, 1996 U.S. Dist. LEXIS 22465, at *17; *Dybach*, 942 F.2d at 1567-68; *Harrison v. Enterprise*

7   *Rent-A-Car*, No. 98-233-CIV-T-24(A), 1998 U.S. Dist. LEXIS 13131 (M.D. Fla. July 1, 1998);

8   *Ballaris*, 2001 U.S. Dist. LEXIS 13354; *Bradford*, 184 F. Supp. 2d at 1346; *Hipp*, 252 F.3d at 1217.

9   *See also Realite*, 7 F. Supp. 2d 303 (minimum wage and overtime case, in which notice authorized

10  to restaurant employees in 15 different restaurants holding a variety of different positions, including

11  waiter, dishwasher, cook, and security guard). As is shown below, the evidence of plaintiffs here

12  clearly satisfies the "similarly situated" standard for Cintas route drivers throughout the United

13  States.[25]

14      **C.      Cintas Route Drivers Throughout the U.S. Are Similarly Situated**

15      The potential collective action members in this case – each of whom is a route driver who

16  worked overtime but has been denied overtime pay because of Cintas' challenged corporate policy

17  – are similarly situated within the meaning of 29 U.S.C. §216(b) with respect to the facts necessary

18  to decide the key issue in this case – whether Cintas' route drivers are exempt from the FLSA's

19  overtime mandate. Under the FLSA, employees who work more than 40 hours in any work week

20  must be paid time and one-half for hours worked over 40, unless they are subject to a statutory

21  exemption. 29 U.S.C. §§207(a)(1); 213(a)-(b).

22

23

24  [25]     The fact that plaintiffs and other employees worked during different time periods in different offices is immaterial to the "similarly situated" analysis. *See, e.g., Hipp*, 252 F.3d at 1219 ("different geographical locations" immaterial to similarly situated determination); *Realite*, 7 F. Supp. 2d at

25  304-305 (S.D.N.Y. 1998) (similarly situated despite working at 15 different restaurants); *Belcher*, 927 F. Supp. at 252 (similarly situated despite working in at least 22 states and 200 cities); *Church*,

26  137 F.R.D. at 298 (notice appropriate in ADEA action even though class members "were employed at 112 different locations in 74 different jobs and left employment on 103 different dates"); *Allen v.*

27  *Marshall Field & Co.*, 93 F.R.D. 438, 442 (N.D. Ill. 1982) (certification and notice appropriate in ADEA action even though plaintiffs "occupied varying positions in its corporate hierarchy, worked

28  in different stores in various geographic locations, and allege[d] discriminatory actions occurring on 'vastly varying dates'").

Cintas is expected to contend that route drivers are exempt from overtime protections on the ground that each is an "outside salesman" within the meaning of Section 13(a)(1) of the FLSA. 29 U.S.C. §213(a)(1). An "outside salesman" includes any employee:

> (a) who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

> > (1)    Making sales within the meaning of section 3(k) of the Act; or

> > (2)    Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

> (b) whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided that work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. §541.500. As with all exemptions to the FLSA, the "outside salesman" exemption is narrowly construed. The employer has the burden to show that the allegedly exempt employees fit "plainly and unmistakably" within the scope of the exemption. *Magana v. Northern Mariana Islands*, 107 F.3d 1436, 1445-46 (9th Cir. 1997).

The declarations and other evidence presented by plaintiffs in support of this motion demonstrate that the facts pertinent to this affirmative defense are common to all plaintiffs and to the thousands of route drivers who have worked for Cintas during the relevant period. As discussed more fully below, plaintiffs and other route drivers work under the same job description, their job qualifications for hire are the same throughout the United States, and plaintiffs and those who have worked as route drivers at different facilities share the same actual job duties, focusing the vast majority of their time and efforts on servicing existing customers – solicited by Cintas sales personnel – and only spending a minimal amount of time making sales of any sort. What is more, Cintas has treated them the same with regard to wage and hour matters, uniformly classifying them as exempt from overtime protections (until the recent lawsuit in California when Cintas may have changed its classification but for California workers alone).

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                    - 15 -

**D.   Plaintiffs Are Similarly Situated With Respect To The Factors Relevant to the "Outside Salesman" Exemption**

To prove that plaintiffs are exempt from statutory protection as outside salespersons, Cintas must prove, *inter alia*, that (1) route drivers' "chief duty or primary function" is "the making of sales or the taking of orders"; and (2) that route drivers' performance of nonexempt work comprises no more than 20 percent of the hours they worked in a workweek. 29 C.F.R. §§541.500, 541.505(a).

With respect to the first prong, "[a] determination of an employee's chief duty or primary function must be made in terms of the basic character of the job as a whole." 29 C.F.R. §541.505(a). This first prong of the exemption should be analyzed globally by taking into consideration all of the duties of route drivers, and the time drivers devote to their various duties is an important (although not necessarily controlling) element. *Id.* Other factors bearing on the analysis will include a comparison of route drivers' duties with those of other employees engaged as truck drivers as well as other employees engaged as salesmen; the presence or absence of customary or contractual prearrangements concerning amounts of product to be delivered; description of the employee's occupation in union contracts; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; proportion of earnings directly attributable to sales effort; and other factors that may have a bearing on the relationship to sales of the employee's work. 29 C.F.R. §541.505(e). Where an employee delivers products or services to the employer's customers and also performs certain sales functions, "all facts bearing on the content of the job as a whole must be scrutinized to determine whether such an employee is really employed for the purpose of making sales rather than for the service and delivery duties which he performs," the question being whether the employee is "a salesman by occupation." 29 C.F.R. §541.505(a).

Route drivers are also similarly situated with respect to the second prong of the sales exemption. Moreover, the Court need never reach the second prong of the exemption, if Cintas fails to meet its burden of proof on the first prong. With respect to the second prong, Cintas must prove that the hours route drivers spend doing non-sales work does not exceed 20 percent of the hours worked in the workweek by nonexempt employees. 29 C.F.R. §541.500(b). This prong is resolved first by analyzing which activities of route drivers are exempt sales work and which are non-exempt

1   non-sales work and then by determining how much time route drivers devote to each kind of work.

2   Doing promotions or deliveries of products sold by other employees is not considered sales work

3   and, thus, is counted as non-exempt time. But "work performed incidental to and in conjunction

4   with the employee's own outside sales or solicitations, including incidental deliveries and

5   collections" is deemed to be sales work and, thus, exempt. *Id.*[26]

6       Even at this pre-discovery stage, it is plain that the plaintiffs and other route drivers are

7   similarly situated with respect to the factors material to the "outside salesman" exemption. First, all

8   route drivers have the same chief duty or primary function within Cintas, delivering products to

9   established customers and servicing pre-existing contracts negotiated by Cintas sales personnel.

10  Second, they have similar job duties which focus the vast majority of their time and effort on

11  delivering product and providing customer service, not on selling new items or services to Cintas

12  customers. Finally, except for those in California where Cintas was sued for overtime violations,

13  route drivers across the country are treated similarly by Cintas, which has classified them as exempt

14  employees and refused to compensate them for working over 40 hours per week.

15              **1.    All Route Drivers Have the Same Chief Duty or Primary**
                        **Function**
16

17      Based on the evidence submitted in support of this motion, there is no question that plaintiffs

18  and route drivers throughout the country are similarly situated with regard to the first prong of the

19  "outside salesman" exemption, *i.e.*, whether their chief duty or primary function is outside sales. As

20  noted above, among the key factors relevant to this inquiry are the job duties of the position, the

21  qualifications required upon hiring, a comparison between the route driver job and that of Cintas

22  sales personnel, and the amount of time spent on sales versus non-sales activities. Because a

23

24  [26]  *See also* 29 C.F.R. §§ 541.503, 541.504(a) ("promotional work, which is incidental to sales
       made, or to be made, by someone else cannot be considered as exempt work"); 29 C.F.R.
25     §541.505(c) (delivering "orders to customers to whom he did not make the initial sale in amounts
       which are exactly or approximately prearranged by customer or contractual arrangement or in
       amounts specified by the customer and not significantly affected by the solicitations of the customer
26     by the delivering driver" does not "qualify the driver as an outside salesman nor are such deliveries
       and the work incident thereto ... considered exempt work."). *See also Ackerman v. Coca-Cola
27     Enterprises, Inc.*, 179 F.3d 1260, 1265 (10th Cir. 1999) (non-sales work related to sales actually
       consummated by the employee is considered exempt sales work, but non-sales activities that are not
28     related to sales which are consummated by the employee at the customer's location, "even if closely
       related to sales, are not 'incidental to and in conjunction with' those sales under the regulations.").

1  resolution of defendants' affirmative defense turns on the nature and scope of route drivers' job
2  duties, a showing that plaintiffs and other employees have similar job duties will satisfy the
3  "similarly situated" standard. *Daggett*, 1996 U.S. Dist. LEXIS 22465, at *19; *Dybach*, 942 F.2d
4  1562; *Tyler v. Labor Leasing, Inc.*, 872 F. Supp. 941 (M.D. Fla. 1994).

5       In this case, there is substantial evidence that all route drivers are similarly situated with
6  regard to their chief duty or primary function. Route driver vacancies throughout the country are
7  announced on a nationwide public website regularly advertising the route driver position as one that
8  is "both a route delivery and customer service position," and their job duties are regularly described
9  as including the delivery of products to customers, servicing customer accounts, and selling
10 incidental products and services to existing customers. Route drivers are uniformly classified by
11 Cintas as service positions; they report to Service or Service Operations Mangers; and they are
12 trained by Service Training Coordinators who have experience in a "customer service environment."
13 Exhibits 8 and 9, pp. 59-125.

14      Route drivers function separate and apart from a sales force who negotiates the contracts
15 which the route drivers service. Unlike the job description for the route driver, the Cintas Sales
16 Representative position, which is also referred to as an "outside salesperson," is described by
17 reference to the sales experience necessary for hire and the sales opportunities and goals that come
18 with the job. In sharp contrast, the typical job announcement for route driver positions within Cintas
19 says nothing about a need for sales experience. Instead it indicates a desire for "[p]revious
20 experience in a service environment" and the need for "a clean driving record, high school diploma
21 or GED, and a desire to achieve goals." *Compare* Ex. 11, p.128, *with* Ex. 8, p. 69.

22      Further, there is evidence from plaintiffs that they and other route drivers with whom they
23 have worked routinely spend the vast majority of their time on tasks related to their delivery and
24 service functions – including sorting invoices for delivery, checking the truck for shortages of
25 products to be delivered, loading the truck, driving from customer to customer to make deliveries,
26 completing necessary paperwork, and checking in with supervisors at the end of the day. These
27 deliveries were made to customers whose service contracts were negotiated not by the route driver
28

1  but by Cintas sales personnel. Evidence in the record also shows that plaintiffs and other SSRs spent

2  only a small portion of the their time on actual outside sales work.[27]

3       Because of the uniform job descriptions and qualifications for the route driver position

4  nationwide, as well as the pattern of similarity in the actual job duties of the plaintiffs and their route

5  driver co-workers, plaintiffs have shown they are sufficiently similarly situated to other route drivers

6  to warrant notice to all route drivers with potential FLSA overtime.

7              **2.**     **Plaintiffs and Other Route Drivers Are Similarly Situated With Respect To the Amount of Non-Exempt Work They**

8                         **Perform**

9       The factual and legal issues relevant to the second prong of the "outside salesman" exemption

10  are also common to plaintiffs and other route drivers, *i.e.,* whether the route driver's work day is

11  comprised of primarily sales work, such that no more than 20 percent is devoted to non-sales

12  activities. As a legal matter, it will be necessary in evaluating the exemption for all route drivers for

13  the Court to distinguish between the time they spend servicing the contracts negotiated by Cintas

14  sales personnel and the time spent making incidental sales. All the time spent loading and delivering

15  products, providing services, and doing paperwork on the contracts sold by Cintas sales personnel

16  will be considered non-exempt time, because it is not related to any sales consummated by the route

17  driver. 29 C.F.R. §541.505(c); *Ackerman*, 179 F.3d at 1265. On the other hand, any time spent

18  actually selling products to a customer and other work incidental to those sales will be considered

19  exempt time, because it will likely be considered outside sales work. *Id.*

20       Plaintiffs have demonstrated a work pattern among themselves and their co-workers at plants

21  across the country that shows that the vast majority of their time and efforts are focused on servicing

22  existing accounts based on sales negotiated not by the route driver but by Cintas sales personnel.

23  Far from showing a disparate pattern of work effort, this evidence shows that route drivers uniformly

24  work many more hours performing their delivery and service tasks on existing contracts than they

25  do on sales work. In fact, the evidence shows how unlikely it is that Cintas will be able to establish

26  that 80 percent or more of a route driver's job involves sales work, when it is clear that only a small

27

28  [27]    Cruse Decl., ¶¶3-5, 9-11; Kelly Decl., ¶¶3-5, 9-11; Woods Decl., ¶¶3-5, 9-11; Anderson Decl., ¶¶3-5, 9-11; Zadnik Decl., ¶¶3-5, 9-11; Jaramillo Decl., ¶¶3-5, 9-11; White Decl., ¶¶3-5, 9-11.

1  minority of their time is actually devoted to making new sales. In light of this pattern of evidence,

2  there is no question that the plaintiffs and other route drivers are similarly situated with regard to the

3  facts pertinent to the second prong of the claimed exemption.

4          3.      **Cintas Treats All Non-Californian Route Drivers Similarly**

5          To satisfy the requirements of *Hoffman-LaRoche*, "'[a]ll that need be shown by the plaintiff

6  is that some identifiable factual or legal nexus binds together the various claims of the class members

7  in a way that hearing the claims together promotes judicial efficiency and comports with the broad

8  remedial policies underlying the FLSA.'" *Ballaris*, 2001 U.S. Dist. LEXIS 13354, at *6 (quoting

9  *Wertheim v. Arizona*, No. Civ. 92-453, U.S. Dist. LEXIS 21292 (D. Ariz. Sept. 28, 1993). A policy

10 of treating a discrete class of employees as exempt from the FLSA overtime requirements may itself

11 be sufficient for the court to find that plaintiffs are similarly situated for purposes of authorizing

12 court-facilitated notice. *Kane v. Gage Merchandising Services, Inc.*, 138 F. Supp. 2d 212, 214

13 (D. Mass. 2001). In this case, plaintiffs from various states have submitted declarations stating that

14 Cintas management has made clear its view that they and other route drivers are considered to be

15 exempt employees not entitled to the protections of overtime laws and, thus, are uniformly denied

16 overtime compensation by the company.

17         Many courts have authorized notice in collective actions that challenge an employer's

18 misclassification of its employees as "exempt" from federal overtime requirements. *See, e.g.,*

19 *Bradford*, 184 F. Supp. 2d 1342 (department managers alleged that they performed largely menial

20 tasks and were not "exempt" managers); *Harrison*, 1998 U.S. Dist. LEXIS 13131, at *11-12 (notice

21 to similarly situated managers who claimed they had been wrongfully classified as exempt);

22 *Wertheim*, 1993 U.S. Dist. LEXIS 21292 (certifying collective action with respect to claim that

23 employees' job duties were not of the nature to fall within any FLSA exemption); *Edelen v. Shoney's,*

24 *Inc.*, No. 3:97-1211, 1998 U.S. Dist. LEXIS 4460 (M.D. Tenn. Mar. 26, 1998) (certifying collective

25 action of employees who alleged they were not exempt from overtime because their employer failed

26 to pay them on a salary basis).

27         The evidence that Cintas management made clear its view that route drivers are exempt from

28 the protections of overtime law is sufficient proof that the plaintiffs are similarly situated vis-a-vis

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                              - 20 -

1   other route drivers to allow a case to proceed as a collective action under the FLSA. *See Moss v.*
2   *Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000) (rejecting defendant's argument that
3   "differences in the named and opt-in plaintiffs' job duties, geographic assignments and hourly billing
4   rates" precluded collective action status and holding instead that these variations are not significant
5   where the defendant treated all members of the plaintiff class similarly by failing to compensate them
6   with overtime wages and instead claiming that they were exempt from overtime pay under the same
7   exemption to the FLSA).

8   **4.     To the Extent That Cintas Now Admits That California Route
        Drivers Are Exempt, The California Plaintiffs and Other
9       California Route Drivers Are Similarly Situated**

10       In 2002, when Cintas settled a class action lawsuit by paying $10 million in overtime wages
11  to a class of California route drivers, the company changed its compensation plan for route drivers
12  working in California after June 1, 2002. Traber Decl., ¶¶6-7, and Exhibit 12; White Decl., ¶12.
13  Under this new plan, Cintas has paid route drivers compensation which it has designated as an
14  overtime premium, but it is not indicated whether it admits that such route drivers are non-exempt
15  employees entitled to overtime compensation. To the extent Cintas denies the route drivers' status
16  as non-exempt employees, they are similarly situated to route drivers throughout the country in that
17  Cintas has uniformly classified them as exempt from the protections of overtime law. To the extent
18  that Cintas concedes the non-exempt status of route drivers in California, plaintiffs still meet the
19  "similarly situated" standard because they share the same job duties, work patterns and compensation
20  plan as all other route drivers in California. Like route drivers throughout California, plaintiffs are
21  primarily delivery and service employees who service contracts negotiated by Cintas sales staff and
22  make incidental sales to their existing customers. Exhibit 8, p. 83; White Decl, ¶¶ 3-10. Like other
23  route drivers in California, they are not paid the requisite premium for all overtime hours worked,
24  particularly for time spent doing paperwork at the plant and for after-hours deliveries. *Id.*, ¶ 5. And
25  like other route drivers working in California since the class action settlement, they are being paid
26  under the same compensation plan – a plan which generally pays them less than they were paid
27  before "overtime" pay was included in their pay and pays them less in overtime pay as they work
28  more hours. *Id.*, ¶12. Thus, even if the California plaintiffs have claims that are slightly different

1  from those asserted by route drivers in other states, they are "similarly situated" to a class of
2  California route drivers who are also entitled to notice of this action.

3  **E.    The Proposed Notice is Fair and Adequate**

4  A collective action depends "on employees receiving accurate and timely notice concerning
5  the pendency of the collective action, so that they can make informed decisions about whether to
6  participate." *Hoffman-LaRoche*, 493 U.S. at 170.  A notice that has been approved by the Court can
7  prevent "misleading communications." *Id.* at 172; *Garner*, 802 F.Supp. at 422.

8  Plaintiffs' proposal for court-approved notice (Exhibit A) to the potential opt-ins is "timely,
9  accurate, and informative." *Hoffman-LaRoche*, 493 U.S. at 172.  It provides notice of the pendency
10  of the action and of the opportunity to opt-in.  Plaintiffs' legal claims are accurately described.
11  Potential opt-ins are advised that Cintas will defend against the claims and that they are not required
12  to participate.  The notice provides clear instructions on how to opt in and accurately states the
13  prohibition against retaliation or discrimination for participation in an FLSA action.  *See* 29 U.S.C.
14  §215(a)(3); *Reich v. Davis*, 50 F.3d 962, 964 (11th Cir. 1995).

15  Plaintiffs propose that the notice be provided through two methods.  First, as an efficient way
16  to reach all current route drivers, the Court should order Cintas to post a notice, along with consent
17  forms, in each workplace where route drivers are employed.  Second, plaintiffs propose that notice
18  and consent forms be mailed by first class mail to all route drivers employed from March 19, 2000
19  through to the present (three-year period).  Those class members interested in participating would
20  be required to file their consents with the Court within 60 days of the mailing.  This is consistent
21  with established practice under the FLSA. *Hoffman-LaRoche*, 493 U.S. at 172; *Garner*, 802 F.Supp.
22  at 422 (cut off date expedites resolution of action); *Hipp v. Liberty National Life Ins. Co.*, 164 F.R.D.
23  574, 576 (M.D. Fla. 1996) (120 day filing period); *Belcher*, 927 F. Supp. at 252-55 (exemplar of
24  company-wide notice).  In sum, the proposed notice is fair and accurate and should be approved for
25  distribution.

26  **F.    The Proposed Limited Discovery is Essential to Ensure Timely Notice**

27  Early discovery of a mailing list for potential opt-ins is a routine component of notice in
28  collective actions.  *Hoffman-LaRoche*, 493 U.S. at 170 ("District Court was correct to permit

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                    - 22 -

1  discovery of names and addresses ... "); *Grayson*, 79 F.3d at 1111 (ordering production of mailing
2  list). Indeed, such a mailing list is essential to the "timely" notice required under *Hoffman-LaRoche*.
3  493 U.S. at 170. Cintas should therefore be ordered to produce the last known addresses, phone
4  numbers and Social Security number for all route drivers who worked for Cintas within three years
5  of the filing of this action.

6  **IV.    CONCLUSION**

7        The goal of judicial efficiency weighs heavily in favor of issuance of *Hoffman-LaRoche*
8  notice to potential collective action members. Notice will permit "efficient resolution in one
9  proceeding" of a discrete range of facts and legal issues applicable to route drivers across the
10 country. *See Hoffman-La Roche,* 493 U.S. at 170. Absent notification, countless individuals will
11 be left to litigate in separate actions the same dispute presented here over the lawfulness of
12 classifying route drivers as exempt employees and failing to pay them overtime. *See id.* at 172
13 (notice prevents "multiplicity of duplicative suits" and can "expedite disposition of the action"). For
14 these and all the other reasons discussed above, this Court should grant this motion and issue an
15 order (1) authorizing this matter to proceed as a collective action; (2) authorizing mailing of the
16 proposed notice to all persons employed as a Sales Service Representative by Cintas in the United
17 States during the period from March 19, 2000 to the present and tolling the limitations period on
18 FLSA claims from the filing of this motion through the opt-in deadline; and (3) requiring Cintas to
19 post the notice in all of its facilities and to produce a computer-readable data file containing the
20 names, addresses, Social Security numbers, and telephone numbers of all such potential opt-in
21 plaintiffs so that notice may be implemented.

22 DATED:  July 2, 2003                         Respectfully submitted,

23                                              MILBERG WEISS BERSHAD
24                                              HYNES & LERACH LLP
                                                THEODORE J. PINTAR
25                                              STEVEN W. PEPICH

26

27                                              _____
                                                            STEVEN W. PEPICH
28

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA                        - 23 -

1
2
3

401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

4
5
6
7

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
ALBERT H. MEYERHOFF
355 South Grand Avenue, Suite 4170
Los Angeles, CA 90071
Telephone: 213/617-9007
213/617-9185 (fax)

8
9
10
11

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC 20036
Telephone: 202/822-6762
202/828-8528 (fax)

12
13
14
15
16

ALTSHULER, BERZON, NUSSBAUM,
  RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151
415/362-8064 (fax)

17
18
19
20

TRABER & VOORHEES
THERESA M. TRABER
STEFANIE KIM GLUCKMAN
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/577-7079 (fax)

21

Attorneys for Plaintiffs

22
23
24
25
26
27
28

G:\Cases-SD\Cintas\DCC81434.BRF

# NOTICE

## NOTICE OF YOUR RIGHTS IN CONNECTION WITH FEDERAL OVERTIME COMPENSATION LAWSUIT AGAINST CINTAS CORPORATION

To:     All persons who have worked for Cintas Corporation as Service Sales Representatives, Commission Route Salespersons, Commission Route Sales Representatives, Route Drivers and Other Persons Performing a Service and/or Delivery Function on a Non-hourly Basis ("Route Drivers") anywhere in the United States at any time from March 19, 2000 1997 through the present.

Re:     Lawsuit against Cintas Corporation for, among other claims, the alleged failure to pay overtime compensation as required under federal law

From: Counsel for Plaintiffs:

    Theodore J. Pintar
    Steven W. Pepich
    MILBERG WEISS BERSHAD
      HYNES & LERACH LLP
    401 B Street, Suite 1700
    San Diego, CA  92101
    Telephone:  619/231-1058
    619/231-7423 (fax)

    Michael Rubin
    Scott A. Kronland
    ALTSHULER, BERZON, NUSSBAUM,
      RUBIN & DEMAIN
    177 Post Street, Suite 300
    San Francisco, CA  94108
    Telephone:  415/421-7151
    415/362-8064 (fax)

    Theresa M. Traber
    Stefanie Kim Gluckman
    TRABER & VOORHEES
    128 No. Fair Oaks Avenue, Suite 204
    Pasadena, CA  91103
    Telephone:  626/585-9611
    626/577-7079 (fax)

## I.     INTRODUCTION

This Notice is to inform you about a collective action lawsuit in which you may make a claim for unpaid wages and related damages, to advise you of how your rights may be affected by this suit, and to inform you how to make a claim. Plaintiffs have sued Cintas on behalf of themselves and other similarly situated Route Drivers who may wish to join this collective action. This opt-in class is open to all persons who have worked as a Route Driver for Cintas and who worked in excess of forty (40) hours in any week, from approximately March 19, 2000 through the present, with the limitations noted in Section III.

## II.    DESCRIPTION OF THE LAWSUIT

On March 19, 2003, fifteen (15) named individual plaintiffs filed a complaint in the United States District Court for the Northern District of California, in Oakland, California against Cintas Corporation ("Cintas").   On May 19, 2003, twenty (20) individual plaintiffs filed an amended complaint.  As of the date this Notice was mailed, **[to be filled in later]** Route Drivers have filed "Consent to Sue" forms to participate in the litigation.

Plaintiffs allege that, among other things, they and others similarly situated were employed by Cintas and were denied overtime compensation for hours they worked in excess of forty (40) hours per week.  Plaintiffs allege that Cintas violated the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §201, *et seq.*, by failing to pay them overtime compensation for all hours worked in excess of forty (40) per week for the past three years.

Plaintiffs seek payment of overtime compensation for hours worked in excess of forty (40) hours per week, plus liquidated damages, in the form of twice the overtime compensation owed, or in the alternative, prejudgment interest, a declaratory judgment, an award of reasonable attorneys fees and costs, and such other relief as may be proper.

The Court determined that the twenty (20) named plaintiffs, the **[to be filled in later]** Route Drivers who have filed Consent to Sue forms, and all those who opt in to the case may initially proceed with their federal law (FLSA) overtime claims on a collective action basis.  This means that the named plaintiffs and opt-in plaintiffs may engage in the discovery process (plaintiffs and defendants obtain information from each other regarding the facts underlying the claims and defenses) as a group, and, where appropriate, have the Court rule on issues on behalf of the group.  The Court may reconsider later whether this case should be allowed to continue to proceed as a collective action.

In addition to the claims alleged under federal overtime law (FLSA), plaintiffs allege that Cintas and the Plan Administrator of the Cintas Partners' Plan violated the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to record and maintain accurate records of all hours worked by route drivers and by failing to credit service as required under ERISA.  Plaintiffs also assert that Cintas' alleged failure to pay overtime, to maintain proper time records, and/or to provide paid rest breaks violates the respective wage and hour laws of the States of California, Colorado, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, and New York.  Plaintiffs who have worked in California allege that Cintas' alleged unlawful failure to pay overtime, to pay wages when due, to maintain proper records and to credit services as required under state and federal law, constitute unlawful business practices in violation of California's Unfair Competition Act, Business & Professions Code §17200, *et seq.*  Plaintiffs bring all these non-FLSA claims as class actions on behalf of themselves and similarly situated current and former Cintas route drivers.  The Court has not yet determined whether the plaintiffs can proceed with a class action on these non-FLSA claims.

Cintas denies the allegations in Plaintiffs' complaint and is currently opposing Plaintiffs in pre-trial litigation of both the federal and state claims.

## III.    SETTLEMENT IN PRIOR STATE COURT ACTION IN CALIFORNIA

On May 14, 2001, plaintiffs Philip Vaca and Enrique Castillo filed an action in Los Angeles Superior Court asserting claims for unpaid overtime compensation under California law on behalf of a class of all Cintas Route Drivers in California.  On February 5, 2003, the Court approved a settlement in which Cintas agreed to pay $10 million to cover the claims of all Route Drivers who

worked in California from May 14, 1997 to June 1, 2002. California Route Drivers who did not opt out of that class-wide settlement do not have any claim for overtime payments for the time period covered by the settlement, but this settlement did not affect Route Drivers' rights to challenge Cintas' overtime practices after June 1, 2002. Route Drivers who have worked in California at any time after June 1, 2002 do have potential claims in this lawsuit which alleges violations of California and federal overtime law from June 2, 2002 to the present.

## IV.     YOUR RIGHT TO JOIN THIS SUIT AS A PARTY PLAINTIFF

If you worked as an Cintas Route Driver during the relevant time period discussed above and believe that Cintas has failed to pay you all overtime compensation to which you are entitled, you have the right to make this claim against Cintas as an opt-in plaintiff in this lawsuit. To do that you must complete, sign and mail the enclosed Consent to Sue form to plaintiffs' counsel so that it is received on or before _____. It is entirely your own decision whether to join this lawsuit. You are not required to take any action unless you so desire.

## V.     THE LEGAL EFFECT OF JOINING THIS SUIT

Your ability to recover on a claim for overtime compensation against Cintas may differ depending on whether you pursue the claim under federal (FLSA) or state wage and hour law. This notice and opportunity to opt-in only addresses your ability to pursue a claim for overtime compensation under *federal law*. If you choose to join this suit by submitting the enclosed Consent to Sue form, you will be bound by the judgment on your FLSA claim whether it is favorable or unfavorable, or any settlement of the FLSA claims alleged in this action that may later be approved by the Court as fair and reasonable. While the suit is proceeding you may be required to provide information, appear for a deposition, and/or testify in court. Signing and submitting the Consent to Sue form in this lawsuit does not affect any claim for overtime compensation that you may have under state law.

## VI.     NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose *not* to join this suit, you will not be affected by the judgment, favorable or unfavorable, on any of the claims brought under the federal overtime laws (FLSA) that are alleged in this action. If you do not file a Consent to Sue form, you will not receive any back overtime wages or other relief from the case if the Plaintiffs prevail on their FLSA claims. Recovery under the federal law (FLSA) would be obtainable by you *only* if you file your own lawsuit within the time provided by law and then you prevail on your claims. Federal law (FLSA) requires that any claims for overtime compensation must be filed, if at all, in a state or federal court within two (2) years (or within three (3) years if the violation was willful as defined by law.) Any claims for overtime pay under federal law that are not filed within these time limits are likely to be denied as untimely.

Choosing *not* to sign and submit a Consent to Sue form will not affect your eligibility, if any, to recover overtime compensation under state law.

## VII.     LEGAL REPRESENTATION IF YOU JOIN THE SUIT

The attorneys for Plaintiffs and the opt-in class are:

- 3 -

Theodore J. Pintar
Steven W. Pepich
MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Michael Rubin
Scott A. Kronland
ALTSHULER, BERZON, NUSSBAUM,
  RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415/421-7151
415/362-8064 (fax)

Theresa M. Traber
Stefanie Kim Gluckman
TRABER & VOORHEES
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/577-7079 (fax)

## VIII.   HOW AND WHEN TO JOIN THIS SUIT

If you wish to participate in this lawsuit you must complete, sign and mail the enclosed Consent to Sue form in the enclosed pre-addressed envelope: **[To be filled in later.]** If you desire another copy of the Consent to Sue form, you may obtain one by calling **[to be filled in later]** or e-mailing **[to be filled in later]**.

Plaintiffs' counsel must receive your Consent to Sue form on or before _____, 2003 so that it may be filed with the Clerk of the Federal Court in Oakland on or before _____, 2003. If plaintiffs' counsel does not receive your Consent to Sue form on or before _____, 2003, you will not be allowed to join the lawsuit.

Even if you timely file a Consent to Sue form, your continued right to participate in this lawsuit may depend upon a later determination by the Court that you and the plaintiffs are actually "similarly situated" in accordance with federal law and that your claim has been filed within the applicable statute of limitations.

## IX.   NO OPINION EXPRESSED AS TO THE MERITS OF THE CASE

This notice is for the sole purpose of providing Route Drivers with information concerning their right to pursue a claim for overtime backpay under federal law (FLSA) in this case. Although, the Court has authorized the sending of this Notice, the Court expresses no opinion regarding the merits of Plaintiffs' claims or Cintas' liability, if any.

## X.   NO RETALIATION OR DISCRIMINATION PERMITTED

Federal law prohibits Cintas from taking adverse action against persons who have exercised their rights under the FLSA to participate in this lawsuit.

## XI.   ADDITIONAL INFORMATION

For further information about this suit, you may contact a representative of Plaintiffs' counsel at the following toll-free number: **[to be filled in later]**.

DATED:  July 2, 2003                    MILBERG WEISS BERSHAD
                                          HYNES & LERACH LLP
                                        THEODORE J. PINTAR
                                        STEVEN W. PEPICH


                                        _____
                                               STEVEN W. PEPICH

                                        401 B Street, Suite 1700
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)

                                        MILBERG WEISS BERSHAD
                                          HYNES & LERACH LLP
                                        ALBERT H. MEYERHOFF
                                        355 South Grand Avenue, Suite 4170
                                        Los Angeles, CA  90071
                                        Telephone:  213/617-9007
                                        213/617-9185 (fax)

                                        MILBERG WEISS BERSHAD
                                          HYNES & LERACH LLP
                                        NANCY M. JUDA
                                        1100 Connecticut Avenue, N.W.
                                        Suite 730
                                        Washington, DC  20036
                                        Telephone:  202/822-6762
                                        202/828-8528 (fax)

                                        ALTSHULER, BERZON, NUSSBAUM,
                                          RUBIN & DEMAIN
                                        MICHAEL RUBIN
                                        SCOTT A. KRONLAND
                                        177 Post Street, Suite 300
                                        San Francisco, CA  94108
                                        Telephone:  415/421-7151
                                        415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
STEFANIE KIM GLUCKMAN
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA 91103
Telephone: 626/585-9611
626/577-7079 (fax)

Attorneys for Plaintiffs

1

## DECLARATION OF SERVICE BY MAIL

2

3    I, the undersigned, declare:

4    1.    That declarant is and was, at all times herein mentioned, a citizen of the United States

5 and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in

6 the within action; that declarant's business address is 401 B Street, Suite 1700, San Diego, California

7 92101.

8    2.    That on July 2, 2003, declarant served the MOTION OF PLAINTIFFS PAUL VELIZ,

9 *ET AL.*, FOR FACILITATED NOTICE PURSUANT TO 29 U.S.C. §216(b); MEMORANDUM

10 OF LAW IN SUPPORT THEREOF by depositing a true copy thereof in a United States mailbox at

11 San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the

12 parties listed on the attached Service List.

13    3.    That there is a regular communication by mail between the place of mailing and the

14 places so addressed.

15    I declare under penalty of perjury that the foregoing is true and correct.  Executed this 2nd

16 day of July, 2003, at San Diego, California.

17

18                                    /s/ *Dawn C. Casselman*
                                         DAWN C. CASSELMAN

19

20

21

22

23

24

25

26

27

28

PLTFS' MOTION FOR FACILITATED NOTICE - No. C-03-1180-SBA

CINTAS

Service List - 7/1/2003   (03-0100)

Page 1 of 1

## Counsel For Defendant(s)

Mark C. Dosker   *
Michael W. Kelly
Joseph A. Meckes
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3482
    415/954-0200
    415/391-2493 (Fax)

## Counsel For Plaintiff(s)

Michael Rubin
Scott A. Kronland
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108
    415/421-7151
    415/362-8064 (Fax)

Theodore J. Pintar
Steven W. Pepich
Milberg Weiss Bershad Hynes & Lerach LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
    619/231-1058
    619/231-7423 (Fax)

Theresa M. Traber
Stefanie Kim Gluckman
Traber & Voorhees
128 North Fair Oaks Ave., Suite 204
Pasadena, CA 91103
    626/585-9611
    626/577-7079 (Fax)

Nancy M. Juda
Milberg Weiss Bershad Hynes & Lerach LLP
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC 20036
    202/822-6762
    202/828-8528 (Fax)

Albert H. Meyerhoff
Milberg Weiss Bershad Hynes & Lerach LLP
355 South Grand Avenue, Suite 4170
Los Angeles, CA 90071
    213/617-9007
    213/617-9185 (Fax)

*   SERVED VIA PERSONAL SERVICE ON JULY 2, 2003.