1   SQUIRE, SANDERS & DEMPSEY L.L.P.
    Mark C. Dosker (State Bar # 114789)
2   Michael W. Kelly (State Bar # 214038)
    Joseph A. Meckes (State Bar # 190279)
3   Angela N. O'Rourke (State Bar # 211912)
    One Maritime Plaza, Third Floor
4   San Francisco, California 94111-3492
    Telephone:  +1.415.954.0200
5   Facsimile:   +1.415.393.9887

6   Attorneys for Defendants
    CINTAS CORPORATION and PLAN
7   ADMINISTRATOR FOR THE CINTAS
    PARTNERS' PLAN

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                 (Oakland Division)

| | |
|---|---|
| PAUL VELIZ, et al., On behalf of Themselves and All Others Similarly Situated. | Case No.  03-01180 (SBA) |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **E-FILING** |
| CINTAS CORPORATION, an Ohio corporation; PLAN ADMINISTRATOR for the Cintas Partners' Plan; and DOES 1-25, inclusive, | **DEFENDANT CINTAS CORPORATION'S MOTION TO COMPEL ARBITRATION AND TO STAY FURTHER PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Defendants. | Date:         September 30, 2003<br>Time:        1:00 p.m.<br>Courtroom:   3 |
| | Complaint filed:  March 19, 2003<br>Judge:        Hon. Saundra B. Armstrong |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)

SF/103215.3

1   NOTICE OF MOTION AND MOTION: TO ALL PARTIES AND THEIR ATTORNEYS OF

2   RECORD, PLEASE TAKE NOTICE that on September 30, 2003, at 1:00 p.m., or as soon

3   thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court, located at 1301

4   Clay Street, Third Floor, Oakland, California, Defendant Cintas Corporation ("Cintas") will and

5   hereby does move the Court for an Order granting the relief sought by this motion.

6       By this motion, Cintas seeks an Order compelling named Plaintiffs and the Opt-In

7   Plaintiffs to arbitrate their Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh,

8   Twelfth, and Thirteenth Claims for Relief pursuant to the Federal Arbitration Act ("FAA"), 9

9   U.S.C. § 1 *et seq.*, and the laws of Arkansas, California, Colorado, Connecticut, Indiana, Illinois,

10  Maryland, Michigan, Missouri, New Jersey, New York and North Carolina.  Pursuant to 9 U.S.C.

11  § 3 and the inherent power of the Court to control its docket, Cintas further moves the Court for

12  an order staying further proceedings in this action.[1]

13              **MEMORANDUM OF POINTS AND AUTHORITIES**

14  **I.      INTRODUCTION AND SUMMARY**

15      Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, defendant Cintas Corporation

16  ("Cintas") moves to compel arbitration of the Third through Thirteenth Claims for Relief asserted

17  in this action by the 20 named Plaintiffs and 44 of the 45 "Opt-in" Plaintiffs (collectively

18  "Plaintiffs").[2]  Individually, and on behalf of a host of hoped-for classes and subclasses, the

19  named Plaintiffs have asserted claims for relief under the Fair Labor Standards Act ("FLSA"), 29

20  U.S.C. § 201 *et seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

21  U.S.C. § 1001 *et seq.*, California Business & Professions Code § 17200 *et seq.*, and the wage and

22  hour laws of California, Colorado, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey

23  and New York.

---

[1]  This motion is based upon this Notice of Motion, Motion and Memorandum of Points and Authorities, the Request for Judicial Notice, and the Declaration of Jenice Clendening submitted herewith, the Reply papers to be submitted in support of this Motion, and upon such other or further papers as might be submitted in support of this Motion, and upon oral argument to be presented to the Court in support of this Motion at the hearing on this Motion

[2]  The agreements requiring arbitration as to the 64 plaintiffs are attached to the Declaration of Jenice Clendening submitted herewith. ("Clendening Decl."), ¶¶5 - 70.  The 65th Plaintiff is addressed in footnote 6 below.

1

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

1    Plaintiffs agreed to arbitrate precisely the kinds of claims they have asserted in the Third

2    through Thirteenth Claims for Relief in this action.  Accordingly, this Court should enforce those

3    agreements and should stay further proceedings on those claims.  Cintas does not move to compel

4    arbitration of the Plaintiffs' First and Second Claims for Relief (the "ERISA claims").  Instead,

5    Cintas and its co-defendant Plan Administrator of the Cintas Partners Plan ("Plan Administrator")

6    have filed concurrently herewith a motion to dismiss the ERISA claims. The ERISA claims are

7    not subject to arbitration because the Plan Administrator is not a party to the arbitration

8    agreement, but is named as a defendant in the Second Claim for Relief and is a necessary party to

9    the First Claim for Relief.  To the extent (if any) to which the Court declines to dismiss the

10   ERISA claims, however, Cintas requests that the Court also stay further proceedings on the

11   ERISA claims pending the outcome of the individual arbitrations.  The ERISA claims are

12   derivative of, and dependent on, the outcome of Plaintiffs' FLSA and state law wage and hour

13   claims.

14   **II.    BACKGROUND**

15        **A.    The Nature of Plaintiffs' Claims**

16        Cintas operates a nationwide supply company that manufactures, sells, and rents uniforms

17   and apparel as well as providing other business products and services to its customers throughout

18   the United States and Canada.  The Plaintiffs allege that they were employed by Cintas as

19   "Service Sales Representatives"[3] for various periods of time since November 1997 at Cintas

20   facilities located in California, Colorado, Connecticut, Michigan, Illinois, Indiana, Missouri, New

21   Jersey, and New York.[4]  First Amended Complaint for Injunctive Relief and Damages

22   ("Complaint" or "Compl.") ¶¶8-27.  During that time, Plaintiffs allege that they were classified as

23   "exempt" employees under the FLSA and state wage and hour law and, therefore, that they were

24   not compensated for hours worked in excess of 40 per week.  Compl. ¶¶1-4.

25   ─────────────────

26   [3] Plaintiffs define "Service Sales Representatives" to mean what they list as at least five groups: "current and former Cintas employees who worked as Service Sales Representatives,

27   Commission Route Salespersons, Commission Route Sales Representatives, and/or Route Drivers and other persons performing a service and/or delivery function on a non-hourly basis . . .." Compl. ¶2.

28   [4] According to the FLSA Consents-to Sue filed by Plaintiffs, a number of the "Opt-in" Plaintiffs are residents of Arkansas, Maryland, and North Carolina.

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)**

SF/103215.3

1    The Complaint turns on whether Cintas properly characterized plaintiffs as "'exempt'

2  employees for the purpose of federal and state overtime law." Compl. ¶4.  If not, Plaintiffs

3  contend, they are entitled to recover overtime compensation for hours worked in excess of 40

4  hours per week as well as statutory damages for themselves and the putative classes they purport

5  to represent.  Compl. ¶4.  Plaintiffs' Third Claim for Relief (Compl. ¶¶87-99) purports to be

6  brought as a collective action (an "opt-in" class action) under section 16(b) of the FLSA on behalf

7  of a nationwide class of similarly situated Service Sales Representatives.  Plaintiffs' Fourth and

8  Sixth through Thirteenth Claims for Relief are based on essentially the same conduct, except that

9  they purport to be "opt-out" class actions brought on behalf of nine state subclasses of allegedly

10  similarly situated Service Sales Representatives.[5]

11    In their ERISA claims (the First and Second Claims for Relief), Plaintiffs purport to

12  represent a nationwide class of Service Sales Representatives under Federal Rule of Civil

13  Procedure 23(b)(1) and (2).  The gravamen of these claims is the same, i.e. that Cintas did not

14  properly characterize Plaintiffs as "exempt" employees.  Plaintiffs allege that Cintas and the Plan

15  Administrator have miscalculated the number of hours of service credited toward Plaintiffs'

16  benefits by improperly designating Plaintiffs as "exempt" employees and have, therefore, violated

17  ERISA.  Compl. ¶¶74-86.  In their First Claim for Relief, Plaintiffs claim that Cintas failed to

18  "maintain records" required by ERISA because it allegedly did not "record and/or report all of the

19  hours worked by its Service Sales Representatives."  Compl. ¶78.  In their Second Claim for

20  Relief, Plaintiffs allege that Cintas and the Plan Administrator violated fiduciary duties to the

21  Cintas Partners Plan by failing to credit overtime hours to Service Sales Representatives.  Compl.

22  ¶95-96.  These claims are the subject of a motion to dismiss under Federal Rule of Civil

23  Procedure 12(b)(6) filed concurrently herewith and are not the subject of this Motion.

24    Finally, in the Fifth Claim for Relief, the putative representatives of the "California

25  Subclass" claim that Cintas' characterization of California Service Sales Representatives as

---

[5] The nine putative state subclasses of "Service Sales Representatives" are for California (Compl. ¶¶41-43, 100-115), Colorado (Compl. ¶¶44-46, 116-126), Connecticut (Compl. ¶¶47-49, 127-137), Illinois (Compl. ¶¶50-52, 138-147), Indiana (Compl. ¶¶53-55, 148-158), Michigan (Compl. ¶¶56-58, 159-168), Missouri (Compl. 59-61, 169-179), New Jersey (Compl. ¶¶62-64, 180-190), and New York (Compl. ¶¶65-67, 191-201).

3

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)

SF/103215.3

1  "exempt" employees violates California's Unfair Competition Law, Cal. Bus. & Prof. Code

2  § 17200 *et seq*.  This claim is also solely derivative of Plaintiffs' employment claims and must be

3  submitted to arbitration or stayed pending its outcome.

4      **B.**    **The Plaintiffs Have Agreed to Arbitrate Their Disputes**

5          In exchange for increases in compensation, promotions, job offers and other

6  consideration, all but five of the 65 Plaintiffs entered into individual employment agreements

7  providing that arbitration under the American Arbitration Association National Rules for the

8  Resolution of Employment Disputes ("AAA National Rules") would be the exclusive method for

9  resolving employment disputes with Cintas.[6]  Paragraph 6 of the employment agreements signed

10  by Plaintiffs Veliz, White, Chainuck, Jay, Zadnick, Hodge, Woods, Edwards, Kelly, Cruz, Cruse,

11  Nazareth, Fragola, Montanez, Rydman, Anderson, Carson, Perez, Charles, Hebling, Abney,

12  Lovett, O'Malley, Coomer, Wise, Herrera, Acker, Bailey, Brennan, Bridges, Broadnax, M.

13  Brown, Brumfield, Coleman, Frederique, Greene, Gumbs, Locke, Mackall, Madden, Mimms,

14  Murphy, Roberts, Sullivan, Watson, Weekes, West, Wood and Handy which is entitled

15  "EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES," provides:

16
17
18
19
20

> Should any dispute or difference arise between Employee and Employer
> concerning whether Employer or any agent of Employer ever at any time
> violated any duty to Employee, right of Employee, law, regulation or
> public policy or breached this Agreement, Employee and Employer shall
> confer and attempt in good faith to resolve promptly such dispute or
> difference.  To have a fair, timely, inexpensive and binding method of
> resolving any such dispute or difference remaining unresolved after
> Employee and Employer confer in good faith, should Employee desire to

21
_____

22  [6] "Opt-in" Plaintiff Ricardo Brown entered into an employment agreement with Cintas containing
23  an arbitration provision. Clendening Decl., Ex. JJJ at 2.  The arbitration provision covers certain
issues related to Ricardo Brown's employment with Cintas, but the agreement does not appear to
24  cover the claims alleged in this action. *Id.*  For the reasons raised in this Motion and in the
Opposition to Plaintiffs' Motion for Facilitated Notice (to be filed later this month), this action
25  should not proceed in Court or as a collective action and therefore, there is nothing for non-named
plaintiffs (like Ricardo Brown) to "Opt-in" to.  Cintas reserves the right, in the alternative, if this
26  case does go forward as a collective action, or if Ricardo Brown is later made a named plaintiff,
to move to dismiss or transfer Ricardo Brown's claims based on the forum selection and
exclusive venue clause contained in his employment agreement. *Id.* at 3.  The only named
27  Plaintiffs with whom Cintas does not have individual arbitration agreements, Kelly Smith, Noel
Lloyd, James Lightfoot and Scott Seath, were members of the Teamsters union and were covered
28  by a collective bargaining agreement that requires that all grievances, including the claims raised
in this action, be submitted to labor arbitration.  Clendening Decl., ¶¶69-70.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)**

SF/103215.3

pursue Employee's claim, Employee shall, within one year of the date when the dispute or difference first arose or within one year of when Employee's employment ends, whichever occurs first, submit to Employer a written request to have such claim, dispute or difference resolved through impartial arbitration conducted in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes and held in the county and state where Employee currently works for Employer or most recently worked for Employer. Employee's initial share of the arbitration filing fee shall not exceed one day's pay or $100, whichever is less, and the arbitrator shall have authority to direct Employer to reimburse Employee for that portion of the filing fee paid by Employee if the arbitrator upholds Employee's claim.

In any arbitration proceeding, the arbitrator shall apply the terms of this Agreement as written, the Federal Arbitration Act and other relevant federal and state laws, including time limits on claims. If Employer loses the arbitration, Employer shall bear all fees, expenses, and charges of the American Arbitration Association and the arbitrator. The arbitrator also shall have the authority to award appropriate relief, including damages, costs and attorney's fees, as available under relevant laws, provided that the Arbitrator cannot direct Employee to pay more than a total of two days' pay as costs, expenses and attorney's fees to Employer, the arbitrator or the American Arbitration Association.

Except for Employee's workers' compensation claim or unemployment benefits claim, the impartial arbitration proceeding, as provided in this Paragraph 5, shall be the exclusive, final and binding method of resolving any and all claims of Employee against Employer, but the arbitrator shall have authority to entertain and decide a motion for reconsideration of the arbitration award. A legal action either to maintain the status quo pending arbitration or to enforce the agreement to arbitrate or an arbitration award may be filed and pursued in any court having jurisdiction, but otherwise Employee shall not file in any court any lawsuit or counterclaim contending that Employer or any agent of Employer violated any duty, right, law, regulation or public policy or breached this Agreement.

Clendening Decl., Exs. B-XX.

Plaintiffs Wasmer, Huertas, Samuels, Williams, Jamarillo, Ratcliff, Quershi, DeGraaf, Van Koevering, Krol, and Carroll signed agreements containing an earlier version of the arbitration provision, which contains an equally broad obligation to arbitrate but which did not expressly provide limits upon the filing fees and costs allowable against an employee. Similarly entitled "EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES," Paragraph 6 of these agreements provides:

Should a dispute or difference arise between Employee and Employer concerning or relating in any way to this Agreement or Employee's

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO. 03-01180 (SBA)

SF/103215.3

employment with Employer or Employee's separation from employment with Employer, including whether Employee or Employer or any agent of Employer violated any duty, law, regulation or public policy or breached this Agreement, Employee and Employer shall confer and attempt in good faith to resolve such dispute or difference. Recognizing the importance of having a fair, timely, inexpensive and binding method of resolving such dispute or difference, Employee and Employer agree that if the dispute or difference remains unresolved after Employee and Employer have conferred in good faith, and if Employee desires to pursue Employee's claims or contentions, Employee shall submit a timely written request to have such dispute or difference resolved through impartial arbitration conducted in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes and held in the county and state where Employee currently works for Employer or most recently worked for Employer.

In any such arbitration proceeding, the impartial arbitrator shall apply the terms of this Agreement as written, the Federal Arbitration Act and other relevant federal and state laws, including time limits on claims, and the party losing the arbitration shall bear the fees and expenses of the American Arbitration Association and the impartial arbitrator. The impartial arbitrator shall have the authority to award to the prevailing party any relief, including damages, costs and attorney's fees, available under relevant laws.

Impartial arbitration, as provided above in this Paragraph 6, shall be the exclusive, final and binding method of resolving any dispute or difference between Employee and Employer arising from, concerning or relating in any way to Employee's employment with Employer or Employee's separation from employment with Employer. A legal action to maintain the status quo until the arbitration award is rendered or to enforce the agreement to arbitrate or the arbitration award may be filed and pursued in any court having jurisdiction, but otherwise Employee shall not file any lawsuit contending that Employer or any agent of Employer violated any duty, law, regulation or public policy or breached this Agreement.

Clendening Decl., Exs. YY-III.

The consideration provided by Cintas in exchange for the individual employee's assent to the terms of the contract, including the employee's agreement to arbitrate, is set forth in the body of each employment agreement. Each of the Plaintiffs agreed to arbitrate their disputes with Cintas in exchange for promotions, fringe benefits or initial offers of employment. Clendening Decl. Exs. B-III.

All of the Plaintiffs' employment agreements contain an express choice of law provision to the effect that their agreements will be "INTERPRETED, GOVERNED AND ENFORCED

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)

SF/103215.3

ACCORDING TO THE FEDERAL ARBITRATION ACT AND THE LAW OF THE STATE IN

WHICH EMPLOYEE CURRENTLY IS EMPLOYED BY EMPLOYER OR MOST

RECENTLY WAS EMPLOYED BY EMPLOYER."[7]  Clendening Decl., Exs. B-III.

### C.    Union Members Agreed to Arbitration of Disputes

Although Cintas has not located any record of plaintiffs Noel Lloyd ("Lloyd"), Kelly

Smith ("Smith"), James Lightfoot ("Lightfoot") and Scott Seath ("Seath") having entered into

individual agreements requiring them to arbitrate their disputes, they were each employed subject

to the terms of a collective bargaining agreement ("CBA") which has the same effect.

Clendening Decl., Exs. KKK and LLL.  Each CBA provides employees with a grievance

procedure and requires arbitration as the exclusive method for the resolution of employment

disputes:

> Section 1. Grievance Procedure.  (a) It is agreed that, should any claim of violation of this Agreement, charge of discrimination, grievance or dispute arise between the parties hereto, such matter must be taken up within ten (10) working days of the employee's knowledge of the settled occurrence or it shall be deemed waived. The parties shall make an effort to settle such controversy amicably, but if they fail to do so, it shall be handled as provided below.
> (b) It is expressly agreed, however, that no employee covered by this agreement shall have the right to compel arbitration of any grievance without the written consent of the Union.
> Section 2. Selection of an Arbitrator.  (a) In the event such controversy has not been settled amicably within ten (10) days after it has been presented, it shall then be submitted to a meeting of the Employer's General Manager and the Union's Business Representative. Such meeting shall be arranged within ten (10) days. The parties will use their best efforts to resolve the grievance, but if they are unable to do so, within thirty (30) days from the date of submission of the grievance to them, the Union will have the right to appeal the grievance to arbitration. The representative of the Union and the Employer shall jointly request the Federal Mediation and Conciliation Service to submit a list of seven (7) suggested Arbitrators from which an Arbitrator will be chosen by each party striking out three (3) names, and the remaining name on said list shall become said Arbitrator and hold a hearing as quickly as possible.
> (b) During such proceedings there shall be no lockout, strike or stoppage of work and the decision of the arbitrator shall be final and binding upon the Employer and by the Union and the employees.
> Section 3. Arbitration Expenses.  The expenses of the representative(s) of the Union shall be paid by the Union, and the expenses of the representative(s) of the Employer shall be paid by the Employer.  Any mutual expenses, including fee and

---

[7] The employment agreements of several named plaintiffs provide that the agreements would alternatively be governed by "the law of the State of Ohio if employee lived or was based in Ohio at any time while employed by employer." According to Cintas' records (consistent with the allegations in the Complaint), none of the Plaintiffs were ever based in or lived in Ohio during their time of employment with Cintas.  Clendening Decl. ¶67.

7

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

SF/103215.3

expenses of the Arbitrator, shall be borne equally by the Employer and by the Union.

Clendening Decl., Ex. KKK, Art. VI and Ex. LLL, App. A, October 15, 1999 Agreement.

Any dispute over whether employees were properly characterized as "exempt" employees is within the scope of the CBA especially because it affirmatively adopts the definition of "Outside Salesperson" as used in the FLSA to describe the duties and obligations of the Service Sales Representatives:

> It has and will continue to be the mutual intent, understanding and practice of the parties that those persons employed as driver-salesmen are "outside salesmen" within the meaning of the Fair Labor Standards Act, and that the commissions earned by and payable to such persons shall not be deemed to be a part of the basic wage of such persons for the purpose of computing overtime pay. Pursuant to this mutual understanding, driver-salesmen have a duty to solicit and sell new business to new and existing accounts, and to make reasonable reports thereon when required, provided that the number of solicitations which may be required of driver-salesmen in a given period of time shall be reasonably related to the circumstances and other burdens on the route.
>
> Driver Salesmen who produce less than an average of five (5) bona fide new prospects per week may be subject to the disciplinary process. This requirement shall not be imposed during any week in which the driver sells one (1) new sales contract.

Clendening Decl., Ex. KKK at p. 5; Ex. LLL at p. 4.

> **D.** **Cintas Recently Resolved Similar Class Action Litigation in California State Court After The Plaintiffs Were Compelled To Arbitrate**

Beginning in May 2001, three former California Service Sales Representatives bound by the same arbitration agreements and represented by some of the same attorneys as in this case, filed two separate class action lawsuits against Cintas and its subsidiaries in California state court making virtually identical claims that Cintas was liable for back wages because it had allegedly characterized plaintiffs improperly as "exempt" employees. *Vaca v. Cintas Corp*., Los Angeles Superior Court Case No. BC250459; *Barajas v. Cintas Sales Corp*., Los Angeles Superior Court Case No. BC261276. *See* Request for Judicial Notice ("RJN") submitted in support of Motion to Compel Arbitration, Exs. A and B. Judge Carolyn B. Kuhl granted Cintas' motion to compel arbitration in the lead case, *Vaca.* Thereafter, the parties were able to compromise and reach a class-wide settlement, which included a broad release of claims executed in February 2003**.** RJN Ex. C. Less than six weeks after the state court entered an order approving the parties'

DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)

1    settlement, Plaintiffs filed this action.  On May 16, 2003, before serving process, Plaintiffs filed

2    the First Amended Complaint.

3    **III.**     <u>**DISCUSSION**</u>

4        The "liberal federal policy favoring arbitration agreements" is well established.

5    *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625 (1985) (citation

6    omitted).  Section 2 of the Federal Arbitration Act ("FAA") provides that a contract involving

7    interstate commerce that contains a written agreement to arbitrate "shall be valid, irrevocable and

8    enforceable, save upon such grounds as exist at law or in equity for the revocation of any

9    contract."  9 U.S.C. § 2.  This provision "requires courts to enforce privately negotiated

10    agreements to arbitrate, like other contracts, in accordance with their terms."  *Volt Info. Sciences*

11    *v. Bd. Of Trustees,* 489 U.S. 468, 478 (1989).  The FAA "mandates enforcement of agreements to

12    arbitrate," even if they include "statutory claims."  *Shearson/American Express  v. McMahon,* 482

13    U.S. 220, 226 (1987).  In enacting the FAA, Congress intended to reverse "centuries of judicial

14    hostility to arbitration  agreements," by placing them "upon the same footing as other contracts."

15    *Id.* at 225-226 (citations omitted).

16        As a threshold issue, this Court must determine whether the parties agreed to arbitrate the

17    statutory employment claims that the Plaintiffs have asserted in this action.  *Mitsubishi*, 473 U.S.

18    at 626.  In making this determination, the Court must apply the "federal substantive law of

19    arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Id.*

20    "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy

21    favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved

22    in favor of arbitration."  *Id.  (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr Corp.,* 460

23    U.S. 1, 24-25 (1983)).  "Thus, as with any other contract, the parties' intentions control, but those

24    intentions are generously construed as to issues of arbitrability." *Id.*

25
26       **A.**     <u>**Each of the Plaintiffs Agreed to Arbitrate Their Employment Disputes With**</u>
         <u>**Cintas**</u>

27        Here, each of the Plaintiffs has agreed to arbitrate employment disputes with Cintas.

28    Virtually all of the Plaintiffs did so by entering into individual employment contracts containing

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF**
**CASE NO.  03-01180 (SBA)**

SF/103215.3

agreements to arbitrate.  The two arbitration provisions at issue are worded broadly and require Plaintiffs to submit to arbitration any "dispute or difference . . . concerning or relating in any way to . . . Employee's employment with Employer or Employee's separation from employment with Employer, including whether . . . Employer . . . violated any duty, law, regulation or public policy . . . ."  By their terms, these broad terms plainly encompass the Plaintiffs' FLSA claims, as well as the related claims for violations of state wage and hour law, because those claims are all based on the premise that Cintas improperly characterized Plaintiffs as "exempt" employees.  Thus, each of the Plaintiffs' claims "concerns" or "relates to" Plaintiffs' employment with Cintas and therefore falls within the broad coverage of the arbitration provisions.

The fact that the agreements to arbitrate are found in employment contracts does not change this analysis.  Agreements to arbitrate employment-related disputes are every bit as enforceable under the FAA as any other contract where the employer is engaged in interstate commerce.  *Perry v. Thomas,* 482 U.S. 483, 485 (1987) (holding that claims for unpaid wages are within the scope of a clause requiring arbitration of "any dispute, claim or controversy that may arise between me and my firm").  The United States Supreme Court recently reaffirmed this principle, stating that the "real benefits" and "advantages" of arbitration should not "disappear when transferred to the employment context."  *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123 (2001).

Accordingly, where an employee has agreed to submit employment claims to binding arbitration, claims for violation of a federal statute such as the FLSA are arbitrable unless the employee can show that Congress intended to preclude arbitration, either by reference to the text of the statute, its legislative history, or an "inherent conflict" between arbitration and the statute's underlying purposes.  *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991) (holding that claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, are subject to arbitration).[8]

The Ninth Circuit has held that there is nothing in the text or legislative history of the

---

[8] No similar analysis is necessary when considering Plaintiffs' claims under state statutes, however, because the FAA preempts state law claims to the extent they "undercut the enforceability of arbitration agreements."  *Southland Corp. v. Keating,* 465 U.S. 1, 16 (1984).

10

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)

SF/103215.3

1    FLSA to indicate that Congress intended to preclude arbitration of such claims, or that the

2    statutory purposes of the FLSA would be undermined if claimants are required to submit their

3    claims to arbitration. *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 319-320 (9th Cir. 1996) (holding

4    that plaintiff was required to submit FLSA claims to arbitration); *se,e e.g., Adkins v. Labor Ready,*

5    *Inc.*, 303 F.3d 496, 506 (4th Cir. 2002) (same), *Carter v. Countrywide Credit Indus.,* 189 F.Supp.

6    2d 606, 617 (N.D. Tex. 2002) (same). Thus, under the FAA, Plaintiffs must arbitrate their FLSA

7    and related claims against Cintas unless Plaintiffs can present state law defenses concerning the

8    validity, revocability, and enforceability of contracts [as they are] generally applied to all

9    contracts, and not limited to arbitration clauses. *Doctor's Assocs. v. Casarotto*, 517 U.S. 681,

10    685-86 (1996).

11        The laws of each of the twelve relevant states, however, provide no generally applicable

12    defenses that would excuse Plaintiffs from arbitrating their disputes with Cintas. Instead, the

13    laws of the relevant states support the conclusion that these named Plaintiffs should be compelled

14    to arbitrate. According to their terms, Plaintiffs' arbitration agreements are governed by the FAA

15    and the laws of the states in which Cintas last employed Plaintiffs.[9]

16            1.    <u>The Laws of New Jersey, Colorado, New York, Maryland and North
17                  Carolina Provide No Defense to Compelling Arbitration</u>

18        New Jersey, New York, Colorado, Maryland and North Carolina, like federal law, each

19    _____

20    [9] Accordingly, the FAA and New Jersey law govern the arbitration agreements entered into by
      Plaintiffs Edwards, Kelly, Huertas, Samuels, Williams, Charles and Quershi (the "New Jersey
21    Plaintiffs"). The FAA and Illinois law govern the agreements of Wasmer, Zadnick, Jay,
      Chainuck, Anderson and Carson (the "Illinois Plaintiffs"). The FAA and Michigan law govern
22    the agreements of Hodge, Woods, Ratcliff, Lightfoot, Krol, Abney, Seath, DeGraaf, Van
      Koevering, and Wise (the "Michigan Plaintiffs"). The FAA and Colorado law govern the
23    Jamarillo agreement (the "Colorado Plaintiff"). The FAA and Connecticut law govern the
      Fragola agreement (the "Connecticut Plaintiff"). The FAA and Missouri law govern the Cruse
24    agreement (the "Missouri Plaintiff"). The FAA and Indiana law govern the Cruz and Coomer
      agreements (the "Indiana Plaintiffs"). The FAA and New York law govern the Nazareth and
25    Perez agreements (the "New York Plaintiffs"). The FAA and Arkansas law govern the Hebling
      agreement (the "Arkansas Plaintiff"). The FAA and Maryland law govern the Acker, Bailey,
26    Brennan, Bridges, Boadnax, M. Brown, R. Brown, Brumfield, Coleman, Frederique, Greene,
      Gumbs, Handy, Locke, Mackall, Madden, Mimms, Murphy, Roberts, Sullivan, Watson, Weekes,
27    West, and Wood agreements (the "Maryland Plaintiffs"). The FAA and North Carolina law
      govern the Carroll agreement (the "North Carolina Plaintiff"). And finally, the FAA and
28    California law govern only the agreements of Veliz, White, Lovett, O'Malley, Herrera,
      Montanez, and Rydman (the "California Plaintiffs").

have a "well-recognized policy" and an "established State interest . . . favoring arbitration." *Martindale v. Sandvik Inc.,* 800 A.2d 872, 877 (N.J. 2002); *accord Halikias v. Warburg Dillon Read LLC,* No. 100523/00, 2000 N.Y. Misc. LEXIS 280, at *6 (N.Y. Sup. Ct. July 6, 2000) (Upholding arbitration award "[b]ecause of the often stated policy favoring arbitration as an alternative to judicial process."); *Byerly v. Kirkpatrick Pettis Smith Polian, Inc.,* 996 P.2d 771, 773 (Colo. Ct. App. 2000) ("Colorado public policy strongly favors the resolution of disputes through arbitration. Colo. Const. art. XVIII, § 3."); *NRT Mid-Atlantic, Inc. v. Innovative Properties, Inc.*, 144 Md. App. 263, 279 (2002) (Maryland has a "strong legislative policy in favor of enforcing arbitration agreements"); *Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 118 (1999) (North Carolina "has a strong public policy favoring the settlement of disputes by arbitration").  In determining whether an agreement to arbitrate exists, these states recognize that courts may not subject arbitration agreements "to more burdensome contract formation requirements than that required for any other contractual topic."  *Martindale,* 800 A.2d at 876.  In other words, as dictated by the United States Supreme Court in *Doctor's Assocs.,* the courts may not "singl[e] out arbitration provisions for suspect status." 517 U.S. at 687.

As an initial question, New Jersey, New York, Colorado, Maryland and North Carolina laws require the court to determine whether the arbitration agreement constitutes a valid contract to arbitrate under state law.  *Martindale,* 800 A.2d at 878; *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 n.6 (S.D.N.Y. 2002); *Allen v. Pacheco*, No. 01SC744, 2003 Colo. LEXIS 484 at *7 (Colo. June 9, 2003); *NRT Mid-Atlantic, Inc.,* 144 Md. App. at 279; *Howard*, 134 N.C. App. at 118-19.  The New Jersey Supreme Court has held in no uncertain terms that the creation of an employment relationship—or even continued employment for an existing employee—is sufficient consideration to create a binding contract to arbitrate employment related disputes.  *Martindale,* 800 A.2d at 879.  Even the "willingness to consider employment" of a candidate is sufficient consideration to support an agreement to arbitrate.  *Id; see also Tuskey v. Volt Info. Sci., Inc*., No. 00 Civ. 7410, 2001 U.S. Dist. LEXIS 10980, at *4 (S.D.N.Y. Aug. 3, 2001) (continued employment and promotion constitute valid consideration for agreeing to alternative dispute resolution); *Fuller v. Pep Boys*, 88 F. Supp. 2d 1158 (D. Colo. 2000) (Enforcing arbitration

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)**

SF/103215.3

1  provision contained in employment application and compelling plaintiffs to arbitrate Title VII and

2  discrimination claims); *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 378 (4th Cir. 1998)

3  (construing Maryland law, in an employment application, the employer's agreement to be bound

4  by the same arbitration rules was sufficient consideration for the contract); *Hightower v. GMRI,*

5  *Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) (construing North Carolina law, "continuing employment

6  after learning of the existence of [an arbitration agreement] constitutes an employee's agreement

7  to be bound by [it]".  Here, each of the New Jersey, New York, Colorado, Maryland and North

8  Carolina Plaintiffs received an offer of employment or an increase in compensation in exchange

9  for agreeing to arbitrate their disputes.  Clendening Decl., Exs. B-III.  Thus, under New Jersey,

10  New York, Colorado, Maryland and North Carolina law there is sufficient consideration for the

11  parties to have formed a binding agreement to arbitrate.

12      Plaintiffs might argue that the arbitration provisions are found in form contracts and are,

13  therefore, unenforceable as "contracts of adhesion."  Under New Jersey law, a contract of

14  adhesion is a contract "presented on a take-it-or-leave-it basis, commonly in a standardized

15  printed form, without [the] opportunity of the 'adhering' party to negotiate except perhaps on a

16  few particulars."  *Martindale,* 800 A.2d at 880.  An agreement to arbitrate is not unenforceable,

17  however, simply because it is found to be adhesive.  *Id.*  "[C]ourts must look not only to the

18  standardized nature of the contract, 'but also to the subject matter of the contract, the parties'

19  relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party,

20  and the public interests affected by the contract.'"  *Id.* (internal quotes omitted).  Unless a "case-

21  by-case" determination reveals that a form contract was presented to the employee under

22  "egregious" circumstances and its terms otherwise violate public policy, even a "contract of

23  adhesion" will be enforced.  *Id.*

24      In *Martindale,* the New Jersey Supreme Court held that plaintiff had entered a valid

25  arbitration agreement when, as a condition of her employment, she agreed that all disputes

26  "relating to" her employment would be decided by binding arbitration.  *Id.* at 879.  Even though

27  the employer required the plaintiff to sign the form contract as a condition of her employment, the

28  court reasoned that the "ordinary economic pressure faced by every employee who needs the job"

13

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF**
**CASE NO.  03-01180 (SBA)**

SF/103215.3

1    is not a situation sufficiently egregious to warrant avoidance of the arbitration provision. *Id*. at

2    880; *see also Quigley v. KPMG Peat Marwick, LLP,* 749 A.2d 405, 412 (N.J. App. 2000)

3    (holding that "the economic coercion of obtaining or keeping a job, without more, is insufficient

4    to overcome an agreement to arbitrate statutory claims"); *Martin v. Vance*, 133 N.C. App. 116,

5    121 (1999) (Under North Carolina law a contract may not be avoided unless the employee "was

6    willfully misled or misinformed by the defendant as to these contents.").

7         Even if the arbitration agreement could be said to have been "adhesive," the *Martindale*

8    court went on to state that:

9              the [arbitration] agreement's subject matter and the public interests
               affected lead to the conclusion that it should not be invalidated.
10             Plaintiff has failed to demonstrate how the terms of the arbitration
               agreement were oppressive or unconscionable.  As stated earlier,
11             our courts have held on numerous occasions that agreements to
               arbitrate are not violative of public policy.  * * * Rather, the
12             affirmative policy of this State, both legislative and judicial, favors
               arbitration as a mechanism of resolving disputes. * * * The
13             insertion of an arbitration agreement in an application for
               employment *simply does not violate public policy.*
14

15   *Martindale,* 800 A.2d at 881 (emphasis added, internal citations omitted).  Likewise, New York

16   and Colorado courts have rejected arguments that arbitration agreements signed by employees as

17   a condition of employment are adhesive or otherwise unenforceable. *See, e.g., Ball v. SFX*

18   *Broadcasting*, 236 A.D.2d 158, 160-61 (N.Y. Sup. Ct. 1997); *Merrill Lynch, Pierce, Fenner &*

19   *Smith, Inc. v. District Court of County of El Paso*, 190 Colo. 239, 242-43 (1976).  Indeed, the

20   New York Court of Appeals has held that arbitration provisions are even where there is no

21   mutuality of remedy or obligation under the agreement, so long as there is other consideration.

22   *See Sablonsky v. Gordon Co., Inc.*, 535 N.E.2d 643, 646 (N.Y. App. Ct. 1989).

23        There is nothing in the arbitration agreements signed by the New Jersey, New York,

24   Colorado, Maryland or North Carolina Plaintiffs that runs afoul of their respective state laws.

25   The arbitration agreements plainly set forth that arbitration will be the exclusive mechanism for

26   resolving all of the named Plaintiffs' claims arising out of their employment with Cintas,

27   including claims that Cintas violated any duty to the Plaintiffs or any law, regulation or public

28   policy.  This provision would include each of the claims for relief that are the subject of this

14

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF**
**CASE NO. 03-01180 (SBA)**

SF/103215.3

1   Motion and are not subject to any generally applicable contract defenses.  The laws of New

2   Jersey, New York, Colorado, Maryland and North Carolina, as well as federal law, require that

3   agreements to arbitrate be enforced.

4              2.         Michigan Law Provides No Defense to Compelling Arbitration

5        Michigan also has a public policy that "increasingly and overwhelmingly favor[s]

6   arbitration as an inexpensive and expeditious alternative to litigation."  *Rembert v. Ryan's Family*

7   *Steak Houses, Inc.,* 596 N.W.2d 208, 210 (Mich. App. 1999).  In Michigan, "employers are also

8   free to require arbitration of claims as a condition of employment" and such provisions are

9   routinely enforced.  *Id. at 211.*

10       Under Michigan law, an arbitration agreement is not unconscionable if it does not waive

11  statutory rights and it is procedurally fair.  *Id.* at 226.  The United States Supreme Court has

12  repeatedly held that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the

13  substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather

14  than a judicial, forum."  *Gilmer*, 500 U.S. 20, 26 (1991).  Nonetheless, to ensure that employees

15  do not waive their statutory rights and to promote procedural fairness, *Rembert* holds that the

16  following "basic elements" should be included in an arbitration agreement:  (1) clear notice that

17  the employee is waiving his right to a judicial forum; (2) the right to representation by counsel;

18  (3) a neutral arbitrator; (4) reasonable discovery; and (5) a fair arbitral hearing.[10] 596 N.W.2d at

19  228.

20       Here, the agreements plainly state that arbitration is Plaintiffs' "exclusive, final and

21  binding method" for resolving all employment related disputes with Cintas, including claims that

22  Cintas breached a duty to Plaintiffs or violated "any law, regulation or public policy."  Thus,

23  Plaintiffs were on notice that their statutory claims for overtime compensation would be subject

24  to arbitration.  The remaining requirements are easily satisfied by the parties' express adoption of

25  the AAA's National Rules for the Resolution of Employment Disputes, which provide for the

26

27  [10]  Importantly, the *Rembert* court declined to include, among the fairness requirements, any rule
    that the employer must pay the fees of the arbitrator and arbitration service.  The court noted,
28  however, that, as a practical matter, an employee who prevails in arbitration would have the
    opportunity to shift these fees to the employer.  596 N.W.2d at 228.

15

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)**

SF/103215.3

right to representation by counsel (Rule 14), a neutral arbitrator (Rule 11), reasonable discovery (Rule 7), and a fair hearing (Rules 20-28). Clendening Decl., Ex. A.

By agreeing to arbitrate their employment related disputes, the Plaintiffs have given up any further right they might have had to proceed in a judicial forum. The forum chosen by the parties — the arbitration under AAA Employment Rules — provides a fair and efficient forum for resolving these claims. Michigan law, therefore, provides the Michigan Plaintiffs no contract defense to the arbitration provision, and their agreement to arbitrate should be enforced.

3. <u>The Laws of Illinois, Missouri, Connecticut, Arkansas and Indiana Provide No Defense to Arbitration</u>

In determining whether agreements to arbitrate employment disputes are enforceable, courts in Illinois, Missouri, Connecticut, Arkansas and Indiana look primarily to whether the overall contract itself is supported by consideration. *Sheller v. Frank's Nursery & Crafts,* 957 F. Supp. 150, 154 (N.D. Ill. 1997); *Gannon v. Circuit City Stores,* Inc., 262 F. 3d 677, 682 (8th Cir. 2001); *Carey v. Conn. Gen. Life Ins. Co.,* 93 F. Supp. 2d 165, 169 (D. Conn. 1999); *DeGroff v. Mascotech Forming Tech. Fort Wayne, Inc.,* 179 F. Supp. 2d 896, 904 (N.D. Ind. 2001); *McClendon v. Sherwin/Williams, Inc.,* 70 F. Supp. 2d 940, 943 (E.D. Ark. 1999). For example, in *Sheller,* the court held that parties formed a binding agreement to arbitrate when a prospective employee agreed to arbitrate his claims and, in exchange, the prospective employer agreed to consider him for employment. 957 F. Supp. at 154. Likewise, in *DeGroff* and *McClendon,* the courts found consideration sufficient to support the arbitration provision in the employee's continued employment after signing the agreement. 179 F. Supp. 2d at 904; 70 F. Supp. 2d at 943. Here, each agreement is supported by consideration because each of the relevant Plaintiffs received a promotion, an increase in compensation or an offer of employment in exchange for agreeing to arbitrate their disputes.

Nor is there any basis under Illinois, Missouri, Connecticut, Arkansas or Indiana law to show that the agreements to arbitrate are unconscionable. For instance, under Indiana law, an agreement to arbitrate will not be considered unconscionable merely because one party in some way enjoys an advantage over the other. Instead, a contract is unconscionable only where there is

16

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO. 03-01180 (SBA)**

SF/103215.3

1  a great disparity in bargaining power that leads the weaker party to sign an agreement unwillingly

2  or unaware of its terms (failure to read the contract is no excuse), or when the agreement is one

3  that "no person not under delusion, duress or in distress would make," or one that "no honest and

4  fair [person] would accept." *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1062 (S.D. Ind.

5  2000).

6        A plaintiff cannot show that an employment contract that requires arbitration is

7  unconscionable because an employee is free to reject the job rather than agreeing to arbitrate.

8  *Bolduc v. Bridgestone/Firestone, Inc.*, 116 F. Supp. 2d 322, 324 (D. Conn. 2000) (no lack of

9  "meaningful choice" shown in an employment context); *Whelan Sec. Co. v. Allen*, 26 S.W.3d

10  592, 596 (Mo. Ct. App. 2000) (enforcement of an forum selection clause in an employment

11  contract was not unfair because an employee is not forced to accept and to execute the contract

12  but rather has the option to forego the employment if the terms of the contract are not

13  satisfactory); *see also Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 621 (Ill. App. 2000)

14  (there can be no unconscionability unless plaintiffs can show that they were "vulnerable or

15  helpless" or somehow unfairly "surprised or oppressed" by the contract's terms).

16        Under the laws of Indiana, Illinois, Missouri, Arkansas and Connecticut, and the FAA,

17  there is no basis for finding unconscionability.  Each of the relevant plaintiffs freely agreed to

18  arbitrate in exchange for receiving jobs, promotions, fringe benefits and the like.  As noted in

19  Part III.A.2, above, by agreeing to arbitrate in accordance with the AAA National Rules for the

20  Resolution of Employment Disputes, the Plaintiffs are entitled to a forum where they can resolve

21  their disputes with Cintas fairly and efficiently.  Thus, there is no basis for finding these

22  agreements "unconscionable" or unenforceable under the laws of Indiana, Illinois, Missouri,

23  Arkansas, Connecticut or any other state.

24              4.    California Plaintiffs

25        California likewise has a public policy favoring arbitration and will enforce promises to

26  arbitrate contained in employment contracts as long as those agreements are not unconscionable

27  and do not "undermine the vindication of unwaivable rights." *Little v. Auto Stiegler, Inc.,* 29 Cal.

28  4th 1064, 1079 (2003).  Each of the seven California Plaintiffs agreed to arbitrate in exchange for

17

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)**

SF/103215.3

1  valuable consideration: Veliz originally received an offer of employment and later received an

2  increase in compensation, Lovett received a promotion, White, Montanez, Rydman, O'Malley,

3  and Herrera received offers of employment.  Giving effect to the liberal federal policy favoring

4  arbitration, the Court should compel the California Plaintiffs to live up to their bargain and to

5  resolve their disputes with Cintas through arbitration.

6      Cintas anticipates that the California Plaintiffs will contend that the arbitration agreement

7  is unconscionable under *Armendariz v. Foundation Health Psychcare Servs.,* 24 Cal. 4th 83

8  (2000), which was recently cited by the Ninth Circuit in *Ingle v. Circuit City Stores, Inc.,* 328

9  F.3d 1165 (9th Cir. 2003).   These cases are distinguishable from the present case, on their facts.

10  *Armendariz* and *Ingle* hold that, under California law, an arbitration agreement may be

11  disregarded in an employment application if it is both procedurally and substantively

12  unconscionable.  328 F.3d at 1170-71; 24 Cal. 4th at 114.  Those courts held that an employment

13  application that is presented on a take-it-or-leave-it basis and that deprives the applicant of

14  unwaivable statutory rights or lacks sufficient "bilaterality" meets the test of "unconscionability"

15  under California law.  328 F.3d at 1170-71; 24 Cal. 4th at 114.

16      Here, however, the arbitration provision was not included in an application for

17  employment as was the case in *Armendariz* and *Ingle,* but rather was contained in employment

18  agreements entered into in exchange for receiving a job.  Unlike the situation in *Ingle,* Cintas

19  considered the applications of the California Plaintiffs before requesting that they agree to

20  arbitrate employment disputes.  Indeed, in the state court proceedings, Judge Kuhl held that

21  agreements to arbitrate entered into by other California Service Sales Representatives under

22  similar circumstances were enforceable.  RJN Ex. C.

23      As discussed above, the arbitration agreements are fair to the Plaintiffs; there is nothing

24  that would preclude the California Plaintiffs from vindicating their statutory rights.  Arbitration

25  using the AAA's National Rules for the Resolution of Employment Disputes will allow the

26  California Plaintiffs to assert whatever statutory rights they claim were violated in a fair and

27  reasonable forum that provides neutral arbitrators, more than minimal discovery, a written award

28  and all the kinds of relief that would be available in court.  *See Armendariz,* 24 Cal. 4th at 102.

**SQUIRE, SANDERS & DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)**

SF/103215.3

Thus, the California Plaintiffs cannot contend that the arbitration provision is somehow "unconscionable" given that it will allow them to pursue vindication of their statutory rights in a manner that is both fair and efficient.[11]

**B.     Plaintiffs Lloyd, Smith, Lightfoot and Seath are Required to Arbitrate their Claims Pursuant to the CBA's Grievance and Arbitration Procedures**

Judicial enforcement of collectively bargained agreements to arbitrate individual statutory claims has evolved in a separate but complementary line of cases.  Since *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), and *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728 (1981), where the Court declined to find unions waived the right to trial of individual statutory claims, the Court has opened the door to enforceable union negotiated waivers and explicitly extended arbitration's favored status to employment disputes.

---

[11] The relevant arbitration provision certainly has sufficient "bilaterality" to pass muster under the FAA because both parties have agreed to be bound by the outcome of any employment arbitration.  Although *Armendariz* and *Ingle* held that subjecting only the claims of the employee to arbitration is unconscionable, this reasoning is based on the notion that the "disadvantages" of arbitration when applied only to the employee's claims results in a contractual obligation that is inherently unfair.  *Armendariz*, 24 Cal.4th at 120.  This treats an arbitration provision differently from other provisions simply by virtue of the fact that it requires arbitration.  As the United States Supreme Court held in *Doctor's Assocs.*, 517 U.S. at 687, courts may not afford such suspect status to agreements to arbitrate.  Thus, to the extent *Armendariz* or *Ingle* hold that an arbitration agreement is unconscionable simply because it does not flow "both ways," those opinions are in error and in view of United States Supreme Court precedent they should not be followed.  The recent Ninth Circuit decision in *Circuit City Stores, Inc. v. Mantor*, No. 02-55230, 2003 U.S. App. LEXIS 14607, at *1 (9th Cir. July 22, 2003), is similarly flawed but distinguishable. This decision is also contrary to United States Supreme Court authority requiring arbitration agreements to be held to the same standard as other contracts.  Specifically, the *Mantor* decision requires employers to provide employees either a meaningful opportunity to negotiate an agreement to arbitrate or an opportunity to avoid arbitration agreements entirely.  *Id.* at *10-11. This elevated standard of purported "fairness" for arbitration agreements is not required for other contracts.  Here, the Plaintiffs had an opportunity to weigh the benefit of accepting a job offer or promotion against the consequence of their assent to the terms of the arbitration agreement.  This exchange of promises created a binding contract; the fairness of the terms of the agreement and the arbitration procedures rebut any arguments that the resulting agreement is unconscionable. *Mantor* also notes that a required filing fee to initiate arbitration in an agreement without designation of a neutral third party empowered to waive the fee consistent with the court's ability to waive fees may also be a basis for invalidating an arbitration provision.  *Id.* at *14-15.  Here, the arbitration filing fee may be waived by the neutral arbitrator pursuant the AAA National Rules.  Clendening Decl., Ex. A, Rule 38.  If the Court nevertheless finds this provision of AAA National Rules or other language in the arbitration provision to be unconscionable, Cintas requests the Court to exercise its discretion to sever the offending language from the otherwise enforceable agreements and allow both parties the benefit of their bargain.  *Id.* at *17-18.

1    Plaintiffs Lloyd, Smith, Lightfoot and Seath are, or were employed subject to the terms of

2    CBAs between Cintas and the International Brotherhood of Teamsters, Chauffeurs,

3    Warehousemen and Helpers of America.  Clendening Decl., Exs. KKK, LLL.   The arbitration

4    provision in Article VI of the CBAs, in combination with Article IV of the CBAs expressly

5    referencing the Fair Labor Standards Act, constitutes a clear and unmistakable waiver of Lloyd,

6    Smith, Lightfoot and Seath's right to pursue their claims in court.  Instead, they are required to

7    arbitrate their employment disputes with Cintas.

8    Since *Alexander* and *Barrentine*, the Supreme Court has recognized that the collective

9    bargaining process permits unions to waive the right to strike and other rights protected under the

10   National Labor Relations Act.  *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705 (1983).  In

11   *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998), the Court said that the terms of a

12   CBA could constitute a binding agreement to arbitrate statutory claims of individual bargaining

13   unit members.  *Id*. at 80.  The Court's attitude favoring arbitration of employee disputes was

14   reinforced in *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 116 (2001).  Since these

15   developments, Federal courts have recognized "[a]n agreement to arbitrate statutory claims is part

16   of the natural tradeoff that a union must make in exchange for other benefits."  *Safrit v. Cone*

17   *Mills Corp.*, 248 F.3d 306, 308 (4th Cir. 2001).

18   According to the United States Supreme Court, this waiver of the right to a federal forum

19   in a collective bargaining agreement may be permissible if it is done in "clear and unmistakable"

20   language.  *Wright*, 525 U.S. at 80.   Based on the particular facts presented in *Wright*, the Court

21   held that the collective bargaining agreement did not contain a "clear and unmistakable" waiver

22   of plaintiff's federal forum rights because: (1) the arbitration provision covering "matters under

23   dispute" was too general and "could be understood to mean matters in dispute under the contract

24   [as opposed to substantive statutory rights];" (2) the contract included "no explicit incorporation

25   of statutory antidiscrimination requirements;" and (3) compliance with the ADA was not an

26   express contractual commitment.  *Id*. at 80. For these reasons, a unanimous Court determined that

27   the arbitration clause in *Wright* did not preclude the plaintiff from suing the employer in federal

28   court.  Although *Wright* declined to define or describe when a waiver of federal forum rights

20

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF**
**CASE NO.  03-01180 (SBA)**

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

SF/103215.3

1   would be "clear and unmistakable," *Wright's* progeny have enunciated and refined a test to

2   determine the enforceability of CBA arbitration provisions as to federal statutory claims.

3           1.      "Clear and Unmistakable" Union-Negotiated Waivers of an Employee's
                    Federal Forum Rights are Effective in Mandating Arbitration as the Only
4                   Available Forum

5           Courts interpreting *Wright* hold that a 'clear and unmistakable' waiver can occur in two

6   ways. First, the agreement can contain an explicit arbitration clause in which the parties agree to

7   submit to arbitration all federal causes of action arising out of employment. *Carson v. Giant*

8   *Food, Inc.*, 175 F.3d 325, 332 (4th Cir. 1999).  Second, a general clause requiring arbitration

9   under the agreement can be coupled with a provision which makes 'unmistakably clear that the [ ]

10  statutes at issue are part of the agreement.  *Id.  See Safrit*, 248 F.3d at 308 (holding that employee

11  waived federal forum for Title VII claims in CBA); *Austin v. Owens-Brockway Glass Container*,

12  78 F.3d 875, 885 (4th Cir. 1996) (holding that a collective bargaining agreement to arbitrate is

13  binding upon individual employees even when dispute involves federal cause of action where

14  agreement expressly references statutory claims); *accord Rogers v. NYU*, 220 F.3d 73, 76 (2d Cir.

15  2000) (discussing *Wright* test); *Bratten v. SSI Servs. Inc.*, 185 F.3d 625, 631 (6th Cir. 1999)

16  (discussing *Wright* test).  The CBAs applicable to plaintiffs Lloyd, Smith, Lightfoot and Seath

17  satisfy the second method for holding the waiver of a federal forum to be adequate, because each

18  has not only an arbitration clause but also a second provision which clearly makes the FLSA and

19  the FLSA's outside salesperson exemption part of the agreement.  *See Clarke v. UFI*, 98 F. Supp.

20  2d 320, 332 (E.D.N.Y. 2000) ("CBA makes 'clear and unmistakable' that claims by covered

21  employees of sexual harassment shall be subject to the grievance procedure culminating in

22  binding arbitration.").

23          2.      Lloyd, Smith, Lightfoot and Seath Clearly and Unmistakably Agreed to
                    Arbitrate Their Employment Disputes and FLSA Claims
24

25          Here, Sections IV and VI of the CBAs categorically provide such a clear and

26  unmistakable waiver.  The CBAs' arbitration provisions use clear and unmistakable language to

27  encompass FLSA claims.[12]  Indeed, the parties agreed that they would arbitrate any employment

28  _____

[12] This section does not discuss state law claims of Lloyd, Smith, Lightfoot and Seath because

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF**
**CASE NO.  03-01180 (SBA)**

SF/103215.3

1  disputes under the CBA and that the FLSA would define the terms of employment for the SSR

2  outside salesmen comprising the bargaining unit.  More specifically, the CBAs state: "should any

3  claim of violation of this Agreement, charge of discrimination, grievance or dispute arise between

4  the parties hereto, such matter must be" resolved pursuant to grievance and arbitration procedures

5  set forth in the CBA.  Clendening Decl., Ex. KKK at 7; Ex. LLL, App. A, Oct. 15, 1999

6  Agreement.

7          Moreover, the CBAs cover the "wages, hours and working conditions" for the relevant

8  bargaining unit and specifically reference and discuss the applicability and incorporation of the

9  definitions of the FLSA into the agreement.  *Id.*, Ex. KKK at 5; Ex. LLL at 4.  Again, in Article

10  IV of the CBA the parties agreed that:  "It has and will continue to be the mutual intent,

11  understanding and practice of the parties that those persons employed as driver-salesmen are

12  "outside salesmen" within the meaning of the Fair Labor Standards Act . . .."  *Id.*, Ex. KKK at 5;

13  Ex. LLL at 4.  Consequently, the CBAs' arbitration provisions are sufficient to compel Plaintiffs

14  to arbitrate their claims regarding wages, hours and overtime obligations under federal law.

15              3.      Ninth Circuit Precedent Does Not Prohibit This Court from Compelling
                        Arbitration of Federal Statutory Claims
16

17          While there is Ninth Circuit precedent declining to compel arbitration of FLSA claims

18  pursuant to the terms of the CBA, those cases are distinguishable.  In *Albertson's, Inc., v. United*

19  *Food and Commercial Workers Union*, 157 F.3d 758 (9th Cir. 1998) the court held "employees

20  covered by a collective bargaining agreement are entitled to take their FLSA claims to court

21  regardless of whether those claims may also be covered by the grievance-arbitration procedure."

22  *Id.* at 762.  This decision is distinguishable for at least two reasons.  First, the decision pre-dates

23  *Wright* and did not have the benefit of the United States Supreme Court's acknowledgement that

24  waivers of federal forums for statutory claims could be contained in CBAs if "clear and

25

26  they are inapplicable to Cintas.  Plaintiffs admit that Cintas is an employer covered by the FLSA.
    Compl. ¶68. The Michigan Minimum Wage Law ("MWL") does not apply to Cintas because the
27  MWL does not apply to employers that are subject to the FLSA.  *See Hazel v. Mich. State*
    *Employees Ass'n*, 826 F. Supp. 1096, 1102 (W.D. Mich. 1993).  Consistent with the MWL, the
28  terms of the Flint, Michigan facility CBAs and their arbitration provisions do not reference
    compulsory arbitration of MWL claims because the state law simply does not apply.

22

1  unmistakable."[13]  Second, the CBA at issue in *Albertson's* did not refer to the FLSA, and the

2  subject arbitration clause limited disputes to those arising solely under the contract.  It stated in

3  pertinent part:

> for the purpose of passing on all claims, disputes and grievances arising
> between the parties during the term of this Agreement over the
> construction and application of this Agreement, or relating to working
> conditions arising out of this Agreement, when such cannot be settled
> directly between the Union and the particular Employer involved.

7  *Albertson's, Inc., v. United Food and Commercial Workers Union,* No. 96-0398-S-BLW, 1997

8  U.S. Dist. LEXIS 4554, *6 (March 10, 1997, D. Idaho).  Thus, the provision would not have met

9  the criteria of *Wright* and its progeny.

10     Additionally, *Collins v. Lobdell*, 188 F.3d 1124, 1127-28 (9th Cir. 1999), while decided

11  post-*Wright*, included no discussion of whether there was a "clear and unmistakable" waiver.  As

12  such, because this Court is presented with a "clear and unmistakable waiver," it is presented with

13  a situation previously not addressed by the Ninth Circuit Court of Appeals.

14            4.    <u>The CBA at Issue Incorporates Sufficient Safeguards to Ensure that The
15                  Employees Rights Are Protected During and After Arbitration</u>

16     Here, the CBAs to which Lloyd, Smith, Lightfoot and Seath are parties offer employees

17  sufficient protection of their rights under the FLSA to meet the *Wright* standard and to provide a

18  fair arbitration for both sides.  First, the arbitration provisions allow the Union and the Employer

19  to mutually select an arbitrator.  Clendening Decl., Ex. KKK, Art. VI, Sec. 2; Ex. LLL, App. A,

20  Oct. 15, 1999 Agreement, Sec. 2.  The arbitrator is to be selected from a list provided by the

21  Federal Mediation and Conciliation Service, thereby alleviating any concerns about the

22  competency or experience of the person who hears the dispute.  *Id*., Ex. KKK, Art. VI, Sec. 2; Ex.

23  LLL, App. A, Oct. 15, 1999 Agreement, Sec. 2.  Second, the employees do not have to pay any

24  fees.  The Union and the Employer split arbitration fees.  Moreover, the Union represents the

25  employee and therefore, unlike a judicial proceeding, the employee need not make arrangements

26  either through direct billing or a contingency arrangement to compensate an advocate.  *Id*., Ex.

27  ―――――――――――――――――

28  [13] The Ninth Circuit *Albertson's* decision was issued one month before the United States Supreme
    Court decided *Wright*.

23

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

KKK, Art. VI, Sec. 3; Ex. LLL, App. A, Oct. 15, 1999 Agreement, Sec. 3.  Third, the CBAs do not limit the issues or matters that may be decided by or the remedies available to the chosen arbitrator.  Fourth, there is no contractual limitation on discovery between the parties.  Finally, the parties have 30 days from the issuance of an arbitration award to seek clarification as to its meaning or interpretation.  *Id.*  Decl., Ex. KKK, Art. VI, Sec. 9; Ex. LLL, App. A, Oct. 15, 1999 Agreement, Sec. 9.

Three decades ago, the United States Supreme Court expressed concern about union waivers of individual statutory rights because of the union's overall goal of increasing the welfare of its members collectively.  *See Alexander v. Gardner-Denver*, *Co.,* 415 U.S. 36, 51 (1974) (African-American employee's trial *de novo* on his discrimination claim held not waived by prior arbitration of claim under CBA).  Here, however, the Union has not waived statutory rights of a discrete protected minority.  Rather, all of the members of the bargaining unit are Service Sales Representatives receiving the same FLSA treatment and benefits and are subjected to the same arbitration provision.

Accordingly, because Lloyd, Smith, Lightfoot and Seath bargained for arbitration of their employment disputes including FLSA claims, they should now be compelled to arbitrate them.

## C.    The Court Should Stay Further Proceedings Pending the Outcome of Arbitration

Section 3 of the FAA provides that, upon application of a party, a court "*shall*" stay further proceedings in a legal action if it finds that "*any* issue" in the case is referable to arbitration under an agreement in writing for such arbitration.  9 U.S.C. § 3 (emphasis added).  This Court also has the inherent power to control its own docket and calendar in the interest of judicial economy and efficiency.  *Mediterranean Enterprises  v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir. 1983).

"[A] stay of all issues, and as to all parties, is warranted when questions of fact common to all would be involved in both the litigation and the arbitration."  *Bischoff v. DirecTV, Inc.,* 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002).  Where the arbitration will "at least partially determine the issues which form the basis" of the non-arbitral claims, the Court should stay the further

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)

SF/103215.3

1  litigation of the non-arbitral claims. *Hikers Indus., Inc. v. William Stuart Industries (Far East)*

2  *Ltd.,* 640 F.Supp. 175, 178-179 (S.D.N.Y. 1986). The stay is mandated here by the FAA. But

3  even when not mandated by the FAA, a stay of further proceedings is appropriate when

4  "considerations of judicial economy and avoidance of confusion and possible inconsistent results

5  . . . militate in favor of staying the entire action." *American Home Assurance Co. v. Vecco*

6  *Concrete Constr. Co.,* 629 F.2d 961, 964 (4th Cir. 1980).

7  The First and Second Claims For Relief depend upon the allegation that Cintas improperly

8  characterized Plaintiffs as "exempt" employees—an issue upon which Cintas is entitled to

9  individual arbitration. The question of whether a particular employee was improperly

10  characterized as "exempt" must be determined through individual arbitration in accordance with

11  the parties' employment agreements, not in litigation before this Court. Thus, if the Court does

12  not grant Cintas' concurrent Motion to Dismiss, failing to stay further proceedings in this matter

13  would result in substantial prejudice to Cintas because it would be forced to litigate the same

14  issues that it had bargained with the Plaintiffs to arbitrate. Thus, the Court should stay any further

15  proceedings on any remaining claims pending the outcome of the arbitral proceedings.

16  **IV.    CONCLUSION**

17  Plaintiffs agreed to arbitrate their disputes with Cintas and, in exchange, were given jobs,

18  raises, promotions and other consideration. Federal law -- the Federal Arbitration Act --

19  mandates that the Court find these agreements to be "valid, irrevocable, and enforceable".

20  Federal law and the various states' laws, which all strongly favor arbitration, should be given full

21  force. Plaintiffs should be compelled to arbitrate, and any remaining claims should be stayed.

22

23  Dated: August 5, 2003                          Respectfully submitted,

24                                                          SQUIRE, SANDERS & DEMPSEY L.L.P.

25

26  By:_____/s/_____
                                                                Mark C. Dosker

27                                                          Attorneys for Defendants CINTAS
28                                                          CORPORATION and PLAN ADMINISTRATOR
                                                                FOR THE CINTAS PARTNERS' PLAN

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF**
**CASE NO.  03-01180 (SBA)**

SF/103215.3

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS
Civil Local Rule 3-16(c)

2

3       Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

4   named parties, there is no such interest to report.

5

6   Dated: August 5, 2003                    SQUIRE, SANDERS & DEMPSEY L.L.P.

7

8                                            By:_____/s/_____
                                                    Mark C. Dosker

9
                                             Attorneys for Defendants
10                                           CINTAS CORPORATION and PLAN
                                             ADMINISTRATOR FOR THE CINTAS
11                                           PARTNERS' PLAN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF**
**CASE NO. 03-01180 (SBA)**

SF/103215.3

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY ............................................................. 1

II.   BACKGROUND .................................................................................2

      A.    The Nature of Plaintiffs' Claim.................................................... 2

      B.    The Plaintiffs Have Agreed to Arbitrate Their Disputes .........................4

      C.    Union Members Agreed to Arbitration of Disputes ...............................7

      D.    Cintas Recently Resolved Similar Litigation in California State Court
            After The Plaintiffs Were Compelled to Arbitrate ................................. 8

III.  DISCUSSION ...................................................................................9

      A.    Each of the Plaintiffs Agreed to Arbitrate Their Employment
            Disputes With Cintas ............................................................ 9

            1.    The Laws of New Jersey, Colorado, New York, Maryland
                  and North Carolina Provide No Defense to Compelling
                  Arbitration ..............................................................11

            2.    Michigan Law Provides No Defense to Compelling Arbitration ............. 15

            3.    The Laws of Illinois, Missouri, Connecticut, Arkansas and
                  Indiana Provide No Defense to Arbitration ............................. 16

            4.    California Plaintiffs ................................................. 17

      B.    Plaintiffs Lloyd, Smith, Lightfoot and Seath are Required to Arbitrate their
            Claims Pursuant to the CBA's Grievance and Arbitration Procedures ............... 19

            1.    "Clear and Unmistakable" Union-Negotiated Waivers of an
                  Employee's Federal Forum Rights are Effective in Mandating
                  Arbitration as the Only Available Forum ................................. 21

            2.    Lloyd, Smith, Lightfoot and Seath Clearly and Unmistakably Agreed
                  to Arbitrate Their Employment Disputes and FLSA Claims ................. 21

            3.    Ninth Circuit Precedent Does Not Prohibit this Court from
                  Compelling Arbitration of Federal Statutory Claims ............................. 22

            4.    The CBA at Issue Incorporates Sufficient Safeguards to Ensure
                  that The Employees Rights Are Protected During and After
                  Arbitration ............................................................. 23

      C.    The Court Should Stay Further Proceedings Pending the Outcome of
            Arbitration ............................................................. 24

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

-i-
DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF
CASE NO.  03-01180 (SBA)

1

**TABLE OF AUTHORITIES**

**Page**

2

3    IV.    CONCLUSON ........................................................................................................... 25

4    **FEDERAL CASES**

5    *Adkins v. Labor Ready, Inc.,*
        303 F.3d 496 ........................................................................................................... 11
6
     *Albertson's, Inc., v. United Food and Commercial Workers Union,*
7        157 F.3d 758 ........................................................................................................... 22

8    *Albertson's, Inc., v. United Food and Commercial Workers Union,*
        No. 96-0398-S-BLW, 1997 U.S.Dist. LEXIS 4554........................................... 23
9
     *Alexander v. Gardner-Denver Co.,*
10       415 U.S. 36 .............................................................................................. 19, 20, 24

11   *American Home Assurance Co. v. Vecco Concrete Constr. Co.,*
        629 F.2d 961 ........................................................................................................... 25
12
     *Austin v. Owens-Brockway Glass Container, Inc.,*
13       78 F.3d 875 ........................................................................................................... 21

14   *Barrentine v. Arkansas-Best Freight System, Inc.,*
        450 U.S. 728 ................................................................................................... 19, 20
15
     *Bischoff v. DirecTV, Inc.,*
16       180 F. Supp. 2d 1097 ........................................................................................... 24

17   *Bolduc v. Bridgestone/Firestone, Inc.,*
        116 F. Supp. 2d 322 ........................................................................................... 17
18
     *Bratten v. SSI Servs. Inc.,*
19       185 F.3d 625 ........................................................................................................... 21

20   *Brennan v. Bally Total Fitness,*
        198 F. Supp. 2d 377 ........................................................................................... 12
21
     *Carey v. Connecticut General Life Ins. Co.,*
22       93 F. Supp. 2d 165 ........................................................................................... 16

23   *Carson v. Giant Food, Inc.,*
        175 F.3d 325 ........................................................................................................... 21
24
     *Carter v. Countrywide Credit Indus.,*
25       189 F. Supp. 2d 606 ........................................................................................... 11

26   *Circuit City Stores, Inc. v. Adams,*
        532 U.S. 105 ................................................................................................... 10, 20
27
     *Circuit City Stores, Inc. v. Mantor,*
28       No. 02-55230, 2003 U.S.App. LEXIS 14607 ................................................. 19

ii

1

## TABLE OF AUTHORITIES

Page

2

3

*Clarke v. UFI,*
  98 F. Supp. 2d 320 ........................................................................................ 21

4

*Collins v. Lobdell,*
  188 F.3d 1124 ............................................................................................... 23

5

6

*DeGroff v. Mascotech Forming Tech. Fort Wayne, Inc.,*
  179 F. Supp. 2d 896 ...................................................................................... 16

7

*Doctor's Assoc. v. Casarotto,*
  517 U.S. 681 .................................................................................... 11, 12, 19

8

9

*Flynn v. AerChem, Inc.,*
  102 F. Supp. 2d 1055 ..................................................................................... 17

10

*Fuller v. Pep Boys,*
  88 F. Supp. 2d 1158 ....................................................................................... 12

11

12

*Gannon v. Circuit City Stores,*
  262 F.3d 677 .................................................................................................. 16

13

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 .............................................................................................. 10, 15

14

15

*Hazel v. Michigan State Employees Ass'n,*
  826 F. Supp. 1096 .................................................................................... 21, 22

16

*Hightower v. GMRI, Inc.,*
  272 F.3d 23 .................................................................................................... 13

17

18

*Hikers Industries Inc. v. William Stuart Industries (Far East) Ltd.,*
  640 F. Supp. 175 ............................................................................................ 25

19

*Ingle v. Circuit City Stores, Inc.,*
  328 F.3d 1165 ................................................................................................ 19

20

21

*Johnson v. Circuit City Stores, Inc.,*
  148 F.3d 373 .................................................................................................. 13

22

*Kuehner v. Dickinson & Co.,*
  84 F.3d 316 .................................................................................................... 11

23

24

*McClendon v. Sherwin Williams, Inc.,*
  70 F. Supp. 2d 940 ........................................................................................ 16

25

*Mediterranean Enterprises v. Ssangyong Corp.,*
  708 F.2d 1458 ................................................................................................ 24

26

27

*Metropolitan Edison Co. v. NLRB,*
  460 U.S. 693 .................................................................................................. 20

28

1

2

# TABLE OF AUTHORITIES

Page

3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614....................................................................................... 9

4

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1........................................................................................... 9

5

6

*Perry v. Thomas*,
482 U.S. 483..................................................................................... 10

7

*Rogers v. NYU*,
220 F.3d 73 ..................................................................................... 21

8

9

*Safrit v. Cone Mills Corp.*,
248 F.3d 306 ............................................................................. 20, 21

10

*Shearson/American Express v. McMahon*,
482 U.S. 220....................................................................................... 9

11

12

*Sheller by Sheller v. Frank's Nursery & Crafts*,
957 F. Supp. 150 ............................................................................. 16

13

*Southland Corp. v. Keating*,
465 U.S. 1......................................................................................... 10

14

15

*Tuskey v. Volt Information Sci., Inc.*,
No. 00 Civ. 7410, 2001 U.S.Dist. LEXIS 10980 ............................. 12

16

*Volt Info. Sciences v. Board of Trustees*,
489 U.S. 468....................................................................................... 9

17

18

*Whelan Sec. Co. v. Allen*,
26 S.W.3d 592, 596 (Mo. Ct. App. 2000)........................................ 17

19

*Wright v. Universal Maritime Service Corp.*,
525 U.S. 70............................................................................. 20, 21, 23

20

21

**STATE CASES**

22

*Allen v. Pacheco*,
No. 01SC744, 2003 Colo. LEXIS 484 .......................................... 12

23

24

*Armendariz v. Foundation Health Psychcare Servs. Inc.*,
24 Cal. 4th 83 ............................................................................. 18, 19

25

*Ball v. SFX Broadcasting*,
236 A.D.2d 158............................................................................... 14

26

27

*Bishop v. We Care Hair Development Corp.*,
738 N.E.2d 610 ............................................................................... 17

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

*Byerly v. Kirkpatrick Pettis Smith Polian, Inc.,*
    996 P.2d 771 .......................................................................... 12

4

*Halikias v. Warburg Dillon Read LLC,*
    No. 100523/00, 2000 N.Y.Misc. LEXIS 280.................................. 12

5

6

*Howard v. Oakwood Homes Corp.,*
    134 N.C.App. 116 ................................................................... 12

7

*Little v. Automobile Stiegler, Inc.,*
    29 Cal. 4th 1064 ................................................................... 17

8

9

*Martin v. Vance,*
    133 N.C.App. 116 ................................................................... 14

10

*Martindale v. Sandvik,*
    800 A.2d 872 ......................................................... 12, 13, 14

11

12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. District Court of County of El Paso,*
    190 Colo. 239 ....................................................................... 14

13

*NRT Mid-Atlantic, Inc., et al. v. Innovative Properties, Inc.,*
    144 Md.App. 263 ................................................................... 12

14

15

*Quigley v. KPMG Peat Marwick, LLP,*
    749 A.2d 405 ......................................................................... 14

16

*Rembert v. Ryan's Family Steak Houses,*
    596 N.W.2d 208 ................................................................... 15

17

18

*Sablonsky v. Gordon Co., Inc.,*
    535 N.E.2d 643 ................................................................... 14

19

**FEDERAL STATUTES**

20

9 U.S.C. § 2....................................................................................... 9

21

9 U.S.C. § 3.......................................................................................

22

Employee Retirement Income Security Act of 1974 ("ERISA"),
    29 U.S.C. § 1001 *et seq.* ...................................................... 1

23

24

Fair Labor Standards Act ("FLSA"),
    29 U.S.C. § 201 *et seq* .......................................................... 1

25

Federal Arbitration Act ("FAA"),
    9 U.S.C. § 1 *et seq* .............................................................. 1

26

27

Federal Rules of Civil Procedure
    12(b)(6) ................................................................................. 3
    23(b)(1) ................................................................................. 3

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3     **STATE STATUTES**

4     Cal. Bus. & Prof. Code § 17200 *et seq* ...................................................................................... 1, 4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFS' MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS & MEMO. IN SUPPORT THEREOF**
**CASE NO.  03-01180 (SBA)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492

**PROOF OF SERVICE**
Case No. 03-01180 (SBA)

SF/103215.3