1   SQUIRE, SANDERS & DEMPSEY L.L.P.
    Mark C. Dosker (CA Bar #114789)
2   Michael W. Kelly (CA Bar #214038)
    Joseph A. Meckes (CA Bar #190279)
3   Cheryl A. Hipp (OH Bar #0062959)
    Angela N. O'Rourke (CA Bar #211912)
4   Anna L. Cartaino (CA Bar #221610)
    One Maritime Plaza, Third Floor
5   San Francisco, CA  94111-3492
    Telephone:    +1.415.954.0200
6   Facsimile:    +1.415.393.9887

7   Attorneys for Defendants
    CINTAS CORPORATION and PLAN
8   ADMINISTRATOR FOR THE CINTAS
    PARTNERS' PLAN
9

10

11                     UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          (Oakland Division)

14

15   PAUL VELIZ, et al, On behalf of          Case No. 03-01180 (SBA)
     Themselves and All Others Similarly
16   Situated.                                **CLASS ACTION**

17              Plaintiffs,                    **E-FILING**

18        vs.                                  **DEFENDANTS' MEMORANDUM IN
                                               OPPOSITION TO PLAINTIFFS' MOTION
19   CINTAS CORPORATION, an Ohio               FOR FACILITATED NOTICE**
     corporation; PLAN ADMINISTRATOR for
20   the Cintas Partners' Plan; and DOES 1-25, Date:        November 4, 2003
     inclusive,                                Time:        1:00 p.m.
21                                             Courtroom:   3
                Defendants.
22
                                               Complaint filed:   March 19, 2003
23                                             Judge:             Hon. Saundra B. Armstrong

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 2

    A.    Cintas Operates Four Specialized Divisions ............................................. 2

    B.    SSRs are Cintas' Primary Sales Agent ...................................................... 3

    C.    Individual Routes and Other Circumstances Also Vary ........................... 5

III.  PLAINTIFFS ARE NOT "SIMILARLY SITUATED." ........................................ 5

    A.    The FLSA's "Similarly Situated" Requirement ........................................ 5

    B.    The Factors Relevant to the Motor Carrier Act Exemption Require a Highly Individualized Factual Analysis as to Each SSR. ....................................... 8

        1.    The "Crossing" Exemption .................................................... 10

        2.    The  "Subject-to Crossing" Exemption ...................................... 10

        3.    The "Goods-In-Commerce" Exemption ..................................... 11

        4.    The "Logged" Exemption ...................................................... 14

    C.    The Factors Relevant to the Outside Sales Exemption Require an Individualized Factual Analysis ............................................................... 14

    D.    Some of the SSRs included in the proposed collective action are exempt under the FLSA's managerial exemption, as supervisors ....................... 18

IV.   IN THE ALTERNATIVE, PLAINTIFFS' PROPOSED NOTICE AND PROPOSED DISTRIBUTION OF THE NOTICE IS INAPPROPRIATE ..................... 20

    A.    Plaintiffs' Proposed Notice is Inappropriate and Inaccurate ................... 20

    B.    This Court should permit Cintas to send any notice to be sent .............................. 22

V.    CONCLUSION ...................................................................................................... 23

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)**

i

SanFrancisco/107670.2

# TABLE OF AUTHORITIES

**FEDERAL CASES**

**Page**

*Ackerman v. Coca-Cola Enterprises, Inc.*,
179 F.3d 1260 (10th Cir. 1999).................................................................................. 15

*Baldwin v. Trailer Inns, Inc.*,
266 F.3d 1104 (9th Cir. 2001).................................................................................... 19

*Ballaris v. Wacker Silttronic Corp.*,
No. 00-1627-KI, 2001 U.S. Dist. LEXIS 13354 (D. Or. Aug. 24, 2001) ..................... 7

*Barron v. Lee Enterprise*,
183 F. Supp. 2d 1077 (C.D. Ill. 2002)....................................................................... 12

*Bayles v. American Medical Response of Colorado, Inc.*,
950 F. Supp. 1053 (D. Colo. 1996) ............................................................................ 8

*Belcher v. Shoney's, Inc.*,
927 F. Supp. 249 (M.D. Tenn. 1996) ....................................................................... 20

*Bilyou v. Dutchess Beer Distributors, Inc.*,
300 F.3d 217 (2d Cir. 2002)........................................................................................ 9

*Brennan v. Schwerman Trucking Co.*,
540 F.2d 1200 (4th Cir. 1976).................................................................................. 10

*Camper v. Home Quality Mgmt.*,
200 F.R.D. 516 (D. Md. 2000) ................................................................................... 7

*Chao v. First Class Coach Co.*,
214 F. Supp. 2d 1263 (M.D. Fla. 2001) .................................................................... 11

*Clausman v. Nortel Networks, Inc., No. IP 02- 0400-C-M/S*,
2003 U.S. Dist. LEXIS 11501 (S.D. Ind. May 1, 2003) ........................... 6, 7, 8, 16, 24

*De Asencio v. Tyson Foods, Inc.*,
130 F. Supp. 2d 660 (E.D. Pa. 2001) ......................................................................... 7

*De Asencio v. Tyson Foods, Inc.*,
No. 00-CV-4294, 2002 U.S. Dist. LEXIS 14413 (E.D. Pa. Aug. 6, 2002)................. 23

*Dean v. Priceline.com, No. D:00CV1273 (DJS)*,
2001 U.S. Dist. LEXIS 24982 (D. Conn. June 5, 2001) ............................................. 7

*Fayne v. Baxter Healthcare Corp.*,
No. 96-55287, 1997 U.S. App. LEXIS 21062 (9th Cir. Aug. 5, 1997)..................... 23

*Foxworthy v. Hiland Dairy Co.*,
997 F.2d 670 (10th Cir. 1993).................................................................................. 12

*Freeman v. Wal-Mart Stores, Inc.*,
256 F. Supp. 2d 941 (W.D. Ark. 2003)........................................................... 5, 6, 7, 8

*Friedrich v. U.S. Computer Services*,
974 F.2d 409 (3d Cir. 1992)..................................................................................... 10

*Garner v. G.D. Searle Pharmaceuticals & Co.*,
802 F. Supp. 418 (M.D. Ala. 1991)............................................................................ 7

*Harper v. Lovett's Buffet, Inc.*,
185 F.R.D. 358 (M.D. Ala. 1999) ............................................................................... 5

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989) ................................................................................................... 6

*Hutson v. Rent-A-Center, Inc.*,
209 F. Supp. 2d 1353 (M.D. Ga. 2001) ................................................................. 9, 12

*Klitzke v. Steiner Corp.*,
110 F.3d 1465 (9th Cir. 1997)................................................................................ 9, 12

*Lusardi v. Xerox Corp.*,
118 F.R.D. 351 (D.N.J. 1987) .................................................................................... 7

*Martin v. Airborne Express*,
16 F. Supp. 2d 623 (E.D.N.C. 1996),
*aff'd without op,*155 F.3d 559 (4th Cir. 1998).......................................................... 12

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR FACILITATED NOTICE**
**CASE NO. 03-01180 (SBA)**

ii

*Mooney v. Aramco Services Co.*,
   54 F.3d 1207 (5th Cir. 1995) ......................................................................... 8
*Morisky v. Public Service Electric & Gas Co.*,
   111 F. Supp. 2d 493 (D.N.J. 2000) .............................................................. 6
*Morris v. McComb*,
   332 U.S. 422 (1947) ............................................................................. 10, 11
*Peraro ex rel. Castro v. Chemlawn Services Corp.*,
   692 F. Supp. 109 (D. Conn. 1988) .............................................................. 9
*Public Citizen v. Department of Transport*,
   316 F.3d 1002 (9th Cir. 2003) ................................................................... 22
*Realite v. Ark Restaurants Corp.*,
   7 F. Supp. 2d 303 (S.D.N.Y. 1998) ............................................................ 7
*Reich v. American Driver Service, Inc.*,
   33 F.3d 1153 (9th Cir. 1994) ..................................................................... 14
*Severtson v. Phillips Beverage Co.*,
   137 F.R.D. 264 (D. Minn. 1991) ................................................................ 6
*Shew v. Southland Corp.*,
   370 F.2d 376 (5th Cir. 1966) ..................................................................... 12
*Simo v. Union of Needletrades, Industrial & Textile Employees*,
   316 F.3d 974 (9th Cir. 2003) ..................................................................... 22
*Sinclair v. Beacon Gasoline Co.*,
   447 F. Supp. 5 (W.D. La. 1976) ............................................................... 10
*Thiessen v. General Electric Capital Corp.*,
   267 F.3d 1095 (10th Cir. 2001) ................................................................... 8
*Turk v. Buffets, Inc.*,
   940 F. Supp. 1255 (N.D. Ill. 1996) .......................................................... 10
*Webb v. Athens Newspapers, Inc.*,
   999 F. Supp. 1464 (M.D. Ga. 1998) ......................................................... 12

## DOCKETED CASES

*Mike v. Safeco Insurance Co.*,
   No. 3:02-CV2239 (DJS) 2003 WL 21758405 (D. Conn. July 15, 2003) ...... 7

## STATUTES

29 C.F.R. § 541.1 ............................................................................................ 19
29 C.F.R. § 541.500 (emphasis added) ......................................................... 15
29 C.F.R. § 541.505(a) (emphasis added) ..................................................... 16
29 C.F.R. § 541.505(b) ............................................................................. 15, 16
29 C.F.R. § 541.505(f)(2) ............................................................................... 15
29 C.F.R. § 782.2 .............................................................................................. 9
29 U.S.C. § 201 ................................................................................................. 1
29 U.S.C. § 213(a)(1) ................................................................................ 14, 15
29 U.S.C. § 213(b)(1) ....................................................................................... 8
29 U.S.C. § 541.5 ............................................................................................ 21
29 U.S.C. § 782.3(a) ....................................................................................... 10
49 U.S.C. § 13102(13) ...................................................................................... 9
49 U.S.C. § 13501 ............................................................................................. 9
49 U.S.C. § 3102(b)(2) ..................................................................................... 9
Cal. Evid. Code § 1152 ................................................................................... 20
Civil Local Rule 7-4(a)(3) ................................................................................ 1
FLSA, 29 U.S.C. § 216(b) ............................................................... 1, 5, 7, 10 23
Fed. R. Evid. 408 ............................................................................................. 20

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR FACILITATED NOTICE**
**CASE NO. 03-01180 (SBA)**

iii

SanFrancisco/107670.2

Defendants submit this Opposition to Plaintiffs' Motion for Facilitated Notice etc. on file in this action.  Pursuant to Civil Local Rule 7-4(a)(3), the issues to be decided are (1) whether the Court should order facilitated notice to be given or instead whether such notice is not appropriate because plaintiffs have failed to show that this action should proceed as a collective action; and (2) if facilitated notice is allowed to be given, then what should the notice say and how should it be given.

Defendants base their Opposition on this Memorandum of Points and Authorities, on the Declarations ("Decl.") submitted herewith (of declarants Skinner, Owens, Konn, Willis, Pollak, Fagerlie, Hogel, Howerin, Jordan, Larsen, Watts, De Huff, Murray, Lamela, Easter, Grubba, Wrenn and Kelly), on the other papers in the record of this action, and on such further oral or written submission(s) as may be made in opposition to plaintiffs' motion for facilitated notice.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' motion for facilitated notice should be denied.  Plaintiffs fail to meet their burden of establishing that the prospective facilitated notice recipients are similarly situated as to the key issue in this case – whether Cintas' salaried sales and service drivers (hereafter collectively "SSRs")[1] are exempt from the Fair Labor Standards Act's ("FLSA") overtime requirements.  Plaintiffs' motion relies on a handful of declarations and a selection of repetitive job postings and descriptions to argue there are similar circumstances for what they acknowledge are over 9,000 individuals, employed at hundreds of locations, on thousands of routes, in most of the 50 states, in four different divisions, across a three-year span.  Moreover, plaintiffs ask this Court to decide that all the SSRs are similarly situated based on a single FLSA exemption.

At least three FLSA exemptions apply in whole or in part to the SSRs identified by Plaintiffs – (1) Motor Carrier Act, (2) outside sales, and (3) managerial.  The facts and circumstances regarding these exemptions will vary widely within and among Cintas' four

---

[1]    Plaintiffs' definition of "SSR" incorporates several job titles including Service Sales Representatives, Commission Route Salespersons, Commission Route Representatives, and Route Drivers.  "Route Drivers" is an outdated title that no longer describes the job function.  Some of the variation in titles stems from titles left over from business acquisitions.  Konn Decl. ¶ 4.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR FACILITATED NOTICE**
**CASE NO. 03-01180 (SBA)**

1

SanFrancisco/107670.2

1    divisions, 42 states, 301 locations, about 5600 routes[2] and within various job descriptions.

2           To decide the claims at issue, a highly individualized factual and legal analysis will have to

3    be made as to each individual SSR as to each of the following factors – <u>any one of which renders</u>

4    <u>an SSR exempt from overtime</u>:  (1) whether the individual SSR is in fact regulated by the

5    Department of Transportation due to the size of the individual SSR's truck (about 22% of the

6    current SSRs are in fact so regulated); (2) whether the individual SSR crosses state lines in their

7    work (at least 18% do); (3) whether the individual SSR is subject to crossing state lines in their

8    work (at least 64% are); (4) whether at least a portion of the goods in the individual SSR's truck or

9    van are in the flow of interstate commerce (the United States Supreme Court has held that less that

10   4% is enough, and Cintas SSRs' percentage is far more than that); (5) whether the individual

11   SSR's circumstances meet the outside sales exception (clearly there will a significant number who

12   do) and (6) whether the individual SSR is within the "managerial" exemption (a significant

13   number are).   A high percentage of SSRs will be exempt under one or more of the FLSA

14   exemptions as discussed below.  Certainly, the SSRs are not similarly situated.

15          It is beyond reasonable dispute that a highly individualized factual and legal analysis

16   would have to be done as to each SSR.  This means that this case is not appropriate for proceeding

17   as a collective action.  Plaintiffs' hoped-for litigation would be an unmanageable morass that

18   could not be maintained as a workable collective action.  Plaintiffs' motion should be denied.

19   **II.     FACTUAL BACKGROUND**

20          **A.     CINTAS OPERATES FOUR SPECIALIZED DIVISIONS.**

21          Cintas operates a nationwide business that manufactures, sells, and rents uniforms and

22   apparel as well as many and diverse other business products and services to customers throughout

23   the United States and Canada.  Cintas has four primary divisions in which SSRs worked during the

24   relevant period: Uniform Rental, Facility Services, Cleanroom and First Aid & Safety.  Hogel

25   Decl. ¶ 3, Ex. B.

26          The Uniform Rental Division provides uniform rental services and sells clothing and other

27   
28   ――――――――――――――――
     [2]   Murray Decl. ¶ 2, Ex. A.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)**                    2                    SanFrancisco/107670.2

products directly to Cintas' business customers and individual uniform wearers. Hogel Decl. ¶ 3, Ex. B. The Facility Services Division rents products such as entrance mats and anti-fatigue mats. Facility Services also sells products such as hand soaps, paper towels, hand cleaners, and air fresheners. Hogel Decl. ¶ 3, Ex. B. The Cleanroom Division provides specialized uniform rental services and sells sterile and non-sterile reusable and disposable products such as face veils and vacuum cleaners. Howerin Decl. ¶ 2. The First Aid & Safety Division sells products ranging from bandages and aspirin to emergency oxygen and defibrillators. Pollak Decl. ¶¶ 2-4.

**B.     SSRs ARE CINTAS' PRIMARY SALES AGENT.**

Regardless of the division and the numerous other differences between them, SSRs are the primary agent for Cintas to increase sales and maintain business from existing customers. Cintas' mission is to "exceed our customers' expectations" every day. Hogel Decl. ¶ 4, Ex. C. Recognizing that customer service is essential to achieving that mission and to making future sales, it is no surprise Cintas advertises for SSRs with strong customer service skills, includes "customer service" in its description of the SSR position, and states SSRs "deliver the products, services, and enthusiasm for which we are recognized." Hogel Decl. ¶ 5, Ex. D. All of this is consistent with individuals performing direct outside sales.

Plaintiffs themselves cite to general descriptions of the position that include the qualification of an "interest in sales" and states "You are more than a driver, because the [SSR] delivers clean uniforms and mats . . . ***and sells additional products/services***." Motion at 5, 6 (emphasis added). The same postings referenced by Plaintiffs also state "Our fundamental training program is followed by advanced training in customer services and ***selling skills***." Hogel Decl. ¶¶ 5-6, Exs. D, E.

Sales training is a key component of the overall training for SSRs. For example, SSRs are trained in how to (1) sell by seeking renewals of customers' agreements; (2) overcome customer objections; (3) successfully make catalog sales; (4) build trust with customers; (5) identify customer needs; (6) link product benefits to those needs; and (7) ask for the order.[3] SSRs are

---

[3]     Grubba Decl. ¶ 4 ("[T]he service trainer taught me that selling products to our customers from the Cintas catalog is a given part of an SSR's job. In fact, Cintas encourages SSRs to 'grow their routes'

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)**                    3                    SanFrancisco/107670.2

trained in increasing business through "adds" (additions of products or services), replacing "stops" (decreases in products or services) with "adds," and obtaining reasonable price increases.  Once trained, SSRs are evaluated and their compensation takes into consideration factors such as the number of renewals, average catalog sales, and increases in business.  Hogel Decl. ¶ 7, Ex. F.

Sales training does not stop after orientation.  Group meetings are held every other week to focus on fundamental selling skills, to hear others' success stories, and to review current promotions to be discussed with customers.[4]  Contests are also used to encourage sales.[5]

SSRs are involved with more than just their primary division.  For instance, an SSR in the Uniform Rental Division may simultaneously be recommending anti-shock mats and safety equipment – products offered by the Facility Services and First Aid & Safety Divisions, respectively.  Cross-selling products and services across Cintas' spectrum of offerings is an important way SSRs increase sales.[6]  Another way SSRs generate new sales is by going beyond selling to the businesses on their route and selling directly to employees at these businesses.[7]  Even when calling on a national account where the SSR is less directly involved in the contract, SSRs are selling items to individuals.[8]

Some SSRs receive more specialized training to facilitate sales.  For example, First Aid & Safety SSRs all receive first aid training.  Pollak Decl. ¶ 2.  Their training also includes familiarization with workplace safety standards so they can identify hazards and recommend products and services to address them.  Pollak Decl. ¶ 2.  Still other First Aid & Safety SSRs

---

through catalog sales and promotions"); Lamela Decl. ¶ 3 (trainer taught him to incorporate customer needs in each visit to add-on sales); De Huff Decl. ¶ 3 (learned how to present catalog to customer).

[4]   Lamela Decl. ¶ 27 (goes to group meetings on Tuesdays); Easter Decl. ¶ 3 (attends bi-weekly sales training, some of which involve role-playing).

[5]   Lamela Decl. ¶ 30 (participated in contest with car and vacation packages as prizes); Fagerlie Decl. ¶ 12 (contest for bulk adds where team with highest additions won $500 per member).

[6]   Watts Decl. ¶ 7 (has added rental soap, roll towels, and mats to uniform rental account).

[7]   Watts Decl. ¶¶ 19, 21 (he focuses on the purchasing agent if the company makes a lot of purchases as a company but if the company does not do this he puts up flyers and focuses his sales efforts on the people who wear the uniforms; at his biggest stop individual employees "make a lot of money and they love buying stuff" from him).

[8]   Fagerlie Decl. ¶ 17 (sells items to employees of national accounts for their personal use).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)                    4                    SanFrancisco/107670.2

1  receive special training so they are certified to teach CPR to customers' employees or demonstrate

2  how to use Automatic Emergency Defibrillators sold by Cintas. Pollak Decl. ¶¶ 4-5.

3  ### C. INDIVIDUAL ROUTES AND OTHER CIRCUMSTANCES ALSO VARY.

4  Routes also vary significantly. For example, many SSRs operate large vans. But about

5  1260 SSRs, or almost 22% of the current workforce, are subject to United States Department of

6  Transportation ("DOT") log-keeping requirements because they operate trucks over 10,000

7  pounds. Routes also vary by destination. While many routes are intrastate, at least 1005 routes

8  originating from 147 Rental, Facility Services and Cleanroom Locations cross at least one state

9  line. Murray Decl. ¶ 2, Ex. A. Some SSRs make primarily local stops while others drive great

10  distances.[9] Routes also involve different mixes of rented and sold products.

11  Plaintiffs' sweeping generalizations about SSRs and Cintas are just that; there is not a

12  uniform set of facts upon which this Court can consider the FLSA claim as a collective action for

13  the more than 9,000 SSRs. This Court would be required to consider each SSR individually -- and

14  in painstaking detail -- in making determinations about each SSR's exempt status.

15  ## III. PLAINTIFFS ARE NOT "SIMILARLY SITUATED."

16  ### A. THE FLSA'S "SIMILARLY SITUATED" REQUIREMENT

17  To proceed as a collective action, the plaintiffs bear the burden to show that the other

18  employees on whose behalf they seek to proceed are "similarly situated" to them under Section

19  16(b) of the FLSA, 29 U.S.C. § 216(b), with respect to the legal and factual issues that will

20  determine the case. *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark.

21  2003). Plaintiffs have not met that burden.

22  Although this Court has power to authorize sending notice to potential opt-in plaintiffs

23  under § 216(b), this power is not mandatory but "must . . . be exercised with discretion and only in

24  appropriate cases." *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361 (M.D. Ala. 1999);

25  *Freeman*, 256 F. Supp. 2d at 944. The decision to approve a collective action should be made

26

27  [9]  *Compare* Lamela Decl. ¶ 7 (drives 400 to 800 miles up to 20 miles from Cintas plant) *with* Owens

28  Decl. ¶ 9, 18 (drives about 1800 miles each week through 5 states; co-worker drives across three states) *with* De Huff Decl. ¶ 10 (one SSR does not drive more than 30 miles in a week).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)**

5

SanFrancisco/107670.2

based on the orderly and expeditious resolution of cases. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172-73 (1989) ("courts traditionally have exercised considerable authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") Trial courts should not be passive or unduly deferential to a request for court-sponsored notice, because "[a] trial court can better manage a major [collective] action if it ascertains the contours of the action at the outset." *Hoffmann-La Roche Inc.*, 493 U.S. at 171-72. A court further "has a 'responsibility to avoid the "stirring up" of litigation through unwarranted solicitation.'" *Freeman*, 256 F. Supp. 2d at 944; *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264 (D. Minn. 1991).

Although courts have applied various formulations in determining whether plaintiffs are similarly situated, the common threads of judicial efficiency and manageability of the litigation run through all formulations. As one court explained earlier this year:

> [I]t is incumbent upon Plaintiff to propose a class that is sufficiently defined and manageable from the outset. It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.

*Freeman*, 256 F. Supp. 2d at 945.

Courts have made clear that collective actions are inappropriate where fact-intensive inquiries are required into each potential plaintiff's situation. *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) (rejecting proposed collective action where the "exempt or non-exempt status of potentially hundreds of employees would need to be determined on . . . an employee-by-employee basis"). The court noted plaintiffs' job responsibilities varied substantially even among those with the same job title. *Id.* at n.8. "Similarly-situated" does not mean identical, but does mean the individuals had more in common than sharing an employer and a payroll category.

A fact-intensive inquiry into an employee's specific circumstances needed to establish a FLSA exemption precludes a collective action. *Clausman v. Nortel Networks, Inc.*, No. IP 02-

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

6

SanFrancisco/107670.2

0400-C-M/S, 2003 U.S. Dist. LEXIS 11501 (S.D. Ind. May 1, 2003).[10]  The *Clausman* court denied a salesperson's motion to facilitate notice, stating "liability to each plaintiff will depend on whether that plaintiff was correctly classified as an 'outside salesman,' [and] the Court will be required to make a fact-intensive inquiry into each potential plaintiff's employment situation." 2003 U.S. Dist. LEXIS 11501 at *9-10.[11]  This Court is likewise being called upon by Plaintiffs to make individual fact-intensive inquiries regarding each SSR in a large and diverse group.

      In some of the cases cited by plaintiffs, the courts glossed over manageability concerns and proceeded to allow facilitated notice, suggesting that "decertification" later was a cure.[12] Decertification is indeed the ultimate result in many facilitated notice cases after the court realizes the monster it has allowed plaintiffs' counsel to create.  For instance, the court decertified a § 216(b) action in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987),[13] concluding, "serious questions arise concerning the fairness, manageability, and meaningfulness of 1325 separate jury trials under the guise of a class action before a single jury." *Id.* at 370-71.  While *Lusardi* involved a claim of age discrimination also subject to the § 216(b) procedures, these same

---

[10]   *See e.g.*, *Freeman*, 256 F. Supp. 2d at 945 (appropriate for court to inquire into differences in duties and responsibilities of employees even at early stage; material differences precluded collective action); *Mike v. Safeco Ins. Co.*, No. 3:02-CV2239 (DJS), 2003 WL 21758405 (D. Conn. July 15, 2003) proof related to exemptions specific to individual despite common job descriptions, no common thread binding proposed class; court would have to apply FLSA regulations to daily tasks of each employee).  *Dean v. Priceline.com*, No. D:00CV1273 (DJS), 2001 U.S. Dist. LEXIS 24982 (D. Conn. June 5, 2001) (no collective action where "similarly situated" must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue is whether each employee was properly classified as exempt) (citing *Morisky*).

[11]   Even in the case cited by plaintiffs, *Garner v. G.D. Searle Pharmaceuticals & Co.*, 802 F. Supp. 418 (M.D. Ala. 1991), the court authorized notice only after first recognizing (a) that the individual plaintiffs had presented a *prima facie* case, and (b) that the identified similarly situated individuals could make out a *prima facie* case. *Id.* at 420-22.

[12]   Additionally, some of these other cases involved a much more limited group of plaintiffs.  *E.g.*, *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660 (E.D. Pa. 2001) (proposed plaintiffs all production employees at one facility); *Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 U.S. Dist. LEXIS 13354 (D. Or. Aug. 24, 2001) (clean room workers at one facility); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 309 (S.D.N.Y. 1998) (15 restaurants in single geographical region allegedly overseen by same individual).  Others did not involve exemptions but instead involved issues less likely to turn on an individual's duties.  *E.g.*, *Camper v. Home Quality Mgmt.*, 200 F.R.D. 516 (D. Md. 2000) (policies requiring lunch deduction and approval for overtime; motion granted only as to one facility).

[13]   *Appeal dismissed, Mandamus granted, Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988), *vacated in part, modified in part, and remanded, Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D. N.J. 1988), *aff'd in part, appeal dismissed, Lusardi v. Xerox Corp.*, 975 F.2d 964 (3d Cir. 1992).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)**

7

SanFrancisco/107670.2

principles are equally applicable to FLSA actions.[14]

Decertification later, however, does not remedy the immense amount of time and resources expended by the court and parties during the notice process and in the litigation proceedings after it until decertification.  Nor does decertification cure the confusion among individuals who opt-in only to have the case later decertified.  The costly and futile notice proceedings and subsequent litigation activity in decertified cases could have been avoided if those courts had given greater consideration to issues apparent from the outset:  the plaintiff-specific nature of the FLSA claims and defenses and the difficulties posed by large multi-claim, multi-state actions.  In fact, the recent trend has been for courts such as those in *Freeman*, *Mike*, and *Clausman* to recognize up front the unworkable nature of large collective actions especially involving multiple FLSA exemptions.

### B.   THE FACTORS RELEVANT TO THE MOTOR CARRIER ACT EXEMPTION REQUIRE A HIGHLY INDIVIDUALIZED FACTUAL ANALYSIS AS TO EACH SSR.

Plaintiff's motion for facilitated notice fails to address the Motor Carrier Act exemption ("MCA exemption").  This exemption applies to every single SSR in one or more ways. Assessment of exactly how the exemption applies to each SSR involves a highly individualized application of the law's various alternative tests to the particular facts about the SSR, including facts about each SSR, each SSR's route, each SSR's Location, the SSR's vehicle, and exactly what each SSR's vehicle carries.  Accordingly, for this reason alone, this case is not suitable for collective action.

The MCA exemption applies to employees who are subject to the Secretary of Transportation's (the "Secretary") "power to establish qualifications and maximum hours of service" pursuant to the Motor Carrier Act.  29 U.S.C. § 213(b)(1).  Pursuant to the Motor Carrier Act, the Secretary "may prescribe requirements for qualifications and maximum hours of service

---

[14]   *See e.g., Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) (defenses highly individualized and judicial inefficiencies associated with resolving 23 distinct cases outweighed potential benefits); *Bayles v. American Med. Response of Colorado, Inc.*, 950 F. Supp. 1053 (D. Colo. 1996) (decertification of 80-person case "fraught" with issues requiring individual proof); *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995) (decertification ordered because of vast geographical reach of class and variations in employment circumstances).

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

8

SanFrancisco/107670.2

1   of employees of . . . a motor private carrier, when needed to promote safety of operation."  49

2   U.S.C. § 3102(b)(2).  A "motor private carrier" is defined as a person transporting property by

3   motor vehicle for sale, rent, or to otherwise further a commercial enterprise.  49 U.S.C.

4   § 13102(13).  Cintas is a "motor private carrier" because it transports property (uniforms, catalog

5   goods, etc.) for sale, rent, or otherwise to further its business.

6        For purposes of the MCA exemption, the Secretary need not actually regulate a driver or

7   the employer for the driver to be exempt.  It is sufficient that the Secretary has the power to

8   exercise regulatory authority over the driver or the employer even if the Secretary elects not to do

9   so.  *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir. 1997) (Secretary's decision not to

10  exercise regulatory authority over carrier does not exempt it from his jurisdiction).  Thus, as here,

11  the exemption would apply both (a) to individuals operating vehicles with a gross weight

12  exceeding 10,000 pounds for whom the Secretary has promulgated specific regulations as well as

13  (b) to individuals operating smaller vehicles for whom the Secretary has not yet elected to exercise

14  regulatory authority.

15       The Secretary has jurisdiction, and thus regulatory authority, over employees transporting

16  goods traveling in interstate commerce where the employees are engaging in activities directly

17  affecting the safety of motor vehicles.  49 U.S.C. § 13501; 29 C.F.R. § 782.2.  This "interstate

18  commerce" requirement may be satisfied in one of two ways:  (1) the carrier is transporting goods

19  across state lines; or (2) the carrier is not transporting goods across state lines but their

20  transportation is part of a "practical continuity of movement" in the flow of interstate commerce.

21  *Klitzke*, 110 F.3d at 1469.  *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002).

22       Only a minimal level of interstate activity is required to satisfy the MCA exemption.  "It is

23  the *character* of the activities rather than the proportion of either the employee's time or of his

24  activities that determines the actual need for the [Secretary's] power . . ."  *Peraro ex rel. Castro v.*

25  *Chemlawn Services Corp.*, 692 F. Supp. 109, 114 (D. Conn. 1988); *Hutson v. Rent-A-Center, Inc.*,

26  209 F. Supp. 2d 1353, 1359 (M.D. Ga. 2001) (a "minor involvement" in interstate commerce as a

27  regular part of employee's duties subjects employee to DOT jurisdiction; manager making only

28  two deliveries per week, some intrastate, exempt).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

9

SanFrancisco/107670.2

The United States Supreme Court has held for nearly sixty years that as little as 3.65% of a driver's time spent driving goods that are in interstate commerce is sufficient to satisfy the MCA exemption. *Morris v. McComb*, 332 U.S. 422, 431 (1947). Other courts have rejected arguments that an employee's interstate duties were so insubstantial as to be *de minimis*. *Turk v. Buffets, Inc.*, 940 F. Supp. 1255 (N.D. Ill. 1996) (plaintiffs spending more than 1% of time in interstate driving exempt).[15] Regulations to the FLSA further make it clear the exemption includes partial-duty drivers such as "driver-salesmen" who focus on selling goods. 29 U.S.C. § 782.3(a).

Cintas SSRs qualify for the MCA exemption under one or more of the following four inquiries. Qualifying under any one of the four is sufficient and establishes the SSR as exempt. Each inquiry is highly individualized, requiring consideration of differences between SSRs, vehicles, routes, locations, states and divisions.

### 1.    The "Crossing" Exemption

SSRs who actually cross state lines to make deliveries on their routes satisfy the first interstate commerce test and are accordingly subject to the Secretary's jurisdiction and are exempt. As previously noted, as of March 2003, 1005 routes (or 18%) of all Uniform Rental, Facility Services and Cleanroom routes involved deliveries to out-of-state customers. Murray Decl. ¶ 2, Ex. A. The many hundreds of SSRs operating those routes are not similarly situated for § 216(b) purposes to SSRs who do not cross state lines.

### 2.    The "Subject-to Crossing" Exemption

Given the very low level of interstate commerce activity needed to bring a driver within the MCA exemption, individual SSRs subject to driving in interstate commerce even if not regularly assigned to do so are also covered under the Secretary's authority. In the United States Supreme Court's opinion in *Morris*, for instance, each driver did not spend 4% of his day making interstate trips. Rather, in the company's normal business operation, the interstate trips were

---

[15] *See also Friedrich v. U.S. Computer Services*, 974 F.2d 409, 417 (3d Cir. 1992) (MCA exemption merely requires transport of property; it does not require shipping large amounts of property); *Sinclair v. Beacon Gasoline Co.*, 447 F. Supp. 5, 11 (W.D. La. 1976); *Brennan v. Schwerman Trucking Co.*, 540 F.2d 1200, 1203 n.9 (4th Cir. 1976) (exemption applied even in years where employer only had 1.2% interstate business).

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

10

SanFrancisco/107670.2

distributed throughout the year and shared indiscriminately by the drivers. *Morris*, 332 U.S. at 422. Likewise, in *Chao v. First Class Coach Co.*, 214 F. Supp. 2d 1263 (M.D. Fla. 2001), drivers were exempt where they were expected to be able and available to drive all routes and where any driver could be assigned an interstate route at any time. *Id.* at 1276.

In Cintas' case, this again requires a very fact-specific analysis to determine as to each SSR whether that SSR qualifies for the "Subject-to-Crossing" exemption. For instance, route skippers, Service Training Coordinators, and other SSRs may be called upon to fill in on a route with state crossings or the Location manager might periodically reassign customers to other drivers. De Huff Decl. ¶ 3; Konn Decl. ¶ 8. Under such circumstances, all the SSRs at such Locations would be subject to being assigned a state line crossing and accordingly exempt.

The previously noted 1005 routes crossing state lines originate from 147 out of the 243 Uniform Rental, Facility Services and Cleanroom Locations. Murray Decl. ¶ 2, Ex. A. Those locations account for approximately 3280 (or 64%) of those Divisions' total routes. Murray Decl. ¶ 2, Ex. A. Thus, about 3280 (or 64%) of Cintas' current routes are at "subject to crossing" Locations, and all the SSRs there are exempt under that MCA analysis.

This data shows that almost two-thirds of Cintas' SSRs will be exempt under this MCA exemption analysis alone. This again makes it clear that this Court should not allow this case to proceed as a collective action with facilitated notice.

### 3.    The "Goods-In-Commerce" Exemption

Under another interstate commerce test that independently meets the MCA exemption, a driver may have an entirely intrastate route, but is still be subject to the Secretary's jurisdiction and therefore exempt under the MCA exemption if (as the Ninth Circuit explains) there:

> is a practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders or contracts are being filled. . . . Whether transportation is interstate or intrastate is determined by the essential character of the commerce, *manifested by [the] shipper's fixed and persisting transportation intent at the time of the shipment*, as is ascertained from all of the facts and circumstances surrounding the transportation.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR FACILITATED NOTICE**
**CASE NO. 03-01180 (SBA)**

11

SanFrancisco/107670.2

*Klitzke*, 110 F.3d at 1470 (emphasis in original).[16]

A "fixed and persisting" interstate intent exists where the goods are intended for specific out-of-state customers at the time of shipment. *Id.* at 1469; *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 673 (10th Cir. 1993). A temporary pause in a warehouse does not mean goods are no longer in commerce but instead there is a practical continuity of movement until the goods reach the customer for whom they are intended. *Klitzke*, 110 F.3d at 1470 (citing *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568-69 (1943)).[17] Moreover, shipments made pursuant to requirements or supply contracts to customers who have agreed to stock a specific amount of a particular product do not lose their interstate character where they pass through a local warehouse for a short period of time. *Foxworthy*, 997 F.2d at 673-74 (amount sent interstate based upon local driver's estimate of customer's historic sales were delivered in interstate commerce); *Shew v. Southland Corp.*, 370 F.2d 376 (5th Cir. 1966) (driver exempt from FLSA where product ordered from out-of-state in anticipation of specific customer needs).

In *Klitzke*, for instance, the Ninth Circuit held that a uniform delivery driver working for a Cintas competitor was exempt even though the driver's route was entirely within the State of Oregon. The driver nevertheless operated in interstate commerce and was subject to DOT jurisdiction because the goods the driver delivered were part of a continuous stream of interstate commerce. The uniform company placed uniform orders with out-of-state vendors. The vendors shipped the goods to the uniform company by common carrier. Once the shipments were received, the goods were unloaded, cataloged, relabeled, and distributed by the uniform company to the ultimate customer within approximately two days. *Klitzke*, 110 F.3d at 1469.

Cintas engages in a virtually identical business. As to uniform rentals, Cintas

---

[16] *See also Hutson*, 209 F. Supp. 2d at 1535 (plaintiff exempt not only because he made trips crossing state lines but on independent grounds that he made intrastate deliveries of specially ordered goods from out-of-state); *Barron v. Lee Enter.* 183 F. Supp. 2d 1077 (C.D. Ill. 2002) (intrastate drivers delivering newspapers containing dated out-of-state supplements from out-of-state advertisers exempt); *Webb v. Athens Newspapers, Inc.*, 999 F. Supp. 1464 (M.D. Ga. 1998) (same).

[17] *See also Martin v. Airborne Express*, 16 F. Supp. 2d 623 (E.D.N.C. 1996) (mere sorting and delivering goods to predetermined destinations is not "processing" the goods so as to break the continuity of interstate commerce), *aff'd without op.*, 155 F.3d 559 (4th Cir. 1998).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

12

SanFrancisco/107670.2

manufactures uniforms and ships them to Regional Distribution Centers in Alabama, Kentucky, Nevada, Ohio and Pennsylvania.  Larsen Decl. ¶ 4.  The uniforms remain at those Distribution Centers until a Cintas Location has a specific customer order.  The uniform is individualized for that specific customer right down to the customer company's logo and uniform wearer's name.  The individualized uniform is shipped, generally by common carrier, to the Location and then delivered to the customer by the SSR.  Konn Decl. ¶ 11; Larsen Decl. ¶ 5.

Over 27 million uniform units were shipped and delivered in that manner during fiscal year 2003.  Larsen Decl. ¶ 3.  The overwhelming majority of those were shipped in interstate commerce because the recipient Location was in a different state than the Distribution Center.  Larsen Decl. ¶ 4.  Drivers also may deliver special order items that are shipped from out-of-state.[18]  Of course, some small fraction of Locations are in the same state as their Distribution Center and in those instances, it may be appropriate to look more closely at the specific percentages of goods shipped and the individual invoices of a particular SSR to determine whether the SSR engaged in interstate commerce.

An example illustrates this subpart of the many an particularized inquiries which would be necessary if this case were allowed to go forward as a collective action.  Assuming an SSR at a specific Cintas Location in Alabama, Kentucky, Nevada, Ohio or Pennsylvania (where the Regional Distribution Centers are located) did not meet the interstate test because of the local intrastate distribution of uniforms, or because he does not distribute uniforms, the SSR might still qualify to the extent (for example) that he delivers industrial mats which are manufactured in and shipped from Georgia, soap and paper products from North Carolina, and air fresheners from Louisiana.  Konn Decl. ¶ 13.[19]

---

[18]   Easter Decl. ¶ 37 (three out of four days per week he delivers special order items such as hats, boots, and jackets shipped in from out-of-state); Pollak Decl. ¶¶ 6-7, Ex. A.

[19] Cintas' mat supplier is located in Georgia  --  96.4% of Cintas' mat revenue was generated from mats shipped outside Georgia, with one-third of mats being specially ordered with customer logos.  Likewise, 97.4% of soap products are shipped from North Carolina out of state, and 98.7% of air freshener products are shipped from Louisiana out of state.  Cintas purchases 70% of its paper products from North Carolina and 98.8% of these products are shipped out of state.  Shipment figures for these products include shipments for requirement contracts and special orders in addition to replenishing inventory.  Jordan Decl. ¶¶ 3-6.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

13

SanFrancisco/107670.2

Turning to the First Aid & Safety Division, at least 12.6% of the revenues there are generated by SSRs are attributable to goods in interstate commerce – that is, items ordered and shipped from an out-of-state vendor for a specific customer, delivered upon receipt by an SSR. Pollak Decl. ¶¶ 6-7.  Again, it is theoretically possible that some First Aid & Safety SSR in some location did not deliver any goods meeting this commerce test, but such an inquiry would require careful analysis of all the individual invoices during the multiyear period in question.  Plainly, this is a much more particularized inquiry than Plaintiffs' ham-fisted hoped-for collective action would allow.

### 4.      The "Logged" Exemption.

Finally, of course, individuals who actually are subject to DOT regulation are unquestionably exempt under the MCA exemption.  *Reich v. American Driver Serv., Inc.,* 33 F.3d 1153, 1155 (9th Cir. 1994) ("a motor carrier cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation.") (cited in *Klitzke*, 110 F.3d at 1468).  Out of Cintas' current workforce of about 5786 SSRs, 1260 (about 22%) are currently required to comply with DOT regulations because they operate vehicles with an average gross weight in excess of 10,000 pounds in interstate commerce.  Skinner Decl. ¶¶ 2-4, Ex. A; Howerin Decl. ¶ 4. At least an additional 86 were formerly required to do so and thus may have been exempt during some part of the relevant period.  Skinner Decl. ¶ 4, Ex. B.  These SSRs are clearly exempt and clearly not similarly situated to other SSRs.

### C.      THE FACTORS RELEVANT TO THE OUTSIDE SALES EXEMPTION REQUIRE AN INDIVIDUALIZED FACTUAL ANALYSIS.

Just as with the analysis required under the MCA exemption, the outside sales exemption turns on factors specific to each individual SSR.  The FLSA exempts from its overtime requirements "any employee employed  . . . in the capacity of outside salesman."  29 U.S.C. § 213(a)(1).  Regulations to the FLSA further define an outside salesperson as:

any employee:

(a)  who is employed for the purpose of and who is customarily and
regularly engaged away from his employer's place or places of business in:

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

14

SanFrancisco/107670.2

(1)     making sales within the meaning of [§ 213(a)(1)]; or

(2)     obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b)  Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer:  *provided, that work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.*

29 C.F.R. § 541.500 (emphasis added).  The regulations provide that driver salespersons are exempt in precisely the circumstances here – where the driver salesperson calls on established customers, delivering goods in prearranged amounts and persuading these customers to accept delivery of increased amounts of goods or of new products, as long as such solicitation is frequent and regular.  29 C.F.R. § 541.505(b), 541.505(f)(2).  Work incidental to these sales such as loading the truck, delivering the products sold, and collecting payment is then characterized as exempt work.  29 C.F.R. § 541.505(b).

The key inquiry is whether the salesperson actually consummates the sale of products at a particular location.  *Ackerman v. Coca-Cola Enterprises, Inc.*, 179 F.3d 1260, 1265 (10th Cir. 1999).  "If that employee consummates [sales] but also performs a variety of other tasks intended to promote the company's products but not directly involving sales, those tasks may still be considered 'incidental to and in conjunction with'…sales" *regardless of the amount of time spent performing them.  Id.* at 1265.  In *Ackerman*, for example, the salespersons spent from 20 to 65 percent of their time performing merchandising work such as determining inventory and inspecting displays.  Because the salespersons engaged in sales activities and took orders at the stores they visited, <u>all</u> of their other work was incidental to those sales and the salespersons were exempt.  *Id.* at 1266.

The regulations state that "there is great variation in the nature and extent of sales activity . . . among drivers engaged in the same industry in delivering products to different types

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS' MOTION FOR FACILITATED NOTICE CASE NO. 03-01180 (SBA)**                    15                    SanFrancisco/107670.2

of customers." 29 C.F.R. § 541.505(b).[20] Thus, the *Clausman* court denied a motion to facilitate notice, stating, "where liability to each plaintiff will depend on whether that plaintiff was correctly classified as an 'outside salesman,' the Court will be required to make a fact-intensive inquiry into each potential plaintiff's employment situation." 2003 U.S. Dist. LEXIS 11501 at *9-10.

Generalized descriptions of a job do not suffice in determining whether an employee is exempt. "*[A]ll* facts bearing on the content of the job as a whole must be scrutinized to determine the exemption." 29 C.F.R. § 541.505(a) (emphasis added).

Plaintiffs misplace their heavy reliance on the generalized qualifications, and some of the job descriptions promulgated by Cintas, in support of plaintiffs' claim that they are similarly situated. This case would require this Court to focus on what each SSR (of some 9,000 current or former SSRs) actually did or does on a day-to-day basis, not on the contents of general job descriptions. Indeed, the very fact that some of the named Plaintiffs claim on many days they spend no time selling suggests they are not similarly situated to other SSRs. Successful SSRs make sales the focus of their day, and not surprisingly they spend more of their time selling.[21]

SSRs' descriptions of their activity further illustrate that the current plaintiffs are not similarly situated to others. For example, one SSR estimated he sold one customer $10,000 a year in various products, $5,000 in jackets to another customer, $8000-9,000 a year to another customer and was working on closing a $10,000 sale of golf shirts and accessories.[22] Fagerlie Decl. ¶ 22, 44. SSR Willis said, "[e]ach stop I go to, I try to figure out what their needs are, what

---

[20] What 29 C.F.R. §541.505(b) says is exactly what the situation is among the 9,000 current and former Cintas SSRs – "great variation in the nature and extent of sales activity…". *See* e.g., Declarations submitted herewith by numerous SSRs.

[21] SSRs are engaged in sales activity at a level at least comparable to that in *Ackerman*. Lamela Decl. ¶ 7 (spends 40% of time selling and over 80% of his time between selling and driving activity); Owens Decl. ¶ 8 (spends 20% of time selling, 60% driving, 20% in other activity); Grubba Decl. ¶ 6 (spends 40% of time selling, 10-15% driving, remainder in other activity); Easter Decl. ¶ 5 (spends one-third of time selling, one-third of time driving, and one-third of time on other activity); Wrenn Decl. ¶ 7 (spends 40% of time selling, 10% of time driving, and the rest on other activities).

[22] Fagerlie Decl. ¶ 44 ("[T]he $10,000 deal is the result of my efforts to personalize my customer relationships. In talking with the former Vice President of Sales at one of my customer locations, I learned that he likes to golf as much as I do so I started talking about Cintas' golf-oriented products. Although our connection was cut short when he left the company, I have developed a similar relationship with the new vice president, who also likes to golf. I am now working with him to work out the details of the sale.")

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

16

SanFrancisco/107670.2

their wants are, and how can I help them save money.  If I accomplish this goal, I also make our company money."  Willis Decl. ¶ 11.  He proudly described having one account less than a month and increasing the customer's order and persuading another customer to purchase Cintas' seat sanitizers.  Willis Decl. ¶¶ 18, 20.  SSR Owens described his job as follows:

> On the average customer call, I service the location, look for the contact to discuss any issues regarding inventory levels, additions, or deletions.  If the contact is not available, I call him or her to discuss any outstanding issues.  I consider taking care of the account to be a priority.  I talk with my contact about promotions and seek the authority to put up posters around the worksite to increase sales.  At each stop on my route I try to sell supplies, clean room products, catalog items, and other Cintas products to my customers.  I make a point of highlighting items I think my customers need, answer any questions they have about the products and explaining the ordering procedures.

Owens Decl. ¶¶ 7-8.

Still another SSR's account of his first contacts with new accounts illustrates that he considers himself a salesman:

> With new customers, I have a catalog in my hand as I walk through the door for the first time.  I let them know that I am mainly a salesman.  I let them know I'm going to be bugging them.  I try and prepare them for it from the start. . . .  I'll make sure that everything, all their clothes fit, they're happy with everything clotheswise, and then I'll start working on sales.

Watts Decl. ¶ 12.  Another Uniform Rental SSR said, "I try to sell something with everybody recognizing that not everybody is going to buy at the same time.  I try to make sure everybody knows Cintas' products, so that when they do need something, I'm able to cover it for them."  Easter Decl. ¶ 33.

The SSR job description focuses on sales.  "Responsibilities" are summarized as "***Sell*** and service customers by taking care of all customer needs."  The very first listed item in the SSR's Job Description for SSRs is Sales Growth, with several sales activities expected.  Even items listed under the Customer Service portion of the job description – developing relationships and counseling – facilitate sales.[23]  Hogel Decl. ¶ 8, Ex. G.

---

[23]   Owens Decl. ¶¶ 6-8 (important to follow-up with customers; highlights items he thinks customers need); Willis Decl. ¶ 8 (listens to customer's needs; after noticing account running out of towels talked to

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

17

SanFrancisco/107670.2

The listed functions are not the only sales functions in which SSRs engage.  SSRs make use of promotional materials and samples in efforts to generate sales.[24]  Some SSRs prepare their own promotional materials.[25]  Some SSRs make "cold calls" along their routes to develop new business.[26]  Each SSR's routes are essentially each SSR's business and each SSR can structure their routes any way they want to.  De Huff Decl. ¶ 7.

SSRs are exempt as outside salespersons because SSRs are hired for the purpose of making sales and are regularly engaged in sales activity.   Ultimately, however, the question of what each SSR does and whether that SSR is exempt can only be decided on an individualized basis.  Plaintiffs' characterization of their own sales activity as minimal is plainly distinct from the way many other SSRs (as exemplified by the SSR declarations submitted herewith) describe their job duties and Cintas' expectations.  Because the tasks SSRs perform vary based upon a host of factors, it is impossible to conclude SSRs are "similarly situated".  Plaintiffs' motion should be denied.

### D.     SOME OF THE SSRS INCLUDED IN THE PROPOSED COLLECTIVE ACTION ARE EXEMPT UNDER THE FLSA'S MANAGERIAL EXEMPTION, AS SUPERVISORS.

Some employees falling within plaintiffs' sweeping proposed class of "other persons performing a service and/or delivery function" are exempt under the FLSA's managerial

---

contact and sold additional towels); Watts Decl. ¶¶ 17, 27 (usually at customer for 1/2 hour talking to everyone, they sell food so he eats there; at other customer only discusses sale items customer needs so doesn't take advantage); Easter Decl. ¶ 4 (when gets to know customer can use humor he's been able to develop to show why product good for them); Lamela Decl. ¶¶ 10, 13 (when first started with customer they would not take safety glasses but was able to show contact that Cintas could save customer money so picked up safety glasses business; did same for another customer and obtained glove and safety glasses orders).

[24]   Willis Decl. ¶ 5 (allows mat customer to try out mops and mats; keeps extra samples in truck; if doesn't see contact, leaves notes about promotions); Grubba Decl. ¶ 24 (for new customers, will have embroidery made up with customer's logo and will sometimes put sample on shirt to demonstrate; many times impressed with initiative and will order from him).  Wrenn Decl. ¶ 6 (surprises new customers with samples containing the customer's logo); Fagerlie Decl. ¶¶ 8, 10, 12 (will leave mats or air fresheners at customer premises; customers usually like product 80% of the time and order it).

[25]   Fagerlie Decl. ¶ 8 (creates own powerpoint presentations on the computer to help decisionmakers at each company understand depth of product line); Wrenn Decl. ¶ 4 (creates own promotional materials and regularly sends birthday cards to client contacts).

[26]   Lamela Decl. ¶ 5 (feels empowered to grow his route by "cold calling" businesses to get new accounts).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

18

SanFrancisco/107670.2

exemption.  The primary function of these employees, called Service Training Coordinators ("STCs"), is to supervise a team of SSRs.  Konn Decl. ¶ 5.  STCs conduct the initial interviews of prospective SSRs and make hiring recommendations.  Konn Decl. ¶ 5.  This interview process may involve the STC taking the candidate on a route both so the candidate can observe the SSR duties and so the STC can evaluate the applicant in areas such as demeanor and interaction with customers.  Konn Decl. ¶ 5.

STCs' duties further include reviewing SSR timesheets, debriefing SSRs when the SSRs return from their routes and going through the SSRs' invoices with them.  Konn Decl. ¶¶ 7, 9.  They discuss customer service issues and other issues relating to the route with the SSR.  STCs also ride with SSRs in a training role.  STCs may suspend SSRs who violate Cintas policies and participate in drafting written warnings for poor performers.  Konn Decl. ¶ 10.  STCs also rearrange routes to cover holidays.  Konn Decl. ¶ 8.  Each STC's compensation is based in part on the performance of the particular SSRs reporting to them.  Konn Decl. ¶ 9.  Despite performing in all these managerial roles, the STCs nevertheless are within plaintiffs' proposed class definition because they will drive on occasion to fill in when absences are at a high level such as holidays.  Konn Decl. ¶ 8.

An employee is exempt under the FLSA's managerial exemption when the employee's primary duty is managing the enterprise or one of its subdivisions and who customarily and regularly directs the work of two or more other employees.  *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 (9th Cir. 2001); 29 C.F.R. § 541.1.  The STCs are responsible for supervising and training their group of STCs, and so the STCs meet the requirements for this exemption.

For all of the reasons discussed above in this memorandum, this case is not appropriate to proceed as a collective action.  In any event, plaintiffs have not met their burden on this motion.  Plaintiffs' motion seeking issuance of facilitated notice should be denied.

/ / /

/ / /

/ / /

/ / /

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)**

19

SanFrancisco/107670.2

**IV.    IN THE ALTERNATIVE, PLAINTIFFS' PROPOSED NOTICE AND PROPOSED DISTRIBUTION OF THE NOTICE IS INAPPROPRIATE.**

**A.    PLAINTIFFS' PROPOSED NOTICE IS INAPPROPRIATE AND INACCURATE.**

Even if notice were appropriate, plaintiffs' proposed Order is not.  Contrary to plaintiffs' contentions, the proposed Order is not "fair and accurate."   Cintas has instead proposed a more neutral, accurate, and simpler notice along the lines of that approved by a court in previous FLSA litigation. *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249 (M.D. Tenn. 1996).  The alternative notice and consent to sue form proposed by Cintas are attached hereto as Exhibits A and B.  They incorporate plaintiffs' proposed language where possible, but are modified to address the objections below as well as to significantly shorten the six dense pages of plaintiffs' proposed notice into more readable pages.

1.    First and foremost, plaintiffs' proposed notice improperly mentions the prior California state court settlement.  The $10 million reference is particularly inflammatory and inappropriate.  *See* Fed. R. Evid. 408; Cal. Evid. Code § 1152 *et seq*.  Reference to this prior settlement is highly prejudicial to defendants as it unfairly suggests any opt-ins to this litigation will also receive money.  It is misleading to potential plaintiffs as well, because California wage and hour law is unique from that of any other state, and the laws of another 41 states would be at issue if this case goes forward.

2.    Any notice should be sent with a court heading and should appear to be a document sent by authorization of the Court.  Plaintiffs' proposed format unduly highlights the information about plaintiffs' counsel, since this information is placed up front and then repeated later in the notice.

3.    References to "making a claim" and to a "class" in the Introduction are premature and misleading.  The Introduction should instead state that the employee may be similarly situated.  This Court may – or may not-- ultimately decide collective treatment is inappropriate.  The same is true with plaintiffs' proposed section "IV," which suggests an automatic right to join as a party plaintiff and bring a claim.  A more accurate (and less legalistic) description refers to the right to participate in the suit.

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

20

SanFrancisco/107670.2

4.     Plaintiffs should not be permitted to list the number of "Consent to Sue" notices received.  This number impermissibly suggests merit to the suit.  The only plaintiffs currently permitted to participate in the suit are those named in the Amended Complaint.

5.     A statement must be included, in fairness to Cintas, indicating that Cintas denies the allegations and stating the reason for the denial in a neutral manner.  Plaintiffs' proposed language that Cintas is "opposing" plaintiffs improperly suggests Cintas' opposition is wrongful.  This effect is magnified since the notice in its present form is designated as coming from Plaintiffs' attorneys.

6.     There is no need to refer to other claims to which the notice does not pertain.  This merely creates confusion -- particularly if other notices go out later.  The confusing nature of references to other claims is particularly evident in plaintiffs' proposed paragraph V, where both state and federal law claims are mentioned.

7.     Plaintiffs' proposed Consent to Sue improperly suggests in paragraph 3 the employee was entitled to overtime.  It should instead merely indicate that the employee was not paid overtime.  Salary is not relevant to the outside sales exemption, and so the statement about salary is unnecessary.  29 U.S.C. § 541.5.

8.     The Consent to Sue form should also have a space for a printed name and address to allow for identification of the individual if the signature is hard to read, and to allow for better identification as to former employees.  But under no circumstances should individuals' Social Security Numbers be required.

9.     Plaintiffs' proposed Order would require Cintas to post a notice at its hundreds of locations advertising the collective action.  Such a posted notice is unnecessary given that each current employee almost certainly has a current address on file and would receive a mailed notice.  The mailing alone will have a disruptive effect on Cintas' workplace.  Cintas should not be forced to call further attention to this litigation through a posting.  Posted legal notices in the workplace connote judicial findings of wrongdoing, such as in the NLRB context, and unjustly create an inference that plaintiffs' suit has already been successful.

10.     Plaintiffs' proposed Order makes Consent to Sue forms timely based upon the date

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)                    21                    SanFrancisco/107670.2

1   they are received by plaintiffs' Counsel.  The forms should only be timely based upon the date

2   they are filed with the Court.

3   **B.   THIS COURT SHOULD PERMIT CINTAS TO SEND ANY NOTICE TO BE SENT.**

4   Cintas, rather than plaintiffs, should send any notice that is issued.  Cintas has been the

5   focus of an intense joint union organizing campaign by the Union of Needletrades, Industrial &

6   Textile Employees ("UNITE") and the Teamsters.  Kelly Decl. ¶¶ 2-3, Exs. A, B.[27]  UNITE has

7   openly touted that it is behind this lawsuit, having already issued a letter addressed to Cintas SSRs

8   announcing its assistance in filing this suit and participating in media interviews about the suit.

9   Kelly Decl. ¶¶ 4-5, Exs. C, D.  UNITE is actively soliciting contact information from SSRs who

10  would "like to find out more about the wage and hour lawsuit against Cintas *or about how you*

11  *can become involved in UNITE*."  Kelly Decl. ¶ 5, Ex. D.

12  Plaintiffs' request for a machine readable list of employee names and addresses and –

13  outrageously – Social Security Numbers,[28] is not appropriate, and arises from a real motivating

14  force behind this suit.  UNITE and the Teamsters clearly intend to use any names and addresses

15  for their organizing drive.  An attorneys-eyes-only confidentiality agreement would be insufficient

16  protection for Cintas under the present circumstances, particularly because plaintiffs' counsel

17  currently represent these unions in other litigation.[29]

18

19  [27]   UNITE began the organizing effort in February 2003 and agreed with the Teamsters in June 2003 to
    conduct a joint organizing drive, with the Teamsters focusing on SSRs.  Kelly Decl. ¶ 3, Ex. B.

20  [28]   Plaintiffs can assert no legitimate need for Social Security Numbers.  This Court should take judicial
21  notice of the growing problem of identify theft and of the need for, and employees' desire to, restrict the
    distribution of Social Security Numbers as much as possible.  Even if provision of the Social Security
22  Numbers was ever allowed in some other case in the past, it is not appropriate here and now.  If this Court
    ultimately orders plaintiffs to send notices, Cintas is willing to take reasonable steps to assist in locating a
23  more current address for any notices returned by the post office.

24  [29]   The law firm of Altshuler, Berzon, Nussbaum, Rubin & Demain represent both UNITE and the
    Teamsters.  *Simo v. Union of Needletrades, Indus. & Textile Employees*, 316 F.3d 974 (9th Cir. 2003)
25  (Altshuler firm, as well as Michael Rubin, attorney of record in present case, listed as attorneys for
    UNITE); *Public Citizen v. Department of Transp.*, 316 F.3d 1002 (9th Cir. 2003) (Altshuler firm listed as
    counsel for Teamsters); *See also* Kelly Decl. ¶ 6, Ex. E).  The law firm of Milberg Weiss Bershad Hynes &
26  Lerach LLP either represent or have close ties with the Teamsters through representing the Teamsters'
    pension funds.  *Public Citizen*, 316 F.3d at 1002 (Milberg firm, as well as Albert H. Meyerhoff, attorney of
27  record in present case, listed as attorneys for all petitioners, which include Teamsters; *In re Clorox Co. Sec.
    Litig.*, 238 F. Supp. 2d 1139 (N.D. Cal. 2002)  (Milberg firm listed as representing Employers Teamsters
28  Local Nos. 175 and 505 Pension Trust Fund).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)

22

SanFrancisco/107670.2

1    Especially given the real danger of misuse on the plaintiffs' side, and certainly the

2    perception of same, the solution is to permit Cintas to send the notices.  Cintas is willing to

3    maintain records as to whom notice was sent and, if any dispute arises, provide these records to

4    the Court for *in camera* inspection.  Cintas is also willing to take any other steps this Court deems

5    reasonable so that it can send the notices and keep its employee data confidential until a given

6    employee opts-in.

7         An order permitting a defendant to send notice has precedent in the FLSA arena, and in the

8    Rule 23 context as well.  *De Asencio v. Tyson Foods, Inc.*, No. 00-CV-4294, 2002 U.S. Dist.

9    LEXIS 14413 (E.D. Pa. Aug. 6, 2002) (allowing defendant to send Rule 216(b) notice at its

10   request); *Fayne v. Baxter Healthcare Corp.*, No. 96-55287, 1997 U.S. App. LEXIS 21062 (9th

11   Cir.1997) (allowing defendant choice of either providing names or mailing the notice itself, and

12   providing redacted copies to plaintiffs).

13

14   **V.    CONCLUSION**

15        This Court should deny the motion for facilitated notice and not allow this case to proceed

16   as a collective action.  Otherwise, the result here will be an unworkable hydra of claims that

17   cannot be efficiently or effectively litigated as one action.  Plaintiffs' motion for facilitate notice

18   should be denied.  In the alternative, however, if this Court decides to permit notice, any notice

19   should be issued in the form submitted herewith by Cintas and should be sent by Cintas.

20        But clearly – as already shown in the papers in opposition to this motion, a significantly

21   high percentage of SSRs will be exempt under one or more of the FLSA exemptions discussed

22   above.  Whether or not plaintiffs so concede in their reply papers, it is beyond doubt that if this

23   case were allowed to proceed as a collective action, a highly individualized analysis of each of

24   some 9,000 SSRs' work will have to be made, including what truck or van each SSR drove, where

25   each SSR drove, where each SSR was subject to driving, what was in the trucks or vans each SSR

26   drove, what sales work each SSR did, what managerial work each SSR did, and all of the above

27   examined over each of the years at issue in this case.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)**                     23                     SanFrancisco/107670.2

1    This case is inappropriate for proceeding as a collective action.  Plaintiffs' motion for

2    facilitated notice should be denied.

3    Dated:  October 2, 2003                          Respectfully submitted,

4                                                     SQUIRE, SANDERS & DEMPSEY L.L.P.

5

6                                                     By: _____/S/_____
                                                                 Mark C. Dosker
7                                                     Attorneys for Defendants
                                                      CINTAS CORPORATION and
8                                                     PLAN ADMINISTRATOR FOR
                                                      THE CINTAS PARTNERS' PLAN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**DEFS' MEMO IN OPPOSITION TO PLAINTIFFS'
MOTION FOR FACILITATED NOTICE
CASE NO. 03-01180 (SBA)**

24                                          SanFrancisco/107670.2

1

2                                     Exhibit A

3

4       **[Insert Case Caption Heading]**

5       To:     All persons who have worked for Cintas Corporation as Service Sales Representatives,
               Commission Route Salesperson, Commission Route Sales Representatives, Route Drivers
6              and Other Persons Performing a Service and/or Delivery Function on a Non-hourly Basis
               ("Route Drivers")
7
8       Re:     Fair Labor Standards Act Lawsuit Filed Against Cintas Corporation

9       1.      INTRODUCTION

10              This Notice is to inform you about a collective action lawsuit in which the plaintiffs allege
               that you are "similarly situated" to the named plaintiffs, to advise you of how your rights
               may be affected by this suit, and to instruct you on the procedure for participating in this
11             suit, if you decide that it is appropriate and if you choose to do so.

12      2.      DESCRIPTION OF THE LAWSUIT

13              On March 19, 2003, fifteen (15) named individual plaintiffs filed a complaint in the United
               States District Court for the Northern District of California, in Oakland, California, against
14             Cintas Corporation ("Cintas").  On May 19, 2003, twenty (20) individual plaintiffs filed an
               amended complaint on behalf of themselves and all other past and present employees of
15             Cintas who have worked as Route Drivers.  The amended complaint alleges plaintiffs are
               entitled to overtime pay under the Fair Labor Standards Act.
16
               The lawsuit alleges Cintas has violated the Fair Labor Standards Act by failing to pay
17             Route Drivers overtime.  Plaintiffs allege they are entitled to recover unpaid overtime from
               March 19, 2000.  Plaintiffs also seek an additional equal amount as liquidated damages,
18             attorneys' fees and costs. This litigation is currently in the early pretrial stage of
               proceedings.
19
               Cintas has denied plaintiffs' allegations that plaintiffs are entitled to overtime pay under
20             the Fair Labor Standards Act, and instead maintains that the plaintiffs are exempt from the
               overtime provisions of the Fair Labor Standards Act.
21
        3.      COMPOSITION OF THE CLASS
22
               The named plaintiffs seek to sue on behalf of themselves and also on behalf of other
23             employees with whom they are similarly situated.  Specifically, the plaintiffs seek to sue
               on behalf of any and all persons who have worked for Cintas as Service Sales
24             Representatives, Commission Route Salesperson, Commission Route Sales
               Representatives, Route Drivers and Other Persons Performing a Service and/or Delivery
25             Function on a Non-hourly Basis.

26      4.      YOUR RIGHT TO PARTICIPATE IN THIS SUIT

27              If you fit the definition above, you may join this suit (that is, you may "opt in") by mailing
               the "Consent to Sue" to plaintiffs' counsel at the following address:

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**EXHIBIT A TO DEFS' MEMO IN OPPOSITION TO
PLAINTIFFS' MOTION FOR FACILITATED NOTICE**     1 of 3
**CASE NO. 03-01180 (SBA)**                                            SanFrancisco/107670.2

1    **[To be filled in later]**

2    so that plaintiffs' counsel receives your Consent to Sue on or before _____, 2003, so that it may be filed with the Clerk of the Federal Court in Oakland on or before _____,

3    2003.  If plaintiffs' counsel does not receive your Consent to Sue form on or before _____, 2003, you will not be allowed to participate in this lawsuit.

4
     If you file a Consent to Sue, your continued right to participate in this suit may depend
5    upon a later decision by the District Court that you and the plaintiffs are actually "similarly situated" under federal law.

6
     5.    EFFECT OF JOINING THIS SUIT
7
     If you choose to join in the suit, you will be bound by the judgment on any claim you may
8    have under the Fair Labor Standards Act, whether it is favorable or unfavorable.  While this suit is proceeding, you may be required to respond under oath to written questions,
9    testify in deposition and/or testify in court.

10   6.    NO LEGAL EFFECT IN NOT JOINING THIS SUIT

11   If you choose not to join this suit, you will not be affected by any judgment rendered in
     this case, whether favorable or unfavorable to the class.  If you choose not to join this
12   lawsuit, you are free to file your own lawsuit.

13   7.    NO RETALIATION PERMITTED

14   Federal law prohibits Cintas from discharging or in any other manner discriminating
     against you because you have exercised your rights under the Fair Labor Standards Act.
15
     8.    YOUR LEGAL REPRESENTATION IF YOU JOIN:
16
     If you choose to join this suit, your interests will be represented by the named plaintiffs
17   though their attorneys, as counsel for the class. Counsel for the class are:

18   Theodore J. Pintar
     Steven W. Pepich
19   MILBERG WEISS BERSHAD
       HYNES & LERACH LLP
20   401 B Street, Suite 1700
     San Diego, CA 92101
21   Telephone:  619-231-1058
     Fax 619-231-7423
22
     Michael Rubin
23   Scott A. Kronland
     ALTSHULER, BERZON, NUSSBAUM,
24     RUBIN & DEMAIN
     177 Post Street, Suite 300
25   San Francisco, CA 94108
     Telephone:  415-421-7151
26   Fax 415-362-8064

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**EXHIBIT A TO DEFS' MEMO IN OPPOSITION TO
PLAINTIFFS' MOTION FOR FACILITATED NOTICE     2 of 3
CASE NO. 03-01180 (SBA)**

SanFrancisco/107670.2

1    Theresa M. Traber
     Stefanie Kim Gluckman
2    TRABER & VOORHEES
     128 No. Fair Oaks Avenue, Suite 204
3    Pasadena, CA 91103
     Telephone:  626-585-9611
4    Fax 626-577-7079

5

6    9.    COUNSEL FOR CINTAS:

7          The attorneys for the Defendant Cintas are:

8          SQUIRE, SANDERS & DEMPSEY L.L.P.
           Mark C. Dosker
9          Michael W. Kelly
           Joseph A. Meckes
10         Angela N. O'Rourke
           One Maritime Plaza, Third Floor
11         San Francisco, CA 94111-3492
           Telephone:  415-954-0200
12         Fax: 415-393-9887

13   10.   FURTHER INFORMATION

14         For further information about this suit, you may contact a representative of plaintiffs'
           counsel at the following toll-free number:  **[to be filled in later].**

15
     **THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED**
16   **STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, THE**
     **HONORABLE SAUNDRA BROWN ARMSTRONG, UNITED STATES DISTRICT**
17   **JUDGE.**

18   **THE COURT HAS MADE NO DECISION IN THIS CASE ABOUT THE MERITS OF**
     **PLAINTIFFS' CLAIMS OR OF DEFENDANTS' DEFENSES.**

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**EXHIBIT A TO DEFS' MEMO IN OPPOSITION TO
PLAINTIFFS' MOTION FOR FACILITATED NOTICE**   3 of 3
**CASE NO. 03-01180 (SBA)**

SanFrancisco/107670.2

# Exhibit B

**[Insert Case Caption Heading]**

**CONSENT TO SUE PURSUANT TO 29 U.S.C. § 216(b)**

1.  I consent and agree to pursue my claims arising out of unpaid overtime work as a Route Driver for Cintas Corporation in connection with the above-referenced lawsuit.

2.  I worked in the position of _____ for Cintas Corporation in _____, _____ from on or about
    (City) _____ (State)
    _____, _____, to on or about _____, _____.
    (Month) _____ (Year) _____ (Month) _____ (Year)

3.  During the above time period, I worked in excess of forty (40) hours per week, but was not paid overtime compensation.

4.  I understand that this lawsuit is being brought under the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq.  I hereby consent, agree, and opt-in to become a Plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

5.  I hereby designate Altschuler, Berzon, Nussbaum, Rubin & Demain, Traber & Voorhees, and Milberg, Weiss, Bershad, Hynes & Lerach LLP to represent me in this action.

Dated: _____, 2003, _____
_____(Signature)

Name (Print Legibly) _____

Address _____

_____
(City) _____ (State) _____ (Zip Code)

Return to: Veliz – Overtime Lawsuit, Milberg, Weiss, Bershad, Hynes & Lerach LLP, 401 B Street, Suite 1700, San Diego, CA 92101-4297, to be received by _____ **[to be filled in later].**

_____
Signature

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza
San Francisco, CA 94111-3492

**EXHIBIT B TO DEFS' MEMO IN OPPOSITION TO PLAINTIFFS' MOTION FOR FACILITATED NOTICE CASE NO. 03-01180 (SBA)**

1 of 1

SanFrancisco/107670.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28