MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
THEODORE J. PINTAR (131372)
STEVEN W. PEPICH (116086)
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
      – and –
ALBERT H. MEYERHOFF (54134)
355 South Grand Avenue, Suite 4170
Los Angeles, CA  90071
Telephone:  213/617-9007
213/617-9185 (fax)
      – and –
NANCY M. JUDA
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PAUL VELIZ, et al., On Behalf of Themselves and All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>     vs.<br><br>CINTAS CORPORATION, an Ohio corporation, et al,<br><br>                              Defendants. | No. C-03-1180-SBA<br><br>CLASS ACTION<br><br>Assigned to:  Hon. Saundra B. Armstrong<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT CINTAS CORPORATION'S MOTION TO COMPEL ARBITRATION AND TO STAY FURTHER PROCEEDINGS<br><br>DATE:   November 4, 2003<br>TIME:    1:00 p.m.<br>PLACE:  Courtroom 3<br><br>Action Filed:  March 19, 2003 |

**E-FILING**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

II.   PLAINTIFFS' CLAIMS ARE not SUBJECT TO ARBITRATION ................................3

    A.    The Agreements Are Unfair and Decidedly Biased in Cintas' Favor ....................3

    B.    Lack of Mutuality Alone Renders the Agreements Invalid in Arkansas, California, Indiana, Maryland, Michigan, and North Carolina..............................5

        1.    The Agreements Are Improperly One-Sided Because They Permit the Company to Seek Judicial Relief While Restricting Employees to Arbitration....................................................................................................6

        2.    Arkansas Plaintiff's Arbitration Agreement Is Unenforceable Because It Lacks Mutuality ....................................................................8

        3.    The Seven California Plaintiffs' Arbitration Agreements Are Unenforceable ..............................................................................................8

        4.    The Two Indiana Plaintiffs' Arbitration Agreements Are Unenforceable ..............................................................................................9

        5.    Twenty-Three Maryland Plaintiffs' Arbitration Agreements Are Unenforceable ............................................................................................10

        6.    Eight of the Michigan Plaintiffs' Arbitration Agreements Are Unenforceable ............................................................................................11

        7.    North Carolina Plaintiff's Arbitration Agreement Is Unenforceable ........11

    C.    The Agreements Are Thoroughly Biased in Cintas' Favor and Unenforceable Under the Law of Colorado, Connecticut, Illinois, New Jersey, and New York..................................................................................12

        1.    Procedural Unconscionability.................................................................13

        2.    Substantive Unconscionability...............................................................15

        3.    The Arbitration Provisions Cannot Be Salvaged by Severing the Offending Portions...............................................................................20

    D.    The Agreements Are Invalid for Lack of Consideration ...................................20

    E.    Individual Plaintiffs Are Bound by Arbitration Clause in Union Contracts..........23

1

## TABLE OF AUTHORITIES

2

3

**CASES**

4

*Advanced Copy Products Inc. v. Cool,*
    363 N.E. 2d 1070 (Ind. App. 1977) .................................................23

5

*Air Line Pilots Ass'n Int'l v. N.W. Airlines, Inc.,*
    199 F.3d 477 (D.C. Cir. 1999) ......................................................23

6

*Albertson's Inc. v. UFCW,*
    157 F.3d 758 (9th Cir. 1998) .......................................................23

7

8

*Alexander v. Anthony Int'l LP,*
    341 F.3d 256 (3d Cir. 2003) ...............................................16, 19, 20

9

*Alexander v. Gardner-Denver Co.,*
    415 U.S. 36 (1974) .................................................................23

10

11

*Am. Food Mgmt., Inc. v. Henson,*
    434 N.E.2d 59, 105 Ill. App. 3d 141 (Ill. App. 1982) ..........................13

12

*Armendariz v. Found. Health Psychcare Serv., Inc.,*
    24 Cal. 4th 83 (2000) .............................................................9, 20

13

14

*Barrentine v. Ark.-Best Freight Sys. Inc.,*
    450 U.S. 728 (1981) ..............................................................23, 24

15

*Berna v. Little Valley Homes, Inc.,*
    No. 202091, 1998 WL 1990370
    (Mich. Ct. App. Sept. 8, 1998) ...................................................11

16

17

*Boynton v. ESC Medical System, Inc.,*
    566 S.E.2d 730, 152 N.C.App. 103 (2002) ....................................11

18

19

*Bratten v. SSI Servs. Inc.,*
    185 F.3d 625 (6th Cir. 1999) ......................................................24

20

*Brennan v. Bally Total Fitness,*
    198 F. Supp. 2d 377 (S.D.N.Y. 2002) ..........................................13

21

22

*Cash in a Flash Check Advance of Ark., L.L.C. v. Spencer,*
    74 S.W.3d 600, 348 Ark. 459 (2002) .............................................8

23

*Casteel v. Clear Channel Broadcasting, Inc.,*
    254 F.Supp.2d 1081 (W.D.Ark. 2003) .........................................12

24

25

*Circuit City Stores, Inc. v. Adams,*
    279 F.3d 889 (9th Cir. 2002) ......................................................16

26

*Circuit City Stores, Inc. v. Mantor,*
    335 F.3d 1101 (9th Cir. 2003) ................................................12, 18

27

28

PLAINTIFFS' MEMO IN OPP TO DEF CINTAS CORP'S MOT TO COMPEL     - ii -
ARBITRATION AND TO STAY FURTHER PROCEEDINGS - C-03-1180-SBA

1

2                                                                                            **Page**

3   *Clarke v. UFI,*
          98 F. Supp. 2d 320 (E.D.N.Y. 2000) ..............................................................24
4
    *Cole v. Burns Int'l Sec. Servs.,*
5         105 F.3d 1465, 1468 (D.C. Cir. 1997).....................................................17, 19

6   *Collins v. Lobdell,*
          188 F.3d 1124 (9th Cir. 1999),
7         *cert. denied,* 529 U.S. 1107 (2000)......................................................23, 24

8   *Coughlin v. Shimizu Am. Inc.,*
          991 F. Supp. 1226 (D. Or. 1998) ...............................................................16
9
    *Davis v. MLG Corp.,*
10        712 P.2d 985 (Colo. 1986) ........................................................................13

11  *Dimario v. Coppola,*
          10 F. Supp. 2d 213 (E.D.N.Y. 1998) ........................................................22
12
    *Doctor's Assocs. v. Casarotto,*
13        517 U.S. 681 (1996)..................................................................................12

14  *Dorsey v. H.C.P. Sales Inc.,*
          46 F. Supp. 2d 807 (N.D. Ill. 1999) ..........................................................22
15
    *EEOC v. Luce, Forward, Hamilton & Scripps,*
16        No. 00-57222, 2003 U.S. App. LEXIS 2007
          (9th Cir. Sept. 30, 2003)..............................................................................5
17
    *E-Z Cash Advance, Inc. v. Harris,*
18        60 S.W.3d 436, 347 Ark. 132 (2001)........................................................1, 8

19  *First Options of Chicago, Inc. v. Kaplan,*
          514 U.S. 938 (1995)....................................................................................5
20
    *Flores v. Transamerica HomeFirst, Inc.,*
21        93 Cal.App.4th 846 (2001) ..........................................................................9

22  *Floss v. Ryan's Family Steak Houses, Inc.,*
          211 F.3d 306 (6th Cir. 2000) .....................................................................21
23
    *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.,*
24        408 N.E.2d 403, 86 Ill. App. 3d 980 (Ill. App. 1980)................................13

25  *Geiger v. Ryan's Family Steak Houses, Inc.,*
          134 F. Supp. 2d 985 (S.D. 2001) ....................................................9, 10, 12
26
    *Gibson v. Neighborhood Health Clinics, Inc.,*
27        121 F.3d 1126 (7th Cir. 1997) ........................................................9, 20, 22

28

PLAINTIFFS' MEMO IN OPP TO DEF CINTAS CORP'S MOT TO COMPEL                 - iii -
ARBITRATION AND TO STAY FURTHER PROCEEDINGS - C-03-1180-SBA

**Page**

*Gillman v. Chase Manhattan Bank N.A.*,
    534 N.E. 2d 824, 73 N.Y.2d 1 (1988)..........................................................................13

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)..........................................................................................................16

*Gorman v. Earmark, Inc.*,
    968 F. Supp. 58 (D. Conn. 1997)..................................................................................22

*Graham v. ARCO Prods. Co.*,
    43 F.3d 1244 (9th Cir. 1994) .........................................................................................16

*Heurtebise v. Reliable Bus. Computers, Inc.*,
    550 N.W.2d 243, 452 Mich. 405 (1996).......................................................................11

*Hoffman-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989)......................................................................................................1, 3

*Holmes v. Coverall N. Am., Inc.*,
    544, 649 A.2d 365, 336 Md. 534 (1994) ..................................................................10, 20

*Howard v. Oakwood Homes Corp.*,
    516 S.E.2d 879, 134 N.C.App. 116 (1999).................................................................11

*Hull v. Norcom, Inc.*,
    750 F.2d 1547 (11th Cir. 1985) ...................................................................................10

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ......................................................................... *passim*

*Jaramillo v. JH Real Estate Partners, Inc.*,
    111 Cal. App. 4th 394 (2003) .........................................................................................9

*Kelly-Springfield Tire Co. v. Action Auto. Distrib., Inc.*,
    648 F. Supp. 731 (N.D. Ill. 1986) ...............................................................................22

*Little v. Auto Stiegler, Inc.*,
    29 Cal. 4th 1064 (2003) ..................................................................................................9

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994).......................................................................................................23

*Local 246 Util. Workers Union v. S. Cal. Edison Co.*,
    83 F.3d 292 (9th Cir. 1996) ...........................................................................................23

*Luna v. Household Fin. Corp. III*,
    236 F. Supp. 2d 1166 (W.D. Wash. 2002)...............................................................17, 18

*Martindale v. Sandvik*,
    800 A.2d 872, 173 N.J. 76 (2002)..............................................................................13, 14

1

2                                                                                         **Page**

3   *McMullen v. Meijer, Inc.,*
        337 F.3d 697 (6th Cir. 2003) ........................................................................22
4
    *Metro. Edison Co. v. NLRB,*
5       460 U.S. 693 (1983)......................................................................................23

6   *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
        473 U.S. 614 (1985)........................................................................................3
7
    *Money Place, LLC v. Barnes,*
8       78 S.W.3d 714, 349 Ark. 411 (2002)...............................................................8

9   *Morrison v. Circuit City Stores, Inc.,*
        317 F.3d 646 (6th Cir. 2003) ........................................................................19
10
    *Norman v. McKee,*
11      431 F.2d 769 (9th Cir. 1970) ..........................................................................3

12  *Plaskett v. Bechtel Int'l Inc.,*
        243 F. Supp. 2d 334 (D.V.I. 2003) ................................................................17
13
    *Rembert v. Ryan's Family Steak Houses, Inc.,*
14      596 N.W.2d 208, 235 Mich.App. 118 (1999)................................................11

15  *Rogers v. New York Univ.,*
        220 F.3d 73 (2d Cir. 2000)............................................................................24
16
    *Routh v. Snap-On Tools Corp.,*
17      423 S.E.2d 791, 108 N.C.App. 268 (1992)....................................................12

18  *Scholes v. Lehmann,*
        56 F.3d 750, 756 (7th Cir. 1995), *cert. denied,*
19      516 U.S. 1028 (1995) ..............................................................................19, 21

20  *Sciolino v. TD Waterhouse Investor Services, Inc.,*
        562 S.E.2d 64, 149 N.C.App. 642 (2002) ......................................................12
21
    *Shankle v. B-G Maint. Mgmt.,*
22      163 F.3d 1230 (10th Cir. 1999) ...........................................................1, 16, 19

23  *Shotto v. Laub,*
        632 F. Supp. 516 (D. Md. 1986) ....................................................................10
24
    *Showmethemoney Check Cashers, Inc. v. Williams,*
25      27 S.W.3d 361, 342 Ark. 112 (2000)...............................................................8

26  *Smith v. Chrysler Fin. Corp.,*
        101 F. Supp. 2d 534 (E.D. Mich. 2000).........................................................11
27
    *Smith v. Mitsubishi Motors Credit Corp.,*
28      721 A.2d 1187, 247 Conn. 342 (1998) ...........................................................13

PLAINTIFFS' MEMO IN OPP TO DEF CINTAS CORP'S MOT TO COMPEL                      - v -
ARBITRATION AND TO STAY FURTHER PROCEEDINGS - C-03-1180-SBA

1

2                                                                              **Page**

3

4   *Szetela v. Discover Bank,*
            97 Cal. App. 4th 1094 (2002),
5            *cert. denied,* 123 S. Ct. 1258 (2003) ......................................................3, 18

6   *Torrance v. Aames Funding Corp.,*
            242 F. Supp. 2d 862 (D. Or. 2002) ......................................................17

7   *We Care Hair Dev., Inc. v. Engen,*
8            180 F.3d 838 (7th Cir. 1999) ......................................................13, 15

9   *Wright v. Universal Maritime Serv. Corp.,*
            525 U.S. 70 (1998) ......................................................24, 25

10

**STATUTES, RULES AND REGULATIONS**

11

12  9 U.S.C.
            §2 ......................................................................................................5, 6, 12
13
    29 U.S.C.
14           §216 ...........................................................................................................2
             §216(b) ..............................................................................................5, 16
15           §255(a) ............................................................................................16, 17

16  820 Illinois Compiled Statutes
            105/12(a) ...............................................................................................16
17
    Colorado Revised Statute
18          §8-4-114 .................................................................................................16

19  Connecticut General Statutes Annotated
            §52-596 .................................................................................................16
20
    New Jersey Statutes Annotated
21          §34:11-56a25 .........................................................................................16
             §34:11-56a25.1 ......................................................................................16
22
    New York Laws Lab.
23          §198(1-a) ...............................................................................................16

24

25

26

27

28

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs vigorously oppose defendant Cintas Corporation's ("Cintas") attempt to derail the prosecution of this putative class action.  Cintas asserts a supposed right to compel arbitration based on a series of one-sided and oppressive arbitration agreements that are unenforceable under applicable state law.  As shown below, however, Cintas has no legal right to force plaintiffs' claims into arbitration under these agreements; nor may it delay this litigation by seeking a stay of claims properly before this Court.  On the contrary, if the Court finds that any claims for any plaintiffs should be arbitrated, it should stay the arbitration of those claims until after it has ruled on the pending *Hoffman-LaRoche* motion, the propriety of class certification of plaintiffs' state labor law claims and federal ERISA claims*,* and any other appropriate classwide issues.

Cintas concedes that some of its employees, including plaintiff Ricardo Brown,[1] are not parties to *any* applicable arbitration agreement and, therefore, can pursue all of their claims in this Court.  Defendant Cintas Corporation's Motion to Compel Arbitration and Stay Further Proceedings ("Def's Mtn.") at 4 n. 6.[2]  Cintas also admits that *none* of the plaintiffs may be compelled to arbitrate their federal claims under ERISA, thereby conceding that every plaintiff has at least *some* classwide claims that cannot be sent to arbitration.  *Id.* at 2.  Nonetheless, Cintas urges this Court to send plaintiffs' other claims to arbitration and to stay any judicial adjudication of claims properly before this Court.

Cintas relies on arbitration clauses in form employment agreements in contending that the federal and state wage and hour claims of approximately 60 plaintiffs should be sent to arbitration.  Def's Exs. B-III.  Arbitration clauses such as these may only be enforced, however, if they would be enforceable under applicable state contract law.   None of Cintas' arbitration provisions are

---

[1]    The only employment agreement signed by Mr. Brown contains no arbitration clause.  Ex. JJJ. (References to "Def's Ex. ___" herein are to exhibits attached to the Declaration of Jenice Clendening.

[2]    While plaintiffs have propounded an interrogatory seeking the identification of all route drivers who are not parties to an arbitration agreement, Cintas has refused to provide this information.  Declaration of Steven W. Pepich in Opposition to Cintas' Motion to Compel.  Ex. 4 at 3.

1  enforceable under state law, because they lack mutual obligations to arbitrate, are unconscionable

2  contracts of adhesion, and/or are unsupported by legal consideration.

3       Under the laws of Arkansas, California, Indiana, Maryland, Michigan, and North Carolina,

4  Cintas' arbitration agreements cannot be enforced because they are one-sided agreements that force

5  employees to arbitrate all employment claims, while reserving Cintas' right to litigate its most

6  important claims against employees in court; including those alleging that the employee breached

7  covenants not to disclose confidential information, not to recruit Cintas employee and not to

8  compete.  Under all states' laws, Cintas' arbitration provision are also unconscionable contracts of

9  adhesion, presented on a take-it-or-leave-it basis, which impose on the employee a wide array of

10  unfair, biased provisions that improperly elevate Cintas' interests over those of the employee.

11  Further, Cintas' arbitration agreements are not supported by legal consideration.  Cintas has provided

12  no evidence that any employee received an enforceable benefit or promise in exchange for his or her

13  signature on the agreement.   Nor do the agreements themselves support a finding of legally-

14  enforceable consideration.

15       Cintas concedes that four of the plaintiffs did not sign individual arbitration agreements, but

16  contends are bound to arbitrate under several collective bargaining agreements.  But established

17  Ninth Circuit law prohibits a union from waiving an employee's statutory right to litigate claims

18  under the Fair Labor Standards Act (FLSA), 29 U.S.C. §216 (FLSA), and parallel state wage and

19  hour laws.  Further, the language of the Collective Bargianing Agreements ("CBA") here does not

20  constitute a "clear and unmistakable" waiver of union members' rights to litigate such statutory

21  claims in court, even if such a waiver were enforceable.

22       If any of the Cintas arbitration agreements are deemed to be enforceable as to any of

23  plaintiffs' claims, plaintiffs will promptly move to stay arbitration to permit this Court to determine

24  whether those proceedings should proceed on a representative or class-wide basis and to resolve

25  appropriate class-wide liability issues pending in this Court.  This motion will be based primarily on

26  the need to protect the rights plaintiffs have under FLSA and parallel state statutes to prosecute their

27  claims on a representative or class-wide basis.  Requiring individual arbitration of these statutory

28  claims would run afoul of statutory guarantees that such claims should be prosecuted on a

PLAINTIFFS' MEMO IN OPP TO DEF CINTAS CORP'S MOT TO COMPEL
ARBITRATION AND TO STAY FURTHER PROCEEDINGS - C-03-1180-SBA        - 2 -

1   representative or class-wide basis to ensure the effective and economical resolution of such claims.[3]

2   In this motion, plaintiffs would also argue that, if any arbitration is ordered, the Court must retain

3   jurisdiction over issues regarding the propriety of a representative action under the FLSA and of

4   class treatment of state overtime claims, as well as the nature and content of notice to similarly-

5   situated individuals whose interests may be affected by this case, in order to effectuate this Court's

6   obligations to protect the interests of absent class members and to ensure compliance with due

7   process guarantees.  *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970) (district court is

8   "guardian" of absent class members' interests).  For similar reasons, the stay urged by Cintas would

9   be wholly inappropriate, but the stay issue should only be addressed if the Court orders any claims to

10  arbitration.

11

12

13  **II.     PLAINTIFFS' CLAIMS ARE NOT SUBJECT TO ARBITRATION**

14          **A.     The Agreements Are Unfair and Decidedly Biased in Cintas' Favor**

15          At the center of the parties' dispute is a series of form Employment Agreements drafted by

16  Cintas and used by the company since at least 1994 to bind their employees to certain covenants

17  regarding the use and return of confidential documents, the non-solicitation of Cintas employees, and

18  limitations on post-employment competition with Cintas.  Def's Ex. JJJ [version dated August,

19  1994]; Def's Ex. III [12/1/96 version]; Def's Ex. V [6/1/99 version]; Def's Ex. Q [8/16/01 version];

20  Def's Ex. II [6/12/02 version].  The form agreements include boiler-plate language stating that some

21  form of employment benefit will be provided to the employee, through hire, promotion, salary

22  increase or otherwise, in exchange for the employee's promise to abide by restrictive covenants on

23  _____

24  [3]      *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)

25  (mandatory, pre-dispute arbitration agreement may *only* be enforced in a statutory case if the
    applicable arbitration procedures allow plaintiffs fully to vindicate their statutory rights in the

26  arbitral forum); *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("Congress has stated
    its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively."); *Szetela v.*

27  *Discover Bank*, 97 Cal. App. 4th 1094, 1101 (2002), *cert. denied*, 123 S. Ct. 1258
    (2003)(invalidating class action ban as substantively unconscionable).

28

these matters.  While that language purports to recite consideration, the same paragraph reveals the benefit to be illusory, since it makes clear that, despite the Employment Agreement, Cintas may terminate the employee "for any reason at any time."  Def's Exs. JJJ, III, V, Q, and II at 2.

In addition, the employee agrees that Cintas can seek an "immediate restraining order and injunction" to prevent the employee's violation of these covenants, without having to demonstrate that Cintas will suffer irreparable harm or the other legal requirements for equitable relief.  The employee also agrees that, if Cintas is able to show that the employee has violated any covenant in the Employment Agreement, he or she will pay "all" of Cintas' litigation costs, expenses and reasonable attorneys' fees, "in addition to any other remedies to which Employer may be entitled at law or equity."  Def's Exs. JJJ, III, V, and Q at 3; Def's Ex. II at 4.

In December 1996, Cintas added a new clause to its Employment Agreement.  While no additional consideration was recited or received, the 12/96 Employment Agreement and all agreements since that time have required the employee to agree to a one-sided arbitration clause, in addition to the restrictive covenants and litigation concessions set forth in the preceding agreement. *Compare* Def's Ex. JJJ *with* Exs. III, V, Q, and II at 4-5.  While explicitly preserving Cintas' prerogative to go to court to obtain immediate injunctive relief, attorneys' fees and other legal and equitable remedies against the employee, these new agreements barred the employee from seeking substantive relief on **any** claims against Cintas in **any** judicial forum.  In contrast to Cintas' broad contractual right to seek an "immediate restraining order and injunction" in court, the employee is required to pursue an informal negotiation with the employer, provide a written request for arbitration within strict time limitations, and submit to arbitration as the "exclusive, final and binding method" of resolving any claims the employee might have.  *Id.*  Thus, these Employment Agreements are strongly – and unlawfully – biased in its favor, granting the company the right to seek judicial relief on an expedited and non-onerous basis while restricting all employees to arbitration according to strict procedural requirements.

Cintas' arbitration provisions also impose burdens on employees that would not exist if they were permitted to seek judicial relief on their statutory claims.  For example, employees must request arbitration within one year after the dispute arose, even though the limitations periods on many

1    employment claims would ordinarily allow them to be commenced two, three or even four years

2    after the dispute arose.  Similarly, employees must to attempt an informal resolution of their claims

3    before prosecuting them in any forum.  Neither of these procedural limitations is imposed on Cintas'

4    ability to seek judicial relief on its own claims.   Under the 12/96 version of the arbitration

5    agreement, moreover, an employee who loses in arbitration "shall bear the fees and expenses of the

6    American Arbitration Association and the impartial arbitrator," which are substantial in comparison

7    to the kinds of filing fees an employee would pay if suing in court.  *See, e.g.*, Def's Ex. YY at ¶6.

8         While increasing the burdens on employees, the arbitration agreements also dilute

9    employees' rights under FLSA and other statutes.   Thus, although the FLSA **requires** that a

10   prevailing plaintiff be awarded his attorneys' fees and costs (29 U.S.C. §216(b), the 6/99 and

11   8/16/01) arbitration agreements  merely give the arbitrator "discretion" to award a prevailing

12   plaintiff his attorneys' fees and costs.   Similarly, the arbitration rules applicable under the

13   agreements  cloak the proceedings and arbitral awards in confidentiality, thus impairing an

14   employee's ability to prove that Cintas engaged in intentional violations or a pattern of misconduct.

15       **B.    Lack of Mutuality Alone Renders the Agreements Invalid in**
              **Arkansas, California, Indiana, Maryland, Michigan, and North**
16            **Carolina**

17        The Federal Arbitration Act (FAA) provides that arbitration agreements "shall be valid,

18   irrevocable, and enforceable" unless grounds "exist at law or in equity for the revocation of any

19   contract." 9 U.S.C. §2.  "To evaluate the validity of an arbitration agreement, federal courts 'should

20   apply ordinary state-law principles that govern the formation of contracts.'"  *Ingle v. Circuit City*

21   *Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (*quoting First Options of Chicago, Inc. v. Kaplan*,

22   514 U.S. 938 (1995)).[4]

23   _____

24   [4]      The Ninth Circuit's recent decision in *EEOC v. Luce, Forward, Hamilton & Scripps,* No. 00-
     57222, 2003 U.S. App. LEXIS 2007 (9th  Cir. Sept. 30, 2003), has no bearing on plaintiffs'
25   arguments under FAA §2.  The issue in *Luce, Forward* was whether Congress had precluded
     mandatory arbitration of Title VII claims, even if the arbitration provisions were enforceable under
26   the FAA.  Nothing in *Luce, Forward* questioned the long line of Supreme Court and Ninth Circuit
     cases requiring mandatory arbitration clauses to satisfy state law principles of contract
27   enforceability.

28

1    Under the laws of six states (Arkansas, California, Indiana, Maryland, Michigan and North

2 Carolina), Cintas' mandatory arbitration clause is invalid and unenforceable because it lacks

3 "mutuality" – that is, the arbitration agreements are unenforceable because they require plaintiff

4 employees to arbitrate ***all*** potential claims they might have against Cintas, but it does ***not*** require

5 Cintas to arbitrate ***any*** of the most common types of claims that it is likely to bring against its

6 employees.  Mandatory pre-dispute arbitration clauses cannot be enforced under FAA §2, if the

7 "mutuality" of obligation required by applicable state law does not exist.  *Ingle*, 328 F.3d at 1173.

8 Because Cintas' agreements create a one-sided obligation that explicitly requires employees to

9 arbitrate all potential claims, while preserving Cintas' right to litigate in court its potential claims

10 against its employees, Cintas' arbitration agreements are invalid and unenforceable for the 43

11 individual plaintiffs (and all those similarly situated) who worked in Arkansas, California, Indiana,

12 Maryland, Michigan and North Carolina.[5]

13        **1.**      **The Agreements Are Improperly One-Sided Because They**
**Permit the Company to Seek Judicial Relief While Restricting**
14               **Employees to Arbitration**

15    Although Cintas has revised its arbitration agreement over time, all versions signed by the

16 plaintiffs here suffer from the same flaw – a total lack of mutual obligations to arbitrate.  While

17 reserving to Cintas the right to seek immediate injunctive relief, attorneys' fees and other relief in

18 federal or state court, the 12/96 version (signed by 10 plaintiffs) requires an employee who "desires

19 to pursue Employee's claims or contentions" with regard to any dispute with the employer to

20 "submit a timely written request to have such dispute or difference resolved through impartial

21 arbitration," which will be the "exclusive, final and binding method" of resolving such a dispute.

22 The arbitration agreement also explicitly provides that the "Employee shall not file any lawsuit

23 contending that Employer or any agent of Employer violated any duty, law, regulation or public

24 policy or breached this Agreement."  Def's Ex. III at 3-4.

25

26 [5]    Under the law of other  relevant states, the lack of mutual obligations, in conjunction with
other elements of one-sidedness, renders Cintas' arbitration agreements unconscionable.  *See* Section
27 I-C, *infra*.

28

1    Although using slightly different language, the 6/99 and 8/01 versions (signed by 30 and 15

2    plaintiffs, respectively) make clear that all disputes "concerning whether Employer or any agent of

3    Employer ever at any time violated any duty to Employee, right of Employee, law, regulation or

4    public policy or breached this Agreement" – *i.e.*, only the employee's claims – are covered by the

5    provisions entitled *Exclusive Method of Resolving Disputes or Differences*.  Def's Exs. V and Q at 3.

6    These violations of the employee's rights are initially funneled through a one-sided procedure for

7    resolving disputes against Cintas.  If not resolved informally, an employee who "desire[s] to pursue

8    employee's claim" is required to file a written request to submit the claim to arbitration.  Such an

9    arbitration "shall be the exclusive, final and binding method of resolving any and all claims of

10   Employee against Employer."  *Id.* at 3-4.  In contrast to these procedural requirements imposed on

11   the employee, Cintas is permitted to seek judicial relief on the most important claims it would bring

12   – those alleging that an employee has violated any of the central covenants in Cintas' employment

13   agreements, including any employee's alleged breach of written covenants regarding the use and

14   return of confidential documents, the non-solicitation of Cintas employees, and limitations on post-

15   employment competition with Cintas.  *Id.* at 3.

16   The 6/02 version uses different language to accomplish the same result.  Again the arbitration

17   provision covers "any dispute or difference between Employee and Employer concerning whether

18   Employer or any agent of Employer ever at any time violated any duty to Employee, right of

19   Employee, law, regulation or public policy or breached this Agreement," thus, only the employee's

20   claims.  The employee is required to attempt an informal resolution of "***such*** dispute or difference" –

21   *i.e.*, the employee's dispute.  With respect to "any ***such*** dispute or difference remaining unresolved

22   after Employee and Employer confer in good faith, should either desire to pursue a claim against the

23   other party, that party will ... submit to the other party a written request to have such claim, dispute

24   or difference resolved through impartial arbitration."  Def's Ex. II at 4-5.  Such an arbitration is to be

25   "the exclusive, final and binding method" of resolving such disputes between the parties.  *Id.* at 5.

26   While the 6/02 version uses mutual language to identify who may "pursue a claim," the only claims

27   covered by the arbitration agreement are those that could be brought by an employee to remedy

28

PLAINTIFFS' MEMO IN OPP TO DEF CINTAS CORP'S MOT TO COMPEL
ARBITRATION AND TO STAY FURTHER PROCEEDINGS - C-03-1180-SBA        - 7 -

Cintas' misconduct.  Claims that Cintas could bring against an employee, by contrast, may all be brought directly in court.  *Id.* at 4.

### 2. Arkansas Plaintiff's Arbitration Agreement Is Unenforceable Because It Lacks Mutuality

The 6/99 arbitration agreement allegedly signed by Arkansas plaintiff Mark Hebling is unenforceable under applicable state law.  Def's Ex. U.  Before an arbitration agreement may be enforced under Arkansas law, both parties to the agreement must have a mutual obligation to submit their disputes to arbitration.  *Money Place, LLC v. Barnes*, 78 S.W.3d 714, 349 Ark. 411 (2002); *E-Z Cash Advance, Inc. v. Harris*, 60 S.W.3d 436, 347 Ark. 132 (2001); *Showmethemoney Check Cashers, Inc. v. Williams*, 27 S.W.3d 361, 342 Ark. 112 (2000).  "[M]utuality within the arbitration agreement itself is required," regardless of other provisions of the contract in which an arbitration agreement appears.  *Money Place*, 78 S.W.3d at 717.

In *Showmethemoney*, the arbitration agreement was between a borrower and a lender, and required the parties to arbitrate all disputes except those in which the lender sought to collect from the borrower.  27 S.W.3d at 364.  The Supreme Court of Arkansas held that this lack of mutuality rendered the arbitration agreement unenforceable.  *Id.* at 366-367.  As the court explained, arbitration agreements may "not be used as a shield against litigation by one party while simultaneously reserving solely to itself the sword of a court action."  *Id.* at 367.[6]

### 3. The Seven California Plaintiffs' Arbitration Agreements Are Unenforceable

Under California law, the arbitration agreements signed by each of the seven California plaintiffs are unenforceable because they do not include mutual obligations to arbitrate the parties

---

[6]     In both *The Money Place* and *E-Z Cash Advance*, the lender reserved the rights to pursue all civil remedies when a check was returned and to sue to collect and recover amounts, including fees, attorney fees, and court costs, while the borrower was required to submit his claims to arbitration. Reaffirming its ruling in *Showmethemoney*, the Arkansas Supreme Court emphasized that "[an] agreement to arbitrate is not supported by sufficient consideration [where there is] ... only [one] party that has promised to forego her rights to seek redress in the court system." *Money Place*, 78 S.W.3d at 719 (citing *E-Z Cash Advance*, 60 S.W.3d at 442); *see also Cash in a Flash Check Advance of Ark., L.L.C. v. Spencer*, 74 S.W.3d 600, 607, 348 Ark. 459, 469 (2002).

claims.[7]  In California, "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences."  *Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal. 4th 83, 120 (2000).  California's highest court has acknowledged that, "[g]iven the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee." *Id.* at 117.  Thus, "in the context of an arbitration agreement imposed by the employer on the employee, such a one-sided term is unconscionable" and therefore unenforceable.  *Id.* at 118. The Ninth Circuit recently relied upon the California Supreme Court's analysis in *Armendariz* to refuse enforcement of a mandatory pre-dispute employment arbitration agreement because it lacked mutuality.   *Ingle*, 328 F.3d at 1173 (applying *Armendariz* and invalidating an employment agreement for being one-sided); *Jaramillo v. JH Real Estate Partners, Inc.*, 111 Cal. App. 4th 394, 535 (2003) (invalidating an arbitration provision in a lease agreement for a lack of sufficient bilaterality); *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1073-1074 (2003) (holding an arbitral appeal provision invalid because it was one-sided); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 854 (2001) (invalidating arbitration provision in a loan agreement for lack of sufficient bilaterality).

### 4. The Two Indiana Plaintiffs' Arbitration Agreements Are Unenforceable [8]

Mutuality is also a prerequisite for a valid arbitration agreement under Indiana law.  *See, e.g., Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997); *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp. 2d 985, 1000 (S.D. 2001). In *Gibson*, the arbitration

---

[7]    California plaintiffs Wayne Lovett, Timothy P. O'Malley, and Miguel A. Herrera, each signed a 6/99 arbitration agreement.  Def's Exs. W, X, AA.  Paul Veliz, James White and Ronald Rydman singed the 8/01 arbitration agreement.  Def's Ex. B, C, P.  Plaintiff Raymond Montanez signed the 6/02 arbitration agreement.  Def's Ex. O.

[8]    Plaintiffs John Cruz and Richard Coomer signed the 6/12/02 version of the arbitration agreement.  Def's Exs. YY, K, Y.

agreement was held invalid because it required the employee to submit his claims to arbitration, while the employer had no similar obligation. *Id.* at 1131. For the same reasons, the arbitration agreements of the Indiana plaintiffs are also unenforceable.

> **5.    Twenty-Three Maryland Plaintiffs' Arbitration Agreements Are Unenforceable[9]**

Under Maryland law, the courts look at the enforceability of an arbitration provision separate and apart from the employment agreement in which it is contained, and require the arbitration provision itself to have mutual obligations to arbitrate in order to be valid and enforceable. *Holmes v. Coverall N. Am., Inc.*, 544, 649 A.2d 365, 370, 336 Md. 534 (1994) (Before granting a motion to compel arbitration, "[t]he court must determine that ... there is a mutual exchange of promises to arbitrate."); *Shotto v. Laub*, 632 F. Supp. 516, 521 (D. Md. 1986) ("[A] court, in considering the 'making' ... of an agreement to arbitrate, may decide ... that there was a lack of mutuality of obligation with respect to the arbitration clause."). In construing Maryland law on this issue, both state and federal courts follow *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1550 (11th Cir. 1985), where the court refused to enforce an arbitration agreement based on "the unilateral ability of one of the parties to bring certain claims in court, while the other party was forced to arbitrate all claims." *Holmes*, 336 Md. at 545, 649 A.2d at 370 (citing *Hull* and describing its holding); *Shotto*, 632 F. Supp. at 521 (relying on *Hull*). Because the arbitration provisions here are entirely one-sided, they may not be enforced under Maryland law.

---

[9]    Maryland Plaintiffs Corwin Acken, Denick Bailey, Mike Brennan, Willie Bridges, Rodney Broadnax, Michael Brown, Ryan Brumfield, Enoch Greene, Allan Gumbs, John Handy, Terrain Locke, Henry Madden, Earnest Murphy, Barry Roberts, Edwin C. Sullivan, Lawrence Watson, Sr., DeRon West, and Calvin Wood signed the 6/99 arbitration agreement. Def's Exs. BB-HH, KK-MM, OO, QQ-TT, VV-WW. Maryland Plaintiffs Gary Frederique, Charles Mackell, Curtis Mimms and Neville Weekes signed the 8/16/01 arbitration agreement. Def's Exs. JJ, NN, PP, UU. Maryland Plaintiff Timothy Coleman, Sr., signed the 6/12/02 arbitration agreement. Def's Ex. II.

6. **Eight of the Michigan Plaintiffs' Arbitration Agreements Are Unenforceable[10]**

Michigan law also requires mutuality for an arbitration agreement to be valid.  *See Heurtebise v. Reliable Bus. Computers, Inc.*, 550 N.W.2d 243, 247, 452 Mich. 405, (1996) (employee not bound by arbitration clause in employee manual where employer could modify or terminate the terms of the manual at any time); *Smith v. Chrysler Fin. Corp.*, 101 F. Supp. 2d 534, 538-39 (E.D. Mich. 2000) (employer could not compel employee to submit her discrimination claims to arbitration where employer was not likewise bound ); *Berna v. Little Valley Homes, Inc.*, No. 202091, 1998 WL 1990370, at *9 (Mich. Ct. App. Sept. 8, 1998) ("[O]ne party cannot be forced to arbitrate while the other party merely has the *option* to arbitrate.").[11]

7. **North Carolina Plaintiff's Arbitration Agreement Is Unenforceable[12]**

Under North Carolina law, "an arbitration agreement requires a new promise from ***both*** parties which ***mutually*** changes the nature of the employment relationship in that ***both parties relinquish their rights*** to pursue [their] ... disputes in court." *Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879, 883, 134 N.C.App. 116, 121 (1999) (emphasis added); *Boynton v. ESC Medical System, Inc.*, 566 S.E.2d 730, 734, 152 N.C.App. 103, 110-111 (2002) (refusing to enforce an arbitration agreement where the party moving to compel arbitration volunteered but was not

---

[10]     Michigan Plaintiffs Michael L. Ratcliff, Timothy DeGraaf, Allen Van Koevering and James Krol signed the 12/96 arbitration agreement.  Def's Exs. DDD, FFF-HHH.  Michigan Plaintiffs Earl G. Woods, Jr. and David Abney signed the 6/99 arbitration agreement.  (Def's Exs. H, V).  Michigan Plaintiffs Bobby C. Hodge and Michael H. Wise signed the 8/16/01 arbitration agreement.  (Def's Exs. G, Z).  The other Michigan Plaintiffs, Noel Lloyd, James Lightfoot, Scott Seath, and Kelly Smith did not sign individual arbitration agreements but worked under a collective bargaining agreement that included an arbitration clause.  For the reasons discussed in Section I.E., *infra*, none of these plaintiffs may be ordered to arbitration under the CBA.

[11]     In addition, to be enforceable and reasonable, an arbitration agreement must meet three elements: (1) the parties must have agreed to arbitrate the claims (there must be a valid, binding contract governing the statutory claims in issue); (2) the statute involved must not prohibit such agreements; and (3) the arbitration agreement must not waive the substantive rights and remedies of the statute and the arbitration procedures must be fair so that the employee may effectively vindicate his statutory rights.  *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 225, 235 Mich.App. 118, 226 (1999).

[12]     North Carolina plaintiff Sterling P. Carroll signed 12/96 agreement.  Def's Ex. III.

PLAINTIFFS' MEMO IN OPP TO DEF CINTAS CORP'S MOT TO COMPEL
ARBITRATION AND TO STAY FURTHER PROCEEDINGS - C-03-1180-SBA          - 11 -

1   mutually bound to submit to arbitration).   North Carolina law requires that "the party seeking

2   arbitration ... show that the parties mutually agreed to arbitrate their disputes" and may even require

3   "that an agreement to arbitrate, if contained in a contract covering other topics, ... be independently

4   negotiated." *Routh v. Snap-On Tools Corp.*, 423 S.E.2d 791, 794, 108 N.C.App. 268, 271-72

5   (1992); *Sciolino v. TD Waterhouse Investor Services, Inc.*, 562 S.E.2d 64, 66, 149 N.C.App. 642,

6   644 (2002).  Based on the arbitration agreements produced by Cintas here, defendant simply has not

7   met its burden.

8          **C.      The Agreements Are Thoroughly Biased in Cintas' Favor and**
               **Unenforceable Under the Law of Colorado, Connecticut, Illinois, New**
9             **Jersey, and New York[13]**

10         Cintas' arbitration agreements cannot be enforced against the 16 plaintiffs from Colorado,

11  Connecticut, Illinois, New York, or New Jersey because their arbitration agreements are

12  unconscionable under the laws of those states.[14]   Under Section 2 of the FAA, an arbitration is

13  unenforceable if it does not pass muster under state unconscionability law.  *Doctor's Assocs. v.*

14  *Casarotto*, 517 U.S. 681 (1996).

15

16  _____

17  [13]      Even if the arbitration agreements of the plaintiffs from Arkansas, California, Indiana,
    Maryland, Michigan and North Carolina were enforceable despite the absence of mutuality (Section
18  I-B), they would be unenforceable under relevant state law standards because they are procedurally
    and substantively unconscionable.  *See, e.g. Casteel v. Clear Channel Broadcasting, Inc.*, 254
19  F.Supp.2d 1081 (W.D.Ark. 2003) (finding unconscionability where employees were required to sign
    arbitration agreements while manager stood over them and employees were not provided their own
20  copies or given an opportunity to read before signing); *Circuit City Stores, Inc. v. Mantor*, 335 F.3d
    1101, 1105 (9th Cir. 2003) (applying California law) ("Unconscionability exists when one party
21  lacks meaningful choice in entering a contract or negotiating its terms and the terms are
    unreasonably favorable to the other party."); *Geiger*, 134 F. Supp. 2d at 998-99 (2001) (arbitration
22  agreement held unconscionable where employer had experience negotiating contracts, while
    employees had only high school educations and did not understand the meaning of the agreement).

23  [14]      Colorado plaintiff Thomas Jaramillo signed the 12/96 arbitration agreement.  Def's Ex. CCC.
    Connecticut plaintiff Fragola signed the 6/99 arbitration agreement.  Def's Ex. N.  Illinois plaintiffs
24  Mark Chainuck, Jeff Jay and Aaron M. Zadnick, signed the 6/99 arbitration agreement while Eric
    Anderson and Stephen L. Carson signed the 8/01 arbitration agreement.  Def's Exs. D-F, Q-R.  In
25  New Jersey, plaintiffs Wilfredo Huertas, Jr., Derrick Samuels, Samuel Williams and Norman
    Qureshi signed the 12/96 arbitration agreement, Wayne Edwards signed the 6/99 arbitration
26  agreement, and Amber Kelly and Dieunel Charles signed the 8/01 arbitration agreement.  Def's Exs.
    ZZ, AAA, BBB, EEE, I, J, T.  New York plaintiffs Julian Nazareth and Edwin Perez signed the 8/01
27  arbitration agreement.  Def's Exs. M, S.

28

1    Unconscionability analysis commonly evaluates two elements: procedural and substantive.

2    *See, e.g.*, *Davis v. MLG Corp.*, 712 P.2d 985, 991 (Colo. 1986); *Frank's Maintenance & Eng'g, Inc.*

3    *v. C.A. Roberts Co.*, 408 N.E.2d 403, 409, 86 Ill. App. 3d 980, 986 (Ill. App. 1980); *Martindale v.*

4    *Sandvik*, 800 A.2d 872, 880, 173 N.J. 76, 93 (2002).  Substantive unconscionability is present when,

5    "viewed as a whole, [a contract term] 'is improvident, oppressive, or totally one-sided.'"  *We Care*

6    *Hair Dev., Inc. v. Engen*, 180 F.3d 838, 843 (7th Cir. 1999) (applying Illinois law); *see also Davis*,

7    712 P.2d at 991 (substantive unconscionability exists when contract terms are "unreasonably

8    favorable" to one party).   Procedural unconscionability is characterized by "overreaching by a

9    contracting party in an unfairly superior bargaining position."  *Am. Food Mgmt., Inc. v. Henson*, 434

10   N.E.2d 59, 63, 105 Ill. App. 3d 141, 146 (Ill. App. 1982).

11           **1.      Procedural Unconscionability**

12   In determining whether a contract is procedurally unconscionable – *i.e.*, a contract of

13   adhesion – the Court should consider all of the circumstances surrounding the contract's formation.

14   *Frank's Maint. & Eng'g C.A. Roberts Co.*, 408 N.E.2d 403, 409, 86 Ill. App. 3d 980, 989 (1980);

15   *Smith v. Mitsubishi Motors Credit Corp.*, 721 A.2d 1187, 1191, 247 Conn. 342, 349 (1998); *Davis*,

16   712 P.2d at 991; *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002)

17   (applying New York law).[15]

18   Cintas plainly overreached in compelling plaintiffs to sign the arbitration agreements.   The

19   arbitration agreements are contracts of adhesion, "'presented on a take-it-or-leave-it basis commonly

20   in a standardized printed form, without opportunity of the "adhering" party to negotiate except

21   perhaps on a few particulars.'"  *Martindale*, 800 A.2d at 880 (citation omitted).  Here, plaintiffs had

22

23   _____

     [15]      Although the Cintas arbitration agreements are unconscionable on both procedural and
24   substantive grounds, it is not necessary for the Court to find that both aspects are present with
     respect to the New York, Connecticut, and Illinois plaintiffs.  Under the law of New York and
25   Connecticut, a substantively unconscionable contract provision may not be enforced, even without
     indicators of procedural unconscionability. *Gillman v. Chase Manhattan Bank N.A.*, 534 N.E. 2d
26   824, 829, 73 N.Y.2d 1, 12, (1988); *Smith*, 721 A.2d at 1192 & n.10, 247 Conn. at 349 (1998).
     Illinois courts recognize that "[u]nconscionability can be either procedural or substantive or a
27   combination of both." *Frank's Maint.*, 408 N.E.2d at 409-10 (holding that provision was
     unconscionable on procedural grounds alone); *Am. Food Mgmt.*, 434 N.E.2d at 63 (same).

28

1   no opportunity to negotiate over the terms of the arbitration agreements.  This is apparent not only

2   from their declarations,[16] but also from the uniformity of the employment agreements Cintas

3   introduced in support of its motion.  Plaintiffs understood that they had no choice but to sign Cintas'

4   arbitration agreements in order to keep their jobs.  For example, when plaintiff Brown refused to

5   sign the agreement, his service manager warned it would "have to get done," leading Brown to

6   believe he would be fired if he failed to sign.[17]

7       Moreover, each plaintiff had only a few minutes to sign a large stack of employment-related

8   documents that included the document with the arbitration provision, so they did not have enough

9   time to read any of the documents.[18]  Several plaintiffs asked to take the documents home to review

10  them more fully or to consult with an attorney, but were prohibited from doing so.[19]  Others asked

11  for but never received copies of the documents they signed.[20]  Thus, Cintas unfairly denied plaintiffs

12  a reasonable opportunity to review the agreements they were required to sign, which is a factor

13  courts consider in evaluating procedural unfairness.  *Martindale*, 800 A.2d at 881, 173 N.J. at 91.

14      Cintas' unfair advantage over its employees is also apparent from their disparate bargaining

15  power.  Plaintiffs did not have the benefit of legal counsel in evaluating the arbitration agreements

16  they were asked to sign.  Nor were they highly educated individual used to dealing with legal

17  vernacular or contract language.[21]

18

19

---

20  [16]     *E.g.,* Anderson Dec., ¶ 5; Broadnax Dec., ¶ 4; Chainuck Dec., ¶ 5; Charles Dec., ¶ 6; Cruse Dec., ¶ 3; Fragola Dec., ¶¶ 2, 4; Handy Dec., ¶¶ 2-3; Huertas Dec., ¶¶ 2-4; Jaramillo Dec., ¶ 4; Jay

21  Dec., ¶ 2; Kelly Dec., ¶ 3; Madden  Dec., ¶ 4; Qureshi Dec., ¶¶ 2-4; Samuels Dec., ¶ 5; Wasmer Dec., ¶ 2; West Dec., ¶¶ 3-4; Williams Dec., ¶¶ 4-5; Zadnik  Dec., ¶ 6 (plaintiffs' declarations are

22  attached to Appendix filed concurrently herewith).

    [17]     Brown Dec, ¶¶ 6-7.  Other plaintiffs also believed their jobs were on the line if they did not

23  sign.  *E.g.,* Brumfield Dec., ¶¶ 4-5; Edwards Dec., ¶ 5.

24  [18]     Charles Dec., ¶ 3; Cruse Dec., ¶ 2; Huertas Dec., ¶ 3; Jaramillo Dec., ¶ 5; Qureshi Dec., ¶ 3; Samuels Dec., ¶ 4; West Dec., ¶ 4; Zadnik  Dec., ¶ 3.

25  [19]     Brown Dec., ¶ 4; Edwards Dec., ¶ 3; Huertas Dec., ¶ 3; Samuels Dec., ¶ 3.

26  [20]     Edwards Dec., ¶ 4.

27  [21]     *E.g.* Williams Dec., ¶2 (only finished seventh grade);  Jaramillo Dec., ¶2 (only finished high school); Madden Dec., ¶ 3 (did not understand legal language in document).

28

The circumstances under which Cintas presented the employment agreements to plaintiffs suggest that Cintas tried to distract employees' attention from the existence or significance of the arbitration clause.  The employment agreements contain not only the arbitration clause, but also a covenant not to compete with Cintas.  Cintas made a special effort to point out to many plaintiffs the presence of the covenant not to compete, and to explain its meaning and significance, but never mentioned the arbitration agreement in the same document.[22]  Most plaintiffs were completely unaware that the employment agreements contained an arbitration clause until after Cintas filed its motion to compel arbitration in this case.[23]

The lack of any meaningful opportunity to negotiate, coupled with Cintas' efforts to distract plaintiffs' attention from the arbitration agreements and the pressured atmosphere in which plaintiffs were forced to sign the employment agreements, amounts to procedural unconscionability precluding enforcement of the agreements under all states' laws.

### 2.        Substantive Unconscionability

In their substance as well, the Cintas agreements are so "totally one-sided," *We Care Hair Dev.*, 180 F.3d at 843, that they cannot be enforced.

#### a.        The 6/99 and 8/16/01 Arbitration Agreements

The 6/99 and 8/16/01 revisions of the arbitration agreements (Def's Exs. D, E, F, I, J, M, N, Q, R, S, T) include so many one-sided provisions favoring Cintas that, taken as a whole, the agreements to arbitrate may not be enforced.  First, the arbitration agreements preclude the employee from bringing any request for arbitration more than one year after the dispute arose or the employee was terminated.  Such a provision substantially impairs the enforcement of statutory claims under the FLSA and all applicable state labor laws because the statute of limitations under the FLSA ( and

---

[22]       Anderson  Dec., ¶¶ 3-4; M. Brown Dec., ¶¶ 3, 10; Brumfield Dec., ¶ 4; Charles Dec., ¶ 4; Cruse Dec., ¶ 1; Edwards Dec., ¶ 2; Handy Dec., ¶ 2; Jay  Dec., ¶¶ 2-3; Kelly Dec., ¶ 2; Madden Dec., ¶ 2; Zadnik Dec., ¶ 4.

[23]       Anderson  Dec., ¶4; M. Brown Dec., ¶ 11; Brumfield Dec., ¶6; Chainuck Dec., ¶6; Charles Dec., ¶5; Coleman Dec., ¶6; Cruse Dec., ¶5; Edwards Dec., ¶6, Handy Dec., ¶4; Huertas Dec., ¶5; Jay  Dec., ¶ 3; Kelly Dec., ¶3; Madden Dec., ¶5; Qureshi Dec., ¶5; Samuels Dec., ¶ 6; Wasmer Dec., ¶3; West Dec., ¶5; Williams Dec., ¶ 6; Zadnik Dec., ¶5.

1   most state laws) is two or three years.  29 U.S.C. §255(a).[24]  It is unconscionable that Cintas requires

2   its employees to arbitrate their statutory claims while shortening the limitations period so much that

3   many employees will be unable to access the arbitral forum for claims that would be timely if filed

4   in court.  *Ingle*, 328 F.3d at 1175 (one-year limitations period unenforceable).[25]

5          Not only does the shortened limitations period preclude enforcement of statutory claims, it

6   also improperly limits the potential back pay award of any class member to one year, rather than the

7   two or three years of back pay that would be allowed under the FLSA's limitations period and those

8   of most state laws.  Thus, this provision impairs plaintiffs' ability to secure all relief to which they

9   would be entitled in court, contravening the requirement articulated by the U.S. Supreme Court in

10  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), that plaintiffs be able to achieve the

11  same relief through arbitration as they could in court.

12         Second, although the FLSA and most state labor statutes ***require*** that a  prevailing plaintiff

13  be awarded attorneys' fees and costs (29 U.S.C. §216(b), the 6/99 and 8/16/01) revisions merely give

14  the arbitrator discretion to award a prevailing plaintiff his attorneys' fees and costs.[26]  Thus, a

15  plaintiff who prevails on his wage claims in arbitration may be deprived of his full statutory relief

16  based on an arbitrator's unreviewable whim.  This too unfairly favors Cintas over the employee.

17  *Alexander*, 341 F.3d at 267-68 (holding that arbitration provision that did not permit attorneys' fees

18  award to prevailing plaintiff as required by federal statute was unconscionable; *cf. Coughlin v.*

19  *Shimizu Am. Inc.*, 991 F. Supp. 1226, 1231 (D. Or. 1998) (no unconscionability where arbitration

20  agreement ***required*** fees award to prevailing plaintiff, thus vindicating his FLSA rights).

21

22

---

23  [24]     *See also* Conn. Gen. Stat. Ann. §52-596 (two years); N.J. Stat. Ann. §34:11-56a25.1 (two years); 820 Ill. Comp. Stat. 105/12(a) (three years).

24  [25]     *Alexander v. Anthony Int'l LP*, 341 F.3d 256, 267 (3d Cir. 2003); *Circuit City Stores, Inc. v.*
25  *Adams*, 279 F.3d 889, 894 (9th Cir. 2002); *Graham v. ARCO Prods. Co.*, 43 F.3d 1244, 1247-48 (9th
    Cir. 1994).  *Cf. Shankle v. B-G Maint. Mgmt.*, 163 F.3d 1230, 1235 (10th Cir. 1999) (holding that
26  employer could not require employee to resolve claims in arbitration, while at the same time failing
    to "provide an accessible forum in which [the employee] could resolve his statutory rights").

27  [26]     *See also* Colo. Rev. Stat. §8-4-114; 820 Ill. Comp. Stat. 105/12(a); N.J. Stat. Ann. §34:11-
    56a25; N.Y. Laws Lab. §198(1-a).

28

1    Third, the provision requiring the use of the American Arbitration Association's rules for

2  arbitration of employment disputes unfairly favors Cintas as well.  *Plaskett v. Bechtel Int'l Inc.*, 243

3  F. Supp. 2d 334, 342-43 (D.V.I. 2003).  Those rules preclude open hearings (Def's Ex. A, rule 17),

4  state that the arbitration shall be confidential (rule 18), and provide that the parties' names will be

5  redacted from all arbitration awards (rule 34).  These rules unfairly favor Cintas because they make

6  it more difficult for potential plaintiffs to establish intentional misconduct or establish a pattern or

7  practice of misconduct against Cintas.  *Id.* at 343.[27]  Establishing a pattern of misconduct is

8  particularly important to plaintiffs in cases under the FLSA, where the limitations period — and thus

9  the relief available to plaintiffs — may be extended by one year if Cintas' violations of the statute

10  are shown to be "willful."  29 U.S.C. §255(a).

11    Finally, the 6/99 and 8/16/01 arbitration agreements are one-sided in the most essential way –

12  they require employees to arbitrate all of their claims against Cintas, but leave Cintas free to seek

13  judicial enforcement any of its claims against the employee (such as for breach of the covenant not

14  to compete), with the full range of remedies including the collection of attorneys' fees and costs

15  from the employee.  This fundamental imbalance in the parties' rights is compounded by contractual

16  restrictions placed only on the employee and contractual benefits conferred only on Cintas.  For

17  example, an employee who seeks to vindicate his or her rights must engage in a informal attempt to

18  resolve the dispute with Cintas and give written notice of a request to arbitrate within strict timelines.

19  Cintas, however, is able to proceed directly to court for "immediate" equitable relief and is under no

20  contractually-imposed time limitations in doing so.

21    While limiting the employees' rights, the arbitration agreements grant Cintas legal benefits it

22  would not enjoy in the absence of the agreement.  Every employee who signs the agreement is

23  required to agree "that a breach of any covenant ... will cause Employer irreparable injury and

24  _____

25  [27]    *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1180-81 (W.D. Wash. 2002)
   (invalidating rule requiring confidentiality of arbitration awards because it benefitted the company
26  over individuals); *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 875 (D. Or. 2002)
   (rejecting confidentiality rule in arbitration clause as unfairly one-sided); *cf. Cole*, 105 F.3d 1477
27  (confidentiality associated with arbitration may "systematically favor companies over individuals").

28

damage for which Employer has no adequate remedy," and to agree that Cintas will be entitled to a judicial injunction without having to prove that the claimed employee breach will cause damage to Cintas. Def's Exs. D, E, F, I, J, M, N, Q, R, S and T at 3. Thus, in addition to granting Cintas alone the right to seek immediate judicial relief, the agreements also force the signing employee to relinquish the defense that injunctive relief is not warranted under the laws of equity. The agreements also set an unfairly lopsided standard for ordering the employee to pay Cintas' attorneys' fees. Thus, "if Employee has violated *any* covenant [set forth in the Agreement] ... , Employee will pay *all* litigation costs and expenses and Employers' reasonable attorney fees, in addition to any other remedies to which Employer may be entitled at law or equity." Def's Exs. B-III at 3 (emphasis added). All of these one-sided provisions strongly favor Cintas' interests over the employee's and warrant a finding of unconscionability.[28]

### b.    The 12/96 Arbitration Agreement[29]

The 12/96 agreement cannot be enforced because it too unduly favors Cintas.

The 12/96 revision contains a provision that "the party losing the arbitration shall bear the fees and expenses of the American Arbitration Association and the impartial arbitrator." *See, e.g.*, Def's Ex. YY ¶6. The record demonstrates that these costs are substantial: the filing fee is at least $500, and increases substantially as the damages at issue increase. Def's Ex. A at 14.[30] Hearing fees are an additional $150 per day. *Id.* Moreover, these fees do not include the arbitrator's daily fees, which range from $600 to $1000 per day. Pepich Dec., Ex. 1 at 5 (Questions and Answers About Arbitration and Mediation through the American Arbitration Association).

---

[28]    Plaintiffs contend that the arbitration clause should be construed to permit representative and class action arbitrations. To the extent it does not, however, this too renders the clause unconscionable and unenforceable. *E.g. Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003); *Szetela v. Discover Bank*, 97 Cal. App. 4th at 1101; *Luna v. Household Fin. Corp.*, 236 F. Supp. 2d 1166, 1178-79 (W.D. Wash. 2002).

[29]    This arbitration agreement was signed by signed by 11 plaintiffs altogether, including Colorado plaintiff Jaramillo (Def's Ex. CCC) and New Jersey plaintiffs Huertas (Def's Ex. ZZ), Samuels (Def's Ex. AAA), Williams (Def's Ex. BBB), and Qureshi (Def's Ex. EEE).

[30]    Moreover, unlike the later versions of the Agreement, the 12/96 revision does not limit the amount of the filing fee that the employee may be required to pay.

1    Cintas' mandatory "loser pays" provision forces the employee to bear the risk of substantial

2    costs in arbitration that he would never have to pay if he lost in court.[31]  *Cole v. Burns Int'l Sec.*

3    *Servs.,* 105 F.3d 1465, 1468 (D.C. Cir. 1997) (invalidating "loser pays" provision because

4    "employees cannot be **required** to pay for the services of a 'judge' in order to pursue their statutory

5    rights") (emphasis in original); *id.* at 1484 ("[W]e are unaware of any situation in American

6    jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of

7    the judge assigned to hear her or his case.").[32]  This kind of mandatory "loser pays" provision so

8    increases the risk to potential plaintiffs of losing the case that many plaintiffs will be deterred from

9    bringing meritorious claims in the arbitral forum.  If there is "any risk" that an employee would have

10   to bear the full cost of the arbitrator's services, "this would surely deter the bringing of arbitration

11   and constitute a *de facto* forfeiture of the employee's statutory rights."  *Cole*, 105 F.3d at 1468

12   (footnote omitted).  Cintas "should not be permitted to draft arbitration agreements that deter a

13   substantial number of potential litigants from seeking any forum for the vindication of their [federal

14   statutory] rights," as this would permit Cintas to evade those statutes' requirements altogether.

15   *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003) (en banc); *Shankle*, 163 F.3d

16   at 1235.

17        In addition to the unduly one-sided "loser pays" rule, the 12/96 agreement also suffers from

18   the same defects as the 6/99 and 8/16/01 agreements concerning the merely discretionary payment of

19   attorneys' fees and costs to the prevailing plaintiff and the pro-employer confidentiality rules.

20   Finally, the 12/96 revision, like the others, compels only the employee to submit his disputes with

21   Cintas to arbitration and suffers from the other lopsided provisions that grant rights to Cintas while

22   withholding them from employees.  *See* Section I.B.1., *supra*.

23   _____

24   [31]    This burden is particularly clear here, where plaintiffs are of such modest means.  *E.g.* Cruse
     Dec., ¶6; Huertas Dec., ¶ 6.

25   [32]    *See also Alexander v. Anthony Int'l LP*, 341 F.3d 356, 270 (invalidating mandatory "loser
26   pays" provision of arbitration agreement on the ground that it so increased the costs that plaintiffs
     might be required to bear).

27

28

1

2

### 3. The Arbitration Provisions Cannot Be Salvaged by Severing the Offending Portions

Taken as a whole, the many one-sided and unfair aspects of the 12/96, 6/99, and 8/16/01 agreements render them legally unconscionable and, therefore, unenforceable.  Moreover, these agreements are too thoroughly infected with bias for severance to be an effective cure.

The Ninth Circuit recently refused to sever the unconscionable provisions from an employer-promulgated arbitration agreement where those provisions so permeated the agreement as to place "a thumb on [the employer's] side of the scale," explaining that "any earnest attempt to ameliorate the unconscionable aspects of [the employer's] arbitration agreement would require this court to assume the role of contract author rather than interpreter."  *Ingle*, 328 F.3d at 1180; *Alexander*, 341 F.3d at 271 (refusing to sever several unconscionable provisions because of "[t]he cumulative effect of so much illegality"); *Armendariz*, 24 Cal. 4th at 124 (declining to sever two unconscionable provisions of arbitration agreement because it would amount to rewriting the contract).

Here, as in *Ingle*, *Alexander*, and *Armendariz*, the many unconscionable provisions of the arbitration agreements have the cumulative effect of placing a thumb on Cintas' side of the scale.  Severing these provisions would leave little or nothing of the agreements to enforce, and indeed would amount to large-scale rewriting of the agreements – a task beyond the Court's authority.  Because these agreements are so thoroughly one-sided in Cintas' favor, they cannot be enforced.

### D. The Agreements Are Invalid for Lack of Consideration

The party seeking to compel arbitration has the initial burden of proving the existence of an enforceable agreement.  *See, Gibson*, 121 F.3d at 1130.  Any contract, including an agreement to arbitrate,  is unenforceable unless it is supported by proper consideration.  *E.g.*, *Holmes v. Coverall N. Am.*, 336 Md. at 544, 649 A.2d at 369-370.  While Cintas acknowledges this requirement (Motion at 16), it fails to provide any evidence plaintiffs actually received any consideration in exchange for their signatures on the proferred arbitration agreements.  Instead, Cintas merely relies on the vague or non-existent recitations of "consideration" in the agreements themselves.

As demonstrated below, these recitations are insufficient to prove that any plaintiff received consideration sufficient to bind them to the arbitration clauses in Cintas' employment agreements.

1    While each form agreement purports to set forth a list of possible employment benefits to be granted

2    the employee "[a]s consideration for this Agreement," even a cursory review of these agreements

3    reveals that Cintas is not bound by the terms of the agreements to provide any purported

4    consideration.  In the same section in which Cintas recites the "consideration" to hire, promote or

5    grant some other benefit to the employee, Cintas confirms that the "Employee's employment by

6    Employer may be terminated for any reason at any time."  *E.g.*, Def's Exs. B-III.  Because the right

7    to employment and its benefits may be withdrawn "for any reason at any time," the promise is

8    illusory.[33]  Because all the arbitration agreements reserve Cintas' right to fire its employees without

9    limitation and impose no restriction on its right otherwise to withdraw the recited consideration,

10   these agreements confer no enforceable rights on plaintiffs against Cintas.

11       Even assuming that the agreements were not unenforceable on their face, several of them do

12   not recite any consideration at all, since none of the employment benefit boxes were checked at the

13   time the agreements were signed.  *See* Def's Exs. L, Z, XX.  Further, many agreements submitted by

14   Cintas do not specify the nature of the consideration, leaving the employee to guess about what, if

15   any, benefit is being offered in exchange for agreeing to Cintas' form agreement.  Def's Exs. YY,

16   ZZ, AAA-III.  Since the principal purposes of the consideration requirement are the "'cautionary

17   function of bringing home to the promisor the fact that his promise is legally enforceable and an

18   evidentiary function ... of making it more likely that an enforceable promise was intended,'" an

19   enforceable contract cannot be executed where the promisor did not know what promise was being

20   offered as consideration.  *Gibson*, 121 F.2d at 1131 (*citing Scholes v. Lehmann*, 56 F.3d 750, 756

21   (7th Cir. 1995), *cert. denied*, 516 U.S. 1028 (1995)).  Where, as here, no benefit or promise is

22   identified, there is no consideration to support the contract.

23

24

---

25   [33]     *E.g., Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 316 (6th Cir. 2000) (quoting 1

26   Samuel Williston, Contracts § 43, at 140 (3d ed. 1957) for the rule that "[w]here a promisor retains
     an unlimited right to decide later the nature or extent of his performance, the promise is too

27   indefinite for legal enforcement.  The unlimited choice in effect destroys the promise and makes it
     merely illusory").

28

1        Even where there is an explicit recitation of consideration, plaintiffs have submitted

2  substantial evidence that the recitations are untrue.  Although the agreements indicate they were

3  being signed in exchange for being hired, many plaintiffs have submitted declarations stating they

4  had already been hired without reference to any arbitration agreement and were only asked to sign

5  that agreement after their hire or stating that the purported job benefit described in the arbitration

6  agreement was never provided.[34]  These declarations demonstrate the absence of consideration for

7  these plaintiffs' arbitration agreements and undercut the company's implicit argument that the

8  agreements should be taken as reliable records of the legal consideration provided for each

9  employee's signature on any of the agreements.

10        A previous decision to hire an employee does not constitutes sufficient consideration for a

11  later agreement to arbitrate.  *Gibson*, 121 F. 3d at 1132 (applying Indiana law, holding there was no

12  consideration to support an arbitration agreement where employer had not agreed to arbitrate its

13  potential claims and the employee was already hired at the time she signed the agreement); *Dorsey v.*

14  *H.C.P.  Sales Inc.*, 46 F. Supp. 2d 807 (N.D. Ill. 1999) (no consideration where plaintiff "had already

15  been hired when the defendant-company asked her to sign the arbitration agreement, and the

16  company did not promise anything in exchange for her promise.").  Any promises Cintas made to

17  plaintiffs that were separate and distinct from the arbitration agreements cannot be used to validate

18  those agreements.  Cintas simply cannot recycle this past consideration as support for arbitration

19  agreements that were executed later.[35]

20

---

21  [34]    *E.g.*, Jay  Dec., ¶¶ 4-5 (promotion in name only); Wasmer Dec., ¶ 4 (promotion received
22  earlier without reference to arbitration agreement). *See also* Anderson  Dec., ¶¶ 2, 6; Broadnax Dec.,
    ¶ 4; M. Brown Dec., ¶ 9; Brumfield Dec., ¶¶ 2-3, 5; Chainuck Dec., ¶¶ 2-4; Charles Dec., ¶¶ 2-3, 7;
23  Cruse Dec., ¶ 2; Edwards Dec., ¶¶ 2, 5; Handy Dec., ¶¶ 2-3; Huertas Dec., ¶ 4; Madden Dec., ¶ 4;
    Qureshi Dec., ¶ 4; Samuels Dec., ¶¶ 2, 5; Williams Dec., ¶¶ 3-5; Zadnik  Dec., ¶ 7.

24  [35]    *Dimario v. Coppola*, 10 F. Supp. 2d 213, 221 (E.D.N.Y. 1998) (discussing N.Y. law that past
    "'"consideration' - action already taken before a promise is made - cannot be consideration for the
25  promise"'") (citations omitted); *Gorman v. Earmark, Inc.*, 968 F. Supp. 58, 63 (D. Conn. 1997)
    (discussing Connecticut law noting: "§It is an accepted principle of law in this state that when a
26  party agrees to perform an obligation for another to whom that obligation is already owed  . . . the
    second agreement does not constitute a valid, binding contract.'"); *Kelly-Springfield Tire Co. v.*
27  *Action Auto. Distrib., Inc.*, 648 F. Supp. 731, 734 (N.D. Ill. 1986) (discussing Illinois law, noting
    that "consideration once rendered cannot be recycled as consideration for a separate, subsequent

28

Nor can Cintas argue that its agreements are supported by the "promise of continued employment."  Not only is such a promise illusory, but Cintas has denied that its arbitration agreements are signed in exchange for the promise of continued employment.  *See* Pepich Ex. 4.[36]

### E.    Individual Plaintiffs Are Bound by Arbitration Clause in Union Contracts

Cintas argues that Plaintiffs Lloyd, Smith, Lightfoot, and Seath, each of whom worked for Cintas pursuant to a collective bargaining agreement, are bound by those agreements' arbitration clauses to submit their claims to arbitration.  Motion at 19-24.  But a union cannot waive its members' right to litigate their personal FLSA claims in court through the adoption of an arbitration clause in a collective bargaining agreement.  As the Supreme Court has explained:

> In sum, the FLSA rights petitioners seek to assert ... are independent of the collective-bargaining process.  They devolve on petitioners as individual workers, not as members of a collective organization.  They are not waivable.

*Barrentine v. Ark.-Best Freight Sys. Inc.*, 450 U.S. 728, 745 (1981); *Collins v. Lobdell*, 188 F.3d 1124, 1127-28 (9th Cir. 1999), *cert. denied*, 529 U.S. 1107 (2000); *Albertson's Inc. v. UFCW*, 157 F.3d 758 (9th Cir. 1998); *Local 246 Util. Workers Union v. S. Cal. Edison Co.*, 83 F.3d 292 (9th Cir. 1996).  Nor can the arbitration clause in a collective bargaining agreement prevent plaintiffs from enforcing claims under state wage and hour laws in court.  *Livadas v. Bradshaw*, 512 U.S. 107, 123-25 (1994) (state wage claims not preempted under the LMRA.[37]

---

undertaking."); *McMullen v. Meijer, Inc.*, 337 F.3d 697, 701 (6th Cir. 2003) ("It is an elemental tenet of Michigan contract law, which applies here, that past consideration cannot serve as legal consideration for a subsequent promise.").

[36]    *See Advanced Copy Products Inc. v. Cool*, 363  N.E. 2d 1070, 1071 (Ind. App. 1977) ("[S]ince the trial court found that there was no evidence which indicated that [the employee's] continued employment ... was dependent upon his signing the new contract which contained the covenant not to compete ... such continued employment did not constitute adequate consideration to support such covenant.").

[37]    *Barrentine* follows *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), in which the Supreme Court held that an arbitration clause in a collective bargaining agreement does not preclude an individual covered by that agreement from litigating Title VII claims in court.  After *Gardner-Denver* and *Barrentine*, the Supreme Court decided *Metro. Edison Co. v. NLRB*, 460 U.S. 693 (1983), holding that a union may waive its members' individual rights under the National Labor Relations Act if the waiver is clear and unmistakable.  The Court explained that although the

1    In *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 77 (1998), the Supreme Court

2  expressly left open the question whether a union may waive individual employees' statutory forum

3  rights. ("[W]e find it unnecessary to resolve the question of the validity of a union-negotiated waiver

4  [of the right to bring an ADA claim in court], since it is apparent to us . . . that no such waiver has

5  occurred.").  Since the Court's decision in *Wright*, the Ninth Circuit has revisited whether the right to

6  bring an FLSA claim in court can be waived pursuant to a collective bargaining agreement's

7  arbitration clause, and resoundingly reaffirmed *Barrentine*'s holding:

8      "[C]ongressionally granted FLSA rights take precedence over conflicting provisions
       in a collectively bargained compensation agreement." *Barrentine*, 450 U.S. at 740-
9      41.  Consequently, exhaustion of remedies provided for in a collective bargaining
       agreement is not required even where a claim based on statutory rights also presents
10     a claim under the agreement.

11  *Collins*, 188 F.3d at 1127.[38]

12    Cintas' argument that *Collins* is inapposite because that case "included no discussion of

13  whether there was a 'clear and unmistakable waiver'" misses the point.  Motion at 23.  *Collins* does

14  not address whether the CBA contained a "clear and unmistakable waiver" of employees' right to

15  litigate their FLSA claims precisely because the FLSA claim cannot be waived.  Even if the CBA

16  contained what appeared to be a clear and unmistakable waiver of employees' right to litigate their

17

18  _____

19  individual rights at issue in *Gardner-Denver* were not waivable, "the National Labor Relations Act
    contemplates that individual rights may be waived by the union so long as the union does not breach
20  its duty of good-faith representation." *Id.*  460 U.S. at 706 n.11.  Thus, "*Gardner-Denver* stands as a
    firewall between individual statutory rights the Congress intended can be bargained away by the
21  union, *see, e.g.*, *Metropolitan Edison* ... and those that remain exclusively within the individual's
    control."  *Air Line Pilots Ass'n Int'l v. N.W. Airlines, Inc.*, 199 F.3d 477, 484-85 (D.C. Cir. 1999).

22  [38]   Faced with binding Ninth Circuit precedent that forecloses its argument, Cintas argues that

23  this Court should follow out-of-circuit cases instead.  Motion at 20-21.  Of the cases Cintas cites for
    its argument that *Wright* effectively overruled the *Gardner-Denver/Barrentine* line of cases, only the
24  Fourth Circuit's cases actually so hold.  In *Rogers v. New York Univ.*, 220 F.3d 73, 75 (2d Cir. 2000)
    (per curiam), the Second Circuit reaffirmed that a union may not waive its members' rights to litigate
25  their statutory discrimination claims.  *Accord Bratten v. SSI Servs. Inc.*, 185 F.3d 625, 630 (6th Cir.
    1999).  *Clarke v. UFI*, 98 F. Supp. 2d 320, 322 (E.D.N.Y. 2000), ruled that a union could waive its
26  members' rights to litigate their individual discrimination claims, but the case was decided prior to
    *Rogers* and is no longer good law.

27

28

1  FLSA claims, such a waiver would be unenforceable.[39]  Thus, Plaintiffs Lloyd, Lightfoot, Seath, and

2  Smith may not be compelled to arbitrate their claims.[40]

3  DATED:  October 2, 2003                    Respectfully submitted,

4                                             MILBERG WEISS BERSHAD
                                                  HYNES & LERACH LLP
5                                             THEODORE J. PINTAR
                                              STEVEN W. PEPICH
6

7                                                    /s/ Steven W. Pepich
                                                   STEVEN W. PEPICH
8
                                              401 B Street, Suite 1700
9                                             San Diego, CA  92101
                                              Telephone:  619/231-1058
10                                            619/231-7423 (fax)

11                                            MILBERG WEISS BERSHAD
                                                  HYNES & LERACH LLP
12                                            ALBERT H. MEYERHOFF (54134)
                                              355 South Grand Avenue, Suite 4170
13                                            Los Angeles, CA  90071
                                              Telephone:  213/617-9007
14                                            213/617-9185 (fax)

15                                            MILBERG WEISS BERSHAD
                                                  HYNES & LERACH LLP
16                                            NANCY M. JUDA

17  _____

18  [39]     It is clear under the standards enunciated in *Wright* that the CBAs contain no "clear and
    unmistakeable" waiver of the plaintiffs' right to litigate their FLSA and state overtime claims in
19  federal court.  Under the 2001-2004 CBA, arbitration is only required with regard to "any claim of
    violation of this Agreement, charge of discrimination, grievance or dispute aris[ing] between the
20  parties."  Def's Ex. KKK at 7.  The 1995-1999 CBA only permits arbitration with respect to an
    employee's suspension, discharge or "some other matter" raised by grievance and not resolved
21  through the grievance process.  Def's Ex. LLL at 7-8.  These clauses include very general references
    to grievances, disputes and other matters, "which could be understood to mean matters in dispute
22  under the contract," and thus do not evidence a clear waiver of employees' rights to litigate their
    statutory wage claims. *Wright*, 525 U.S. at 177.  Nor is there any incorporation of the wage and hour
23  protections set forth in the FLSA or applicable state law.  *Id.*  While the CBAs include a statement
    that it is the "intent, understanding and practice" of the union and Cintas that the plaintiff drivers are
24  "outside salesmen" and, thus, exempt from the protections of the FLSA, plaintiffs here do not claim
    a violation of this "understanding" in the CBA, but rather that this understanding is wrong under
25  applicable state and federal statutes.  Under these circumstances, plaintiffs' claims that are not
    exempt from FLSA protections do not fall within the scope of the CBA arbitration procedure.

26  [40]     Plaintiff Seath worked pursuant to a collective bargaining agreement that expired in 2001.
    Clendening Dec., ¶70 & Def's Ex. LLL.  The Court need not decide whether Mr. Seath's claim
27  would be arbitrable pursuant to that expired agreement, however, because the Ninth Circuit law is
    clear that Seath's right to bring his FLSA claims in court cannot be waived.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALTSHULER, BERZON, NUSSBAUM,
  RUBIN & DEMAIN
MICHAEL RUBIN
SCOTT A. KRONLAND
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  415/421-7151
415/362-8064 (fax)

TRABER & VOORHEES
THERESA M. TRABER
STEFANIE KIM GLUCKMAN
128 No. Fair Oaks Avenue, Suite 204
Pasadena, CA  91103
Telephone:  626/585-9611
626/577-7079 (fax)

Attorneys for Plaintiffs

1

<u>DECLARATION OF SERVICE BY MAIL</u>

2

I, the undersigned, declare:

3

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States

4

and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in

5

the within action; that declarant's business address is 401 B Street, Suite 1700, San Diego, California

6

92101.

7

2.      That on October 2, 2003, declarant served the PLAINTIFFS' MEMORANDUM IN

8

9

OPPOSITION TO DEFENDANT CINTAS CORPORATION'S MOTION TO COMPEL

10

ARBITRATION AND TO STAY FURTHER PROCEEDINGS by depositing a true copy thereof in

11

a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully

12

prepaid and addressed to the parties listed on the attached Service List.

13

3.      That there is a regular communication by mail between the place of mailing and the

14

places so addressed.

15

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 2nd

16

day of October, 2003, at San Diego, California.

17

18

_____
                              /s/ Dawn C. Casselman

19

                              DAWN C. CASSELMAN

20

S:\PleadingsSD\Cintas\BRF00001796.doc

21

22

23

24

25

26

27

28

CINTAS

Service List - 9/24/2003    (03-0100)

Page 1 of  1

**Counsel For Defendant(s)**

Mark C. Dosker
Michael W. Kelly
Joseph A. Meckes
Squire, Sanders & Dempsey L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3482
　415/954-0200
　415/391-2493 (Fax)


**Counsel For Plaintiff(s)**

Michael  Rubin
Scott A. Kronland
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA  94108
　415/421-7151
　415/362-8064 (Fax)


Albert H. Meyerhoff
Milberg Weiss Bershad Hynes & Lerach LLP
355 South Grand Avenue, Suite 4170
Los Angeles, CA  90071
　213/617-9007
　213/617-9185 (Fax)

Theodore J. Pintar
Steven W. Pepich
Milberg Weiss Bershad Hynes & Lerach LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
　619/231-1058
　619/231-7423 (Fax)


Theresa M. Traber
Stefanie Kim Gluckman
Traber & Voorhees
128 North Fair Oaks Ave., Suite 204
Pasadena, CA  91103
　626/585-9611
　626/577-7079 (Fax)