United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL VELIZ, et al.,

Plaintiffs,

v.

Cintas Corporation, et al.,

Defendants.
_______________________________________/

No. C 03-1180 SBA

**ORDER GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, GRANTING PLAINTIFFS' AND DEFENDANTS' REQUEST TO FILE SUR-REPLIES AND ORDERING SUPPLEMENTAL BRIEFING RE DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

[Docket Nos. 45, 52, 115, 118]

This matter comes before the Court on Defendants' "(Cintas") Request for Judicial Notice [Docket No. 52] and Motion to Compel Arbitration and Stay Proceedings [Docket No. 45] (the "Motion to Compel"). Having read the papers submitted and being fully informed, the Court GRANTS Cintas' Request for Judicial Notice. Because of the important issues raised by Plaintiffs' Sur-Reply, the Court GRANTS Plaintiffs' Request to File a Sur-Reply [Docket No. 115] and Cintas' Request to File a Sur-Sur Reply [Docket No. 118] responding to it. The Court has reviewed the parties' briefing on the issue of compelling arbitration thoroughly and has concluded that it would benefit from supplemental briefing as discussed in Section II(C), supra.

**I. REQUEST FOR JUDICIAL NOTICE**

Cintas has requested that the Court take Judicial Notice of the following, court-filed documents: (1) Complaint filed in Vaca v. Cintas Corp., Los Angeles Superior Court Case No. BC250459; (2) Complaint

filed in Barajas v. Cintas Sales Corp., Los Angeles Superior Court Case No. BC261276; (3) Order Granting in Part Defendants' Motion to Compel Arbitration and to Stay Judicial Proceedings, which was entered by Judge Carolyn Kuhl in Vaca v. Cintas Corp., Los Angeles Superior Court Case No. BC250459 on October 19, 2001.

Because these are documents filed with a court and are part of the public record, the Court GRANTS Cintas' request and takes judicial notice of the documents.

## II. CINTAS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

There are more than 60 Plaintiffs in this action who work or have worked for Cintas as route drivers, usually called "Service Sales Representatives" ("SSRs"), delivering uniforms and other products to Cintas' customers nationwide. As part of their employment agreements, Plaintiffs signed an arbitration clause that is governed by the Federal Arbitration Act (the "FAA") and the law of the state in which the employee worked for Cintas. In its opposition to Plaintiff's Motion for Facilitated Notice, Cintas has described SSRs as employees may transport goods in interstate commerce. The FAA, however, exempts from arbitration contracts that govern "transportation workers" engaged in interstate commerce. Thus, as a threshold matter, the Court cannot address the parties' substantive arguments regarding the enforceability of the arbitration clause, because the parties must clarify which, if any, of Plaintiffs are exempt from the FAA under the "transportation worker" exemption. The parties must also provide supplemental briefing on the issue of whether the arbitration clause is otherwise unenforceable because of the FAA exemption.

### A. LEGAL DISCUSSION: THE "TRANSPORTATION WORKER" EXEMPTION

The FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; Harden v. Roadway Packaging Sys., 249 F.3d 1137, 1141 (9th Cir. 2001). The Supreme Court has held that the phrase "any other class of workers engaged in foreign or interstate commerce" means "transportation workers. Circuit City Stores Inc. v. Adams, 532 U.S. 105, 110 (2001). "Transportation workers," in turn, means "those workers actually engaged in the movement of goods in interstate commerce." Id. at 112 (internal quotations and citations omitted).

In making this holding, the Court appears to have endorsed previous rulings from the Third and Seventh

circuits, which held the same. For example, almost fifty years before the Court's ruling, the Third Circuit held that the FAA applies to "only those other classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." Tenney Eng'g, Inc. v. United Elec., Radio & Mach. Workers of Am., Local 437, 207 F.2d 450, 452 (3d Cir.1953); see also, Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 227 (3d Cir.1997) (stating that Tenney Eng'g is still good law and that the "only class of workers included within the exception to the FAA's mandatory arbitration provision are those employed directly in the channels of commerce itself."). Similarly, the Seventh Circuit had previously held that the exclusion " is limited to "transportation workers," or in other words, workers actually engaged in the movement of goods in interstate commerce...." Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 53 n. 3 (7th Cir.1995).

The most obvious case where a plaintiff falls under the FAA exemption is where the plaintiff directly transports goods in interstate, such as interstate truck driver whose primary function is to deliver mailing packages from one state into another. See Harden, 249 F.3d at 1140 (holding that a truck driver who provided courier service to deliver packages was exempt from the FAA). The harder case is where the plaintiff is one-step removed from the actual transportation. The Ninth Circuit has not addressed this issue.

In the Sixth and Eleventh circuits, the term "transportation worker" contemplates more than drivers, it contemplates a supervisor or other worker who oversees the delivery of goods in interstate commerce. See Bacashihua v. United States Postal Serv., 859 F.2d 402, 405 (6th Cir.1988) (exempting from the FAA a parcel post mail distributor at a Bulk Mail Center who did not directly deliver mail or packages); American Postal Workers Union, AFL-CIO v. United States Postal Serv., 823 F.2d 466, 473 (11th Cir.1987) (determining that postal workers, who are "responsible for dozens, if not hundreds, of items of mail moving in 'interstate commerce' on a daily basis, fall within the purview of the FAA's exemption). The Sixth and Eleventh circuits' rulings were decided before Circuit City, however, and it is unclear to what degree these cases remain good law.

At the very least, later cases may limit these two cases to situations in which the plaintiff was employed in the transportation industry in the actual movement of goods. For example, where the facts demonstrate that a plaintiff works in the transportation industry and oversees 30-35 delivery drivers directly responsible for

moving goods, at least one court in an unpublished case has analogized the plaintiff to a delivery driver and found that she fell under the "transportation worker" exemption. Palko v. Airborne Express, Inc., 2003 WL 21077048, *4 (E.D.Pa., April 23, 2003).

In contrast, where the transportation of goods is not the bread and butter of the industry, a plaintiff who does not directly move the goods herself is not exempt from the FAA. For example, a pre-departure security agent at an international airport who merely inspected and guarded goods in interstate commerce prior to their transport, but did not actually transport them, did not fall under FAA's "transportation worker" exemption. Perez v. Globe Airport Security Serv., Inc. 253 F.3d 1280, 1283-84 (11th Cir.2001), vacated per stipulation, 294 F.3d 1275 (2002). Other courts have similarly held that a security guard at a train station did not fall under the FAA's exemption. Cole v. Burns Int'l Security Serv., 105 F.3d 1465, 1471 (D.C.Cir. 1997). Nor does a warehouse worker who packages, unloads and loads products onto a distribution truck. Kropfelder v. Snap-On Tools Corp., 859 F.Supp. 952, 958- 59 (D.Md. 1994). Nor does a worker who is merely assigned to a single-transportation related job. Adkins v. Labor Ready, Inc., 303 F.3d 496 (4th Cir. 2002).[1] Not even a worker who acts as a sales associate, wholesaler, office manager, and vice-president in the packaged products sales department of a company a "transportation worker." Seus v. John Nuveen & Co., Inc., 1997 WL 325792 (E.D.Pa., Jun. 2, 1997). His activities do not include him physically transporting a good through commerce.

Thus, reviewing the case law, this Court can see a general trend amongst the circuits. Plaintiffs who are personally responsible for transporting goods, no matter what industry they are in, are "transportation workers" under the FAA exemption. Plaintiffs who oversee the transportation of goods in the transportation industry itself are also "transportation workers" under the FAA exemption. Plaintiffs who both (1) are not directly transporting goods; and (2) are not in the transportation industry itself, are not exempt.

---

[1]Adkins does not stand for the proposition, however, that the transportation work must be part of the daily assignment. In Adkins the Fourth Circuit was addressing plaintiffs' overly broad claim that they were all "transportation workers" in one way or another. The court observed that defendant's employees worked in the areas of construction, landscaping, warehousing, catering, moving, hotel, stevedoring, and light industrial markets. Id. at 505. While "[s]ome categories in this laundry list can be construed as including work related to the interstate transportation of goods" the court refused to apply the FAA exemption because plaintiffs failed to show that their "daily assignments were in transportation-related industries. In fact, under the apparent principle of [Plaintiffs' ] complaint, if an [ ] employee had been assigned to even a single transportation-related job...he should be exempted." Id.

United States District Court
For the Northern District of California

**B. WHETHER PLAINTIFFS ARE EXEMPTED**

This brings the Court to the question of whether any of Plaintiffs in the case at hand fall within the FAA exemption. Based on Cintas' Opposition to Facilitated Notice, it appears that at least 18% of its employees do. Cintas would have the Court find that the inapplicability of the FAA would be irrelevant to its Motion to Compel Arbitration because Cintas also applied state law. (Def's Sur-Reply Memo in Supp. of Mot. to Compel Arbit. at 3:6-10.)

Cintas' Motion to Compel Arbitration does specifically state that they seek an order compelling arbitration pursuant to the FAA and the laws of Arkansas, California, Colorado, Connecticut, Indiana, Illinois, Maryland, Michigan, Missouri, New Jersey, New York and North Carolina. (Def's Motion to Compel Arbitration at 1:6-12.) Cintas, however, did not specifically analyze whether there were state arbitration statutes. Rather, Cintas analyzed each state's law on contracts and how to determine whether an agreement to arbitrate governed by the FAA was enforceable under the state's contract laws. Cintas also presented case law from the states of New Jersey, New York, Colorado, Maryland and North Carolina that suggested that the public policy of these states favors arbitration. (Def's Mot. to Compel Arbitration at 12:1-15.) Again, nothing in this analysis specifically addresses whether Plaintiffs were compelled to arbitrate the dispute under an applicable state statute.

Even if Cintas did present state arbitration statutes, however, this Court cannot enforce them without first resolving its concerns regarding preemption. "Federal law preempts state law on issues of arbitrability." Three Valleys Mun. Water Dist. v. E.F. Hutton Co., Inc., 925 F.2d 1136, 1140 (9th Cir. 1991). At this point in the briefing, the Court doubts that state law would be preempted. The Court observes that it does not appear that Congress intended to exempt "transportation workers" from ever arbitrating a dispute. For example, railroad workers who are exempt from arbitration under the FAA, are compelled to arbitrate under the Railway Labor Act of 1926.

This reading comports with the Supreme Court's holding in other contexts that an exemption did not preempt state law. See, e.g., Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996) (while providing for exemption to pre-market approval review of certain medical devices under Medical Device Amendments, Congress intended only to maintain the status quo and not to preempt any state law claims of negligent design.). Of

United States District Court
For the Northern District of California

course, there are also cases in which the Supreme Court has found the very opposite. See, e.g., McGoldrick v. Gulf Oil Corp., 309 U.S. 414, 427 (1940) (holding that where Congress had exempted from federal taxation certain imported petroleum and stated its purpose in doing so was to "enable American refiners to meet foreign competition," the exemption preempted state tax laws.). In cases such as McGoldrick, the Court looked to Congress' express intention in creating the exemption.

If the FAA does not preempt state laws, the Court still has concerns regarding the enforceability of the arbitration clauses in the case at hand. "Arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986). The Court has strong concerns how a party exempted by the FAA could ever legally or factually agree to submit to arbitration governed by that statute. These concerns are irrespective of whether or not the party knew she was exempted. At the very least, this raises questions regarding ambiguity, meeting of the minds, unconscionability, and enforceability of the agreements and requires further briefing.

**C. INSTRUCTIONS ON SUPPLEMENTAL BRIEFING**

Based on the foregoing, the Court orders supplemental briefing that fleshes out the questions raised. In particular the parties shall address:

- Which Plaintiffs are purportedly "transportation workers." Because the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration, Gilmer v. Interstate/Johnson Lane Corp., Plaintiffs carry the burden of demonstrating that they are "transportation workers." 500 U.S. at 26. At the very least, Plaintiffs must submit admissible evidence in the form of declarations and such supporting their claim.
- Whether the FAA's "transportation worker" exemption preempts state arbitration statutes such that if an arbitration agreement is governed by the FAA and state law, "transportation workers" cannot be compelled to arbitrate under state law. Such supplemental briefing must include reference to Congress' intent in enacting the FAA and providing the exemption, both of which may be deduced from (1) the text of the statute; (2) the statute's legislative history; or (3) case law. See, e.g., Shearson/American Express v. McMahon, 482 U.S. 220, 227 (1987). Of

United States District Court
For the Northern District of California

course, as the Supreme Court has already observed, the legislative history behind the "transportation worker" exemption is sparse. Circuit City Stores, 532 U.S. at 119.

- Whether the arbitration agreement as applied to Plaintiffs who are "transportation workers" is an enforceable contract. The parties must also address whether at the time the contracts were signed, Plaintiffs or Cintas knew that (1) "transportation workers" were exempted by the FAA, and (2) Plaintiffs were being hired as "transportation workers."

Because these are complex issues, the supplemental briefs should be thorough, thoughtful, and detailed.

## III. CONCLUSION

Nothing in the Court's order today requiring fact-specific supplemental briefing contradicts its earlier grant of Conditional Certification of the Proposed Class. The standards for proof for compelling arbitration are higher than that for granting conditional certification. Moreover, the proposed class has been defined to filter out many SSRs who would qualify as "transportation workers."

IT IS HEREBY ORDERED THAT the parties shall submit supplemental briefing on the questions the Court raises in Section II(C) of this order. Each party shall be limited to 25 pages, as allotted by the Local Rules for motions. Because Plaintiffs carry the burden of showing that they are "transportation workers" exempted from the FAA, Plaintiffs shall file the opening brief. The briefing schedule shall be as follows:

- Plaintiffs shall file their opening brief no later than **November 14, 2003**.
- Cintas shall file its response no later than **November 24, 2003**.
- Plaintiffs shall file their reply no later than **December 4, 2003**.
- This matter is set for hearing on **December 16, 2003 at 1:00 p.m.**

#

United States District Court
For the Northern District of California

IT IS FURTHER ORDERED THAT Cintas' Request for Judicial Notice [Docket No. 52] is GRANTED; Plaintiffs' Request to File a Sur-Reply [Docket No. 115] is GRANTED; and Cintas' Request to File a Response to Plaintiffs' Sur-Reply [Docket No. 118] is GRANTED.

IT IS SO ORDERED.

Dated: November 4, 2003

/s/ Saundra Brown Armstrong
SAUNDRA BROWN ARMSTRONG
United States District Judge