Michael Rubin (S.B. No. 80618)
Scott A. Kronland (S.B. No. 171693)
Eileen B. Goldsmith (S.B. No. 218029)
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, California 94108
(415) 421-7151 - Office
(415) 362-8064 - Fax

Theresa M. Traber (S.B. No. 116305)
Vanessa Eisemann (S.B. No. 210478)
Jocelyn Sperling (S.B. No. 211714)
TRABER & VOORHEES
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
(626) 585-9611 - Office
(626) 577-7079 - Fax

Theodor J. Pintar (S.B. No. 131372)
Steven W. Pepich (S.B. No. 116086)
James A. Caputo (S.B. No. 120485)
Lawrence A. Abel (S.B. No. 129596)
Helen I. Zeldes (S.B. No. 220051)
LERACH COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
(619) 231-1058 - Office
(619) 231-7423 - Fax

(Additional counsel on following page)

Attorneys for Plaintiffs PAUL VELIZ, *et al.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL VELIZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CINTAS CORPORATION, *et al.*,<br><br>Defendants. | ) CASE NO. C 03-01180 SBA<br>)<br>) **PLAINTIFFS' REPLY BRIEF IN**<br>) **SUPPORT OF MOTION FOR**<br>) **RECONSIDERATION**<br>)<br>) Hearing Date:      None set<br>) Time:<br>) Courtroom:<br>)<br>) |

1  Albert H. Meyerhoff, Esq.  (S.B. No. 54134)
   LERACH COUGHLIN STOIA GELLER
2     RUDMAN & ROBBINS LLP
   355 South Grand Avenue, Suite 4170
3  Los Angeles, California  90071
   (213) 617-9007 - Office
4  (213) 617-9185 - Fax

5  Nancy Juda, Esq.
   LERACH COUGHLIN STOIA GELLER
6     RUDMAN & ROBBINS LLP
   1100 Connecticut Ave., N.W., Suite 730
7  Washington, D.C. 20036
   (202) 822-2024- Office
8  (202) 828-8528- Fax

9  Attorneys for Plaintiffs PAUL VELIZ, *et al.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   NINTH CIRCUIT LAW PRECLUDES CINTAS FROM REQUIRING PLAINTIFFS
     TO SHARE THE COSTS OF ARBITRATION IN A CLASS OR COLLECTIVE
     ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  PLAINTIFFS MUST BE PERMITTED TO PROCEED ON A CLASS OR
     COLLECTIVE BASIS IN A SINGLE ARBITRAL VENUE IN THIS DISTRICT . . 8

     A.   Under Ninth Circuit Law, Section 4 of the FAA Requires that the Arbitration
          Proceed in the Northern District of California . . . . . . . . . . . . . . . . . . . . . . . . . 8

     B.   Any Prohibition Against Class or Collective Arbitration Is Unconscionable
          Under State Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. THE CLENDENING DECLARATION AND THE AAA'S UNANTICIPATED
     COST-SPLITTING CONSTRUCTION RENDER THE AGREEMENTS
     PROCEDURALLY UNCONSCIONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3

*Adkins v. Labor Ready, Inc.*,
   303 F.3d 496 (4th Cir. 2002) ............................................................... 13

4

*Adrian v. Smith Barney, Harris, Upham & Co., Inc.*,
5   841 F.2d 1059 (11th Cir. 1988) ............................................................. 9

6

*Beard v. Sheet Metal Workers Union, Local 150*,
   908 F.2d 474 (9th Cir. 1990) ............................................................... 9

7

*Champ v. Siegel Trading Co.*,
8   55 F.3d 269 (7th Cir. 1995) ............................................................... 13

9

*Circuit City Stores, Inc. v. Adams*,
   279 F.3d 889 (9th Cir. 2002) ...................................................... 4, 5, 15

10

*Cole v. Burns International Security Services*,
11   105 F.3d 1465 (D.C. Cir. 1997) ............................................................ 4, 6

12

*In re Complaint of Rationis Enterprises, Inc. of Panama*,
   No. 97-CV-9052(RO), 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999) ............... 11

13

*Concord Boat Corp. v. Brunswick Corp.*,
14   309 F.3d 494 (8th Cir. 2002) ............................................................... 7

15

*Continental Grain Co. v. Dant & Russell*,
   118 F.2d 967 (9th Cir. 1941) ............................................................... 2

16

*Cooper v. M.R.M. Investment Co.*,
17   367 F.3d 493 (6th Cir. 2004) ............................................................... 6

18

*Dupuy-Busching General Agency, Inc. v. Ambassador Insurance Co.*,
   524 F.2d 1275 (5th Cir. 1975) ............................................................. 10

19

*FTC v. Gill*,
20   265 F.3d 944 (9th Cir. 2001) ............................................................. 10

21

*Gatton v. T-Mobile USA, Inc.*,
   2003 WL 21530185 (C.D. Cal. Apr. 18, 2003) .................................... 9

22

*Gilmer v. Interstate/Johnson Lane Corp.*,
23   500 U.S. 20 (1991) ............................................................................. 4

24

*Gonick v. Drexel Burnham Lambert, Inc.*,
   711 F. Supp. 981 (N.D. Cal. 1988) ...................................................... 9

25

*Green Tree Fin. Corp. v. Bazzle*,
26   539 U.S. 444, 123 S. Ct. 2402 (2003) .......................................... 1, 13, 14

27

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000) ............................................................................. 4

28

*Hoffman-LaRoche, Inc. v. Sperling,*
    493 U.S. 165 (1989) ............................................................................... 6

*Homestake Lead Co. of Missouri v. Doe Run Resources Corp.,*
    282 F. Supp. 2d 1131 (N.D. Cal. 2003) ........................................... 2, 10

*Ingle v. Circuit City Stores, Inc.,*
    328 F.3d 1165 (9th Cir. 2003) ............................................................ 12

*Inland Bulk Transfer Co. v. Cummins Engine Co.,*
    332 F.3d 1007 (6th Cir. 2003) .............................................................. 9

*Johnson v. West Suburban Bank,*
    225 F.3d 366 (3d Cir. 2000) ............................................................... 13

*KKW Enterprises v. Gloria Jean's Gourmet Coffees Franchising Corp.,*
    184 F.3d 42 (1st Cir. 1999) ................................................................. 10

*Kuehner v. Dickinson & Co.,*
    84 F.3d 316 (9th Cir. 1996) .................................................................. 5

*Lozada v. Dale Baker Oldsmobile, Inc.,*
    91 F. Supp. 2d 1087 (W.D. Mich. 2000) ............................................ 12

*Lyster v. Ryan's Family Steak Houses, Inc.,*
    239 F.3d 943 (8th Cir. 2001) ................................................................ 9

*Maye v. Smith Barney Inc.,*
    897 F. Supp. 100 (S.D.N.Y. 1995) ...................................................... 9

*Moncrieff v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,*
    623 F. Supp. 1005 (E.D. Mich. 1985) .................................................. 9

*Morrison v. Circuit City Stores, Inc.,*
    317 F.3d 646 (6th Cir. 2003) ................................................................ 6

*Moses H. Cone Mem. Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983) ................................................................................. 8

*Murphy v. Schneider National, Inc.,*
    362 F.3d 1133 (9th Cir. 2004) ............................................................ 11

*Murray v. United Food & Commercial Workers International Union,*
    289 F.3d 297 (4th Cir. 2002) ................................................................ 9

*Organ v. Conner,*
    792 F. Supp. 693 (D. Alaska 1992) ...................................................... 9

*In re Paoli R.R. Yard PCB Litigation,*
    221 F.3d 449 (3d Cir. 2000) ................................................................. 7

*Pedcor Management Co., Inc. v. Nations Personnel of Texas, Inc.,*
    343 F.3d 355 (5th Cir. 2003) .............................................................. 13

*Red Bull Associates v. Best Western, Inc.,*
    862 F.2d 963 (2d Cir. 1988) ................................................................. 11

*Sink v. Aden Enterprises, Inc.,*
    352 F.3d 1197 (9th Cir. 2003) ............................................................... 9

*The Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972) ................................................................................ 11

*Ting v. AT&T,*
    319 F.3d 1126 (9th Cir. 2003) ............................................. 1, 4, 5, 7

*Walker v. Carnival Cruise Lines,*
    107 F. Supp. 2d 1135 (N.D. Cal. 2000) .............................................. 11

*Walker v. Ryan's Family Steak Houses, Inc.,*
    289 F. Supp. 2d 916 (M.D. Tenn. 2003) ......................................... 2, 14

## STATE CASES

*Armendariz v. Foundation Health Psychcare Services, Inc.,*
    24 Cal. 4th 83 (2000) ...................................................................... 12, 14

*Gutierrez v. Autowest, Inc.,*
    114 Cal. App. 4th 77 (2003) ................................................................ 12

*Martinez v. Master Protection Corp.,*
    118 Cal. App. 4th 107 (2004) .............................................................. 14

*Sav-on Drug Stores, Inc. v. Superior Court*
    34 Cal. 4th 319 (2004) ....................................................................... 13

*Szetela v. Discover Bank,*
    97 Cal. App. 4th 1094 (2002) ......................................................... 4, 12

## FEDERAL STATUTES

9 U.S.C. §3 ......................................................................................... *passim*

9 U.S.C. §4 ......................................................................................... *passim*

9 U.S.C. §16(a)(1)(A), (B) ......................................................................... 8

9 U.S.C. §16(b)(1), (2) ............................................................................... 8

29 U.S.C. §216(b) ............................................................................... 5, 13

## STATE STATUTES

Cal. Civ. Proc. Code §382 ......................................................................... 13

## NINTH CIRCUIT RULE

Ninth Cir. L.R. 36-3 .................................................................................. 5

# INTRODUCTION

The legal and factual issues before this Court are far more straightforward than Cintas would have the Court believe. Under governing Ninth Circuit law, an employer cannot force employees to pay half the costs of arbitration and cannot force them to arbitrate outside the judicial district in which the motion to compel arbitration is adjudicated. Under applicable state law, an employer cannot prohibit employees from proceeding in a class or collective arbitration. As a matter of law, Cintas' arbitration agreements are unconscionable and unenforceable, not only for the reasons established by plaintiffs' motion for reconsideration but also because of the many unenforceable provisions this Court previously found invalid (*i.e.*, the one-year statute of limitations, "loser pays" provision, and limitations on statutory attorneys' fees and costs). *See* April 5, 2004 Order at 19:7-20:17, 20:28-22:15; Pl. Br. at 4-5.

Cintas does not deny, nor could it, that Ninth Circuit law prohibits the enforcement of rules requiring employees to share the costs of arbitrating statutory claims against their employers. Nor does it offer any authority to support its untenable position that a plaintiff's choice to pursue claims against his employer on a class or collective basis, as the governing statute clearly allows, alters the analysis. Cintas tries to divert attention from these fatal defects in its argument and toward the completely meritless premise that plaintiffs' option to proceed in 2,200 separate arbitrations instead somehow renders the AAA's recently-announced cost-splitting rule unobjectionable. This argument is foreclosed by Ninth Circuit law holding that a plaintiff compelled to arbitrate his claims pursuant to an adhesive arbitration agreement may *not* be forced to split costs with the defendant, no matter whether the plaintiff proceeds individually or on behalf of a class of similarly situated persons. *See Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003).

Moreover, while plaintiffs do not dispute that the arbitrator is responsible for determining what a particular arbitration clause *means*, Congress (and state legislatures) have vested the *courts* with the authority and duty to determine whether a particular construction is legally permissible. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 2406 (2003). If a contractual ban on class or collective arbitration renders an agreement unconscionable, the courts must strike down that prohibition. Because Cintas' proposed construction prohibiting plaintiffs here from pursuing

their claims on a class or collective basis is unlawful under *both* state unconscionability law (*see* Pl. Br. at 19:12-21:16) and federal law regarding forum selection clauses (*see infra* at 7-11), the Court should invalidate that unlawful limitation *now*, without forcing plaintiffs to incur the additional burden, expense, and delay, of participating in a Clause Construction proceeding that can have only one legally-permissible result. As in *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 926, 934 (M.D. Tenn. 2003), this Court should hold Cintas' arbitration provision unconscionable as a matter of law.

Equally to the point, Cintas' arbitration-initiation clause cannot impair plaintiffs' ability to proceed as a class or collective group under the FLSA. By moving to compel arbitration in this district, Cintas waived any right to arbitrate in other judicial districts under Federal Arbitration Act ("FAA") §4, 9 U.S.C. §4, which requires the arbitration to be conducted in the judicial district where the defendant filed its petition to compel arbitration. Cintas erroneously claims that the venue-selection rule of §4 is inapplicable because it moved to compel arbitration under §3 of the FAA, 9 U.S.C. §3. That cannot be. Section 4 was the only possible statutory basis for compelling arbitration, and it requires the arbitration to proceed, if at all, in the Northern District of California. While §3 allows for a *stay of litigation* pending arbitration, it does not provide a basis for *compelling arbitration*. Only §4 could provide that relief.

Notably, Cintas does not cite a single case for its half-hearted assertion that §4 does not limit arbitration in this case to the Northern District of California. Def. Br. at 23 n.35. As plaintiffs established, *Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131 (N.D. Cal. 2003) and *Continental Grain Co. v. Dant & Russell*, 118 F.2d 967, 969 (9th Cir. 1941) are controlling and dictate that the arbitration must proceed in this District.

Cintas' tortured construction of the facts fares no better than its legal arguments. As it did in several earlier briefs, Cintas twists language and distorts reality in its continuing effort to impose impermissibly heavy burdens on the workers seeking to vindicate their statutory overtime rights in this litigation.

First, the Cintas arbitration agreements are unquestionably contracts of adhesion and are therefore procedurally unconscionable. Contrary to the position taken in this case, Cintas'

1  declarant, Jenice Clendening, has sworn under penalty of perjury in another case that all Cintas

2  SSR drivers *"are required* to sign an Employment Agreement that contains an agreement to

3  arbitrate." Declaration of Michael Rubin in Support of Plaintiffs' Motion for Reconsideration

4  ("Rubin Decl."), Exh. 20, ¶14 (emphasis added). Cintas' contorted efforts to construe this

5  statement as something other than an admission that signing the arbitration agreements is a

6  condition of employment beggar belief. Def. Br. at 15:16-16:6. For contract-of-adhesion purposes,

7  there is no difference between "requiring" someone to sign an agreement and making the agreement

8  "a condition of employment." In either case, the employee has no choice. Although Cintas'

9  lawyers stated otherwise in Cintas' original motion to compel arbitration, the evidence is

10  completely to the contrary.

11       Second, Cintas attempts to confuse the issues surrounding cost-shifting by its muddled

12  response to plaintiffs' analysis of the AAA rules, incorporated by reference into Cintas' arbitration

13  agreements, which unlawfully force plaintiffs to bear half the costs of the arbitration in this case.

14  Amazingly, even after this Court gave Cintas the opportunity to state definitively whether it would

15  shoulder all arbitration costs — thus in large part obviating the need for this motion — and after

16  Cintas refused to pay those costs (*see* Docket No. 365), Cintas still claims that the cost-splitting

17  issue is not ripe because it might still volunteer to pay for this arbitration. Def. Br. at 14:14-16.

18  The Court should not condone such game-playing. The Court gave Cintas the chance to pay for the

19  arbitration and Cintas declined.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

# ARGUMENT

## I. NINTH CIRCUIT LAW PRECLUDES CINTAS FROM REQUIRING PLAINTIFFS TO SHARE THE COSTS OF ARBITRATION IN A CLASS OR COLLECTIVE ACTION.[1]

The law is clear, and Cintas does not dispute, that Ninth Circuit law controls the federal issues raised in nationwide cases brought in district courts within the circuit.[2] Accordingly, as plaintiffs established in their opening brief, this Court must apply Ninth Circuit law to the federal issue whether Cintas' cost-splitting requirement violates plaintiffs' statutory rights.[3]

The controlling authorities are *Ting*, 319 F.3d at 1151, and *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894-95 (9th Cir. 2002). As the Ninth Circuit held in concluding that the cost-splitting provisions in *Ting* were unenforceable under federal law:

> Our decision is also consistent with the FAA.... [P]arties that agree to arbitrate statutory claims still are entitled to basic procedural and remedial protections so that they can effectively realize their statutory rights. *Circuit City*, 279 F.3d at 895 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 [ ] (1991)); *Cole*, 105 F.3d at 1482. Among these protections is the assurance that an individual need not "pay either unreasonable costs or any arbitrators' fees *or* expenses as a condition of access to the arbitration forum." *Cole*, 105 F.3d at 1482 (emphasis in the original) (listing five basic requirements that arbitration forum must meet).

319 F.3d at 1151; *accord*, *Adams*, 279 F.3d at 895 ("our decision is entirely consistent with federal law concerning the enforceability of arbitration agreements").

*Ting* unequivocally establishes that the Ninth Circuit's rule against cost-splitting applies whether a plaintiff chooses to proceed in arbitration individually or on a collective or class basis.

---

[1] Cintas argues that plaintiffs should have raised the cost-splitting issue with the arbitrator rather than the Court. Plaintiffs have raised the issue first before the Court because the newly-discovered facts and newly-decided law render the arbitration agreements unconscionable and unenforceable in their entirety, especially when viewed in conjunction with the prior unconscionable provisions.

[2] *See* Pl. Br. at 8:25-9:6 and cases cited therein.

[3] Whether excessive arbitration costs impermissibly burden the vindication of federal statutory rights is a question of federal law, not of state unconscionability law. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90-92 (2000) (analyzing arbitration cost issue without any consideration of whether the arbitration agreement was unconscionable under the applicable state law); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-32 (1991) (analyzing whether enforcement of an arbitration agreement would impair the plaintiff's ability to vindicate his statutory rights under the Age Discrimination in Employment Act without considering state unconscionability law). Because the question whether arbitration costs prohibit the vindication of statutory rights is an issue of federal law, the Ninth Circuit's cases must control. Cintas' reliance on out-of-circuit cases for the cost-splitting issue, Def. Br. at 12:3-13:9, is misplaced.

1  That class action asserted a facial challenge to the validity of AT&T's arbitration agreements with

2  its customers, not an as-applied or after-the-fact challenge to the application of the agreement in a

3  particular case. Plaintiffs brought their challenge as private attorneys general against AT&T under

4  the California Consumer Legal Remedies and Unfair Business Practices Acts, seeking a permanent

5  injunction against the enforcement of AT&T's arbitration agreements against any of its customers.

6  319 F.3d at 1130. They contended, *inter alia*, that the agreements' express ban on class arbitrations

7  and its rule requiring plaintiffs equally to share the costs of arbitration with AT&T rendered the

8  agreements unenforceable. The Ninth Circuit held that the ban on class arbitrations was

9  unconscionable as a matter of California law. *Id.* at 1150 (citing *Szetela v. Discover Bank*, 97 Cal.

10 App. 4th 1094 (2002)). The court then addressed the enforceability of the cost-splitting rule,

11 finding both that it impaired consumers' ability "effectively [to] realize their statutory rights" in

12 arbitration (under *Gilmer*), *and* that it was substantively unconscionable under California law. *Id.*

13 at 1151. Because the class arbitration ban was unenforceable, a plaintiff could freely elect whether

14 to arbitrate on an individual or class basis. Regardless of the plaintiff's choice to proceed

15 individually or on behalf of a class, the cost-splitting rule could not be enforced.[4]

16      Cintas' contention that *Ting* is inapposite because "*that* plaintiff had no option but to split

17 arbitration costs regardless of whether *that* plaintiff chose to proceed individually or on behalf of a

18 putative class" (Def. Br. at 7:16-18, emphasis added) thus completely misreads the case. Nor is

19 there any authority for Cintas' position that the availability of an alternative cost-free forum for

20 plaintiffs to litigate their more than 2,200 individual claims renders *Ting*'s rule against cost-

21 splitting inapplicable.[5] Under *Ting*, the possibility that an alternative forum might exist where

22

---

23      [4] *Adams* confirms that the Ninth Circuit's rule against cost-splitting also applies in the
    employment context. 279 F.3d at 895.

24      [5] For this reason, Cintas' strenuous efforts to argue that plaintiffs have no "substantive"
    right to arbitrate their FLSA claims on a collective basis are beside the point. The Ninth Circuit's

25  decision in *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 320 (9th Cir. 1996), only confirms that
    plaintiffs are entitled to vindicate their substantive rights under the FLSA in the arbitral forum. It

26  does not speak to whether pursuing a collective action under 29 U.S.C. §216(b) is a "substantive"
    right. *Id.* (Cintas' repeated reliance on the Ninth Circuit's unpublished decision in *Horenstein v.*

27  *Mortgage Mkt. Inc.*, Case No. 99-36125, flagrantly violates the Ninth Circuit's rules; the
    unpublished decision cannot be relied on for any purpose. Ninth Cir. L.R. 36-3.) Regardless of

28  whether 29 U.S.C. §216(b) affords a substantive right to litigate FLSA claims collectively, or states
                                                                              (continued...)

1 | plaintiffs would not be compelled to bear arbitration costs simply does not matter. In sum, under

2 | controlling Ninth Circuit law, plaintiffs may not be required to split arbitration costs, regardless of

3 | how they choose to pursue their claim.[6]

4 | It cannot seriously be disputed that the costs of arbitration vastly exceed, and are materially

5 | different from, court costs. Plaintiffs' counsel has conservatively estimated that the arbitration

6 | costs in this case could easily exceed $100,000. Rubin Decl., ¶¶25-33. Although Cintas challenges

7 | aspects of that estimate, it presents no counter-estimate; and Cintas cannot dispute that the

8 | arbitrator recently appointed by the AAA, Bruce Meyerson, charges $2,500 per day for his time and

9 | will necessarily incur travel costs for all hearings because he lives and works in Arizona. *Id.*, ¶25,

10 | Exhs. 3, 18, 19. With the supplemental filing fees, daily hearing fees and all other expenses

11 | required for AAA arbitrations, *see id.*, ¶¶25-33, the expenses encompassed by the AAA's cost-

12 | shifting rules will surely be well into six figures before this case is concluded.[7]

13 | _____

[5](...continued)
14 | Congress' strong public policy favoring wage-and-hour collective actions, *see Hoffman-LaRoche,*
15 | *Inc. v. Sperling,* 493 U.S. 165, 170 (1989) ("Congress has stated its policy that [FLSA] plaintiffs
   | *should* have the opportunity to proceed collectively.") (emphasis added), plaintiffs' choice to
   | proceed collectively rather than individually cannot be burdened by excessive arbitration costs.

16 |
[6] Even though the laws of other circuits are irrelevant for the reasons stated above,
17 | plaintiffs have established that the cost-splitting requirement would be unenforceable under those
   | circuits' law as well. The D.C. Circuit, for example, prohibits imposition of any arbitrator
18 | expenses or unreasonable costs. *Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1482 (D.C. Cir.
   | 1997). In *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003), previously relied
19 | upon by this Court, April 5, 2004 Order at 19, the Sixth Circuit held that cost-splitting provisions
   | are presumptively unenforceable in cases that do not involve high-level managerial employees, and
20 | that there is no need to scrutinize the individual plaintiffs' household budgets before finding such
   | requirements unenforceable. 317 F. 3d at 663-45; *see also Cooper v. M.R.M. Inv. Co.*, 367 F.3d
21 | 493, 512 (6th Cir. 2004).

22 | The declarations submitted by plaintiffs demonstrate that most Cintas drivers' expenses are
   | near or greater than their incomes, and that those drivers have little or no savings. Pl. Br. at 11 &
23 | nn.9, 10. None of the similarly-situated plaintiffs are in high-income managerial positions that
   | would enable them to pay the substantial arbitration costs required by Cintas' agreements. While
24 | Cintas argues (without authority) that plaintiffs in a class or collective action must submit a
   | declaration from *each* plaintiff to establish their inability to bear costs, Cintas does not and cannot
25 | dispute that this sample of plaintiffs is representative of other plaintiffs – *i.e.*, workers in the same
   | or similar jobs. These declarations are entirely sufficient to demonstrate, under the laws of any
26 | circuit, that plaintiffs could not afford tens of thousands of dollars in arbitration costs.

27 | [7] Casting yet another semantic smokescreen, Cintas argues that its arbitration agreements do
   | not expressly require cost-splitting. Def. Br. at 14 n.22. As this Court has recognized, however, by
28 | incorporating the AAA's rules by reference, Cintas' agreements effectively include the AAA's
   | (continued...)

1    Cintas also contends that plaintiffs have not shown that they will be forced to bear any

2    costs because the AAA has not yet sent them a bill. However, in *Ting*, the Ninth Circuit struck

3    down a cost-splitting provision on its face before it was enforced. 319 F.3d at 1151. Thus, a

4    plaintiff need not wait for the bill to arrive before a court can determine if a cost-splitting provision

5    is unconscionable under Ninth Circuit law. (Moreover, plaintiffs here have already advanced a

6    $3,250 filing fee, costs far beyond what they are required to pay in court.) The chilling effect of

7    such a provision, and not the actual enforcement of the provision, renders it unenforceable. *See*

8    Transcript at 24, 47 (Court's statement that the cost-splitting provision could be more onerous than

9    the "loser pays" provision); April 5, 2004 Order, at 19, 31-32, 50-51 (striking down "loser pays"

10   provision).

11   It is no answer to assert, as Cintas does, that plaintiffs could avoid these costs altogether by

12   proceeding in 2,200+ separate individual arbitrations, before multiple AAA arbitrators, in hundreds

13   of different counties, and in 42 separate states. The individual costs to plaintiffs and their counsel

14   of proceeding in so many separate and geographically dispersed arbitrations, each of which raise

15   the same core legal and factual issues, would be immense; and any requirement imposing that

16   burden on plaintiffs would be absurd. Cintas has offered no authority to suggest that the standards

17   for enforcing a mandatory arbitration agreement vary depending on whether plaintiffs choose to

18   pursue their claims individually or on a class basis. Plaintiffs cannot be forced to give up their right

19   to proceed as a class or collective group to avoid costs that the Ninth Circuit dictates cannot be

20   imposed under any circumstances.

21   ///

22

23   [7](...continued)
     previously-unannounced application of those rules to require cost-shifting in all class action

24   arbitrations. Transcript of Proceedings, Nov. 12, 2004 ("Transcript") at 54:16-21. The result is the
     same – the burden on plaintiffs of having to pay filing fees plus half the arbitration expenses,

25   comprising hundreds of thousands of dollars, renders the cost-shifting provisions of Cintas'
     arbitration agreements unenforceable under Ninth Circuit law – particularly because liability for

26   costs may be joint and several, thus making *each* plaintiff potentially liable for *all* expenses of the
     arbitration. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002)

27   ("Joint and several liability for costs is the general rule unless equity otherwise dictates."); *In re
     Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 469 (3d Cir. 2000) ("[T]he default rule is that costs may

28   be imposed jointly and severally.").

## II. PLAINTIFFS MUST BE PERMITTED TO PROCEED ON A CLASS OR COLLECTIVE BASIS IN A SINGLE ARBITRAL VENUE IN THIS DISTRICT.

### A. Under Ninth Circuit Law, Section 4 of the FAA Requires that the Arbitration Proceed in the Northern District of California.[8]

Cintas asserts the untenable position that it moved to compel arbitration under §3, rather than §4, of the FAA. The relationship between these two sections is clear from the plain language of the FAA. Section 4 provides that a party may petition the district court "for an order directing arbitration" if the responding party fails or refuses to arbitrate pursuant to an arbitration agreement, and "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, *the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.*" (Emphasis added). Section 3, in contrast, provides that if a district court finds that the issue in a pending lawsuit is "referable to arbitration," the court "*shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement*[.]" (Emphasis added). Thus, while a court determines whether to compel arbitration under §4, it decides under §3 whether to stay the litigation pending arbitration of the issue that it found "referable to arbitration" under §4.[9]

Plaintiffs have cited many cases for the proposition that a party can move to compel arbitration only under §4. *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460

---

[8] Cintas contends that the Court should not consider this argument as a basis for reconsideration because plaintiffs were aware of the "place-of-arbitration" provision before the Court's April 5, 2004 Order. Not until its July 9, 2004 answer to plaintiffs' demand for arbitration, however, did Cintas raise its position that its arbitration agreements with plaintiffs (1) do not allow class or collective arbitrations in this case, and (2) require each plaintiff separately to arbitrate in the county where he or she worked for Cintas – positions that Cintas previously avoided taking either in discovery or when the issue arose in this Court. Because Cintas refused to take a position on class or collective proceedings in connection with their motion to compel arbitration, plaintiffs could not challenge – and expressly reserved the right to challenge (Pls.' Opp. to Mot. to Compel Arbitration, Oct. 2, 2003, at 3-4) – Cintas' position. Thus, the issue is properly before the Court.

[9] The FAA's appellate jurisdiction provision also makes this distinction clear. *See* 9 U.S.C. §16(a)(1)(A), (B) ("An appeal may be taken from . . . an order . . . *refusing a stay of any action under section 3* of this title, . . . [or] *denying a petition under section 4* of this title *to order arbitration* to proceed[.]") (emphasis added)); *id.*, §16(b)(1), (2) ("[A]n appeal may not be taken from an interlocutory order . . . *granting a stay of any action under section 3* of this title; . . . [or] *directing arbitration to proceed under section 4* of this title[.]") (emphasis added).

1 U.S. 1, 22 (1983), *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003).[10] Cintas cannot

2 cite any binding authority for its unsupported construction of §3 and §4.

3      The only appellate case Cintas relies on, *Adrian v. Smith Barney, Harris, Upham & Co.,*

4 *Inc.*, 841 F.2d 1059 (11th Cir. 1988), clearly does not support its construction. The *Adrian* court

5 merely cited §3 for the proposition that an arbitration agreement must be in writing to be

6 enforceable, and did not hold or even suggest that a party can move to compel under §3. *Id.* at

7 1061. Additionally, several cases that Cintas cites actually support plaintiffs' position. *See, e.g.,*

8 *Gatton v. T-Mobile USA, Inc.*, 2003 WL 21530185, *9 (C.D. Cal. Apr. 18, 2003) ("A party

9 aggrieved by another party's failure to submit a dispute to arbitration may petition a district court

10 for an order compelling arbitration. 9 U.S.C. §4. . . . Further, the Court should then stay all

11 arbitrable claims. 9 U.S.C. §3."); *Gonick v. Drexel Burnham Lambert, Inc.*, 711 F. Supp. 981, 987-

12 88 (N.D. Cal. 1988) (granting defendant's "motion to compel arbitration" – without reference to the

13 FAA section under which the motion was brought – and concluding, "This action is therefore

14 stayed pending the completion of the arbitration proceedings, in accordance with 9 U.S.C. §3.").[11]

15      Cintas argues that it would be unfair for the Court to conform any order compelling

16 arbitration to §4 because Cintas did not "knowing[ly] and voluntarily submi[t] to the limitations of

17 Section 4." Def. Br. at 22-23. It is disingenuous, at best, for Cintas to plead ignorance and

18 complain of prejudice when *it* drafted the arbitration agreements and it moved to compel.

19 Moreover, Cintas is presumed to know the law, particularly in light of the fact that it likely had

20 attorneys draft the agreements. *Beard v. Sheet Metal Workers Union, Local 150*, 908 F.2d 474,

21 476-77 (9th Cir. 1990).

22      [10] *See also Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 948 (8th Cir. 2001);

23 *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1011 (6th Cir. 2003); *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002). Cintas'

24 attempt to distinguish the authority cited by plaintiffs on the basis that "the petitioner *specifically invoked Section 4* in petitioning the Court to order arbitration" (Def. Br. at 23 n.34) is unsupported

25 by *any* authority.

26      [11] In all three out-of-circuit district court cases Cintas relies on, the distinction between §3 and §4 was irrelevant to the issue in dispute. *Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 105

27 (S.D.N.Y. 1995); *Organ v. Conner*, 792 F.Supp. 693, 696 (D.Alaska 1992); *Moncrieff v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 623 F. Supp. 1005, 1006 (E.D. Mich. 1985). The courts

28 simply asserted in passing that §3 allows a court to compel arbitration – without citation and contrary to the clear statutory language – and then turned to the relevant issues.

1    The law is clear that arbitration must proceed in the district in which the petition to compel

2    arbitration is filed, even if there are concerns that the parties might "rac[e] to different courthouses

3    to obtain what each thinks is the most convenient forum for it, in disregard of its contractual

4    obligations." *Homestake Lead*, 282 F. Supp. 2d at 1144 (quoting *Snyder v. Smith,* 736 F.2d 409,

5    419-20 (7th Cir.1984)). Cintas invoked this Court's jurisdiction when it filed a motion to compel

6    under §4 – the only provision under which it could move to compel. *Homestake Lead*, 282 F.

7    Supp. 2d at 1144. Thus, any order compelling arbitration must place that arbitration in the

8    Northern District of California; the Court "is precluded from ordering arbitration in the

9    contractually-designated forum . . . [a]bsent new guidance from the Ninth Circuit." *Id.*[12]

10       If Cintas wanted to preserve the forum selection provision in its agreements, it should have

11   moved to stay the case under §3 or, in the alternative, sought to dismiss and then to petition for

12   arbitration elsewhere. It is too late for Cintas to do so now, even for the opt-ins who are not subject

13   to the Court's April 5, 2004 Order. Cintas stipulated that whether any future opt-ins would be

14   compelled to arbitration would be resolved under the provisions of this Court's existing order

15   compelling arbitration, and Cintas did not make any argument about sending these new opt-in

16   claimants to out-of-district arbitrations. April 14, 2004 Case Management Statement, at 7, 11; *see*

17   *also* April 23, 2004 Order, at 3, 4, 6 (stating that Court's April 5, 2004 Order should be used as a

18   guideline for determining which future opt-ins should be compelled to arbitration; directing notice

19   to all SSRs that they will likely be compelled to arbitration; and instructing plaintiffs to bring a

20   motion after the opt-in deadline on behalf of all SSRs who claim the arbitration clause is

21   unconscionable). By moving to compel arbitration in this forum and by agreeing that subsequent

22   opt-ins would be governed by the Court's order in this case, Cintas has limited itself to arbitration

23   in the current location, under the plain language of §4 and the applicable case law. Accordingly,

24

25       [12] Cintas' reliance on *Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d
     1275 (5th Cir. 1975) and *KKW Enters. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184
26   F.3d 42, 52 (1st Cir. 1999) is also misplaced. These other circuits' positions are contrary to the
     Ninth Circuit's position. Ninth Circuit law is the only binding law here. *See supra* n.2.
27       Cintas also misleadingly cites *FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001), for the proposition
     that the Court "has the inherent power to order a plaintiff to resolve [a] dispute through
28   arbitration." Def. Br. at 24 n.36. *Gill*, however, involves a party's request for a continuance of a
     hearing and is thus utterly irrelevant here.

1 Cintas should either be barred from asserting this forum selection agreement as a purported basis

2 for denying class-wide arbitration, or if Cintas is allowed to raise its improperly delayed position,

3 arbitration should be denied because of Cintas' unconscionable construction of its agreements.

4 Not only does §4 preclude arbitration outside of the Northern District of California, but

5 controlling Ninth Circuit law also prohibits enforcement of any forum selection clause that would

6 deprive a party of the opportunity to pursue his claims. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d

7 1133, 1140 (9th Cir. 2004). Although *Murphy* recognizes that forum selection clauses are

8 "presumptively valid," courts routinely find that the presumption has been rebutted. *Id.* at 1142-43;

9 *see also Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1145-46 (N.D. Cal. 2000). As in

10 these cases, forcing Cintas' current and former drivers to proceed individually, in more than 2,200

11 different proceedings across the country, would effectively deprive them of a forum in which to

12 pursue their overtime claims because the costs of pursuing these claims in hundreds of proceedings

13 across the country would render this pursuit impractical.

14 Additionally, because Cintas' forum selection clause would discourage (if not render

15 impossible) the enforcement of federal labor law protections, that clause is unenforceable and

16 unconscionable for this reason as well. Cintas does not dispute that if enforcement of a forum

17 selection clause would make vindication of public rights difficult or impossible, as here, then it

18 should not be enforced because it contravenes public policy. *Red Bull Assocs. v. Best Western,*

19 *Inc.*, 862 F.2d 963, 966-67 (2d Cir. 1988) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,

20 15 (1972)); *Walker*, 107 F. Supp. 2d at 1145. Moreover, Cintas has not attempted to distinguish *In*

21 *re Complaint of Rationis Enters., Inc. of Panama*, No. 97-CV-9052(RO), 1999 WL 6364 (S.D.N.Y.

22 Jan. 7, 1999), which dictates that the forum selection clause is unenforceable because, if enforced,

23 it would result in the unacceptable fragmentation of the case, rendering important federal

24 protections unavailable.

### B. Any Prohibition Against Class or Collective Arbitration Is Unconscionable Under State Law.

25
26
27 Under state contract law, an employer cannot deprive its workers of their right to pursue

state law claims on a classwide basis. Cintas contends that plaintiffs' cases are inapplicable

28

1 | because they involve consumer cases. Def. Br. at 18-19 n.28. Nowhere does Cintas offer any
2 | persuasive argument *why* that should be so, however, and in fact the case law does not support that
3 | purported distinction. *See* Pl. Br. at 19-21.[13]

4 | The most critical factor in determining whether a contract may legitimately restrict a
5 | statutory or procedural right is the extent of the resulting burden. Cintas acknowledges that in the
6 | consumer cases where each individual plaintiff has only a small sum at stake, a prohibition against
7 | class actions could unduly burden an individual consumer's right to recover. Def. Br. at 19 n.28.
8 | The same holds true in employment cases – perhaps even more so – where some workers'
9 | recoveries may be small (for example, plaintiffs who only worked a few overtime hours during the
10 | statutory period or whose base hourly rate was low), and where many plaintiffs, particularly *current*
11 | employees, might choose not to proceed individually against the provider of their economic
12 | livelihood. As the California Court of Appeal explained in *Gutierrez v. Autowest, Inc.*, 114 Cal.
13 | App. 4th 77, 97 (2003):

> Our decision is rooted in part in the conclusion that jobseekers are more likely to face "particularly acute" economic pressure to sign an employment contract with a predispute arbitration provision, "for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra*, 24 Cal.4th at p. 115 [ ].) A family in search of a job confronts a very different set of burdens than one seeking a new vehicle. Consumers, who face significantly less economic pressure, would seem to require measurably less protection.

19 | Even though the California Supreme Court has granted review of two cases raising the
20 | question whether a prohibition on class arbitration is unconscionable, the controlling case is, until
21 | that Court rules, *Szetela*, 97 Cal. App. 4th at 1100-02, which holds that such prohibitions are
22 | unconscionable. *See also* Pl. Br. at 20-21 (collecting cases from additional states, including several
23 | other states – Michigan, and New Jersey – involved in this motion).[14]

---

[13] In defending its efforts to strip plaintiffs of their right to proceed as a class in this case, Cintas relies primarily on cases decided under federal law. Def. Br. at 5-7. However, an arbitration clause that bars class actions may also be unconscionable as a matter of state contract law. *See, e.g., Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

[14] Cintas attempts to distinguish a Michigan consumer case, *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087 (W.D. Mich. 2000), on the additional basis that the

(continued...)

1    Cintas also cannot argue that, merely by signing individual arbitration agreements, the

2    plaintiffs waived their statutory right to pursue their claims against Cintas collectively or as a class.

3    Def. Br. at 4:10-11. In *Bazzle*, a plurality of the Supreme Court held that an arbitrator, not a court,

4    must determine whether the agreement permits class arbitration, at least when it is "not completely

5    obvious" whether the agreement permits such arbitration, and when the agreement is drafted

6    sufficiently broadly to vest in the arbitrator the authority to decide such matters. 123 S.Ct. at 2406-

7    07. There, the Court remanded so an arbitrator could decide whether the individual arbitration

8    agreements signed by plaintiffs in that case permitted class arbitration. *Id.* at 2407-08. In short,

9    *Bazzle* confirms that nothing about signing an individual arbitration agreement inherently waives

10    the right to pursue one's claims on a class basis.

11    Here, Cintas admits that its arbitration agreements "do not mention class actions one way

12    or the other." Def. Br. at 7 n.8. At a minimum, it is "not completely obvious" that plaintiffs have

13    waived their rights to litigate against Cintas on a class basis. *Bazzle*, 123 S.Ct. at 2406; *Pedcor*

14    *Mgmt. Co., Inc. v. Nations Personnel of Texas, Inc.*, 343 F.3d 355, 360 (5th Cir. 2003) (arbitration

15    agreement that "contains no express provisions regarding the permissibility of class arbitration"

16    does not clearly waive the right to proceed as a class in arbitration). Cintas' surprising

17    pronouncement that plaintiffs have *already* waived any right to proceed as a class is thus wholly

18    without merit.[15]

19    Nonetheless, even if an arbitrator must construe the Cintas agreements to determine what

20    they say about class arbitration, this Court retains the authority to establish the range of possible

21    _____

22    [14](...continued)
     prohibition on class arbitration "would be contrary to specific consumer protection laws" because
     the state statute permitted consumers to bring class actions. *Id.* at 1105. There are also statutory

23    provisions, however, that provide for class and collective actions in wage and hour cases. *See, e.g.*,
     Cal. Civ. Proc. Code §382 (class action provision); *Sav-on Drug Stores, Inc. v. Superior Court*

24    (2004) 34 Cal.4th 319, 340 (California's public policy favors both class action litigation and
     enforcement of wage and hour laws); 29 U.S.C. §216(b) (right to pursue collective action under

25    FLSA). Thus, *Lozada* cannot be distinguished on this basis.

26    [15] Those cases on which Cintas relies that held, prior to *Bazzle*, that arbitration agreements
     that were silent as to the availability of class arbitration necessarily barred class arbitration are

27    implicitly overruled in that respect by *Bazzle*. *See, e.g., Johnson v. West Suburban Bank*, 225 F.3d
     366, 369-70, 377 (3d Cir. 2000); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500, 503 (4th Cir.

28    2002); *Champ v. Siegel Trading Co.*, 55 F.3d 269 (7th Cir. 1995).

1    lawful constructions. Cintas now contends that it construes the agreements to prohibit plaintiffs

2    from proceeding on a class basis in this case. Def. Br. at 1:22-24. The Court is not obliged to

3    ignore this. The agreements' enforceability remains a question of law for the Court, and whether

4    they permit or foreclose class arbitrations implicates their validity. Unconscionability is one of the

5    "gateway matters" that *Bazzle* reserves to courts. 123 S.Ct. at 2407 ("In certain limited

6    circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular

7    arbitration-related matter . . . . They include certain gateway matters, *such as whether the parties*

8    *have a valid arbitration agreement*.") (emphasis added). Thus, for example, in *Walker*, 289 F.

9    Supp. 2d at 926, 934, the court ruled that where an arbitration agreement would likely be construed

10    by an arbitrator to prohibit class arbitrations, it did not hesitate to hold, even after *Bazzle*, that the

11    provision both interfered with the vindication of FLSA rights and was substantively unconscionable

12    under state law. Here, knowing Cintas' preferred construction of the arbitration agreements, the

13    Court is well within its powers to clarify that Cintas' construction would be unconscionable. *See*

14    Pl. Br. at 20:12-21:16 and cases cited therein.

15    **III.**    **THE CLENDENING DECLARATION AND THE AAA'S UNANTICIPATED**
                   **COST-SPLITTING CONSTRUCTION RENDER THE AGREEMENTS**
16                    **PROCEDURALLY UNCONSCIONABLE.**

17    Finally, as discussed previously, Cintas' representative Jenice Clendening has stated in a

18    sworn declaration, submitted *after* this Court's previous ruling, that Cintas' employees are

19    "required" by their employer to sign arbitration agreements – a statement that directly contradicts

20    Cintas' representations to this Court in its motion to compel arbitration. *See* Def. Reply in Support

21    of Mot. to Compel Arbitration, filed Oct. 21, 2003 at 9:13-14 ("[I]t is not Cintas' policy to require

22    any employee to sign an arbitration agreement as a condition of employment."). If an employee has

23    no choice but to sign a standard arbitration agreement, either as condition of employment or

24    continued employment, the agreement is a contract of adhesion and therefore procedurally

25    unconscionable. *See, e.g., Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 113-14

26    (Ct. App. 2004) ("An arbitration agreement that is an essential part of a "take it or leave it"

27    employment condition, without more, is procedurally unconscionable."); *see also Armendariz v.*

28

1 | *Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114-15 (2000); *Adams*, 279 F.3d at 893.

2 | Given Ms. Clendening's new declaration, it can no longer be disputed that Cintas' arbitration

3 | agreements are procedurally unconscionable.

4 | As plaintiffs explained in the Opening Brief, Cintas' agreements are also procedurally

5 | unconscionable because of the unanticipated cost-splitting requirement – which contradicted

6 | plaintiffs' (and Cintas') reasonable expectation that plaintiffs would not be required to pay any

7 | arbitration costs beyond perhaps a modest filing fee – and because of the oppression resulting from

8 | the extraordinarily high arbitration costs. Pl. Br. at 14:1-15:3.

## CONCLUSION

10 | For the foregoing reasons, and for the reasons stated in plaintiffs' Opening Brief, plaintiffs

11 | respectfully ask the Court to reconsider its decision compelling 56 of the Original Plaintiffs to

12 | arbitrate. Alternatively, plaintiffs request that the Court order, as to any plaintiff relegated to

13 | arbitration, that all arbitration filing fees and expenses be borne exclusively by Cintas, that such

14 | arbitration be venued in the Northern District of California as required by §4 of the FAA, and that

15 | Cintas be prohibited from asserting that its arbitration initiation clause precludes this case from

16 | proceeding as a class or collective action or that it requires individual county-by-county

17 | arbitrations.

DATED: December 21, 2004          Respectfully submitted,

ALTSHULER, BERZON, NUSSBAUM,
RUBIN & DEMAIN

          /s/ Michael Rubin
Michael Rubin