*E-FILED 11/13/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PAUL VELIZ, et al.,

              Plaintiffs,

   v.

CINTAS CORPORATION, et al.,

             Defendants.

_____/

NO. C 03-1180 RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ON: (1) CERTAIN CONSOLIDATED CLAIMS; AND (2) CERTAIN STATE LAW CLAIMS**

## I. INTRODUCTION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure in this collective action under the Fair Labor Standards Act ("FLSA"), defendant Cintas Corporation ("Cintas") moves for summary judgment on certain consolidated claims against plaintiffs because they: (1) crossed state lines and are exempt from overtime; (2) are barred from bringing their claims under the FLSA's two year statute of limitations; and (3) were never employed by Cintas within the scope of this litigation. Cintas further moves for summary judgment on certain state law claims against various individual plaintiffs under Kentucky, Minnesota, New Jersey, and Washington law (claims ten, fourteen, sixteen, and twenty-one).  Plaintiffs oppose the motions.

After reviewing the extensive record on these motions and after conducting a hearing, the Court grants in part and denies in part Cintas' summary judgment motions.  As to the consolidated motion, because the Motor Carrier Act ("MCA") exemption applies to claims before August 10,

2005, summary judgment will be granted as to certain plaintiffs.  Summary judgment, however, will be denied concerning those claims accruing after August 10, 2005.  Summary judgment will also be granted as to those plaintiffs whose claims have expired as a result of the FLSA's two year statute of limitations, and to those plaintiffs whose employment does not fall within the scope of this litigation. As to certain state law claims, summary judgment will be granted on claims for relief grounded in Kentucky, Minnesota, and New Jersey criminal law but will be denied on the Washington law claim for relief.

## II.  BACKGROUND

Cintas manufactures, sells, and rents uniforms and apparel as well as business products and services to customers throughout the United States.  Plaintiffs are or were Service Sales Representatives ("SSRs") for Cintas.  SSRs perform a service and/or deliver products on a non-hourly basis through the use of trucks provided by Cintas.  The second amended complaint ("SAC") asserts a collective action for failure to pay overtime compensation to plaintiffs who filed consents-to-sue.  Plaintiffs claim that Cintas violated the FLSA and the Employment Retirement Security Act of 1974 ("ERISA"), and various state laws when Cintas classified plaintiffs as exempt employees who were not entitled to overtime pay.

## III.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Id*. at 323.

If the moving party meets its initial burden, it then shifts to the non-moving party to present specific facts showing that there is a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  The evidence and all reasonable inferences therefrom must be viewed in

the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).  Summary judgment is not appropriate if the non- moving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in his or her favor. *Anderson*, 477 U.S. at 248; *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587.

IV.  DISCUSSION

A.     <u>Judicial Notice</u>

       As an initial matter pertaining to both motions, Cintas requests pursuant to Rule 201 of the Federal Rules of Evidence that the Court take judicial notice of, among other things, the SAC, various government regulations, and individual plaintiffs' consents-to-sue.  A court "may take judicial notice of its own records, and documents that are public records and capable of accurate and ready confirmation by sources that cannot reasonably be questioned." *Springate v. Weighmasters Murphy, Inc. Money Purchase Pension Plan*, 217 F. Supp. 2d 1007, 1013 (C.D. Cal. 2002) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  Accordingly, Cintas' judicial notice request will be granted.

B.     <u>Summary Judgment of Certain Consolidated Claims</u>

       As noted above, Cintas moves for summary judgment against plaintiffs grouped in three general categories: (1) claims by plaintiffs who have allegedly acknowledged in discovery responses that they frequently crossed state lines to make deliveries, thereby falling within the MCA exemption to the FLSA; (2) claims Cintas argues are barred by the two year statute of limitations period applicable to actions brought under the FLSA; and (3) claims by plaintiffs who were never employed by Cintas in positions within the scope of this litigation.

       1.     <u>MCA Exemption to the FSLA</u>

3

Cintas seeks summary judgment on the SAC's third claim for relief as to fourteen named plaintiffs under the FLSA.[1]  Cintas contends that under the MCA exemption, 49 U.S.C. § 13501, those claims are barred because each of those fourteen plaintiffs admit having regularly driven across state lines to make deliveries on their assigned routes as part of their duties as SSRs, and consequently, were exempt from overtime under the FLSA.  For the purposes of this issue, the Court must review the evidence as to each identified plaintiff to determine if he or she did in fact cross state lines for some or all of their employment with Cintas before August 10, 2005, or whether such individual falls within the safe harbor of recent legislation applying the MCA exemption to claims after August 10, 2005.

a.    The MCA Statutory Framework

The FLSA generally entitles employees to overtime pay for hours worked in excess of forty per week.  29 U.S.C. § 207(a)(1).  The FLSA's maximum hour requirement, however, does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  *Id.*, § 213(b)(1).  According to 49 U.S.C. § 31502(b), the Secretary may prescribe requirements for the qualifications and maximum hours of service for employees, and the safety of operation and equipment of both "motor carriers" and "motor private carriers."  This exception to the FLSA's applicability is known as the MCA exemption.  It is Cintas' burden, as the employer, to invoke it, and the exemption is to be narrowly construed against the employer.  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 394 n.11 (1960).[2]

---

[1]    Cintas originally sought summary judgment against twenty-five plaintiffs.  Summary judgment is not opposed as to the following nine plaintiffs: Barnes, Bryan, Cummings, Gilliam, Johnson, Lee, Michelfelder, M.R. Robinson, and Wilson.  Summary judgment, therefore, will be granted as to claims advanced by each of them.  Moreover, on September 25, 2008, plaintiffs Ashley and Santana dismissed their claims.  For the purposes of this issue, fourteen plaintiffs remain.

[2]    The Secretary's jurisdiction must be triggered in order for the MCA exemption to apply.  *Wamboldt v. Safety-Kleen Sys., Inc.*, No. C 07-0884 PJH, 2008 WL 728884, at *11 n.6 (N.D. Cal. Mar. 17, 2008) (citing 49 U.S.C. § 10521).  Technically, the MCA does not include the motor private carrier exemption.  *Vidinliev v. Carey Int'l, Inc.*, _ F. Supp. 2d _, No. 1:07-CV-762-TWT, 2008 WL 4500167, at *1 n.2 (N.D. Ga. Oct. 3, 2008).  The MCA is relevant because the scope of the exemption is defined by the Secretary's jurisdiction that can be asserted under the MCA.  *Id.*

United States District Court

For the Northern District of California

i.      Before August 10, 2005

Before August 10, 2005, a "motor private carrier" was defined as:

[A] person, other than a motor carrier, transporting property by motor vehicle when –
        (A) the transportation is as provided in section 13501 of this title;
        (B) the person is the owner, lessee, or bailee of the property being transported; and
        (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15).  Section 13501, which governs the Secretary's jurisdiction under the MCA provides, in pertinent part:

The Secretary and the Board have jurisdiction . . . over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier –

(1) between a place in –
        (A) a State and a place in another State;
        (B) a State and another place in the same State through another State . . . .

49 U.S.C. § 13501.

In sum, before August 10, 2005, the MCA exemption applied if: (1) the person transported property by motor vehicle; (2) the person was engaged in interstate commerce; (3) the person was the owner, lessee, or bailee of the property being transported; (4) the property was being transported for sale, lease, rent, or bailment or to further a commercial enterprise; and (5) the person had some effect on the vehicle's "safety of operation."

ii.     After August 10, 2005

On August 10, 2005, the definition of "motor private carrier" was amended by the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"). Pub. L. No. 109-59, 119 Stat. 1144 (2005).  SAFETEA-LU amended 49 U.S.C. § 13102 by adding the word "commercial" before "motor vehicle."  *Id*.  As a result, after August 10, 2005, a "motor private carrier" was defined as "a person . . . transporting property by commercial motor vehicle (as defined in section 31132)."  49 U.S.C. § 13102(15) (2005).  Section 31132 defines a "commercial motor vehicle" as:

[A] self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle –

United States District Court

For the Northern District of California

(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;

(B) is designed or used to transport more than 8 passengers (including the driver) for compensation;

(C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or

(D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

49 U.S.C. § 31132(1). The significance of the amendment to the "motor private carrier" definition has been described as follows:

Before August 10, 2005, the FLSA's MCA exemption applied to most employees who drove any type and size of motor vehicle in interstate commerce. After the passage of SAFETEA-LU, however, vehicles that were previously exempt under the old definition of "motor vehicle" are no longer exempt because they are not "commercial motor vehicles."

*Musarra v. Digital Dish, Inc.*, 454 F. Supp. 2d 692, 701 n.19 (S.D. Ohio 2006).

### iii.    June 6, 2008 Amendment[3]

On June 6, 2008, Congress once again amended the definition of "motor private carrier" with the passage of the SAFETEA-LU Technical Corrections Act of 2008 ("Corrections Act"). Pub. L. No. 110-244, 122 Stat. 1572. Section 305(b) of the Corrections Act removed "commercial motor vehicle" and reinserted "motor vehicle," which was the same definition of motor private carrier in effect prior to the August 10, 2005, enactment of SAFETEA-LU. *Id.* Section 121 of the Corrections Act establishes that its amendments take effect on August 10, 2005 (SAFETEA-LU's enactment date). *Id.* In other words, the amended language from the SAFETEA-LU is treated as if it never existed. Cintas argues that because Section 305(b) of the Corrections Act applies retroactively, the original definition of motor private carrier applies to all of plaintiffs' claims, even those arising between August 10, 2005, and the enactment of the Corrections Act. According to Cintas, the

---

[3]    Cintas moves to strike the Goldsmith declaration because it contains opinion testimony and legal conclusions. The motion to strike is granted because it improperly consists of legal argument. Cintas also moves to strike sentences from the Alvis declaration on the basis that it includes legal conclusions, is speculative, and irrelevant. The motion to strike sentences found at 1:16-18, 1:24-28, 2:1-3, 2:10-11, and 2:14-19 of the Alvis declaration is granted on those grounds proffered by Cintas.

**United States District Court**
For the Northern District of California

1    Corrections Act would then nullify any recourse plaintiffs at one time might have had to obtain

2    overtime pay based on the SAFETEA-LU commercial motor private carrier definition.

3         Based on the applicable statutory language, it is not clear that Congress intended for Section

4    305(b) of the Corrections Act to apply retroactively.  While Section 121 of the Corrections Act

5    establishes that each provision of the SAFETEA-LU "shall be treated as not being enacted," Section

6    306(c) of the Corrections Act establishes no liability for overtime violations of the FLSA, for certain

7    covered employees if: (1) the violation occurred within one year beginning August 10, 2005; and (2)

8    as of the date of the violation, the employer did not have actual knowledge that it was subject to the

9    requirements of such section with respect to those employees.[4]  *Id.*  For purposes of the instant case,

10   the end result of Sections 306(b) and 306(c) is to open up for Cintas a possible one-year defense

11   against overtime pay claims by plaintiffs whose work involves motor vehicles, but primarily motor

12   vehicles that do not qualify as commercial motor vehicles ("non-commercial motor vehicles").[5]

13        Based on Section 121 of the Corrections Act, "Congress may have wanted section 305 of the

14   [ ] Corrections Act to apply retroactively, but it failed to demonstrate that intent in terms so clear and

15   so unambiguous . . . ." so as to give it such effect.  *Vidinliev*, 2008 WL 4500167, at *6.  If Section

16   305(b) applied retroactively, then the one-year defense within Section 305(c) dependent upon the

17   distinction between non-commercial and commercial motor vehicles would be completely

18   unnecessary as Section 305(b) would restore the original definition of motor private carrier (which

19   makes no distinction between a non-commercial vehicle and a commercial vehicle).  In other words,

20   without the SAFETEA-LU definition, there would be no need for the one year defense in Section

21   306(c).  If a statute creates new legal consequences to events completed before enactment, the

22   presumption is that the statute does not govern absent clear intent from Congress favoring such a

23

24        [4]    The relevant portions of Section 306(c) defines covered employees as an individual:
25   (1) who is employed by a motor carrier or motor private carrier as defined by 49 U.S.C. § 13012, as
     amended by Section 305 of the Corrections Act; (2) whose work as a driver affects the safety of
26   motor vehicles weighing 10,000 pounds or less on public highways in interstate commerce, except
     vehicles that transport more than eight passengers for compensation or that transport more than
27   fifteen passengers, but not for compensation; and (3) who performs duties on motor vehicles
     weighing 10,000 pounds or less.  *Id.*

28        [5]    Cintas does not rely on this one-year grace period in its motion.

7

United States District Court

For the Northern District of California

1    result.  *Id.* (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)).  The Court must presume

2    that Congress intended the words of its statutes to have meaning.  *United States v. Menasche*, 348

3    U.S. 528, 538-39 (1955).

4         For the one-year defense in Section 305(c) to have any relevance, Section 305(b) cannot

5    apply retroactively.  Therefore, without a clear expression in the statute that Congress intended

6    Section 305(b) of the Corrections Act to apply retroactively, the amended definition of motor private

7    carrier adding the word "commercial" to  motor vehicle found in 49 U.S.C. § 31132(1), Pub. L. No.

8    109-59, 119 Stat. 1144 (2005), applies to claims falling between August 10, 2005 and June 5, 2008.

9    *See Vidinliev*, 2008 WL 4500167, at *8 (reaching conclusion that Section 305(a) of the Corrections

10   Act did not apply retroactively as to motor carriers).[6]  As noted above, the presumption against

11   retroactivity is reinforced here by the principle that exemptions to the FLSA are to be narrowly

12   construed against the employer seeking to invoke such an exemption.  *Id*. at *6 (citing *Arnold*, 361

13   U.S. at 392).

14        2.    Application of the MCA Exemption

15        Under the framework described above, in order to invoke the MCA exemption prior to

16   August 10, 2005, Cintas must show that: (1) it is either a motor carrier or a motor private carrier; and

17   (2) plaintiffs were or could have been engaged in activities that affect the safe operation of motor

18   vehicles on public highways that transport goods in interstate commerce.  49 U.S.C. § 31502.

19   Similarly, to have the benefit of the MCA exemption after August 10, 2005, Cintas must make

20

21        [6]    It is an open question whether Section 305 of the Corrections Act actually is an
22   amendment to the SAFETEA-LU.  Section 305(c) states that 49 U.S.C. § 13102 is amended by
     striking "'commercial motor vehicle as defined in section 31132' and inserting 'motor vehicle.'"  *Id*.
23   at *6-7.  The Interstate Commerce Commission Termination Act of 1995 ("ICC Termination Act"),
     however, created Section 13102 of the SAFETEA-LU.  *Id*. at 7 (citing Pub. L. No. 104-88, 109 Stat.
24   803, 854 (1995)).  Section 13102, under the MCA, defines "motor carrier" and "private motor
     carrier."  49 U.S.C. § 31501.  Consequently, analyzing the Corrections Act demonstrates that
25   Section 305 does not appear to amend the SAFETEA-LU, but rather amends the related ICC
     Termination Act.  *Vidinliev*, 2008 WL 4500167, at *7.  This conclusion is further supported because
26   the statutory language ("the SAFETEA-LU is amended by striking") contained within Sections
     101(a), 102, and other provisions of the Corrections Act, does not appear in Section 305.  *Id*.  "That
27   Congress described many sections of the [ ] Corrections Act expressly as amendments to the
     SAFETEALU [sic], but did not for § 305, implies that Congress did not consider § 305 as an
28   amendment to the SAFETEA-LU."  *Id*.

1   exactly the same showing except that under the second prong, it must show plaintiffs engaged in

2   activities with *commercial* motor vehicles, as that additional term is defined in the statute.

3        Under the first prong above, Cintas maintains, and plaintiffs do not dispute, that Cintas

4   qualifies as a motor private carrier under all the iterations of the applicable statute.  Cintas' next step,

5   therefore, requires it to show that the nature of plaintiffs' employment as drivers involved them in

6   activities that directly affected the safety of motor vehicle operations on the public highways in

7   conjunction with the carrying of property in interstate commerce.  It similarly is uncontested under

8   that second prong that plaintiffs' job duties as SSR drivers affected highway safety in that their

9   regular responsibilities included driving Cintas' vehicles for the purpose of delivering products to

10  various customers.  SAC ¶ 127.  Indeed, all plaintiffs admit that they made such deliveries.  *See*

11  *Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947) (concluding that drivers affect highway

12  safety).  To fall under the motor carrier exemption, therefore, Cintas must further establish under the

13  third prong that: (1) plaintiffs drove a motor vehicle that affected highway safety in the interstate

14  transportation of goods before August 10, 2005; and/or (2) plaintiffs drove a *commercial* motor

15  vehicle that affected highway safety in the interstate transportation of goods after August 10, 2005,

16  but before June 6, 2008.  Prior to analyzing whether the MCA exemption applies to the individual

17  plaintiffs, one final issue must be addressed: whether a week-by-week or four month requirement

18  applies to plaintiffs' alleged state line crossings.

19              a.    Regularity of State Line Crossings

20       To engage in transporting goods across state lines for the purposes of the MCA exemption,

21  plaintiffs argue that a week-by-week approach is applicable.[7]  By contrast, Cintas maintains that a

22  four month time window applies.  The Secretary of Transportation, through the Federal Highway

23  Administration ("FHWA"), issued a notice of interpretation, which provides, in relevant part, that:

> The FHWA view is that in order to establish jurisdiction . . . the carrier must
> be shown to have engaged in interstate commerce within a reasonable period of time
> prior to the time at which jurisdiction is in question.  The carrier's involvement in

---

[7]       "Interstate commerce" is defined, in pertinent part, as transportation by a motor
private carrier and the procurement of that transportation, to the extent that property is transported
between a place in a state and a place in another state and/or in a state and another place in the same
state through another state.  49 U.S.C. § 13501.

9

interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof, in the case of a "for hire" carrier, that interstate business had been solicited.  If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs.  Satisfactory evidence would be statements from drivers and carriers, and any employment agreements.

Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to 49 U.S.C. 304 for a 4-month period from the date of the proof.  The FHWA believes that the 4-month period is reasonable because it avoids both the too strict week-by-week approach and the situation where a driver could be used or be subject to being used once and remain subject to jurisdiction under 49 U.S.C. 304 for an unlimited time.

*Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1156 (9th Cir. 1994) (quoting 46 Fed. Reg. 37,902, 37,903 (1981)).  Based on the FHWA interpretation above, two requirements emerge: (1) reasonable engagement in interstate commerce by the carrier; and (2) reasonable expectation by the employee of making an interstate trip.  While *Reich* focused on the first requirement, which is not at issue here, there appears to be no controlling authority addressing the latter, which is in dispute.

Under the second requirement, plaintiffs argue that under 29 C.F.R. § 782.2(b)(3) the MCA exemption should only apply for the actual work week in which the particular plaintiff driver physically crossed state lines.  Plaintiffs' week-by-week approach, however, is without practical or legal support.  It is sufficient, from time to time within any four month period, that the employee actually transports or is available to transport across state lines as part of the employee's regular course of employment.  *See Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 782-83 (N.D. Ill. 2007); *Musarra*, 454 F. Supp. 2d at 720; *Badgett v. Rent-Way, Inc.*, 350 F. Supp. 2d 642, 654-57 (W.D. Pa. 2004); *Elliot v. Dave Ernstes & Sons Trucking*, 2006 WL 2849705, at *5-6 (S.D. Ind. Oct. 3, 2006).  Such a four month test, therefore, will be applied in this case.

b.    Plaintiffs with Claims Before August 10, 2005

Cintas argues that the MCA applies to exempt the FLSA claims of fourteen plaintiffs which accrued prior to August 10, 2005, because they admitted to driving across state lines at least every four months to make deliveries on their assigned routes as part of their duties as SSRs.[8]  A threshold

---

[8]    Bouchard, Bruck, Gregory, Hamilton, Kellogg, Pianowski, Rowse, Sims, Wait, Wagner, Walker, Washkuhn, S. Williams, and Zobrist.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   question is whether those plaintiffs, at all times, could reasonably have been expected to engage in

2   interstate commerce.  The record is insufficiently developed to establish, beyond any genuine

3   dispute, that plaintiffs in fact were subject to crossing state lines at all times.  Moreover, contrary to

4   Cintas' contention, in their depositions those plaintiffs did not admit that they were, at a minimum, at

5   least subject to crossing state lines during their employment.  *Yaklin v. W-H Energy Servs., Inc.*, No.

6   C-07-422, 2008 WL 4692419, at *6 (S.D. Tex. Oct. 22, 2008) (stating that while defendants asserted

7   that plaintiff was required to be available to travel across state lines at any given time as part of his

8   routine job duties, they presented no evidence to that effect).  Because these plaintiffs cannot be

9   deemed exempt across the board, evidence of each individual plaintiff's interstate crossings must be

10  analyzed.

11       Plaintiff Pianowski acknowledged that he crossed state lines daily.  Kelly Decl., Ex. 4.[9]

12  Later, he states that he did not cross state lines during his first several months.  *Id*., Ex. 7 at 4.  This

13  apparent issue of material fact regarding that earlier time period, however, falls short of the four

14  month requirement.  Pianowski worked for Cintas from February 2002 until November 9, 2002.

15  Abramovich Decl., ¶ 14.  From March 2002 to November 2002, he admits driving the same route,

16  which Cintas' records show regularly involved the crossing of state lines.  *Id*., Exs. 8-9; Kelly Decl.,

17  Ex. 9 at 43.  Summary judgment therefore is warranted as to his claim.

18       Plaintiff Bruck initially admitted that she crossed state lines monthly.  Kelly Decl., Ex. 1 at

19  62.  In an amended response, she denies ever crossing state lines.  Pepich Decl., Ex. 14 at 3.  Finally,

20  in a subsequent declaration, she acknowledges that she crossed once every two to three months from

21  February 2001 until February 2002, but never crossed from August 2002 until the end of her

22

23

24

25

---

26       [9]   Plaintiffs object to two exhibits in the Abramovich declaration as being hearsay and
     for not identifying which documents were used to produce a summarizing chart.  Plaintiffs further
27   object to twenty exhibits in the Kelly declaration as lacking foundation, and for being speculative,
     irrelevant, and vague and ambiguous.  Those objections are overruled because Cintas may
28   summarize voluminous materials, the records were made in the regular course of business, and the
     exhibits are relevant.

11

1    employment in January 2003.  Bruck Decl., ¶¶ 3-4.[10]  Based on her testimony, Cintas is not entitled

2    to summary judgment on Bruck's period of employment from August 2002 until January 2003.

3          Plaintiff S. Williams acknowledged that he crossed state lines five times per week.  Kelly

4    Decl., Ex. 1 at 67.  In a supplemental response, he states that he did not cross state lines from

5    November 2001 until December 2002.  Pepich Decl., Ex. 21 at 3-4.  Then again, in an amended

6    response, he vaguely states that he sometimes crossed state lines.  *Id*., Ex. 22 at 3.  While the

7    testimony is troublingly vague, for the period from November 2001 until December 2002, it is

8    sufficient to identify an issue of fact and summary judgment must be denied.

9          Plaintiff Zobrist admitted that he crossed state lines on route twelve, but did not cross on

10   routes seventy-seven and thirteen.  Kelly Decl., Ex. 3 at 21.  In his declaration, no further mention is

11   made of route twelve.  Instead, he states that from August 2002 until March 2003 while assigned to

12   route seventy-seven, and from March 2003 until February 2004 while assigned to route thirteen he

13   did not cross state lines.  Zobrist Decl., ¶ 4.[11]  He adds that from July to August 2002, he crossed

14   state lines as part of his training.  *Id*., ¶ 5.  Zobrist's subsequent testimony as to two out of the three

15   routes does not rectify the admission that he crossed state lines at the very least as to route twelve

16   and accordingly summary judgment is warranted.

17         Plaintiff Wagner acknowledged that he drove four routes, on two of which he crossed state

18   lines weekly, and the other two he could not remember if he crossed state lines.  Kelly Decl., Ex. 1

19   at 67, Ex. 4.  A later discovery response contradicted his previous response by stating that he did not

20   recall ever crossing state lines for any of his routes.  Pepich Decl., Ex. 16 at 2.  Moreover, in an

21   amended response, he again reiterated that he denied ever crossing state lines.  *Id*., Ex. 17 at 3.  In

22   light of his amended response, summary judgment will be denied.

23         Plaintiff Kellogg admitted that he crossed state lines weekly.  Kelly Decl., Ex. 1 at 63.  In a

24   supplemental interrogatory response, he clarified that he did not cross state lines "after some time in

25

26         [10]   Cintas' motion to strike Bruck's declaration because it allegedly is inconsistent with
     prior responses is overruled because it is in accord with her prior testimony.

27         [11]   Cintas' motion to strike portions of Zobrist's declaration that are supposedly
     inconsistent with his discovery responses is overruled as it is not inconsistent with his prior
28   testimony.

United States District Court

For the Northern District of California

2003" and for a few months in 2003 made deliveries across state lines. Pepich Decl., Ex. 4 at 10-11. Plaintiff Wait initially acknowledged crossing state lines on one of her two routes four times a week. Kelly Decl., Ex. 1 at 67; Kelly Reply Decl., Ex. 2 at 45. In a supplemental response, she said that she did not cross for two routes, but did cross for one route as of February 2004. Pepich Decl., Ex. 10 at 10. Plaintiff Walker admitted that he crossed state lines weekly. Kelly Decl., Ex. 2 at 15. In an amended response, he declared that he crossed state lines for "some period" of time. Pepich Decl., Ex. 18 at 3. Plaintiff Washkuhn acknowledged that he crossed state lines weekly. Kelly Decl., Ex. 1 at 67. In a supplemental response, he stated that he crossed state lines once a week, but could not recall the exact dates but it was in 2005. Pepich Decl., Ex. 20 at 10. He further stated that prior to 2005 he crossed state lines but could not recall the dates. *Id*. Discovery responses indicated that he was an SSR from October 2002 through October 2005 and had the same route from December 2002 through October 2005. Kelly Reply Decl., Ex. 2 at 16. Based on the foregoing testimony from these plaintiffs, summary judgment is warranted for at least the period of time before August 10, 2005.[12]

Finally, neither party made any showing as to five plaintiffs (Bouchard, Gregory, Hamilton, Rowse, and Sims) in the pleadings or the voluminous exhibits.[13] Summary judgment will accordingly be denied without prejudice as to these five plaintiffs.

      c.      <u>Plaintiffs with Claims After August 10, 2005</u>

---

[12]    Cintas' motion to strike the declarations of Kellogg, Santana, Wait, and Walker are granted because they are inconsistent with their discovery responses. The declarations are inappropriate because parties cannot create issues of fact on summary judgment by submitting declarations to contradict the declarant's deposition or other sworn testimony. *Block v. City of Los Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001).

[13]    Admittedly, the record contains some facts pertaining to these five plaintiffs. Plaintiff Bouchard admitted that on three routes he crossed state lines daily. Kelly Decl., Ex. 1 at 61. Plaintiff Gregory admitted that he crossed state lines once a week. *Id*. at 63. Plaintiff Hamilton admitted crossing state lines everyday in the past. *Id*. Plaintiff Rowse acknowledged crossing state lines on two routes daily and on a third he crossed once a week. *Id*. at 66. He was employed by Cintas from April 1999 to the "present." *Id*., Ex. 8 at 16. Plaintiff Sims admitted crossing state lines two times a week. *Id*., Ex. 1 at 66. He was employed from January 6, 1987, to the "present." *Id*., Ex. 8 at 16. These plaintiffs, however, are not identified in defendants' initial moving papers beyond listing their names, and the Court declines to add them mid-stream in deciding this particular motion.

United States District Court
For the Northern District of California

As noted above, SAFETEA-LU amended 49 U.S.C. § 13102 by adding the word "commercial" before "motor vehicle."  For those plaintiffs with claims accruing subsequent to August 10, 2005, Cintas has not established that any of them were involved in interstate commercial motor vehicle transportation because neither party has submitted evidence that plaintiffs drove a commercial motor vehicle as defined in 49 U.S.C. § 31132(1).  In particular, there is no evidence indicating that plaintiffs drove trucks weighing 10,001 pounds or more.  Accordingly, Cintas is not entitled to summary judgment generally on the MCA exemption for claims after August 10, 2005.

3.    Statute of Limitations

Cintas seeks summary judgment as to various plaintiffs on the grounds that the two year statute of limitations under the FSLA applies and that plaintiffs are unable to make the requisite showing of willfulness by Cintas that would trigger the extended three year limitations period under that Act.  According to Cintas, applying the two year limitations period (along with the stipulated and court ordered tolling) results in the claims of twenty-five plaintiffs being completely barred.[14]  In the alternative, Cintas contends that if there is a genuine issue of fact as to whether it acted willfully, the Court should nonetheless grant Cintas summary judgment that the three year limitations period, as tolled, represents the outermost limits of plaintiffs' claims subject to further limitation at such time as the willfulness issue is decided.

The statute of limitations for claims seeking unpaid overtime wages generally is two years after the claim accrued, but if the claim is one arising out of a willful violation, another year is added to it.  29 U.S.C. § 255(a).  To establish willfulness (to extend the limitations period to three years), plaintiffs must prove by a preponderance of the evidence that Cintas either knew that its conduct was

---

[14]    Cintas originally sought summary judgment against twenty-nine plaintiffs.  Plaintiffs acknowledge that the claims of Jessie Franklin should be dismissed and summary judgment is therefore granted as to him.  For plaintiff Friedrich Gorman, Cintas is entitled to summary judgment because he was last employed during periods that would be barred by either the two or three year limitations periods.  Cintas only employed him until June 2001, more than three years before he filed his consent-to-sue.  Request for Judicial Notice ("RJN"), Ex. 89; Kelly Decl., Ex. 11 at 3.  Moreover, as noted above, Ashley was dismissed as a plaintiff.  Finally, plaintiffs acknowledge that Joe Aschraft's claims will be dismissed.  Summary judgment is granted as to him.  For purposes of this issue, the twenty-five remaining plaintiffs are: Bockelman, Borden, Bruck, Clayton, S. Davis, Fisher, Haycock, Herndon, Juarez, Kelly, Klinghagen, T. Martinez, McLeod, Mendoza, Miller, Milligan, Osborne, Pegues, R. Perez, Peters, Romes, Sanbento, Schneider, Staton, and S. Williams.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  prohibited by the statute or showed reckless disregard on that subject. *McLaughlin v. Richland Shoe*

2  *Co.*, 486 U.S. 128, 133 (1988). "Reckless disregard" is the "failure to make adequate inquiry into

3  whether conduct is in compliance with the Act." 5 C.F.R. § 551.104. The "three-year statute of

4  limitations may apply even when the employer did not knowingly violate the FLSA; rather, it may

5  apply when it simply disregarded the possibility that it might be violating the FLSA." *Allen v. Bd. of*

6  *Pub. Ed.*, 495 F.3d 1306, 1324 (11th Cir. 2007). The issue of willfulness in certain circumstances

7  may be a question for the jury rather than an issue suitable for disposition on summary judgment.

8  *See Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 919 n.7 (9th Cir. 2003).

9                  a.    <u>Three Year Limitations Period</u>

10       As noted above, plaintiffs contend that Cintas' actions giving rise to the FLSA claims were

11  willful, and therefore, that the three year limitations period should apply. Specifically, plaintiffs

12  argue they can prove willfulness because: (1) Cintas modified its California pay plan in 2002 which

13  was part of a prior settlement in another case; (2) Cintas cannot carry its burden of proving an MCA

14  exemption; (3) Cintas misclassified certain plaintiffs as exempt due to being outside salespersons;

15  (4) the Department of Transportation compliance practices adopted by Cintas; and (5) the policies

16  regarding exemptions adopted by Cintas.

17       First, plaintiffs rely on the settlement in *Vaca v. Cintas Corp.*, No. BC 250459 (Los Angeles

18  Superior Court May 14, 2001), for the proposition that Cintas acted willfully in failing to adopt a

19  pay structure that included premium pay for overtime hours nationwide until a full year after it

20  adopted such a plan in California. As the parties agreed in settling *Vaca*, it was not to be admitted in

21  any proceeding as an admission by Cintas. RJN, Ex. 4 at 9. The *Vaca* settlement, therefore, is

22  inadmissible for purposes of showing willfulness.

23       Second, the argument that willfulness is reflected in the legal position Cintas has taken

24  relative to the MCA exemption similarly fails. Cintas has advanced the understandable legal

25  position in various pleadings that the MCA exemption and the outside sales exemption apply. As to

26  the MCA exemption, the previous presiding judge ruled that the MCA exemption applied to Cintas'

27

28

SSRs.[15]  November 4, 2003 Order at 7.  As to the outside sales exemption, 29 U.S.C. § 213(a)(1), collective bargaining agreements were negotiated to exempt SSRs from the FLSA under this exemption.  Abramovich Decl., Exs. 11-12.  As Cintas maintains, therefore, even if there was a misclassification of all SSRs, it could not have acted wilfully with such an agreement in place.

Third, plaintiffs maintain that willfulness is demonstrated by Cintas' practice of assuming that all plaintiffs were subject to the Transportation Department's regulations, and therefore not entitled to overtime under the FLSA.  As Cintas counters, however, the Ninth Circuit has held that a driver does not need to cross state lines or drive to be subject to the MCA exemption.  *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1468-69 (9th Cir. 1997).  Accordingly, whether Cintas believed plaintiffs were or were not required to comply with the Transportation Department's regulations, or whether Cintas conducted "internal audits" to determine whether vehicles crossed state lines, has no bearing on whether Cintas willfully misclassified the SSRs as exempt employees.

Finally, plaintiffs maintain that Cintas failed to follow its written policy for determining which of its employees were exempt from the FLSA's overtime protections.  While plaintiffs cite Cintas' policy, they do not present any evidence that Cintas did not follow it.  Without more, plaintiffs have not pointed to any facts on which they can shoulder their ultimate burden of showing willfulness.  In other words, plaintiffs fail to identify any issues of material fact indicating that Cintas recklessly violated the FLSA and thereby become subject to the three year limitations period.  As a result, the outermost limits of plaintiffs' claims will be governed by the two year limitations period.

b.   Two Year Limitations Period

Having determined that the three year limitations period does not apply, Cintas is entitled to summary judgment against the twenty-five plaintiffs noted above on the ground that their claims under the FSLA are barred by the two year limitations period as extended by applicable tolling.

---

[15]   Plaintiffs' attempt to argue under Rule 56(f) of the Federal Rules of Civil Procedure that once it receives discovery on the MCA exemption it can show willfulness does not work. Nowhere have plaintiffs provided specific reasons, as the rule requires, to justify delay or even to explain how discovery, once completed, would reveal any disputed issues of fact warranting denial of summary judgment.

United States District Court

For the Northern District of California

Plaintiffs do not attempt to refute Cintas' arguments or proffer evidence pertaining to the application of the two year limitations period.

Each plaintiff's limitations period will be calculated from the date of their individually filed consent-to-sue. 29 U.S.C. § 256. Some plaintiffs, however, are entitled to some or all of a six month and nine day stipulated tolling period. RJN, Exs. 6-8; March 20, 2007 Order. Cintas agreed to toll the statute of limitations from August 5, 2003, to February 14, 2004. March 20, 2007 Order at 4. For example, a plaintiff who opted in on August 6, 2003, would be entitled to one day of stipulated tolling, while a plaintiff who opted in on February 14, 2004, would be entitled to six months and nine days of stipulated tolling. Moreover, some or all of the plaintiffs qualify for the previous presiding judge's four month tolling period from July 23, 2004, to November 23, 2004, which applies only to those individual plaintiffs mailed a revised notice; not all plaintiffs. *Id*. at 4-5. Again, for instance, a plaintiff who filed a consent-to-sue on July 23, 2004, will be entitled to only one day of court ordered tolling.

Cintas has submitted evidence from its business records and plaintiffs' admissions that establish the dates it employed each of them, and thereby establishes whether their claims are barred by the two year limitations period. For twenty-two plaintiffs, there is no material discrepancy between the consents-to-sue and their interrogatory responses. Kelly Decl., Ex. 25. Because there is no material employment date discrepancy as they were last employed by Cintas more than two years, six months, and nine days before they filed their consents-to-sue, summary judgment is warranted.[16]

The remaining three plaintiffs (Klinghagen, Bordon, Romes) present material discrepancies between the dates of their last employment with Cintas in their consents-to-sue, Cintas' business records, or their interrogatory responses. For instance, Klinghagen's consent-to-sue lists December 2001 as his last day of employment, which is consistent with Cintas' business records. RJN, Ex. 114; Abramovich Decl., Ex. 10. The inconsistency arises from Klinghagen's interrogatory response

---

[16]      Bockelman, Bruck, Clayton, S. Davis, Fisher, Haycock, Herndon, Juarez, Kelly, T. Martinez, McLeod, Mendoza, Miller, Milligan, Osborne, Pegues, R. Perez, Peters, Sanbento, Schneider, Staton, and S. Williams.

**United States District Court**
For the Northern District of California

stating that his last date of employment was in October 2003.  Cintas maintains the 2003 date was a typographical error.  Even if the date contained in the interrogatory was not in error, in light of the consent-to-sue and Cintas' employment records, there is no issue of material fact.  The remaining two plaintiffs' inconsistencies similarly do not raise an issue of material fact, and summary judgment will be granted.[17]

### 4.   Plaintiffs Maxfield and Brown

Cintas alleges that it is entitled to summary judgment as to plaintiffs Joe Ashcraft,[18] Darold Maxfield, and Ricardo Brown because they were not SSRs during the applicable time period, and thereby not within the scope of this action.  Maxfield and Brown acknowledged that they did not act as SSRs during the relevant period.[19]  Kelly Decl., Ex. 15 at 11, Ex. 18 at 13.  Despite plaintiffs' arguments to the contrary, the prior presiding judge's November 4, 2003 and May 25, 2004 orders held that only certain types of plaintiffs could proceed together as members of a conditionally certified collective action.  The orders were not limited to the issue of to whom the parties were to give notice as plaintiffs allege.  Consequently, Maxfield's and Brown's admissions result in the end of their claims.

### B.   Summary Judgment on Certain State Law Claims

Cintas seeks summary judgment as to: (1) Ashcraft's claim under Kentucky law;[20] (2) Fedor's and Peterson's claims under Minnesota law; (3) the criminal claim asserted under New Jersey law by

---

[17]   Cintas also seeks partial summary judgment limiting the claims to plaintiffs whose work weeks occurred within the two year limitations period as individually tolled or after the consent-to-sue was filed.  Cintas is not entitled to such relief with intricate tolling issues applicable to various plaintiffs.  Cintas may file additional motions for summary judgment against named plaintiffs that allegedly do not fall within the applicable limitations period.

[18]   As noted above, plaintiffs will dismiss Ashcraft's claims, and summary judgment will therefore be granted.

[19]   Cintas' objections to paragraphs five, seven, and eight in the Maxfield declaration and paragraph six in the Brown declaration are granted because they contain improper opinion testimony, are irrelevant, and speculative.  Cintas' motion to strike sentences found at 1:12-13, 1:20-21 in the Maxfield declaration and 1:22-23 in the Brown declaration similarly are granted because they are irrelevant, speculative, and contain improper opinion testimony.

[20]   As noted above, as plaintiffs acknowledge Ashcraft's claims are going to be dismissed, his state law claim under Kentucky law also is subject to summary judgment.

18

Edwards, Huertas, and Samuels; and (4) Clayton's claim under Washington law.  According to plaintiffs, they have shown a sufficient basis to proceed on their respective claims under Washington, Minnesota, and Kentucky law in that there exist disputed issues of fact on whether or not Cintas failed to provide required rest, meal and/or bathroom breaks for its employees.  Plaintiffs further argue that Cintas' summary judgment motion on plaintiffs' New Jersey law claims similarly is meritless.

> 1.   Motions to Strike and Objections to Declarations

Cintas objects to certain paragraphs within the Clayton, Peterson, Fedor, Klinghagen, Miller, and Alvis declarations submitted in opposition to summary judgment on certain state law claims.[21] The portions of these declarations that Cintas objects to either are speculative, lack personal knowledge, are not relevant, and/or attempt to create issues of fact in contradiction to prior deposition testimony.  *Block*, 253 F.3d at 419 n.2 (9th Cir. 2001).  Cintas' objections, therefore, are granted.  The Court will exclude the paragraphs described from evidence in its consideration of Cintas' motion for summary judgment on these state law claims.

> 2.   Plaintiffs Fedor and Peterson – Fourteenth Claim Under Minnesota Law

In their fourteenth claim for relief, plaintiffs Dennis Fedor and Daniel Peterson allege that under Minnesota Stat. § 177.253(1), employers are required to provide rest breaks to employees. Section 177.253(1) reads: "An employer must allow each employee adequate time from work within each four consecutive hours of work to utilize the nearest convenient restroom."  Minn. Stat. § 177.253(1).  Based on this statute, Fedor and Peterson must present facts that Cintas did not allow them to use the nearest convenient restroom every four hours.

Fedor and Peterson are unable to produce such evidence.  In their interrogatory responses, Fedor and Peterson each said they routinely worked while eating lunch and did not take rest breaks because SSRs at Cintas locations worldwide routinely worked through the day without stopping to take breaks.  Kelly Decl., Ex. 2 at 3, Ex. 3 at 3.  Indeed, Fedor testified that he could and did use the

---

[21]   The paragraphs are: (1) Clayton declaration ¶¶ 4-9; (2) Peterson declaration ¶¶ 5-7; (3) Fedor declaration ¶¶ 4-7; and (4) Miller declaration ¶¶ 4-5.  Cintas objects to the entire Alvis and Klinghagen declarations.

**United States District Court**

For the Northern District of California

restroom facilities at customers' facilities, and Peterson testified that he used the restrooms at work. *Id*., Ex. 4 at 32-33, Ex. 5 at 24.  The statute does not require that employees receive restroom breaks any time they might choose, but rather, it requires adequate time to use those facilities every four hours.  The testimony of both Fedor and Peterson demonstrate that they had adequate time to utilize a restroom without any restrictions from Cintas.  Consequently, summary judgment regarding both plaintiffs' claims under Minnesota Stat. § 177.253(1) is granted.[22]

3.   Plaintiffs Edwards, Huertas, and Samuels – Sixteenth Claim Under New Jersey Law

In their sixteenth claim for relief, plaintiffs Wayne Edwards, Wilfredo Huertas, and Derrick Samuels allege that Cintas did not pay overtime wages in violation of N.J. Stat. §§ 34:11-56a, *et seq*., and N.J. Stat. § 2C:40A-2.  Cintas insists that because Section 2C:40A-2 is a criminal statute, plaintiffs lack standing to bring this portion of their claim.  Cintas does not challenge the claim to the extent that it is premised on New Jersey civil statutes.

Only one New Jersey court has addressed N.J. Stat. § 2A:170-90.2, the predecessor to N.J. Stat § 2C:40A-2.  In *Trustees, Local 478 Trucking & Allied Indus. Pension Fund v. Pirozzi*, 198 N.J. Super. 297, 307 (1983), the issue was whether New Jersey law permitted the creation of a civil remedy from a statute that was unequivocally penal on its face.  The court concluded the statute lacked an express provision for a civil remedy.  *Id*. at 310.  In analyzing whether a civil remedy could be implied under New Jersey law, the court reasoned that the placement of the statute within the state's punishment laws as opposed to within statutes imposing civil liability weighed against an implied civil remedy.  *Id*. at 310, 313.  The court also placed much weight on the fact that the absence of any explicit provision for a civil remedy was indicative, in and of itself, of legislative

---

[22]      Plaintiffs submit the declarations of Peterson and Fedor for the claim that Cintas' route structure and demands to complete the route in the allotted time did not allow the opportunity to stop and use the bathroom.  Plaintiffs further submit the declaration of plaintiff Shawn Klinghagen, who worked at a different Minnesota facility, to show that he suffered from the same denial of breaks in violation of Minnesota law.  This declaration, however, neither makes any reference to knowing Fedor or Peterson nor having a foundation to know of Cintas' practices at the location where Fedor and Peterson worked.  All three declarations are inappropriate because they attempt to create issues of fact through the use of declarations that contradict prior deposition or other sworn testimony.  *Block*, 253 F.3d at 419 n.2.

United States District Court

For the Northern District of California

1   intent not to permit any such remedy.  *Id*. at 313.  Consequently, the court concluded that there was

2   no private cause of action for a violation of Section 2A:170-90.2.  *Id*. at 318.

3          Here, just as Section 2A:170-90.2 did not provide an express civil remedy, neither does

4   Section 2C:40A-2.  The same reasoning espoused in *Pirozzi* as to the implied civil remedy remains

5   true as to the statute here because: (1) it resides within New Jersey's Code of Criminal Justice as

6   opposed to its civil code; and (2) in amending the statute, the legislature again chose not to place an

7   express civil remedy within the statute, indicating that no such remedy was intended.  Because the

8   statute explicitly provides for a penal remedy, and the only relevant case law indicates there is no

9   civil remedy available, summary judgment is granted on the sixteenth claim to the extent that it is

10  premised on New Jersey's Code of Criminal Justice.

11              4.      <u>Plaintiff Clayton – Twenty-First Claim Under Washington Law</u>

12         In his twenty-first claim for relief, plaintiff Michael Clayton alleges that under Washington

13  Admin. Code § 296-126-092, employers are required to provide rest breaks to employees.  This

14  section requires that employees "be allowed a rest period of not less than 10 minutes, on the

15  employer's time, for each 4 hours of working time."  Wash. Admin. Code § 296-126-092(4).  The

16  section further provides that "[w]here the nature of the work allows employees to take intermittent

17  rest periods equivalent to 10 minutes for each 4 hours worked, scheduled rest periods are not

18  required."  *Id*., § 296-126-092(5); *see White v. Salvation Army*, 75 P.3d 990, 995 (Wash. Ct. App.

19  2003) (finding that employers who required employees to be on call or on duty but permitted the

20  employees to take time to eat, rest, and make personal phone calls or engage in other personal

21  business satisfied their obligation under Washington law).

22         Cintas argues that to satisfy his Washington law claim, Clayton must do more than just show

23  breaks were not scheduled, but must present evidence that he was precluded from taking intermittent

24  breaks of ten minutes or more per each four hours worked.  In his response to an interrogatory,

25  Clayton said he: (1) did not take lunch breaks but instead ate meals while driving; (2) was never able

26  to take ten minute rest breaks every four hours; and (3) was rushed to use bathroom breaks at

27  customers' facilities which totaled not more than three minutes per day.  Kelly Decl., Ex. 3 at 4-7.

28  Despite Cintas' argument to the contrary, Clayton did not say that it was his choice to take breaks

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  and to eat lunch while driving, but rather his ability to use the bathroom was rushed. *Id*., Ex. 7 at

2  159. This rushed bathroom use appears to raise an issue of whether the ten minute requirement

3  under Washington law was satisfied. Accordingly, there is a genuine issue of material fact on the

4  sufficiency of the time provided to Clayton for meal and rest periods under Washington law and

5  summary judgment on his twenty-first claim for relief must be denied.

6  IV. CONCLUSION

7      Cintas' motions for summary judgment are granted in part and denied in part as follows:

8  (1) Under the MCA exemption, summary judgment is:

9      (a) Granted against: Barnes, Bryan, Cummings, Gilliam Jr., Johnson, Kellogg, Lee,

10      Michelfelder (through his estate), Pianowski, Robinson, Wilson, Wait, Walker, and

11      Washkhun, and Zobrist.

12      (b) Denied as to Bruck, S. Williams, and Wagner.

13      (c) Denied without prejudice as to Bouchard, Gregory, Hamilton, Rowse, and Sims.

14      (d) Denied without prejudice as to claims of other plaintiffs after August 10, 2005.

15  (2) Under the two year statute of limitations, summary judgment on certain consolidated claims is

16  granted against Ashcraft, Bockelman, Bordon, Bruck, Clayton, S. Davis, Fisher, Franklin, Gorman,

17  Haycock, Herndon, Juarez, Kelly, Klinghagen, T. Martinez, McLeod, Mendoza, Miller, Milligan,

18  Osborne, Pegues, R. Perez, Peters, Romes, Sanbento, Schneider, Staton, and S. Williams.

19  (3) Summary judgment is granted against Maxfield and Brown, on the grounds of no showing of

20  employment as SSRs.

21  (4) On the state law claims, summary judgment is:

22      (a) Granted on Ashcraft's claim under Kentucky Rev. Stat. § 337.365.

23      (b) Granted on Fedor's and Peterson's claims under Minnesota Stat. § 177.253(1).

24      (c) Granted under N.J. Stat. § 2C:40A-2 against Edwards, Huertas, and Samuels.

25      (d) Denied for Clayton's claim under Washington Admin. Code § 296-126-092(4).

26

27

28

1

2        IT IS SO ORDERED.

3

4    Dated: November 13, 2008

     _____
5                                      RICHARD SEEBORG
                                       United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGEMENT ON: (1)
     CERTAIN CONSOLIDATED CLAIMS; AND (2) CERTAIN STATE LAW CLAIMS
     C 03-1180 RS

**United States District Court**
For the Northern District of California

1

2  **THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

3  Angela N. O'Rourke     aorourke@ssd.com, sfr_docket@ssd.com

4  Anna L. Endter     aendter@ssd.com, sfr_docket@ssd.com

5  Eileen Goldsmith     egoldsmith@altshulerberzon.com, byamate@altshulerberzon.com

6  Erinn Mae Contreras     econtreras@ssd.com, sfr_docket@ssd.com, tdanowski@ssd.com

7  James Albert Caputo     jimc@csgrr.com

8  Joseph Anthony Meckes     jmeckes@ssd.com, llanglois@ssd.com, sfr_docket@ssd.com

9  Laboni Amena Hoq     lhoq@tvlegal.com, cs@tvlegal.com

10  Mark C. Dosker     mdosker@ssd.com, aorourke@ssd.com, jmeckes@ssd.com, mfull@ssd.com, mkelly@ssd.com, mmendoza@ssd.com, sfr_docket@ssd.com

11

12  Mary Lynne Calkins     mcalkins@csgrr.com

Michael Rubin     mrubin@altshulerberzon.com, byamate@altshulerberzon.com

13

14  Michael W. Kelly     mkelly@ssd.com, mfull@ssd.com, rarroyo@ssd.com

Michelle Mei-Lin Full     mfull@ssd.com, llanglois@ssd.com, sfr_docket@ssd.com, ymannion@ssd.com

15

16  Scott Alan Kronland     skronland@altshulerberzon.com, jperley@altshulerberzon.com

17  Stefanie Kim Gluckman     invalidaddress@myrealbox.com

18  Steven Wayne Pepich     stevep@csgrr.com, e_file_sd@lerachlaw.com, e_file_sf@lerachlaw.com

19  Theodore J. Pintar     TedP@csgrr.com, e_file_sd@csgrr.com

20  Theresa M. Traber , Esq     tmt@tvlegal.com, cs@tvlegal.com

21  Vanessa H. Eisemann     veisemann@nclrights.org

22  William S. Lerach     e_file_sd@lerachlaw.com

23  Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

24

25  **Dated: 11/13/08**                                    **Richard W. Wieking, Clerk**

26
                                                                     **By:     Chambers**
27

28  ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGEMENT ON: (1) CERTAIN CONSOLIDATED CLAIMS; AND (2) CERTAIN STATE LAW CLAIMS
C 03-1180 RS

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGEMENT ON: (1)
CERTAIN CONSOLIDATED CLAIMS; AND (2) CERTAIN STATE LAW CLAIMS
C 03-1180 RS