1  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Mark C. Dosker (CA Bar # 114789)
2  Diane L. Gibson (CA Bar # 114825)
   Michael W. Kelly (CA Bar # 214038)
3  Joseph A. Meckes (CA Bar # 190279)
   Patrice N. Harper (CA Bar # 225573)
4  One Maritime Plaza, Third Floor
   San Francisco, California 94111-3492
5  Telephone: +1.415.954.0200
   Facsimile: +1.415.393.9887
6
   Attorneys for Defendants
7  CINTAS CORPORATION and
   PLAN ADMINISTRATOR FOR
8  THE CINTAS PARTNERS' PLAN

9                  **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN JOSE DIVISION**

12

13  PAUL VELIZ, *et al.*, on behalf of            Case No. 03-01180 (RS)
    themselves and all others similarly situated.
14                                                 **[E-FILING]**
                    Plaintiffs,
15                                                 CLASS ACTION
          vs.
16                                                 **CINTAS' NOTICE OF MOTION AND
    CINTAS CORPORATION, an Ohio                    MOTION FOR SUMMARY JUDGMENT AS
17  corporation; PLAN ADMINISTRATOR               AGAINST FIRST AID AND SAFETY SSR
    for the Cintas Partners' Plan; and DOES 1-    PLAINTIFFS ON THEIR THIRD CLAIM
18  25, inclusive,                                 FOR RELIEF; MEMORANDUM IN
                                                   SUPPORT***
19                  Defendants.
                                                   Date:        January 21, 2009
20                                                 Time:        9:30 a.m.
                                                   Courtroom:   4
21                                                 Judge:       Hon. Richard Seeborg

22

23

24                              **First Aid and Safety SSR MSJ**

25

26

27

28

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF, Case No. 03-01180 (RS)

1        **NOTICE OF MOTION AND MOTION**

2            TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE

3    NOTICE THAT on January 21, 2009 at 9:30 a.m., or as soon thereafter as the matter may be

4    heard, in Courtroom 4 of the above-entitled Court, located at 280 South 1st Street, Fifth Floor,

5    San Jose, California, Defendant Cintas Corporation ("Cintas") will and hereby does move the

6    Court for an Order granting the relief sought by this Motion.

7            By this Motion, Cintas seeks an Order pursuant to Fed. R. Civ. P. 56(b) and (c), granting

8    summary judgment against Plaintiffs Sherry Lay, Hisham Nijem, Claudio Atencio and Kathleen

9    Ferrari ("the First Aid & Safety SSRs") on their Third Claims for Relief under the Fair Labor

10   Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*, on the grounds that under the Motor Carrier

11   Act ("MCA") exemption, their FLSA claims are barred because, as Service Sales

12   Representatives in Cintas' First Aid and Safety Division, they transported or were subject to

13   transporting goods in interstate commerce as part of their duties.

14           This Motion is based upon this Notice of Motion, Motion and Memorandum of Points

15   and Authorities, the Declaration of Patrice Harper, and the Declarations of David Summe and

16   Brenda Abramovich filed herewith, the Reply papers to be submitted in support of this Motion,

17   upon such other or further papers as might be submitted in

18   support of this Motion, upon the record in this action, and upon oral argument to be presented to

19   the Court in support of this Motion.

20

21                                          Respectfully submitted,

22   Dated:  December 17, 2008            SQUIRE, SANDERS & DEMPSEY L.L.P.

23

24                                        By:_____/s/_____
                                                    Joseph A. Meckes

25                                        Attorneys for Defendants
                                          CINTAS CORPORATION and
26                                        PLAN ADMINISTRATOR FOR THE
                                          CINTAS PARTNERS' PLAN

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF, Case No. 03-01180 (RS)

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION...................................................................................1

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES..............................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.      INTRODUCTION AND SUMMARY ...................................................................1

II.     BACKGROUND INFORMATION .......................................................................1

III.    ARGUMENT ........................................................................................................3

        A.      Summary Judgment Standard...................................................................3

        B.      The MCA Exemption Bars Claims of Drivers Transporting Goods
                Within a State in the "Practical Continuity of Movement" from
                Another State. ..........................................................................................4

                1.      The MCA Exemption Covers Drivers Who Are Subject to
                        Transporting Goods in Interstate Commerce. ...............................4

                2.      Plaintiffs Transported and Were Subject to Transporting
                        Goods in Interstate Commerce as a Regular Part of Their
                        Duties. ........................................................................................5

                        a.      Goods Are Transported in Interstate Commerce So
                                Long As the Out-of-State Shipper Has a Fixed and
                                Persisting Intent that the Goods Move Beyond the
                                In-State Warehouse. ........................................................6

                        b.      Drivers Whose Duties Subject Them to
                                Transporting Even a Minimal Amount of Interstate
                                Commerce Goods Fall Under the MCA Exemption.......7

                        c.      Cintas Has Proven That These Four First Aid &
                                Safety SSRs Were Subject to Transporting Goods in
                                Interstate Commerce. .....................................................9

                        d.      The First Aid & Safety SSRs' Delivery of Specially
                                Ordered Items from Out-of-State Facilities to Their
                                In-State Customers Subjects Them to the MCA
                                Exemption. ...................................................................10

IV.     CONCLUSION ...................................................................................................14

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON THIRD CLAIM FOR RELIEF, Case No. 03-01180 (RS)

1

## TABLE OF AUTHORITIES

2

**Page**

3

### FEDERAL CASES

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................3

5

*Badgett v. Rent-Way, Inc.*, 350 F. Supp. 2d 642 (W.D. Pa. 2004).......................................*passim*

6

*Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002).....................................5

7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................3

8

*Crooker v. Sexton Motors, Inc.*, 469 F.2d 206 (1st Cir. 1972) .............................................4, 5, 7

9

*Forest Guardians v. U.S. Forest Svc.*, 329 F.3d 1089 (9th Cir. 2003) .........................................5

10

*Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993) ............................................4

11

*Friedrich v. U.S. Computer Services*, 974 F.2d 409 (3d Cir. 1992) ........................................4, 7

12

*Gerard v. Northern Transportation, LLC*, 146 F. Supp. 2d 63 (D. Me. 2001) ...................4, 5, 10

13

*Guyton v. Schwan Food Co.*, Civil No. 03-5523(DWF/SRN), 2004 U.S. Dist. LEXIS 4174 (D. Minn. Mar. 16, 2004)..........................................................................9, 13

14

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996)...........................................................3

15

*Klitzke v. Steiner Corp.*, 110 F.3d 1465 (9th Cir. 1997) .................................................4, 5, 6

16

*Levinson v. Spector Motor Serv.*, 330 U.S. 649 (1947) .................................................4, 7

17

*Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574 (1986) ............................................3

18

*Morris v. McComb*, 332 U.S. 422 (1947)..............................................................8, 13

19

*Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947)..............................................7

20

*Sinclair v. Beacon Gasoline Co.*, 447 F. Supp. 5 (E.D.La. 1976)) ...........................................7

21

### FEDERAL STATUTES

22

29 C.F.R. § 782.1 ....................................................................................1

23

29 C.F.R. § 782.7 ....................................................................................1

24

29 U.S.C. § 201 *et seq* (Fair Labor Standards Act ("FLSA")) ...........................................1

25

29 U.S.C. § 213(b) ...................................................................................4

26

29 U.S.C. § 255......................................................................................11

27

29 C.F.R. § 782.7(b)................................................................................7, 11

28

29 C.F.R. § 782.2................................................................................4, 7, 13

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON THIRD CLAIM FOR RELIEF, Case No. 03-01180 (RS)

29 C.F.R. § 782.2(b)(3) ..................................................................................5, 10

49 U.S.C. § 31502 ...............................................................................................4

46 Fed.Reg. 37,902 ..................................................................................*passim*

49 U.S.C. § 13501 ..........................................................................................1, 4

57 Fed.Reg. 19,812 .............................................................................................6

Fed. R. Civ. P. 56(c) .......................................................................................1, 3

## MISCELLANEOUS

DOL Wage & Hour Field Operations Handbook § 24e01 ...............................9, 10, 13

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Suite 300
San Francisco, California 94111

**CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY**
**SSRS ON THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)**

1                                **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.**        **INTRODUCTION AND SUMMARY**

3          As a matter of law, FLSA overtime requirements do not apply to the four remaining opt-in

4 Plaintiffs in this case who are First Aid and Safety Service Sales Representatives ("First Aid &

5 Safety SSRs"). As explained in greater detail below, the First Aid & Safety SSRs are, and always

6 have been, exempt from the FLSA. As a matter of law, the FLSA does not apply to the First Aid

7 & Safety SSRs because they are responsible for delivering items to their customers that originated

8 from a state other than that in which they delivered products to Cintas' customers. As a result,

9 they are exempt from the FLSA pursuant to the Motor Carrier Act ("MCA") exemption. 49

10 U.S.C. §13501; 29 C.F.R. §§782.1, 782.7.

11          Cintas previously filed a Motion for Summary Judgment on Consolidated Grounds

12 applying one aspect of the MCA exemption. In granting that motion in part on November 13,

13 2008 (Dkt 1039), this Court made several rulings that are relevant to this Motion, including

14 determining that Cintas "qualifies as a motor private carrier under all the iterations of the

15 applicable statute" and "that plaintiffs' job duties as SSR drivers affected highway safety in that

16 their regular responsibilities included driving Cintas' vehicles for the purpose of delivering

17 products to various customers." Dkt 1039 at 9:3-4, 7-10. For the same reasons as described in

18 the November 13, 2008 Order, the First Aid & Safety SSRs are subject to the MCA exemption.

19 As explained in detail below, although each of the First Aid & Safety SSRs had different routes

20 and different customers, they commonly shared a duty regularly to deliver Cintas' products to

21 customers, which products were ordered specifically for those customers from out-of-state

22 suppliers. Because the four First Aid & Safety Plaintiffs were never eligible to receive overtime

23 compensation under the FLSA, their claims must be dismissed.

24    **II.**        **BACKGROUND INFORMATION**

25          Cintas' retail business is generally broken into three primary divisions: (1) Rental, (2)

26 First Aid and Safety, and (3) Document Management. The First Aid and Safety Division sells

27 premium first aid and safety products and training to Cintas customers around the United States.

28 First Aid & Safety SSRs regularly call on customers to sell them a range of first aid supplies, such

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF, Case No. 03-01180 (RS)

1   as bandages and pain medication, and safety equipment, such as eye protection, hard hats,

2   emergency oxygen and portable Automated External Defibrillators ("defibrillators").  In addition,

3   First Aid & Safety SSRs participate in selling comprehensive training courses to their customers,

4   including basic first aid principles, cardiopulmonary resuscitation (CPR), as well as Occupational

5   Health and Safety Administration ("OSHA")-certified safety and compliance programs.

6   Declaration of David Summe ("Summe Decl."), ¶2.

7        All First Aid & Safety SSRs are required to participate in special training focusing on

8   workplace safety, including OSHA standards, and other first aid and safety related topics.  This

9   training gives First Aid & Safety SSRs the skills they need to identify safety issues and needs at

10  customer sites, so that they can recommend and sell additional products to the customers on their

11  assigned routes.  *Id*. at ¶3.

12       Many of the products sold and delivered by First Aid & Safety SSRs are specially ordered

13  for a specific customer directly from out-of-state suppliers.  These special-order products are

14  drop-shipped by the out-of-state supplier to the  First Aid & Safety SSR's location.  These

15  products are then delivered by the First Aid & Safety SSRs to customers assigned to that route.

16  Special-order products sold and delivered by First Aid & Safety SSRs include defibrillators,

17  emergency oxygen, eye wash stations, stretchers, burn kits, safety glasses, hard hats and ID badge

18  holders.  Many of these items, such as safety glasses, hard hats and ID badge holders can be

19  customized with the specific customer's logo.  Many of these special-order products are not kept

20  as part of the regular inventory at the Cintas First Aid and Safety location; they are ordered only

21  as requested by Cintas' customers.  *Id*. at ¶4.

22       Most of these special-order items are manufactured and shipped from a single out-of-state

23  supplier.  For instance, during the time the First Aid & Safety SSRs who are subject to this

24  motion were Cintas employees, nearly all logo items, such as hard hats and safety glasses, were

25  customized at a Cintas facility in Albuquerque, New Mexico and shipped to the Cintas locations

26  where these Plaintiffs worked.[1]  *Id*. at ¶5.  During the relevant period, Cintas purchased all

27  _____

[1]     The sole exception is the processing of those rare logo items requiring multi-colored imprints.

28      In such circumstances, safety glasses were imprinted by an outside vendor in Memphis,
        Tennessee and other items, such as hard hats, were sent to an outside vendor in Pittsburgh,

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

1   defibrillators from outside vendors located in Connecticut and Montana.  Those defibrillators are

2   kept at a Cintas storage facility in Kansas City, Missouri until they are ordered for a specific

3   customer.  *Id*. at ¶6.  Three of the Plaintiffs subject to this motion worked in California and one in

4   Michigan – none of them worked in a state from which these special items were shipped.

5   Abramovich Decl., ¶6.

6   **III.    ARGUMENT**

7        **A.    Summary Judgment Standard**

8        Summary judgment is proper when "the pleadings, depositions, answers to interrogatories,

9   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

10  to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

11  R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis on which

12  a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it

13  could affect the outcome of the suit under governing law.  *See Anderson v. Liberty Lobby, Inc.*,

14  477 U.S. 242, 248 (1986).  The principal purpose of the summary judgment procedure is to

15  identify and to dispose of factually unsupported (or unsupportable) claims.  *See Celotex Corp. v.*

16  *Catrett*, 477 U.S. 317 (1986).  When "the record taken as a whole could not lead a rational trier of

17  fact to find for the non-moving party, there [is] no genuine issue for trial."  *Matsushita Elec. Ind.*

18  *Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

19       In determining whether to grant or deny summary judgment, however, it is not a court's

20  task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d

21  1275, 1279 (9th Cir. 1996) (internal quotations omitted). Rather, the court relies on the

22  nonmoving party to identify with reasonable particularity the evidence that precludes summary

23  judgment.  *See id.*

24  ///

25  ///

26  ///

27

28     Pennsylvania.  Summe Decl., ¶5.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

**B.     The MCA Exemption Bars Claims of Drivers Transporting Goods Within a State in the "Practical Continuity of Movement" from Another State.**

      **1.     The MCA Exemption Covers Drivers Who Are Subject to Transporting Goods in Interstate Commerce.**

As this Court is aware from Cintas' previous motions, under the MCA exemption, the overtime requirements of the FLSA do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935." 29 U.S.C. § 213(b)(1). The Secretary of Transportation has jurisdiction, and thus regulatory authority, over employees transporting goods traveling in interstate commerce where the employees are engaging in activities directly affecting the safety of motor vehicles. 49 U.S.C. § 13501; 29 C.F.R. § 782.2. Thus, in order to invoke the exemption, Cintas need only show that:

      (a)     it is a "motor private carrier;"

      (b)     the plaintiffs were or could have been engaged in activities that "affect the safe operation of motor vehicles on public highways"; and

      (c)     the plaintiffs were or could have been called upon to transport goods in interstate commerce.

*See* 49 U.S.C. § 31502; *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993); *Gerard v. Northern Transportation, LLC*, 146 F. Supp. 2d 63 (D. Me. 2001); *see also Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1467-68 (9th Cir. 1997) (describing the application of the MCA exemption).  Each of these elements is satisfied here.

      As this Court has already held, Plaintiffs do not dispute the first two elements necessary for application of the MCA exemption, that Cintas is a motor private carrier and that Plaintiffs' duties "affected highway safety in that their regular responsibilities included driving Cintas' vehicles for the purpose of delivering products to various customers."  Dkt 1039 (Nov. 13, 2008 Order at 9:3-12).  Nor can they dispute those elements.  Both the Supreme Court and lower courts have ruled that drivers, as a matter of law, affect highway safety. *See e.g., Levinson v. Spector Motor Serv.*, 330 U.S. 649, 666-68 (1947); *Friedrich v. U.S. Computer Services*, 974 F.2d 409, 417-18 (3d Cir. 1992) (driving of passenger vehicles is activity that "affected safety"); *Crooker v.*

- 4 -

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

1   *Sexton Motors, Inc.*, 469 F.2d 206, 210-211 (1st Cir. 1972) ("[T]he activities of one who drives [a

2   new or used automobile] in interstate commerce, however frequently or infrequently, are not

3   trivial.  Such activities directly affect the safety of motor vehicle operations.").  It is undisputed

4   that FAS SSRs drive as a part of their job duties, delivering Cintas products to the facilities of

5   Cintas customers in vehicles provided for that purpose by their employer. *See* Dkt 519 (Second

6   Amended Complaint ("SAC")) at ¶127.  Accordingly, as a matter of law, Plaintiffs here are

7   engaged in safety-affecting activities.

8                    **2.    Plaintiffs Transported and Were Subject to Transporting Goods in
                             Interstate Commerce as a Regular Part of Their Duties.**
9

10              Under binding Ninth Circuit authority, the "interstate commerce" requirement may be

11  satisfied if as a regular part of his duties: (1) a driver is subject to transporting goods across state

12  lines; or (2) a driver's activities are entirely intra-state, but the driver is "subject to" transporting

13  goods that are in the "practical continuity of movement" from one state to another (i.e., in

14  interstate commerce). *Klitzke v. Steiner*, 110 F.3d 1465, 1469 (9th Cir 1997); *Bilyou v. Dutchess*

15  *Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002); 29 C.F.R. § 782.2(b)(3); *See* Dkt 1012

16  ("Request for Judicial Notice in Support of Cintas' Motion for Summary Judgment on Certain

17  Plaintiffs' Third Claims for Relief" ("RJN")), Ex. 1 DOT Notice of Interpretation, Application of

18  the Federal Motor Carrier Safety Regulations ("DOT Interpretation of the MCA"), 46 Fed. Reg.

19  37,902 (July 23,1981).[2]  As shown below, the Plaintiffs' duties required them to (and they

20  actually did), transport goods in the "practical continuity of movement" in the flow of interstate

21  commerce, even though they may have driven solely within a single state.

22  ///

23  ///

24  ///

25  ───────────────────────
    [2]    The DOT and the DOL are the agencies charged with administering the MCA and the FLSA,
26  respectively. *Gerard v. N. Transp. LLC*, 146 F. Supp. 2d 63, 66 (D. Me. 2001).  Because the
    issues raised in this motion involve the interaction between the MCA and FLSA, this Court
27  should defer to the DOT's and DOL's reasonable interpretations of their own guidelines and
    the statutes they administer.  *See id.* at 67; *see also Forest Guardians v. U.S. Forest Svc.*, 329
28  F.3d 1089, 1098 (9th Cir. 2003).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

1

      **a.**     **Goods Are Transported in Interstate Commerce So Long As**
**the Out-of-State Shipper Has a Fixed and Persisting Intent that**

2
             **the Goods Move Beyond the In-State Warehouse.**

3
     To determine whether goods are in the "practical continuity of movement" in the flow of

4
interstate commerce, courts examine the essential character of the commerce, as manifested by

5
whether the out-of-state shipper has a "fixed and persisting" intent, at the time of shipment, that

6
the goods move beyond the in-state warehouse to which the goods were shipped. *Klitzke*, 110

7
F.3d at 1469; RJN, Ex. 3, Motor Carrier Interstate Transportation – From Out-of-State Through

8
Warehouses to Points in Same State ("DOT Policy Statement"), 57 Fed. Reg. 19,812 (May 8,

9
1992).  In other words, goods shipped from Albuquerque, New Mexico specifically intended for

10
delivery to an identified Cintas customer in San Jose, California are considered to be in the flow

11
of interstate commerce even if the goods stop at a Cintas location in San Leandro, California.

12
This is because goods remain in the "practical continuity of movement" in interstate commerce

13
until they reach their final destination unless there are facts showing there was a break in the

14
continuity. RJN, Ex. 3, DOT Policy Statement, 57 Fed. Reg. 19,812 (listing factors that affect and

15
do not affect whether the "practical continuity of movement" has been broken).  Even if the

16
shipper does not know the goods' ultimate destinations, the analysis centers on whether at the

17
time goods are ordered from the out-of-state shipper, there is an intended final place of delivery

18
other than the in-state warehouse.  The fact that there is an intended, interstate, final place of

19
delivery is sufficient for the last leg of the transportation -- the delivery to the ordering company's

20
customer -- to be covered under the MCA.  *Klitzke*, 110 F.3d at 1470; Dkt 1012-4, DOT Policy

21
Statement, 57 Fed. Reg. 19,812.

22
     In order to find that a shipper did *not* have such a fixed intent at the time of shipping, the

23
Court must find that **all** of the following three elements are present: (1) at the time of shipment

24
there is no specific order filled for a specific quantity of a given product to be moved through to a

25
specific destination beyond the terminal storage (i.e., a warehouse); **and** (2) the terminal storage

26
is a distribution point or local marketing facility from which specific amounts of the product are

27
sold or allocated; **and** (3) transportation in the furtherance of this distribution within the single

28
///

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

1   State is specifically arranged only after sale or allocation from storage. DOL Interstate Commerce

2   Requirements of [MCA] Exemption, 29 C.F.R. § 782.7(b)(2).

3               **b.     Drivers Whose Duties Subject Them to Transporting Even a**
                         **Minimal Amount of Interstate Commerce Goods Fall Under the**
4                        **MCA Exemption.**

5           A driver who can be called upon in the regular course of his or her duties to transport even

6   a minimal amount of goods in the continuous stream of interstate commerce is exempt from the

7   FLSA's overtime requirements under the MCA exemption.  As stated in DOL regulations,

8   employees are exempt if their *bona fide* duties subject them to operating in interstate commerce,

9   regardless of proportion of time or activities spent actually doing so.   DOL Requirements for

10  [MCA] Exemption in General, 29 C.F.R. § 782.2.  "Even a minor involvement in interstate

11  commerce as a regular part of an employee's duties will subject that employee to the jurisdiction

12  of the [Federal Highway Safety Administration]."  Dkt 1012-2, DOT Interpretation of the MCA,

13  46 Fed. Reg. 37,902; *see also Badgett v. Rent-Way, Inc.*, 350 F. Supp. 2d 642, 654 (W.D. Pa.

14  2004).

15          Contrary to positions taken by Plaintiffs in this case, the law **does not** require any

16  "percentage of out-of-state goods" litmus test.  *See, e.g., Levinson*, 330 U.S. at 674-75 (character

17  of activities, not proportion, determines whether driver is subject to DOT regulation).  As the

18  court stated in *Badgett*, "it is the *nature* of the employee's regular job duties that is most

19  important, not necessarily the *percentage* of the employee's" involvement in interstate commerce.

20  350 F. Supp. 2d at 654-55 (emphasis in original).  This is especially true of drivers because the

21  very nature of their duties substantially impact interstate commerce and thus they "should seldom,

22  if ever, fall within [the] *de minimis* exception" to the MCA exemption.  *Friedrich*, 974 F.2d at

23  417 n.10 (citing *Levinson*, 330 U.S. at 677-78; *Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 210

24  (1st Cir. 1972); *Sinclair v. Beacon Gasoline Co.*, 447 F. Supp. 5, 11 (E.D.La. 1976)).[3]

25  ///

26  ─────────────────────
    [3]   A *de minimis* exception generally only exists for employees who handle freight before or after
27        loading onto a vehicle driven by another because their tasks "may be too 'trivial, casual or
          occasional' to affect safety and bring them under the MCA's authority." *Id.*, 974 F.2d at 416-
28        17 (quoting *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947)).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

1    It is universally recognized that the MCA exemption centers on whether there is a

2    reasonable expectation that drivers *could have* transported goods in interstate commerce, not that

3    they *actually* did so.  This was the Supreme Court's holding in *Morris v. McComb*, 332 U.S. 422,

4    433-34 (1947) where drivers who operated *entirely intrastate* were found to be subject to the

5    MCA exemption.  *See also* Dkt 1012-2, DOT Interpretation of the MCA, 46 Fed. Reg. 37,902

6    (discussing decisions applying DOT jurisdiction to drivers who never actually drove in interstate

7    commerce where there was a reasonable likelihood that the drivers could have done so "in the

8    regular course of their employment").

9        The analysis does not change where, as here, drivers are subject to transporting a mixture

10   of intrastate and interstate goods.  "If it is known that some portion of a particular load is moving

11   in interstate commerce, whether or not this is an identifiable portion of the load, the trip will be

12   viewed as an interstate trip and therefore subject to the jurisdiction of the DOT."  Dkt 1012-5,

13   DOL Field Operations Handbook § 24c06(a).  The Court must, therefore, focus on whether the

14   *duties* of drivers subject them to the requirement of transporting goods in interstate commerce,

15   rather than some purported bright-line proportion of interstate goods that was actually transported

16   by the drivers.

17       For example, in *Morris*, 332 U.S. at 433-34, the U.S. Supreme Court held that drivers

18   were exempt when their entirely intra-state trips carrying goods in the continuous stream of

19   interstate commerce ranged from **none** to only 97 in a year.  Similarly, in *Badgett*, the court held

20   that the plaintiffs could not succeed in showing that the plaintiffs' interstate duties were *de*

21   *minimis*.  350 F. Supp. 2d at 647-48, 656-57.  "[R]egardless of the number of interstate/intrastate

22   trips they actually made, at all relevant times, *they could have been called upon in the regular*

23   *course of their employment to make trips affecting interstate commerce,*" and thus were subject to

24   the MCA exemption.  *Id.* (emphasis in original).  In a January 13, 2006 Opinion Letter, the DOL

25   ruled that drivers whose duties required them regularly to transport pallets or kegs entirely

26   intrastate "appear easily to fall within DOT's jurisdiction" even though less than one percent of

27   the pallets were destined for out of state and kegs made up less than one percent of the products

28   delivered.  Dkt 1012-6.  The DOL reasoned that the drivers were exempt because, even though

- 8 -

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

1    miniscule, those kinds of deliveries occurred regularly and thus satisfied the "four-month test"

2    applied by the DOT. Dkt 1012-6 (DOT jurisdiction "applies for a four-month period beginning

3    on the date a driver *could have been* called upon to, *or* actually did, engage in interstate

4    commerce) (emphasis added); *see also Guyton v. Schwan Food Co.*, Civil No. 03-

5    5523(DWF/SRN), 2004 U.S. Dist. LEXIS 4174 at * 17-18 (D. Minn. Mar. 16, 2004) (managers

6    whose job duties required them to drive delivery trucks carrying interstate commerce goods from

7    "time to time" are subject to the MCA exemption, even if they "do not necessarily drive []

8    delivery trucks every day or even every week").

9

10
            **c.**      **Cintas Has Proven That These Four First Aid & Safety SSRs
                       Were Subject to Transporting Goods in Interstate Commerce.**

11    The DOT has identified the type of evidence sufficient to establish a driver is subject to

12    their jurisdiction, which courts have accepted:

13
         The [Federal Highway Administration] view is that in order to
14
         establish jurisdiction under [the MCA] the carrier must be shown to
         have engaged in interstate commerce within a reasonable period of
15
         time prior to the time at which jurisdiction is in question. The
         carrier's involvement in interstate commerce must be established by
16
         some concrete evidence such as *an actual trip in interstate
         commerce* or proof, in the case of a 'for hire' carrier, that interstate
17
         business had been solicited. If jurisdiction is claimed over a driver
         who has not driven in interstate commerce, evidence must be
18
         presented that the carrier has engaged in interstate commerce and
         that the driver *could reasonably have been expected to make one of
19
         the carrier's interstate runs*.

20    RJN, Ex. 1, DOT Interpretation of the MCA, 46 Fed. Reg. 37,902 (emphasis added); *Badgett*, 350

21    F. Supp. 2d at 653.

22    As this Court has previously held, a driver is subject to the jurisdiction of the DOT for a

23    four-month period where the evidence shows (1) a *single delivery* of goods in interstate

24    commerce, or (2) being subject to making one delivery in interstate commerce. Dkt 1039 (Nov.

25    13, 2008 Order at 9:19-10:22); Dkt 1012-2, DOT Interpretation of the MCA, 46 Fed. Reg.

26    37,902. The DOL has also accepted this 4-month rule in its Field Operation Handbook. Dkt

27    1012-3, DOL Wage & Hour Field Operations Handbook § 24e01 (actually engaging in or being

28    subject to engaging in interstate commerce subjects employee to DOT jurisdiction for a 4-month

- 9 -

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

1    period); *see also Badgett*, 350 F. Supp. 2d at 657.  The once-in-four-months requirement is a

2    standard set by the DOT and approved by the DOL to determine whether a driver's ordinary work

3    subjects him to operating in interstate commerce, and thus clarifies the "regularly or from time-to-

4    time" standard for application of the MCA exemption.  *See* DOL Requirements for [MCA]

5    Exemption in General, 29 C.F.R. § 782.2(b)(3) (drivers who can be called upon in the ordinary

6    course of their duties to transport interstate commerce goods "either regularly or from time to

7    time" fall under the MCA Exemption); Dkt 1012-2, DOT Interpretation of the MCA, 46 Fed.

8    Reg. 37,902; Dkt 1012-3, DOL Handbook § 24e01.  Such a clarification by the agencies

9    responsible for administering the two statutes at issue -- the FLSA and the MCA -- is a reasonable

10   interpretation to which courts must defer.  *Gerard*, 146 F. Supp. 2d at 67.

11                    **d.      The First Aid & Safety SSRs' Delivery of Specially Ordered
                                Items from Out-of-State Facilities to Their In-State Customers**
12                    **Subjects Them to the MCA Exemption.**

13           There can be no dispute that the First Aid & Safety SSRs subject to this motion were

14   responsible for regularly delivering to Cintas' customers specially ordered products, including

15   defibrillators and logo items, ordered for those customers from out of state.  Further, there can be

16   no dispute that the out-of-state suppliers or shippers had a "fixed and persistent intent" at the time

17   of shipping for the products to be transported across state lines to Cintas locations and then

18   delivered by the First Aid & Safety SSRs to the customers who had ordered those items.

19           As noted above, the vast majority of logo items were customized for specific customers in

20   Albuquerque, New Mexico, with a small fraction coming from Pennsylvania and Tennessee --

21   states where none of the First Aid & Safety SSRs worked.  Summe Decl., ¶5; Abramovich Decl.,

22   ¶6.  Likewise, all defibrillators were sourced from Connecticut and Montana and held in a Cintas

23   storage facility in Missouri until they were ordered for specific customers.  Summe Decl., ¶6.

24   Again, these are states where none of the First Aid & Safety SSRs worked.  Abramovich Decl.,

25   ¶6.  Each time one of these items was shipped for delivery by one of the First Aid & Safety SSRs,

26   whether it was a defibrillator from Missouri or a logo item from New Mexico, it was shipped

27   across state lines in response to a specific order by a specific customer.  Summe Decl., ¶4.

28   Accordingly, there is no dispute that these kinds of products were shipped with a "fixed and

- 10 -

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

persistent intent" that the products travel across state lines to the customers for which they were ordered. 29 C.F.R. §782.7(b)(2). Because the First Aid & Safety SSRs were subject to delivering those kinds of goods to the end customer -- the final "leg" of that interstate distribution process -- they are exempt from the FLSA's overtime requirements by virtue of the MCA exemption.

The First Aid & Safety SSRs were not only *subject to* delivering such items, they did, in fact, regularly deliver to the customers on their routes products ordered from out-of-state suppliers specifically for those customers.[4] The specific numbers of these interstate products is shown on the chart below. For instance, not only was Plaintiff Lay subject to delivering interstate items whenever such items were requested by her customers but she did in fact regularly deliver logo items specially ordered from the New Mexico facility to her customers in Michigan. Accordingly, the four Plaintiffs named in this motion all are subject to the MCA exemption for the full extent of their claims.

| Name of Plaintiff and Route Location | Time Period of Plaintiff's Claim[5] | Number of Invoices for Logo Items and/or defibrillators Generated During the Time Period of Plaintiff's Claim | Number of Invoices for Logo Items and/or defibrillators Generated During the One-Year Period Before Plaintiff's Claim |
| --- | --- | --- | --- |
| Sherry Lay (Michigan) | 2/4/02-1/1/03 | 13 | 14 |
| Hisham Nijem (California) | 7/9/02-10/25/02 | 15 | 17 |
| Claudio Atencio | 2/22/02-4/16/03 | 16 | 9 |

---

[4] Though other products, such as aspirin and bandages, are ordered and kept on hand to fill the short-term requirements of known customers, for purposes of this Motion, Cintas only included sales of logo items and defibrillators because those items were easily identifiable as being shipped from out-of-state facilities for delivery by the Plaintiffs to their in-state customers in response to specific customer requests. It is self-evident that an item with a company's logo is intended for that customer. Further, First Aid & Safety SSRs cannot order defibrillators without customer approval. Summe Decl. ¶7.

[5] Each Plaintiff's limitations period was calculated from the date each individual Plaintiff filed a consent-to-sue with the Court and includes any applicable tolling. *See* 29 U.S.C. § 255(a). Pursuant to the Court's Order of November 13, 2008, the calculations reflect a two-year limitations period. Dkt 1039 at 16:17-20; *see also* Dkt 907-14 (Chart listing the name of the litigating Plaintiffs, the date of the filing of each person's opt-in notice, the applicability of any stipulated and/or court-ordered tolling to them and the resulting date upon which any timely claim for relief begins, assuming a two-year statute of limitations).

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

| Name of Plaintiff and Route Location | Time Period of Plaintiff's Claim[5] | Number of Invoices for Logo Items and/or defibrillators Generated During the Time Period of Plaintiff's Claim | Number of Invoices for Logo Items and/or defibrillators Generated During the One-Year Period Before Plaintiff's Claim |
|---|---|---|---|
| (California) | | | |
| Kathleen Ferrari (California) | 4/10/02-5/15/02 | 0 | 22 |

The invoices revealed that the First Aid and Safety SSRs' sales were evenly enough distributed throughout the year such that there was never a four-month period in which there was not an interstate item invoiced to at least one of their customers. Harper Decl., ¶11. For instance, during the three-month time period of Plaintiff Nijem's claim, he generated 15 separate invoices for logo items; these sales occurred in each of the three months of his claim period. Harper Decl., ¶12. Plaintiff Atencio's claim period spans a 14 month period from February 2002 until April 2003. With the exception of June, July and November 2002, Mr. Atencio generated at least one invoice for logo items or a defibrillator every month during that time period. Harper Decl., ¶13. During Plaintiff Lay's eleven-month claim period, she generated an average of slightly more than an invoice per month and never had a four month period that did not include one or more such invoices. Harper Decl., ¶14.

Finally, Plaintiff Ferrari's claim is limited to a one month claim period in 2002 and thus it is not surprising that she delivered no logo items or defibrillators during that time. Nonetheless, as the chart above demonstrates, Ms. Ferrari generated 22 separate invoices for logo items during the year before her claim accrued (4/10/01-4/1/02), including an invoice for 24 safety glasses with imprinted logos just nine (9) days before her claim began. Harper Decl., ¶15. The four-month period following that invoice therefore covers the entirety of her one month claim period. Moreover, including the 22 invoices she generated in the year preceding her claim, Plaintiff Ferrari generated invoices for logo items every month with the exception of December 2001 and January 2002. Harper Decl., ¶16. As such, like the other FAS SSRs, not only was Ms. Ferrari subject to delivering items in interstate commerce, her claim period was well within the four-

1   month standard set by the DOT and approved by the DOL.  *See* RJN, Ex. 1, DOT Interpretation

2   of the MCA, 46 Fed. Reg. 37,902; *see also* RJN, Ex. 2, DOL Wage & Hour Field Operations

3   Handbook § 24e01 (actually engaging in or being subject to engaging in interstate commerce

4   subjects employee to DOT jurisdiction for a 4-month period).

5           Courts have consistently held that employees fall under the MCA exemption based on

6   evidence of interstate commerce duties and activities far more limited than discussed above.  *See,*

7   *e.g., Morris*, 332 U.S. at 433-34 (holding group of drivers exempt where actual trips in interstate

8   commerce ranged from none to only 97 in a year); *Badgett*, 350 F. Supp. 2d at 647-48, 656-57

9   (rejecting plaintiffs' *de minimis* claim because "regardless of the number of interstate/intrastate

10  trips they actually made, at all relevant times, *they could have been called upon in the regular*

11  *course of their employment to make trips affecting interstate commerce*") (emphasis in original);

12  *Guyton*, Civil No. 03-5523(DWF/SRN), 2004 U.S. Dist. LEXIS 4174 at *2-3, 17-18 (managers

13  who only drove routes containing goods in interstate commerce when training drivers regularly

14  assigned to those routes or when such a driver was sick or on vacation fall under the MCA

15  exemption); DOL Requirements for [MCA] Exemption in General, 29 C.F.R. § 782.2 (driver is

16  exempt so long as *bona fide* duties subject him to operating in interstate commerce, regardless of

17  proportion of time or activities spent actually doing so); RJN, Ex. 1, DOT Interpretation of the

18  MCA, 46 Fed. Reg. 37,902 (July 23, 1981) ("[e]ven a minor involvement in interstate commerce

19  as a regular part of an employee's duties will subject that employee to the jurisdiction of the

20  [Federal Highway Safety Administration]").

21          As shown above, at all relevant times during their employment, the First Aid & Safety

22  SSRs were subject to -- and, in fact, did -- deliver logo items and defibrillators that were ordered

23  for specific customers from out-of-state suppliers.  The delivery of such supplies and equipment

24  in interstate commerce was "a natural, integral and . . . inseparable" part of the duties of all First

25  Aid and Safety SSRs.  *McComb*, 332 U.S. at 433; DOL Requirements for [MCA] Exemption in

26  General, 29 C.F.R. § 782.2.  Accordingly, each of the First Aid & Safety SSRs is subject to the

27  MCA exemption, and Cintas is entitled to summary judgment on the claims they have asserted in

28  this lawsuit.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

CINTAS' NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT AS AGAINST FIRST AID AND SAFTEY SSRS ON
THIRD CLAIM FOR RELIEF Case No. 03-01180 (RS)

1    **IV.    CONCLUSION**

2         For all the foregoing reasons, Cintas respectfully requests this Court to grant this motion

3    for summary judgment against Plaintiffs Sherry Lay, Hisham Nijem, Claudio Atencio, and

4    Kathleen Ferrari on each of their claims for relief.

5

6                                                    Respectfully submitted,

     Dated:  December 17, 2008                       SQUIRE, SANDERS & DEMPSEY L.L.P.
7

8

9    By: _____/s/_____
                                                     Joseph A. Meckes

10
                                                     Attorneys for Defendants
11                                                   CINTAS CORPORATION and
                                                     PLAN ADMINISTRATOR FOR THE
12                                                   CINTAS PARTNERS' PLAN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California  94111

- 14 -