**United States District Court**
For the Northern District of California

1
2
3                                                              **\*E-Filed 4/23/09\***
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
8                             SAN JOSE DIVISION
9
10   PAUL VELIZ, et al.,                              NO. C 03-1180 RS
11                     Plaintiffs,                    **ORDER DENYING MOTIONS
                                                      FOR SUMMARY JUDGEMENT**
12        v.                                          **FOR: (1) UNIFORM SSR
                                                      MOTION;**
     CINTAS CORPORATION, et al.,                      **(2) UNIFORM/FACILITY SSR**
13                                                    **MOTION; (3) FACILITY SSR
                                                      MOTION; (4) SAFETY SSR**
14                   Defendants.                      **MOTION; AND (5) STATE LAW
                                                      SSR MOTION**
15   _____/
16
17                          I.  INTRODUCTION
18        In four motions addressed by this order, Cintas Corporation ("Cintas") seeks summary
19   judgment on plaintiffs' third claim for relief under the Fair Labor Standards Act ("FLSA").  A fifth
20   motion is directed to related state law claims of certain plaintiffs.  Cintas asserts, as an affirmative
21   defense, that plaintiffs who transported or were subject to transporting interstate goods fall under the
22   Motor Carrier Act ("MCA") exemption to the FLSA.  The first summary judgment motion
23   ("uniform SSR motion") is directed to the claim of 146 plaintiffs who served as Cintas Service Sales
24   Representatives ("SSRs").  Cintas claims that these plaintiffs delivered or were subject to delivering
25   new uniforms as well as products ordered from a Cintas catalog ("direct sale items") whose
26   transportation originated from out of state.  The second summary judgment motion
27   ("uniform/facility SSR motion") is directed against 135 plaintiffs, most of whom also are targeted by
28   the first motion, contending that these employees either delivered or were subject to delivering

                                          1

facility service products in addition to new uniforms and direct sale items. These goods include soap and air freshener obtained by Cintas from out-of-state vendors. Cintas also raises the delivery of new floor mats imprinted with a customer's logo ("logo mats") in this second motion.

The third motion for summary judgment ("facility SSR motion") targets thirty-seven plaintiffs who do not admit to delivering uniforms as part of their regular job duties. For these plaintiffs, Cintas' motion relies upon plaintiffs' duty to deliver direct sale items, logo mats, soap, and air freshener. The fourth motion for summary judgment ("safety SSR motion") is directed to the FLSA claim of four SSRs who worked in Cintas' First Aid and Safety Division. Cintas asserts that these individuals delivered safety equipment including hard hats and safety glasses with customers' logos imprinted on them ("logo items") and defibrillators from out-of-state suppliers. Finally, Cintas moves for summary judgment on the state law claims of three plaintiffs ("state law SSR motion") who also are subject to the uniform and uniform/facility SSR motions based upon the same deliveries at issue in those motions.[1]

The MCA exemption has been addressed in several cases where employee-drivers crossed state lines or, while traveling intrastate, transported entire loads of interstate goods. The circumstances involved in this instance raise a few less common issues. The particular plaintiffs here never crossed state lines, but participated in delivering a disputed amount of interstate goods along with their regular duties involving the transport of otherwise in-state origin loads. Cintas claims that the MCA exemption applies to all employees *subject to* transporting goods in interstate commerce as a regular part of their job duties. While seeking collective treatment of their FLSA claim, as to Cintas' affirmative defense, plaintiffs counter that to prevail Cintas must demonstrate each individual SSR actually delivered more than a trivial amount of goods from out of state. In other words, according to plaintiffs, where an SSR's activity has an insignificant actual impact on interstate commerce, a *de minimis* exception to the MCA exemption arises.

---

[1]     The state law SSR motion is based upon application by Missouri and Minnesota of the MCA exemption to overtime provisions arising under their respective state laws. For this motion, both parties agree that the scope of the MCA exemption recognized by those states is the same as that under the FLSA and therefore its outcome will mirror that of the uniform and uniform/facility motions.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

For the reasons set forth below, in order to prevail on its motions Cintas must demonstrate that (1) particular goods delivered by plaintiffs physically traveled in interstate commerce and (2) individual plaintiffs participated in more than a *de minimis* amount of interstate activity.  In this case, new uniforms, direct sale items, logo mats, logo items, and defibrillators ordered from out-of-state locations and delivered by plaintiffs traveled in interstate commerce.  Deliveries of soap and air freshener, on the other hand, do not implicate interstate commerce for purposes of the MCA exemption.  On the current record, Cintas fails to satisfy its burden of demonstrating that plaintiffs targeted by these motions delivered more than a *de minimis* amount of interstate items.  Accordingly, Cintas' uniform SSR, uniform/facility SSR, facility SSR, safety SSR, and state law SSR motions for summary judgment will be denied.

## II.  BACKGROUND

Cintas supplies products and services to industrial customers including the supply of rental uniforms and laundry service of those items.  As SSRs, plaintiffs drove trucks provided by Cintas while making regular deliveries to customers on their respective routes.  Plaintiffs contend that Cintas violated the FLSA and the Employment Retirement Security Act of 1974, as well as various state laws, when it classified them as exempt employees who were not entitled to overtime pay.  As stated above, Cintas contends that the MCA exemption covers employees who transported or were subject to transporting goods in the continuous stream of interstate commerce.

At issue in these motions, therefore, is whether various items that plaintiffs delivered as Cintas SSRs traveled in interstate commerce including new uniforms, direct sale items, logo mats, logo items, defibrillators, soap, and air freshener.  The majority of plaintiffs subject to these motions serviced customers who rented employee uniforms from Cintas.  These plaintiffs ("uniform SSRs") drove in-state routes as they delivered clean uniforms and retrieved dirty items for laundry service.  As part of this operation, uniform SSRs also provided new uniforms as needed.  Uniform SSR motion at 12.  Customers, for example, might hire new employees or require replacement uniforms.  When that occurred, SSRs were responsible for taking the employees' measurements and placing orders for new uniforms often manufactured outside the state of ultimate delivery.  Some of these items might be obtained from local stock, while others were shipped from Cintas' distribution

United States District Court

For the Northern District of California

1   centers for delivery by plaintiffs. *Id.* at 12-13. Cintas' motions target plaintiffs who worked in

2   states different from those where its distribution centers were located. Thus according to Cintas, all

3   SSRs who regularly delivered uniforms also delivered or were subject to delivering *new* uniforms

4   originating from out of state and intended for specific customers.

5          Cintas claims that uniform SSRs also delivered direct sale items and logo mats to their

6   customers. Like new uniforms, these items were shipped from out of state pursuant to orders placed

7   for specific customers. Direct sale items originated from Cintas distribution centers and either were

8   shipped directly to customers or sent to local Cintas locations for delivery by plaintiffs. *Id.* at 14.

9   Similarly, SSRs in the First Aid and Safety Division were responsible for transporting items from

10  out-of-state suppliers to customers. While these plaintiffs regularly delivered a variety of products,

11  logo items and defibrillators represent special-order items obtained only upon customer request.

12  Safety SSR motion at 2.

13         Plaintiffs targeted by these motions also delivered facility service products to customers on

14  their routes. Cintas claims that soap and air freshener were provided to specific customers with

15  supply contracts based on anticipated need. According to Cintas, it was "general policy and

16  practice" that its facilities order only enough soap and air freshener that they could "reasonably

17  estimate" would supply existing customer needs for between one week and one month.

18  Uniform/facility SSR motion at 15. Plaintiffs, on the other hand, argue that facility service products

19  were ordered in bulk by Cintas and merely constitute stock or inventory items. Soap and air

20  freshener were removed from the supply room as needed by plaintiffs without tracking by Cintas.

21  Opposition to uniform/facility SSR motion at 24. One plaintiff stated he stored soap and air

22  freshener on his truck for weeks at a time for use as needed. *Id.*

23                              III.  LEGAL STANDARD

24  A.     Summary Judgment

25         A motion for summary judgment should be granted where there is no genuine issue of

26  material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

27  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The purpose of summary judgment

28  "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S.

4

United States District Court

For the Northern District of California

317, 323-24 (1986). The moving party bears the initial burden of setting forth the basis for the motion and identifying relevant portions of the pleadings and evidence it believes demonstrates the absence of a triable issue of material fact. *Id.* at 323.

If the moving party meets its initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The non-moving party, however, "must do more that simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). Summary judgment is not appropriate if a reasonable jury could resolve a disputed issue of material fact in favor of the non-moving party. *Anderson*, 477 U.S. at 248; *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991). If a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

B.     Judicial Notice

As an initial matter pertaining to these motions, Cintas[2] and plaintiffs[3] each filed requests for judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. A court "may take judicial notice of its own records, and documents that are public records and capable of accurate and ready confirmation by sources that cannot reasonably be questioned." *Springate v. Weighmasters Murphy, Inc. Money Purchase Pension Plan*, 217 F. Supp. 2d 1007, 1013 (C.D. Cal. 2002) (citing *MGIC*

_____

[2]     Cintas seeks judicial notice of the following: Department of Transportation notice of interpretation, Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902 (July 23, 1981); Department of Labor Wage & Hour Field Operations Handbook § 24e01 (1982); Department of Transportation Interstate Commerce Commission Policy Statement, Motor Carrier Interstate Transportation - From Out-of-State Through Warehouses to Points in Same State, 57 Fed. Reg. 19,812 (May 8, 1992); Department of Labor Wage & Hour Field Operations Handbook § 24c06(a) (1999); Department of Labor January 13, 2006 opinion letter; Department of Labor April 27, 2005 opinion letter; and Department of Labor January 11, 2005 opinion letter.

[3]     Plaintiffs request the Court take judicial notice of the following: Department of Labor Wage & Hour Field Operations Handbook; Department of Labor July 5, 2005 opinion letter; Department of Labor September 28, 2004 opinion letter; California Industrial Welfare Commission Wage Order No. 6; and excerpts from the California Division of Labor Enforcement Policies and Interpretations Manual (June 2002).

*Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  The items identified by both sides are appropriately subject to judicial notice and the motions are unopposed.  Accordingly, both judicial notice motions will be granted.

## IV.  DISCUSSION

A.   <u>MCA Exemption Generally</u>

Cintas contends that plaintiffs are not covered by the maximum hour and overtime provisions of the FLSA under the MCA exemption.  29 U.S.C. § 213(b)(1).  The MCA exemption applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  *Id.*  In accord with the regulatory authority of the Department of Transportation, the MCA exemption covers employees of motor private carriers who engage in activities affecting the safe operation of motor vehicles on public highways and involve the transportation of goods in interstate commerce.  49 U.S.C. § 31502.  The MCA exemption is to be construed narrowly against employers and applies only to those falling "plainly and unmistakably within [the] terms and spirit" of the exemption.  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 396 (1960).  Cintas bears the burden of proving the MCA exemption applies.  *Id.* at 394 n.11; *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983).

1.   <u>Goods Must Travel in the Practical Continuity of Interstate Commerce</u>

Cintas' motions for summary judgment are directed to those plaintiffs who did not actually cross state lines in the course of their duties as SSRs.[4]  The MCA exemption may apply, nonetheless, to individuals whose own activities, while entirely intrastate in nature, are connected to goods traveling in interstate commerce.  Interstate commerce includes the in-state transportation of goods in the "practical continuity of movement from the manufacturers or suppliers without the state, through [a] warehouse and on to customers whose prior orders or contracts are being filled . . . ."  *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568-69 (1943) (holding that a break in the physical continuity in the transit of goods is not controlling); *see Klitzke v. Steiner Corp.*, 110 F.3d 1465,

---

4      On November 13, 2008, the Court granted in part and denied in part Cintas' motion for summary judgment against plaintiffs who physically crossed state lines.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1469 (9th Cir. 1997).[5]  Whether a particular shipment of goods comprises one leg of an interstate trip

or represents a free-standing intrastate delivery depends upon the "essential nature" of the shipment

as determined by the shipper's "fixed and persisting transportation intent" at the time of shipment.

*S. Pac. Trans. Co. v. ICC*, 565 F.2d 615, 617 (9th Cir. 1977).  The shipper's intent is ascertained

from the facts and surrounding circumstances.  *Id.*

In considering whether items traveled in interstate commerce, the Supreme Court addressed

three categories of goods shipped from out of state to defendant's warehouse prior to in-state

delivery to customers.[6]  *Jacksonville Paper*, 317 U.S. at 568-70.  In *Jacksonville Paper*, defendant

operated as a wholesale distributor of paper products.  The first category of goods considered by the

Court involved special orders placed by defendant for its customers, including items with customers'

names printed on the products.  *Id.* at 568.  The second set of goods included items obtained for

specific customers to fulfill a preexisting contract or understanding that products would be ordered.

*Id.*  In its analysis, the Court concluded that these two categories were indistinguishable in the

context of interstate commerce.  *Id.* at 569.  In both cases, the existence of a special order, contract,

or understanding prior to shipment supplied the requisite intent that the goods move in interstate

commerce.  *Id.*; *see Klitzke*, 110 F.3d at 1470 (holding MCA exemption applies to employee making

in-state deliveries of items ordered for specific customers).

Additionally, the Court indicated that a third type of shipment, goods ordered in anticipation

of the needs of specific customers, *may* fall within the practical continuity of interstate commerce.

*Jacksonville Paper*, 317 U.S. at 570.  Items shipped to defendant's warehouse included products

ordered for a "stable group" of its customers.  *Id.* at 569.  Defendant asserted that it could estimate

with "considerable precision" the amount of goods required by these customers.  *Id.*  On the specific

---

[5]     While recognizing the Ninth Circuit's construction of the MCA exemption, plaintiffs
contend that *Klitzke* was wrongly decided.  Dkt. 1043 at 8.  This Court need not reach that argument
as *Klitzke* is the settled law of this Circuit and therefore it must be applied here.

[6]     In *Jacksonville Paper*, the Court addressed the threshold issue of FLSA application to
an employer engaged in interstate commerce.  In other words, the case did not involve the MCA
exemption, but rather the scope of the FLSA.  The Ninth Circuit, however, has applied *Jacksonville
Paper* to the meaning of interstate commerce within the context of the MCA exemption.  *See*, *e.g.*,
*Watkins v. Ameripride Servs.*, 375 F.3d 821, 826 (9th Cir. 2004).

7

United States District Court

For the Northern District of California

1  facts before it, however, the Court concluded that defendant had not demonstrated with particularity

2  that the goods in question were different from those acquired and held for local disposition. *Id.* at

3  570.

4     Accordingly, courts require evidence beyond a stable customer base and historical

5  purchasing patterns to demonstrate a shipper's "fixed and persisting intent."[7]  The Ninth Circuit

6  considered paper products transported from out of state to a company's distribution center based

7  upon anticipated need. *Int'l Brotherhood of Teamsters*, 921 F.2d at 906.  It held the goods remained

8  in interstate commerce during later in-state delivery. *Id.*  In that case, the company utilized storage-

9  in-transit provisions to obtain contract shipping rates to and from the distribution center. *Id.*  While

10  the company did not know the products' final destination at the time of shipment to its distribution

11  center, the court emphasized that use of such provisions demonstrated "a more specific intent" that

12  the goods be shipped in interstate commerce. *Id.* at 909.

13     Facts beyond the existence of an ongoing supplier-customer relationship are necessary to

14  support a conclusion that goods traveled in interstate commerce. *See, e.g.*, *Ballou v. DET Distrib.*

15  *Co.*, No. 3-03:1055, 2006 WL 2035729 (M.D. Tenn. July 17, 2006).  In *Ballou*, salesmen for a

16  wholesale beer distributor drove in-state routes servicing retail sites with products originating from

17  out-of-state brewers. *Id.* at *3.  While the distributor operated the warehouse, brewers exerted

18  control over storage conditions, one brewer was electronically connected to defendant's inventory

19  system, and some product was shipped to the warehouse based upon pre-sales by the brewer directly

20  with large retail customers. *Id.* at *2.  Under these facts, the court held that the distributor's

21  salesmen delivered goods in interstate commerce and therefore were subject to the MCA exemption.

22  *Id.* at *14; *see also Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993) (applying MCA

23  exemption to driver making in-state deliveries for dairy company where products were stored no

24  more than three days before delivery, company maintained control over goods during storage, and

25  ───────────────

26        [7]      Cintas argues that in order to find a shipper did not intend products to move in
interstate commerce, the Court must apply the three-part test established by the Interstate Commerce
27  Commission. *See* 29 C.F.R. § 782.7(b)(2).  The Ninth Circuit explains in *Int'l Brotherhood of
Teamsters v. Interstate Commerce Commission*, 921 F.2d 904, 908 (9th Cir. 1990), however, that
28  application of the "fixed and persisting intent rule to determine the essential nature of commerce"
need not follow that test.

United States District Court

For the Northern District of California

1    driver also picked up empty crates for return to out-of-state processing plant).

2        In summary, in order to invoke the MCA exemption, Cintas first must establish that plaintiffs

3    transported products in interstate commerce.  It may meet its burden by showing plaintiffs completed

4    deliveries of out-of-state items obtained pursuant to specific customer orders.  Alternately, Cintas

5    may show that goods acquired in anticipation of existing customers' needs traveled in interstate

6    commerce.  In that instance, Cintas must support this conclusion with facts demonstrating that the

7    shipper intended products to remain in interstate transport beyond Cintas' warehouse.  In other

8    words, Cintas cannot rely solely upon the existence of ongoing facility service contracts as evidence

9    that third-party suppliers intended goods to travel in interstate commerce.

10           2.       Employees' Interstate Activity Must Be More Than *De Minimis*

11       As discussed above, the MCA exemption applies to employees of motor private carriers who

12   participate in activities affecting highway safety including transportation of goods in interstate

13   commerce.[8]  49 U.S.C. § 31502.  Under this framework, the parties do not contest that Cintas is a

14   motor private carrier or that transporting interstate goods is an activity affecting highway safety.

15   Instead, the parties dispute whether Cintas must demonstrate that plaintiffs' interstate activity was

16   greater than *de minimis* for the MCA exemption to apply.  Under *Klitzke*, employees who deliver

17   products ordered for specific customers from out-of-state vendors transport goods in interstate

18   commerce.  110 F.3d at 1470.  That case, however, does not directly address the *de minimis* issue

19   here because in *Klitzk*e over half of the items delivered originated from out of state.  *Id.* at 1467.  In

20   short, although *Klitzke* establishes the MCA exemption can apply to an employee driving a purely

21   in-state route, it does not address whether more than a *de minimis* amount of interstate activity must

22   be involved.

23       Cintas argues that because drivers have a direct impact on highway safety, the *de minimis*

24   exception is inapplicable.  Instead, an employee need only be "subject to" driving in interstate

25   commerce as a regular part of his duties to fall under the MCA exemption.  Cintas contends that

26

27           [8]       The Court held in its November 13, 2008 order that on or after August 10, 2005 but
28   before June 6, 2008, the MCA exemption only applies to drivers of vehicles weighing 10,001
     pounds or greater.

1   plaintiffs were responsible for servicing customers who might have ordered products such as new

2   uniforms or logo items.  In those instances, plaintiffs would be required to deliver the items as part

3   of their regular job duties.  In short, according to Cintas, plaintiffs were routinely subject to

4   transporting goods in interstate commerce and therefore fall within the MCA exemption at all times.

5          Essentially, Cintas argues for a blanket application of the MCA exemption based on the job

6   duties of plaintiffs as a whole.[9]  Not surprisingly, plaintiffs counter that Cintas must show actual

7   delivery of items in interstate commerce by each employee as well as that the amount of such

8   activity was more than *de minimis*.  Thus, the parties' positions present two distinct issues: (1)

9   whether it is appropriate to apply the MCA exemption to plaintiffs as a group; and (2) if blanket

10  application of the MCA exemption is not warranted, whether an individual's participation in

11  interstate commerce must be more than *de minimis*.

12              a.      Blanket Application

13         Cintas insists that the MCA exemption applies to all plaintiffs who routinely were subject to

14  delivering items in interstate commerce whether or not a particular plaintiff actually did so.  In

15  support of its position, Cintas relies on *Morris v. McComb*, 332 U.S. 422, 433-34 (1947), which held

16  that the MCA exemption applied to all drivers of defendant's company, including two employees

17  who had never actually driven goods in interstate commerce, but nonetheless were subject to driving

18  those routes.  As a result, Cintas contends that a *de minimis* exception is unavailable to employees

19  subject to delivering goods in interstate commerce as a regular part of their duties.

20         *Morris*, however, does not extend as far as Cintas would have it.  While the MCA exemption

21  was applied there to two drivers who never drove interstate routes, the Court first required an overall

22  factual showing relative to the employer's involvement in interstate commerce.  *Id.* at 432-34.

23  Defendant operated a general cartage business whose primary activity was transporting steel around

24  Detroit, Michigan.  *Id.* at 426.  Approximately 4% of defendant's business involved routes between

25  boat docks, railroad depots, and freight and truck terminals.  *Id.* at 427.  Drivers participated in

---

27         [9]      Cintas provides data for six named plaintiffs summarizing orders of out-of-state items
    placed for customers of these SSRs.  It continues to assert, however, that such showing is not legally
28  required.  In fact, Cintas seeks partial summary judgment with respect to as of yet unidentified
    uniform delivering plaintiffs who were located in a state outside of Cintas' distribution centers.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    interstate commerce, either by supplying one leg of continuous interstate transportation or by

2    conducting the beginning or end of an interstate trip originating or terminating in Detroit. *Id.* These

3    deliveries, while wholly within Michigan, indisputably involved the transportation of goods moving

4    in interstate commerce. *Id.*

5         The Court considered in detail the percentage of trips which involved interstate commerce as

6    well as the number of trips made by individual drivers. *Id.* at 432-34. Additionally, the drivers in

7    *Morris* were assigned their trips indiscriminately. *Id.* at 433. As such, the Court considered it

8    reasonable to find that 4% of interstate trips implicated all drivers for purposes of the MCA

9    exemption. *Id.* at 434 (concluding that the safety hazard presented is the same as if each driver spent

10   4% of his or her day in interstate commerce). Only after the Court concluded that these trips were "a

11   natural, integral and apparently inseparable part of the common carrier service" did it extend the

12   MCA exemption to all of defendant's drivers across the board. *Id.* at 433-34.

13        Cintas argues that the delivery of out-of-state items is similarly a regular part of its business

14   sufficient to trigger blanket application of the MCA exemption to all its uniform delivering SSRs.

15   The facts offered by Cintas, however, are distinguishable from those in *Morris*. While only 4% of

16   the *Morris* drivers' trips involved interstate transportation, under the facts as presented, presumably

17   100% of the goods in those trips traveled in interstate commerce. In this case, plaintiffs contend that

18   their principal duties involved intrastate pick-up and delivery of uniforms. With no *de minimis*

19   standard in place, Cintas' position would result in one out-of-state item transforming a local delivery

20   into an interstate trip to the same extent as if the driver crossed state lines, a proposition without any

21   evident support in case precedent.

22        The Ninth Circuit has provided guidance on when the reasonable expectation that an

23   employee will participate in interstate commerce triggers the MCA exemption. In *Reich v. Am.*

24   *Driver Serv., Inc.*, 33 F.3d 1153, 1154 (9th Cir. 1994), defendant provided transportation of sugar

25   beets from Wyoming to Montana. For the first months of each harvesting season, defendant's

26   business was entirely intrastate. *Id.* The district court held that because defendant had a reasonable

27   expectation of participating in interstate commerce later in the harvest season, the MCA exemption

28   applied to defendant's business for the entire period. *Id.* at 1156. The Ninth Circuit, in overruling

11

the trial court decision, held that defendant's reasonable expectation of involvement in interstate commerce at some point in the future was not sufficient to invoke the MCA exemption.  *Id.* at 1159.  Instead, such an expectation is properly considered only in the context of other drivers who have completed actual trips in interstate commerce.  In that situation, "reasonable expectation" concerns whether a driver who had not made one of those interstate trips reasonably would be expected to do so.  *Id.*  Plaintiffs in this case drove individual routes and serviced specific customers.  Because they did not comprise a pool of drivers with varied and indiscriminately assigned routes, an SSR's general job duties do not reflect that every plaintiff reasonably was expected to participate in interstate commerce.

In the previous summary judgment order involving SSRs who crossed state lines, this Court held that the record was insufficient to show as a whole that plaintiffs were subject to crossing state lines at all times.  Instead, the Court required evidence of each individual plaintiff's state-line crossings.  In other words, this Court indirectly rejected Cintas' generalized reliance upon SSRs' job duties to conclude that each SSR reasonably could be expected to participate in interstate commerce by crossing state lines.  Here, where the summary judgment motions involve plaintiffs who drove entirely in-state routes, Cintas' argument is even more tenuous.

On the current evidence, a blanket MCA exemption applied to all plaintiffs regardless of individual activities is unwarranted.  Accordingly, to trigger the MCA exemption Cintas must demonstrate that a driver "participated" in interstate commerce.  The next issue, therefore, is whether a *de minimis* standard applies to that requisite level of interstate activity.

        b.     Individual Application

Plaintiffs argue that the MCA exemption only applies to employees whose participation in interstate commerce is "substantial."  In particular, where a driver's interstate activity arises only by virtue of delivering out-of-state goods, the activity must be more than *de minimis*.  Under *Morris*, plaintiffs contend that Cintas previously acknowledged it must demonstrate that employees spent just over 3% of their time transporting out-of-state goods.  Dkt. 1043 at 14.  In fact, plaintiffs claim that the proportion of interstate goods delivered was less than 1%.  *Id.* at 15.

Cintas counters with several cases where courts expressly considered and declined to apply a

United States District Court

For the Northern District of California

*de minimis* standard to drivers.  *See* uniform/facility SSR motion at 9.  In those cases, however, employees crossed state lines, unlike the plaintiffs subject to these current motions.[10]  Moreover, in a recent decision, a district court expressly rejected defendant's contention that the *de minimis* standard may never apply to drivers, including those driving purely in-state routes.  *Masson v. Ecolab*, No. 04-Civ. 4488 (MBM), 2005 WL 2000133, at *8 (S.D.N.Y. 2005).  In *Masson*, the court considered issues similar to those raised in Cintas' motions for summary judgment.  The plaintiffs worked for Ecolab servicing commercial dishwashing machines leased by the company to customers in Atlanta, Georgia.  *Id.* at *1.  Each plaintiff had a specific set of customers to service and drove routes entirely within the state.  *Id.* at *1-2.  On occasion, however, parts and other equipment from out of state were shipped to plaintiffs' homes.  *Id.* at *2.  Some of the equipment was kept as stock items; other parts were shipped in response to a specific customer's needs.  *Id.*

While the parties agreed that transportation of out-of-state parts by plaintiffs to fill specific customer orders constituted interstate commerce for purposes of the MCA exemption, the degree of such activity sufficient to trigger the exemption remained in dispute.  *Id.* at *7.  Plaintiffs claimed that parts deliveries to specific customers occurred only under "extraordinary" circumstances.  *Id.* at *11.  Just as Cintas contends now, Ecolab argued that because its customers theoretically could need replacement parts at any time, plaintiffs were subject to transporting goods in interstate commerce in the ordinary course of their duties.  *Id.* at *2, 11.  The court nonetheless concluded at summary judgment that Ecolab had not established "the kind and extent of activities" triggering the MCA exemption as a matter of law.  *Id.* at *11.

---

[10]    Cintas is correct that in holding the MCA exemption applies to driver-employees, courts have stated that drivers should "seldom, if ever" fall under the *de minimis* rule.  *Sinclair v. Beacon Gasoline Co.*, 447 F. Supp. 5, 11 (W.D. La. 1976); *see Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 417 n.10 (3d Cir. 1992).  In these instances, however, drivers engaged in interstate commerce by physically crossing state lines.  In *Sinclair*, workers traveled between Alabama and Louisiana for their jobs maintaining gas pipelines.  447 F. Supp. at 7-8.  In *Friedrich*, the employees frequently crossed state lines as part of their work servicing customers' computers.  974 F.2d at 410.  The *de minimis* question related to the amount of property carried (their tool kits), as opposed to the amount of interstate driving.  *Id.* at 417; *see also Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 208 (1st Cir. 1972) (plaintiff took delivery of automobiles in Massachusetts and transported them to New Hampshire); *Badgett v. Rent-way, Inc.*, 350 F. Supp. 2d 642, 646 (W.D. Pa. 2004) (employees picked up merchandise in Ohio for customers in Pennsylvania).

United States District Court

For the Northern District of California

1    While the Ninth Circuit has not directly adopted the *de minimis* standard in a case such as

2    this, neither has it embraced Cintas' position that a *de minimis* exception for drivers is unavailable as

3    a general proposition.  For example, in *Am. Driver Serv.*, the court stated that if an employee's

4    participation in interstate commerce is *de minimis*, he may not be subject to the MCA exemption.  33

5    F.3d at 1156 (citing *Coleman v. Jiffy June Farms, Inc.*, 324 F. Supp. 664, 669-70 (S.D. Ala. 1970)

6    (involving *de minimis* exception applied to drivers)).  As reflected in the *Masson* decision, no court

7    has extended the MCA exemption as broadly as Cintas would have us do here.  2005 WL 2000133,

8    at *8.

9    Because plaintiffs' interstate activity arises from the goods transported, not from actual

10   border crossing, it would be particularly extreme to deny application of a *de minimis* standard in this

11   context.  By Cintas' reasoning, carrying a single item in interstate commerce triggers the MCA

12   exemption.  As such, Cintas' position appears to stretch the MCA exemption beyond its current

13   application; an outcome which would be inconsistent with the narrow construction to be accorded to

14   it.  *Arnold*, 361 U.S. at 396.  Accordingly, the MCA exemption cannot be applied absent a showing

15   that a plaintiff participated in more than a *de minimis* level of interstate activity.

16              c.    <u>*De Minimis* Level of Activity</u>

17   As discussed above, several cases addressing the *de minimis* standard involve drivers who

18   cross state lines.  Of cases involving goods moving in interstate commerce, the more frequent

19   situation involves delivery of entire shipments received from out of state.  In other words, few cases

20   combine the issues involved in Cintas' motions for summary judgment.  Here, drivers who never

21   crossed state lines transported a disputed amount of interstate items along with their regular delivery

22   of in-state goods.

23   While not directly addressing a *de minimis* exception, the Ninth Circuit in *Watkins* indicated

24   that the proportion of interstate activity may be a relevant consideration by noting that the "great

25   majority" of  plaintiff's work did not involve interstate commerce within the MCA exemption.  375

26   F.3d at 826.  Only 3% of plaintiff's work even potentially implicated interstate commerce through

27   delivery of goods from out of state.  *Id.*  In *Watkins*, as in this case, the plaintiff primarily picked up

28   and delivered uniforms for laundry service.  *Id.* at 824.  In addition, he occasionally delivered new

1   uniforms and other items.  *Id.* at 826.  While not providing explicit guidance, the court's analysis

2   focused on the percentage of work that involved delivery of new materials, rather than on other

3   factors such as the number of customers with out-of-state deliveries or the number of trips

4   completed.

5          While Cintas argues that a *de minimis* standard is inapplicable, it previously acknowledged

6   that it *could* prevail under *Morris* by demonstrating that plaintiffs spent over 3% of their time

7   delivering interstate goods.  As discussed below, plaintiffs submit evidence for certain SSRs that

8   interstate items constituted 1% or less of the products they delivered.  Plaintiffs contend that this

9   level of interstate activity is *de minimis*.  Short of arguing that the MCA exemption applies to drivers

10  "subject to" transporting interstate goods, Cintas offers no alternative *de minimis* standard in

11  response.  Based on the current showing that interstate goods comprised 1% or less of plaintiffs'

12  deliveries, the Court finds that this level of interstate activity is not sufficient as a matter of law to

13  trigger the MCA exemption and enter judgment on plaintiffs' claims.

14         3.      The MCA Exemption Applies to a Four Month Period

15         As discussed above, Cintas argues that the MCA exemption applied to plaintiffs at all times

16  because they were subject to delivering goods in interstate commerce as part of their regular job

17  duties.  Having failed to justify such a broad application of the MCA exemption, Cintas must

18  demonstrate that plaintiffs actually participated in more than a *de minimis* amount of interstate

19  commerce.  As such, the final issue is whether a plaintiff's participation in interstate commerce

20  triggers application of the MCA exemption on a four month or week-by-week basis.

21         In its order involving Cintas employees who actually crossed state lines, this Court held that

22  the appropriate test is whether an individual transported or was available to transport goods across

23  state lines "from time to time within any four month period."  Plaintiffs contend that the Court did

24  not consider, and therefore, the order does not address, individuals who never crossed state lines.

25  Accordingly, plaintiffs revive their prior argument that the Department of Labor's notice and

26  comment regulation discussing the MCA exemption establishes that it should be applied on a week-

27  by-week basis.  29 C.F.R. § 782.2(b)(3).  The regulation states in relevant part:

28

> [W]here the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties.  [Citations omitted.]  If in particular workweeks other duties are assigned to him which result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the exemption will be applicable to him [sic] those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety affecting job.

*Id.*  Cintas claims that this section of the regulation addresses the situation where an employer assigns "other duties" in a workweek.  In that instance, evaluation of the MCA exemption on a week-by-week basis may be appropriate to avoid over-application of the exemption to an employee normally employed in a non-safety affecting job.  In this case, while Cintas bears the burden of demonstrating that plaintiffs delivered interstate goods to their regular customers, plaintiffs have not alleged, and there is no basis for considering, that these activities constitute a change of job duties.

As this Court discussed in its November 13, 2008 order, the Ninth Circuit relied upon the Department of Transportation's notice of interpretation to conclude that driving in interstate commerce triggers application of the MCA exemption for a four month period.  *Am. Driver Serv., Inc.*, 33 F.3d at 1156 (quoting 46 Fed. Reg. 37,902, 37,903 (1981)) ("Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to [DOT jurisdiction] for a 4-month period from the date of the proof.").  While *Am. Driver Serv.* involved drivers who crossed state lines, the court refers generally to "engaging in interstate commerce" as activity falling under the four month exemption.  *Id.*  In other words, once triggered, there is no authority for applying the MCA exemption differently based on whether employees engaged in interstate commerce by crossing state lines or transporting interstate goods.  Consequently, a four month test will be applied to determine whether plaintiffs participated in interstate commerce.

In short, the following standard applies to Cintas' motions for summary judgment to dismiss plaintiffs' third claim for relief under the FLSA.  Plaintiffs participated in interstate commerce within the meaning of the MCA exemption where they delivered items obtained from out of state pursuant to specific customer orders.  Without additional facts demonstrating the shipper's intent, the delivery of goods obtained by Cintas based upon ongoing facility service contracts does not

16

subject plaintiffs to the MCA exemption.  Cintas' allegation that plaintiffs were subject to delivering interstate goods at all times as part of their regular job duties is not sufficient to invoke application of the MCA exemption for all plaintiffs regardless of actual participation in interstate commerce. The MCA exemption applies to individual plaintiffs who participated in more than a *de minimis* amount interstate activity.  To establish that a plaintiff engaged in more than a *de minimis* level of interstate commerce, Cintas must demonstrate that interstate goods constituted more than a minimal percentage, with 1% of the plaintiff's deliveries being insufficient to make that showing.  Where a plaintiff's participation in interstate commerce triggers the MCA exemption, it will be applied for a four month period.

B.     Specific Summary Judgment Motions

     1.     Uniform SSR Motion

Cintas seeks summary judgment against 146 plaintiffs who delivered uniforms as part of their regular duties as SSRs in Cintas' Rental Division.  Cintas contends that these plaintiffs delivered or were subject to delivering new uniforms and direct sale items that originated from out of state.[11]  Cintas also seeks partial summary judgment against additional plaintiffs, not yet identified, who were responsible for delivering uniforms and direct sale items from out of state.

The parties in this case acknowledge that *Klitzke*'s finding of continuous interstate transportation applies to the delivery of new uniforms and direct sale items.  Similar to the transported goods in *Klitzke*, these items were ordered by Cintas for specific customers from out of state.  As discussed above, Cintas' broad proposition that it only needs to demonstrate that uniform SSRs were subject to delivering interstate goods is inadequate.  The limited evidence that Cintas presents as to actual deliveries includes the number of orders for direct sale items and new uniforms

---

[11]     For activity between August 10, 2005 and June 5, 2008, the MCA exemption does not apply to drivers of vehicles weighing less than 10,001 pounds.  Of the 146 plaintiffs subject to this motion, Cintas identified 102 whose employment terminated before August 10, 2005.  It requests summary judgment with respect to the entire FLSA claim of those plaintiffs, as well as the portion of the claims before August 10, 2005, for the remaining forty-four plaintiffs.

**United States District Court**
For the Northern District of California

from out of state placed for the customers of six named plaintiffs.[12]  During the relevant time, plaintiffs served between 32 and 139 customers who ordered such items and the total number of separate interstate orders ranged from 115 to 1819.  Order Re: Motions to Strike at 4-5.  Cintas has demonstrated, at least as to these six individuals, that plaintiffs delivered goods in interstate commerce.  In order to prevail, however, the deliveries must represent more than a *de minimis* amount of interstate activity.

In response, plaintiffs submit evidence for the six named plaintiffs, as well as four others, indicating that interstate items comprised 1% or less of their deliveries.  *Id.* at 5.  Plaintiffs also dispute the sufficiency of Cintas' evidence by arguing that items ordered for plaintiffs' customers were not necessarily delivered by plaintiffs.  Cintas counters that the proportion of interstate goods is irrelevant and that it is not required to document exactly what was on each plaintiff's truck to establish that plaintiffs delivered or were subject to delivering items in interstate commerce.  While the level of proof need not require documentation of every item plaintiffs actually delivered, evidence reflecting the proportion of interstate activity is applicable to whether the interstate activity was *de minimis* or not.

On the current record, new uniforms and direct sale items represented 1% or less of the goods that the six named plaintiffs delivered.  Where plaintiffs drove in-state routes and otherwise transported intrastate goods, this level of interstate activity is not sufficient to trigger the MCA exemption as a matter of law.  As for the remaining 140 plaintiffs, Cintas has not presented any evidence of their interstate deliveries.  The uniform SSR motion for summary judgment, therefore, is denied as to all 146 plaintiffs, as well as any unnamed plaintiffs responsible for delivering new uniforms and direct sale items from out of state.[13]

      2.   <u>Uniform/Facility SSR Motion</u>

---

[12]    Cintas analyzed data from its database tracking customer orders for six named plaintiffs: Michael Clayton, Dennis Fedor, Drew Fuehring, Wilfredo Huertas, Jr., Daniel Peterson, and Kelly Smith.

[13]    Because Cintas has not succeeded in invoking the MCA exemption for any period, the Court need not consider the weight of plaintiffs' trucks in this motion or the other motions addressed in this order.

18

United States District Court

For the Northern District of California

Cintas moves for summary judgment on the claim of 135 plaintiffs under the FLSA third claim for relief.  Of these plaintiffs, 125 also are subject to Cintas' uniform SSR motion for summary judgment discussed above.[14]  As before, Cintas contends that plaintiffs delivered or were subject to delivering new uniforms, direct sale items, and logo mats originating out of state.  In this motion, Cintas raises plaintiffs' deliveries of soap and air freshener as additional, separate grounds for invoking the MCA exemption.[15]

In support of this motion, Cintas does not provide any additional evidence regarding the amount of new uniforms, direct sale items, or logo mats delivered by plaintiffs.  Therefore, as discussed above, Cintas has not met its burden of establishing that any plaintiff delivered more than a *de minimis* amount of these goods in interstate commerce.  In addition, Cintas contends that facility services products, obtained pursuant to ongoing service contracts with customers, travel in interstate commerce.  These items, detergent and air freshener, are not being shipped to fulfill preexisting orders for specific accounts.  Instead, Cintas orders these goods based on estimates it claims reflect the short term needs of its regular customers.  According to Cintas, therefore, the vendors' shipments of these goods in interstate commerce are not interrupted by a temporary stay in its warehouses.

The circumstances surrounding Cintas' soap and air freshener orders, however, are distinguishable from situations where the shipper owns or controls the warehouse and intends the products to continue in interstate commerce.  In *Int'l Brotherhood of Teamsters*, for example, the company transported products from its manufacturing plants to its own distribution center before in-

---

[14]     After ongoing dismissals, 131 plaintiffs remain subject to this motion.  Of these, eighty-seven plaintiffs ended their employment with Cintas before August 10, 2005.  For forty-four other plaintiffs, Cintas alleges that at least sixteen drove vehicles weighing 10,001 pounds or more on and after August 10, 2005.  Cintas moves for partial summary judgment with respect to the remaining plaintiffs for the portions of their claims prior to August 10, 2005.

[15]     In the event that the Court were inclined to grant the uniform/facility SSR, facility SSR and/or safety SSR motions, plaintiffs request as alternative relief that the Court defer ruling under Federal Rule of Civil Procedure 56(f).  In response to evidence submitted by Cintas regarding the deliveries of soap, air freshener, logo items, and defibrillators, plaintiffs seek further discovery into these subjects.  In light of the disposition of these motions, the Court need not reach plaintiffs' Rule 56(f) requests.

19

**United States District Court**

For the Northern District of California

1  state delivery.  921 F.2d at 906.  The company segregated out-of-state goods and maintained records

2  tying inbound and outbound shipments together pursuant to storage-in-transit provisions.  *Id.* at 910.

3  In this case, shipments of soap and air freshener to Cintas' facilities originate from third-party

4  vendors.  There are no facts indicating the shippers thereafter maintained any interest or control over

5  storage or future delivery of the goods.  While Cintas attempts to introduce testimony that vendors

6  intended products for further transport, its submissions are inadmissible hearsay.  Order Re: Motions

7  to Strike at 5-6.  In this case, the storage of bulk facility service products in Cintas' warehouses for

8  up to one month, followed by transfer to plaintiffs' truck for an additional time, appears to stretch

9  the notion that the goods remained in interstate commerce.

10  Cintas does present admissible evidence for ten plaintiffs on the number of customers with

11  soap or air freshener service and the number of days these plaintiffs visited such a customer.  *Id.* at

12  6.  Plaintiffs dispute that invoices referring to soap or air freshener service establish that a driver

13  actually delivered such items in any given week.  Because the Court finds that plaintiffs' deliveries

14  of these products were not in interstate commerce, the MCA exemption is not triggered regardless of

15  the frequency of deliveries or amount of goods involved.  Accordingly, the uniform/facility motion

16  for summary judgment is denied.

17  3.    Facility SSR Motion

18  In this motion, Cintas moves for summary judgment on the FLSA claim of thirty-seven

19  plaintiffs.  Unlike SSRs subject to the motions discussed above, these plaintiffs do not admit to

20  delivering uniforms during their entire employment with Cintas.  As such, Cintas raises products

21  other than new uniforms in this motion, including soap, air freshener, logo mats, and direct-sale

22  items.  Cintas claims that these thirty-seven plaintiffs delivered or were subject to delivering these

23  four products in interstate commerce.[16]

24  In support of this motion, Cintas does not present evidence relating to the amount or

25  percentage of logo mats or direct sale items from out of state delivered by plaintiffs.  Plaintiffs

26
27  [16]    For twenty-three of these plaintiffs, Cintas claims that employment terminated before
August 10, 2005.  Cintas alleges that eleven other plaintiffs drove vehicles weighing at least 10,001
pounds on and after August 10, 2005.  Cintas moves for partial summary judgment against the
28  remaining plaintiffs for the portions of their claims prior to August 10, 2005.

United States District Court

For the Northern District of California

1  submit deposition testimony that deliveries of new logo mats, at least for certain plaintiffs, occurred

2  rarely or never.  *Id.* at 7.  As for soap and air freshener, these items are found not to constitute

3  interstate goods for purposes of the MCA exemption.  While Cintas presents admissible evidence as

4  to seven plaintiffs regarding the percentage of customers with soap and air freshener service, these

5  facts are unavailing where the goods are not delivered in interstate commerce.  *Id.*  Because Cintas

6  has not demonstrated that plaintiffs participated in interstate commerce, the facility SSR motion for

7  summary judgment is denied.

8          4.      Safety SSR Motion

9        This motion for summary judgment is directed to the third claim for relief brought by four

10  SSRs who worked in Cintas' First Aid and Safety Division.  Cintas contends that plaintiffs Sherry

11  Lay, Hisham Nijem, Claudio Atencio, and Kathleen Ferrari delivered logo items and defibrillators

12  ordered for specific customers from out-of-state vendors.

13        Cintas presents evidence demonstrating that logo items and defibrillators were ordered for

14  customers on plaintiffs' routes during the period of their employment at issue in this suit.  The

15  number of invoices generated for these items range from zero in one month for Ferrari to sixteen in

16  fourteen months for Atencio.  For the year prior to the period of Ferrari's claim, twenty-two invoices

17  were generated.  *Id.* at 8.  Plaintiffs assert that it is improper to infer that these four SSRs actually

18  made any deliveries of logo items or defibrillators based on the invoices alone.  Atencio testifies that

19  he does not recall ever selling or delivering a defibrillator to a customer.  He describes the sale of

20  safety glasses as the only logo item he sold and states that he never delivered them.  Instead, he

21  states that safety glasses might be shipped directly from the vendor or delivered by another driver.

22  *Id.*  While orders placed for plaintiffs' customers do support an inference that plaintiffs likely

23  delivered such items, the evidence is not sufficient at summary judgment.  To prevail, Cintas must

24  establish that plaintiffs delivered more than a *de minimis* amount of such items in interstate

25  commerce.  Because there are factual disputes as to the frequency of such deliveries, the safety SSR

26  motion for summary judgment is denied.

27          5.      State Law SSR Motion

28        This motion for summary judgment is directed to the fourteenth claim for relief under

Minnesota law brought by Dennis Fedor and Daniel Peterson and the fifteenth claim for relief under Missouri law of Drew Fuehring. These three plaintiffs also are subject to Cintas' uniform and uniform/facility SSR motions. Because the overtime provisions of these states incorporate the MCA exemption, Cintas again seeks summary judgment based on plaintiffs' delivery of goods in interstate commerce. Both parties acknowledge that application of the MCA exemption under Minnesota and Missouri law is the same as under the FLSA. In this motion, Cintas does not raise any additional evidence of interstate activity by these plaintiffs. In accord with the rulings on Cintas' uniform and facility/uniform SSR motions, the state law SSR motion is denied.

V.  CONCLUSION

Accordingly, Cintas' motions for summary judgment, in particular the uniform SSR motion, the uniform/facility SSR motion, the facility SSR motion, the safety SSR motion, and the state law SSR motion, are each denied.

IT IS SO ORDERED.

Dated: 4/23/09

RICHARD SEEBORG
United States Magistrate Judge

**United States District Court**
For the Northern District of California

ORDER DENYING MOTIONS FOR SUMMARY JUDGEMENT FOR: (1) UNIFORM SSR MOTION;
(2) UNIFORM/FACILITY SSR MOTION; (3) FACILITY SSR MOTION; (4) SAFETY SSR MOTION; AND
(5) STATE LAW SSR MOTION
C 03-1180 RS