*E-Filed 4/23/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PAUL VELIZ, et al.,

    Plaintiffs,

v.

CINTAS CORPORATION, et al.,

    Defendants.

NO. C 03-1180 RS

**ORDER: (1) DENYING MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT; (2) DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT; (3) DENYING MOTION TO SUBSTITUTE SPOUSES; AND (4) GRANTING MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Cintas Corporation ("Cintas") manufactures, sells, and rents uniforms and apparel as well as business products and services to customers throughout the United States. Plaintiffs are or were Cintas Service Sales Representatives ("SSRs"), who perform a service and/or deliver products through the use of trucks provided by Cintas. The second amended complaint ("SAC") asserts a collective action for failure to pay overtime compensation to plaintiffs who filed consents-to-sue. Plaintiffs claim that Cintas violated the Fair Labor Standards Act ("FLSA"), the Employment Retirement Security Act of 1974 ("ERISA"), and various state laws when Cintas allegedly misclassified SSRs as exempt employees not entitled to overtime pay.[1]

---

[1] Plaintiffs amended their complaint twice before. They filed their first amended complaint ("FAC") on May 16, 2003, and their SAC on February 28, 2006.

1

Four motions are addressed in this order: (1) plaintiffs' motion for leave to file a third amended complaint ("TAC") ("TAC motion"); (2) plaintiffs' motion for partial summary judgment regarding miscalculation of their overtime wages ("pay practices motion"); (3) plaintiffs' motion to substitute spouses for deceased plaintiffs Lawrence Michelfelder and Bruce Lauvrak ("substitute spouses motion"); and (4) Cintas' motion for summary judgment to dismiss Lauvrak and Leonard Stachnick.[2] For the reasons set forth below, the TAC motion, pay practices motion, and substitute spouses motion are denied, and Cintas' motion for summary judgment is granted.

## II.  DISCUSSION

### A.    TAC Motion

Pursuant to Rules 15(a) and 23(e) of the Federal Rules of Civil Procedure, plaintiffs seek leave to file a TAC which: (1) adds factual allegations that Cintas unlawfully "miscalculated" overtime premiums owed in violation of the FLSA and various state laws; and (2) strikes all class action allegations for individuals with state law claims, replacing them with claims asserting the same legal theory but brought on an individual basis.

#### 1.    Legal Standard

A party may amend a complaint "as a matter of course" prior to the filing of a responsive pleading. Fed. R. Civ. P. 15(a). After that point, a party may amend only by leave of the court, which should be "freely given," or by written consent of the adverse party. *Id*. Liberality in the granting of leave to amend, however, is subject to several limitations. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id*. Prejudice to the opposing party is the factor accorded the greatest weight in denying a motion for leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Under Rule 15(a) there is a presumption in favor of granting leave to amend absent prejudice, or a strong showing of any of the other factors. *Id*. The Ninth Circuit has "often affirmed the denial of leave to amend when the motion was made

---

[2] The parties stipulated to dismiss Stachnick's claims with prejudice on January 16, 2009. The motion as it pertains to Lauvrak remains in dispute.

after the cutoff date for such motions, or when discovery had closed or was about to close." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 957 (9th Cir. 2006). Cintas, as the party opposing amendment, carries the burden of showing why leave to amend should not be granted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

2. Miscalculation Amendment

In response to plaintiffs' effort to add averments regarding the miscalculation of overtime, Cintas argues that: (1) it was not put on notice relative to that issue in the previous pleadings; (2) such an amendment would cause it substantial prejudice, and (3) the proposed complaint additions are offered too late in the process.

a. Notice

Cintas maintains that plaintiffs' proposed miscalculation claim arises without notice for the first time in nearly six years of litigation, and that its inclusion in the case through amendment would be unwarranted. Contrary to Cintas' characterization of the record, plaintiffs' previously filed complaints do in fact contain references to the miscalculation of paid overtime. The first such instance appears in plaintiffs' original complaint:

> At all relevant times, Cintas had a policy and practice of failing and refusing to pay overtime pay to its [SSRs] for their hours worked in excess of forty (40) hours per week, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, *and/or the failure to calculate and pay overtime premiums according to law*.

Complaint, ¶ 74 (emphasis added). The language "and/or the failure to calculate and pay overtime premiums" appears four additional times in the initial complaint in each separate state law claim for relief. *Id.*, ¶¶ 85, 100, 111, 122. Indeed, plaintiffs maintain these same contentions in their subsequent complaints, with "miscalculation" references appearing ten times in the FAC and thirty times in the SAC. *See* FAC ¶ 105, SAC ¶ 140 ("By failing to pay all overtime compensation due, whether through the failure to provide any overtime pay, the denial of premium pay for all overtime hours actually worked, and/or the failure to calculate and pay overtime premiums . . . ."); *see also* FAC ¶¶ 94, 119, 130, 142, 152, 163, 173, 184, 195; SAC ¶¶ 129, 157-58, 167, 169, 178, 181, 190, 192, 201, 203, 213, 216, 225, 227, 236, 238, 247, 249, 258, 260, 269-70, 279, 281, 290, 293, 302, 304. These forty-five references to the miscalculation allegations in plaintiffs' various complaints

3

satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure by adequately putting Cintas on notice that plaintiffs advance an overtime miscalculation theory of liability.[3]

### b. Rule 15(a) Factors: Prejudice and Undue Delay

#### i. Prejudice

Having determined that Cintas was on notice of plaintiffs' miscalculation claim, the next argument advanced by Cintas against amendment pertains to the prejudice Cintas allegedly would incur. In the history of this litigation, the hour is late. Plaintiffs did not file their motion for leave to amend until December 16, 2008, the day before the dispositive motion deadline. While the trial date has since been vacated, at the time of plaintiffs' filing, it was just a few weeks away. *See Ascon*, 866 F.2d at 1161 (stating that prejudice is heightened when amendment is sought late in the litigation). With almost six years of intense battle on a host of cumbersome issues, to allow amendment at this juncture would expand this case significantly at precisely the time when the effort should be on focusing the dispute for trial.

The information plaintiffs now seek to include in their TAC diverges a good distance from the central dispute regarding the misclassification of SSRs that has formed the focal point of the pleadings and motion practice in this litigation stretching back to 2003. As noted above, while the previous complaints mentioned calculating overtime pay in passing, the paragraphs that contained such references did not include any facts beyond those directed to SSR misclassification. Only now, after the dispositive motion deadline has passed, do plaintiffs seek to add such material. To do so at this late stage quite simply would be unfair. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990) (finding that prejudice may result when the proposed amendments add different facts or are based on different legal theories).

#### ii. Undue Delay

---

[3] Cintas argues that the heightened pleading standard announced in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), applies. While the applicability of *Twombly* outside the realm of antitrust remains uncertain, *see Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 970-71 (9th Cir. 2008); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 n.5 (9th Cir. 2008), the Court need not reach this issue in light of the disposition below.

4

Cintas demonstrates that plaintiffs delayed filing their motion for leave to amend the miscalculation claim. While delay alone will not justify the denial of leave to amend, *DCD Programs*, 833 F.2d at 186, late amendment is "not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (citations omitted).

Beginning in July 2004, plaintiffs asked Cintas to produce information about its policies and practices for payment of compensation, including payment of bonuses and commissions ("pay plans"). In response, Cintas produced its first set of pay plan documents on April 7, 2005, its first payroll data on June 24, 2006, and additional supplemental sets reflecting other pay periods and updated policies on March 22, 2007, August 23, 2007, September 25, 2007, November 1, 2007, and May 20, 2008.

While plaintiffs informed Cintas in an in-person meet and confer session on February 6, 2008, that they would challenge Cintas' calculation of its pay plans, including whether the pay plans complied with the FLSA, the fact remains that many months passed before the filing of a motion to amend. Kelly Decl., Ex. C; Reply at 8, 20. To justify its lengthy delay in bringing such a motion, plaintiffs assert that it was not until Rhonda Fox's September 16, 2008 deposition, that they obtained the information they now seek to add by way of the TAC. While it is not entirely clear when plaintiffs possessed *all* facts necessary to file their proposed TAC, what is evident is that plaintiffs had knowledge of the factual predicate for its expanded miscalculation facts by no later than early 2008, if not sooner, but waited until December 16, 2008, the day before the dispositive motion deadline, to file its motion. When the fact of plaintiffs' preexisting knowledge is added to delay, denial becomes appropriate. *See Jackson*, 902 F.2d at 1388 (reasoning that undue delay occurs when a party files a motion for leave to amend long after it should have become aware of the information that underlies the motion); *see also AmerisourceBergen*, 465 F.3d at 953 (finding that fifteen month delay between the time a party obtained a relevant fact and finally sought leave to amend was unreasonable); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (determining that eight month delay was unreasonable).

5

3.   State Law Amendments and Striking State Law Class Claims

As with the proposed miscalculation amendments, Cintas argues that to allow the transformation by amendment of state law class claims into separate individual claims would cause it substantial prejudice.[4] Cintas points out that it would need to seek the reopening of discovery to obtain information not developed already as to these particular individuals. Cintas previously was denied discovery as to them in their capacity as putative class members only. *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (affirming lower court's denial of leave to amend because the parties already had engaged in voluminous and protracted discovery, which had closed and trial was only two months away).

Allowing plaintiffs to file the proposed amendment this far into the litigation would unfairly prejudice Cintas and could well necessitate a continued delay in the final disposition of this already protracted case. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("The new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense. . . . In light of the radical shift in direction posed by these claims . . . we conclude that the district court did not clearly abuse its discretion in denying leave to amend.").

Plaintiffs' request to strike the class action allegations associated with their state law claims is tied to the proposed amendment to add individual claims discussed above. Plaintiffs represented that one of the reasons they sought to amend the state law claims was that it would be difficult to certify the class based on numerosity, but take no position on the ultimate viability of those class claims in the event of denial of their proposed amendment. Accordingly, plaintiffs are instructed to

---

[4] Cintas also argues that plaintiffs delayed seeking to amend the putative class action state law claims as individual state law claims because many plaintiffs have been dismissed voluntarily and dispositive motions have eliminated many litigating plaintiffs over the years. Such an argument is unavailing as many opt-in plaintiffs were dismissed in the Court's most recent November 13, 2008 Order. Plaintiffs could not reasonably have sought to amend sooner than December 16, 2008.

6

1 advise the Court within one week of the date of this order how they intend to proceed on these
2 putative class claims in light of this determination.[5]

3 B.   Pay Practices Motion

4     By separate motion for partial summary judgment, plaintiffs seek a determination of Cintas'
5 liability under the FLSA for underpayment of overtime wages.  Plaintiff Karim Abdella also moves
6 for partial summary judgment on the same issue under California labor law.  While plaintiffs
7 initially may have pled a miscalculation claim, in light of the disposition above, plaintiffs' claims
8 regarding miscalculation of their overtime wages are outside the scope of this action.  Similarly,
9 Abdella, who is not a named California plaintiff, is not entitled to pursue an individual state law
10 claim under the operative complaint.  Accordingly, plaintiffs' pay practices motion is denied.

11 C.   Substitute Spouses Motion and Cintas' Motion for Summary Judgment

12     Plaintiffs move to substitute the spouses of deceased plaintiffs Lawrence Michelfelder and
13 Bruce Lauvrak.  Both Michelfelder and Lauvrak became parties to this suit by opting into the case in
14 August 2004.  Michelfelder died intestate in January 2007 while Lauvrak died in August 2007.  The
15 wives of the decedents, Mary Ann Michelfelder and Shelly Lauvrak, wish to maintain their
16 husbands' respective claims.  Cintas opposes the motion to substitute, and has further filed a motion
17 for summary judgment to dismiss Lauvrak's claims.

18     In the SAC, plaintiffs brought individual and class action claims alleging wage and hour law
19 violations in various states, including those where Michelfelder and Lauvrak worked for Cintas.
20 Neither Michelfelder nor Lauvrak, however, were among the named plaintiffs asserting state law
21 claims in that pleading.  As opt-in plaintiffs, Michelfelder's and Lauvrak's consent-to-sue forms only
22 stated claims arising under the FLSA.  Their individual FLSA claims subsequently have been
23 dropped from the suit.  Michelfelder's FLSA claim was dismissed by summary judgment on

---

[5] Plaintiffs indicated in 2003 and 2006 that they intended to seek certification of their state law claims within six months, but have taken no further steps to do so. *See* July 21, 2003 Joint Case Management Statement at 10 (Dkt. 41); March 24, 2006 Joint Case Management Statement at 5-6 (Dkt. 522).

7

November 13, 2008, and plaintiffs withdrew a previous motion to substitute Mrs. Lauvrak after determining that Mr. Lauvrak had no viable FLSA claim.[6]

Plaintiffs' motion to substitute spouses is based upon the premise that Michelfelder and Lauvrak can maintain state law claims pursuant to the proposed TAC. As noted above, in that pleading, plaintiffs seek to withdraw the class action state law claims and replace them with individual state law claims, including those of Michelfelder and Lauvrak. Consequently, because the motion for leave to file a TAC is being denied, neither Michelfelder nor Lauvrak have any claims remaining and the motion to substitute must therefore be denied.[7] Similarly, Cintas' motion for summary judgment to dismiss Lauvrak is granted.

### III. CONCLUSION

Plaintiffs' motion for leave to file a TAC and motion to substitute spouses are denied. Plaintiffs' motion for partial summary judgment regarding pay practices is denied. Cintas' summary judgment motion to dismiss Lavurak is granted. Plaintiffs shall file a letter brief of not more than five pages within seven days of the date of this order setting forth how they intend to proceed on the putative state law class claims (i.e. seek leave to file a motion for class certification, or seek leave to strike or dismiss the state law class claims pursuant to Rule 23(e) of the Federal Rules of Civil Procedure).

---

[6] While plaintiffs have not stipulated to a dismissal of Lauvrak's FLSA claim, in their motion to substitute spouses, plaintiffs only discuss Lauvrak's potential state law claims.

[7] Even if the proposed TAC was permitted, substituting Mrs. Lauvrak as a party for her deceased husband would be untimely. According to Rule 25(a)(1), if a motion for substitution "is not made within 90 days after service of a statement noting death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1). Two affirmative steps trigger the running of the ninety day period after which the motion must be dismissed: (1) "a party must formally suggest the death of the party upon the record"; and (2) "the suggesting party must serve other parties . . . with a suggestion of death in the same manner as required for service of the motion to substitute." *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994). As noted above, plaintiffs previously filed a motion for substitution on behalf of Mrs. Lauvrak on June 3, 2008. In support of that motion, Mrs. Lauvrak filed with the Court and served Cintas with a declaration stating that her husband had died, and included his death certificate as an exhibit. Plaintiffs' current motion was filed December 17, 2008, and therefore, falls well outside the ninety day deadline.

1     IT IS SO ORDERED.

3  Dated: 4/23/09

                            RICHARD SEEBORG
                            United States Magistrate Judge

**United States District Court**
For the Northern District of California

ORDER: (1) DENYING MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT; (2) DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT; (3) DENYING MOTION TO SUBSTITUTE SPOUSES; AND (4) GRANTING MOTION FOR SUMMARY JUDGMENT
C 03-1180 RS

9