*E-Filed 4/23/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL VELIZ, et al.,<br><br>    Plaintiffs,<br>v.<br><br>CINTAS CORPORATION, et al.,<br><br>    Defendants.<br>_____/ | NO. C 03-1180 RS<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGEMENT ON: (A) PLAINTIFFS THAT CROSSED STATE LINES, AND (B) NON-SSRs; (2) DENYING MOTION FOR SUMMARY JUDGMENT ON VEHICLE WEIGHT** |

## I. INTRODUCTION

On November 13, 2008, this Court held that if a plaintiff transports goods across state lines at least once within a four-month period, pursuant to the Motor Carrier Act ("MCA") exemption, 49 U.S.C. § 13501, that plaintiff is not entitled to pursue his or her Fair Labor Standards Act ("FLSA") claim for that period.[1] As noted in that order, to invoke the motor carrier exemption Cintas must establish that a plaintiff: (1) crossed state lines before August 10, 2005; and (2) drove a commercial motor vehicle weighing 10,001 pounds or more after August 10, 2005, but before June 6, 2008.

Two of the three summary judgment motions addressed by this order seek further application of the Court's ruling of November 13, 2008. In its first motion, Cintas seeks summary judgment

---

[1] The factual background relevant to these motions is set forth in the November 13, 2008 Order.

1

1  against plaintiffs Christopher Bouchard, Dennis Gregory, Mark Rowse, and Scott Sims to eliminate
2  or limit their FLSA claims as they allegedly admitted regularly driving across state lines to make
3  deliveries on their assigned routes as part of their duties as Service Sales Representatives ("SSRs")
4  ("crossing state lines motion").[2]  The Court did not address these four plaintiffs in its November
5  order because neither party at that time had made a showing as to any of them.

In the second motion, Cintas seeks summary judgment against plaintiffs who drove commercial motor vehicles weighing 10,001 pounds or more after August 10, 2005, but before June 6, 2008 ("vehicle weight motion").[3]  In its previous order, the Court denied Cintas' summary judgment motion without prejudice because Cintas had not provided any evidence as to whether any plaintiffs had driven a vehicle in excess of 10,000 pounds.  In its third motion, Cintas seeks summary judgment or partial summary judgment against plaintiffs who were not employed by Cintas in positions within the scope of this litigation ("non-SSRs motion").  The Court previously granted summary judgment against two plaintiffs in its November order on this basis.  Plaintiffs oppose all three motions.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Id*. at 323.

---

[2]  Cintas originally sought summary judgment against plaintiff Anthony Hamilton, and to limit the FLSA claims to the two-year limitations period delineated in the November order.  On January 21, 2009, the parties stipulated to dismiss Hamilton's claims with prejudice, and stipulated that the limitations period for FLSA claims is two years.  *See* Dkt. 1279-80.

[3]  Cintas' crossing state lines motion also contains arguments regarding vehicle weight as that issue also pertains to the plaintiffs in that motion.

2

If the moving party makes that initial showing, the burden then shifts to the non-moving party to present specific facts reflecting the absence of a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). Summary judgment is not appropriate if the non-moving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in his or her favor. *Anderson*, 477 U.S. at 248; *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### III. DISCUSSION

A.  <u>Crossing State Lines Motion</u>

Cintas argues that the MCA operates to exempt the FLSA claims of four plaintiffs accruing prior to August 10, 2005, because each admitted to driving across state lines at least once every four months to make deliveries on his assigned route as part of his duties as an SSR. As actual interstate crossings within the requisite time frame would undisputably trigger application of the exemption, evidence specifically pertaining to each of these plaintiffs must be separately analyzed.

Plaintiff Sims represents in an interrogatory response that he worked for Cintas in Fort Wayne, Indiana, from January 6, 1987, to the "present." Kelly Decl., Ex. A at 16. In another response, he states that he crossed state lines twice per week on route twenty-six. *Id*. at 66. In a third response, Sims asserts that before June 1, 2003, he delivered products to customers in Ohio, but makes no mention of delivering products in that state since that date. Traber Decl., Ex. A at 2. Plaintiffs do not dispute that he crossed state lines before June 1, 2003, in light of his admission of his twice per week trips in and out of Ohio. Opposition at 5; Sims Decl., ¶ 3.

What they do contest, however, is Cintas' claim that undisputed facts reflect such state line crossings by Sims after June 1, 2003. Instead, plaintiffs point to paragraph four of Sims' declaration

3

which provides that in mid-2003 Cintas changed his route such that his travels remained entirely within Indiana. Sims Decl., ¶ 4. Cintas' motion to strike this paragraph is unwarranted because the issue of how route twenty-six ran before and after June 1, 2003, remains relevant but unresolved. Order Re: Motions to Strike at 1-2. Accordingly, summary judgment as to Sims may be entered for the period of time before June 1, 2003, and denied for claims accruing after that date.

Plaintiff Bouchard admits that on three routes he crossed state lines daily from January 3, 2002, until November 2005. Kelly Decl., Ex. A at 13, 34, 61. Plaintiff Gregory acknowledges that he crossed state lines once per week from April 15, 1983, to the "present." *Id*. at 14, 63. Plaintiff Rowse represents that he crossed state lines daily from April 1999 to the "present." *Id*. at 16, 66. In his declaration, Rowse clarifies that he worked for Cintas from April 1999 until April 2006. Rowse Decl., ¶ 2. Indeed, plaintiffs do not contest that these three plaintiffs crossed state lines in performing their duties as SSRs during the period before August 10, 2005, but deny that the trucks they used were "commercial" motor vehicles (i.e. weighing 10,001 pounds or more) subject to the MCA exception after August 10, 2005. Opposition at 7. Based on the foregoing, summary judgment as to these three plaintiffs is warranted for at least the period of time before August 10, 2005.

As to the time period after August 10, 2005, plaintiffs deny that the trucks used by Bouchard, Gregory, Rowse, and Sims weighed 10,001 pounds or more. Plaintiffs Gregory, Rowse, and Sims submitted declarations stating that after August 10, 2005, they drove Cintas trucks that weighed less than 10,000 pounds. Gregory Decl., ¶ 3, Sims Decl., ¶ 5, Rowse Decl., ¶ 3. Gregory even indicated that his truck held a placard on the interior indicating that the truck's weight is 10,000 pounds. Gregory Decl., ¶ 3. With no objection to these declarations from Cintas, it appears that the fact issue of truck weight, and therefore, the application of the MCA exemption after August 10, 2005, must be reserved for trial. Indeed, Cintas indicates as much. *See* Reply at 9. Accordingly, summary judgment is not warranted for these plaintiffs for the post-August 2005 period.

As to Bouchard's claim arising after August 10, 2005, Cintas produced evidence establishing that at all times between August 10, 2005, and November 2005, Bouchard drove a truck weighing at least 10,001 pounds. Edwards Decl., ¶¶ 4-5. In opposition to this motion, Bouchard produced no

4

evidence that he drove a truck weighing less than 10,001 pounds, and the opposition makes no such argument. Instead, plaintiffs suggest only that summary judgment should be denied as to Bouchard's claim because Cintas improperly responded to discovery, echoing their Rule 37(d) sanctions argument outlined below. As noted below, just as an award of sanctions is not warranted on those contentions, they similarly do not preclude the entry of summary judgment here.

B.      Vehicle Weight Motion

For those plaintiffs not addressed above with claims accruing subsequent to August 10, 2005, Cintas first attempts to establish that each plaintiff drove a truck weighing 10,001 pounds or more as set forth in 49 U.S.C. § 31132(1). In particular, it submits evidence from seven of its supervisors to that effect. The claims of eighteen plaintiffs are implicated by this question.[4] Cintas further tries to establish that each plaintiff was involved in interstate commercial motor vehicle transportation by relying on its uniform SSR motion demonstrating that plaintiffs were subject to transporting goods in interstate commerce.

1.      Plaintiffs' Motion for Sanctions and Rule 56(f) Request

In partial response to Cintas' summary judgment motion regarding vehicle weight, plaintiffs filed: (1) a motion for sanctions claiming that Cintas submitted seven declarations from management level employees (George Sosnowski, Sonia Santa Cruz, Greg Andrews, Dave Mercurio, Bob Wolschon, Kristy Barber, and Mike Edwards) alleging facts about the weight of individual plaintiffs' trucks that Cintas failed to disclose in discovery; and (2) a Federal Rule of Civil Procedure 56(f) request to deny Cintas' motion without prejudice and to re-open discovery for the limited purpose of allowing plaintiffs to depose the seven declarants to determine what they know about the weight of plaintiffs' trucks.

a.      Motion for Sanctions

Plaintiffs' motion for sanctions relates to a discovery dispute that has been ongoing since at least early 2008 and has involved repeated motion practice before Magistrate Judge James. On

---

[4] Cintas originally moved for summary judgment against twenty plaintiffs, but two of that group, Holmes and Stachnik, had their claims dismissed. The remaining eighteen plaintiffs are: Andrzekewski, Ankenbruck, Buckholtz, Crane, Gamble, Hooper, Kamrad, Kraska, Look Jr., Maye, McAdams, Pilon, Shrake, Schultz, J. Smith, Tarango, Tully, and Wilson.

5

February 20, 2008, the parties submitted a joint letter brief to Judge James. In that letter, plaintiffs moved to compel Cintas to respond to discovery requests relating to Cintas' MCA exemption defense. In particular, plaintiffs sought materials describing the items transported on Cintas' trucks, to which Cintas objected as overbroad and burdensome. On March 3, 2008, Judge James ruled that plaintiffs' requests were "relevant yet overbroad." Dkt. 742. That order instructed the parties to meet and confer to limit the scope of plaintiffs' requests and stated that once the parties did so, they would be required to produce the information requested for a sample of twenty individual plaintiffs.

On March 14, 2008, plaintiffs proposed what they termed "compromise discovery" that reduced the number and scope of the documents requested, combined and narrowed the outstanding interrogatories, and added requests for admission. Of particular importance here, the "compromise discovery" sought not only information concerning the items carried on Cintas' trucks, but added requests going to the weight of those vehicles. Cintas responded that plaintiffs' proposal was improper "new" discovery propounded after the discovery cut-off date, and that it therefore did not represent a "compromise" at all.

After two additional joint letter briefs declaring that the parties could not reach agreement, Judge James held a hearing on August 28, 2008, and issued an order the same day requiring Cintas to respond to the original discovery requests as written for twenty designated plaintiffs, and to the "compromise discovery" for plaintiff Michael Laucella only. In accord with that order, on October 16, 2008, Cintas mailed its written discovery responses to plaintiffs, along with ten CDs containing spreadsheet charts, data files, and documents. Plaintiffs thereupon alleged that Cintas had once again failed to produce court-ordered discovery. After another joint letter, Judge James held an additional hearing on January 22, 2009. As of the date of this order, no agreement has been reached, and the matter remains pending before Judge James.

In short, plaintiffs contend that Cintas has failed to provide discovery as to truck weight as required, and that as a result, sanctions should be imposed pursuant to Rule 37(d) of the Federal Rules of Civil Procedure. Plaintiffs seek to foreclose Cintas from using this previously unproduced evidence against them now or at trial. Cintas' position is that it complied fully with all of the

6

1  outstanding discovery requests and Court orders, and that plaintiffs cannot now obtain the sought
2  after information as discovery has closed.

3  Plaintiffs' motion for sanctions will be denied. In support of their February 20, 2008 motion
4  to compel, plaintiffs submitted the disputed discovery requests. Of the twenty plaintiffs that
5  required additional discovery, only two of those plaintiffs, Crane and McAdams, are subject to
6  Cintas' motion for summary judgment based on truck weight. As a result, only two of the challenged
7  declarations, those of Mercurio and Wolschon, relate to the discovery dispute before Judge James.
8  None of the interrogatories or production requests relating to the other declarations, therefore, are
9  relevant to this motion for sanctions. Be that as it may, not one of the original interrogatories or
10 requests for production sought information about the weight of plaintiffs' trucks. Consequently,
11 when Judge James ruled on August 28, 2008, that Cintas should provide further responses to the
12 original requests, truck weight was outside the scope of that order. In other words, Cintas has not
13 violated any court order relating to the production of materials pertaining to truck weight that
14 warrants Rule 37(d) sanctions.[5]

    b.   Rule 56(f) Request

16 As noted above, pursuant to Rule 56(f), plaintiffs argue that Cintas' summary judgment
17 motion should be denied without prejudice and discovery should be re-opened for the limited
18 purpose of allowing plaintiffs to depose the seven declarants to determine what they know about the
19 weight of plaintiffs' trucks. Fed. R. Civ. P. 56(f). On July 14, 2006, Cintas listed six of the seven
20 declarants that filed declarations here by name in its supplemental initial disclosures. Hoq Decl., Ex.
21 E. Cintas even identified this group of individuals as having information relating to "routes and
22 vehicles driven" because they were managers and supervisors where individual plaintiffs were
23 employed. *Id*. at 2. The seventh declarant, Kristy Barber, was not listed in this supplemental
24 disclosure as she was not promoted to a management position until March 2008. Barber Decl., ¶ 3
25 (Dkt. 1140). Barber, however, was disclosed in Cintas' second set of supplemental responses.

---

[5] Cintas argues that plaintiffs' motion for sanctions also should be denied because plaintiffs did not notice it pursuant to the ordinary notice procedures provided by the Civil Local Rules. Plaintiffs' motion, however, relates to Cintas' summary judgment motion and they therefore filed it as soon as practicable. Civil L.R. 7-8(c).

7

Plaintiffs' Rule 56(f) request, therefore, will be denied because plaintiffs never sought to depose anyone regarding truck weight when they had materials regarding who might have such information as early as 2006.

2.  Plaintiffs with Claims After August 10, 2005

As explained in the November order, because these eighteen plaintiffs cannot be deemed exempt across the board, evidence of the weight of each vehicle driven by a particular plaintiff must be identified. Plaintiffs Gamble, Hooper, Look Jr., and Tarango in their respective interrogatory responses admit that they drove trucks over 10,001 pounds. Plaintiff Gamble represents that he drove a vehicle weighing 16,000 pounds. Full Decl., Ex. A at 36. Plaintiff Hooper asserts that he drove four different trucks weighing from 11,500 pounds to 32,000 pounds. *Id*., Ex. B. at 133. Plaintiff Look Jr. admits that he drove a truck that weighed 14,050 pounds. *Id*., Ex. C at 9, 35. Plaintiff Tarango admits that he drove a van weighing 12,000 pounds until his employment with Cintas ended on November 3, 2005. *Id*., Ex. D at 139.

Plaintiffs offer no evidence to counter the declarations of Cintas' managers as to ten of the eighteen plaintiffs. In Sosnowski's declaration, he states that plaintiffs Buckholtz, Schultz, Shrake, J. Smith, and Tully have each driven various diesel trucks or vans which weigh over 10,001 pounds on a daily basis since August 10, 2005. Sosnowski Decl., ¶¶ 4, 10, 12, 14, 16. Mercurio represents that plaintiffs Maye and McAdams have used vehicles weighing at least 10,001 pounds since August 10, 2005. Mercurio Decl., ¶¶ 5-6. Similarly, Wolschon asserts in his declaration that since August 10, 2005, plaintiff Kamrad has driven a truck on a daily basis weighing over 10,001 pounds. Wolschon Decl., ¶ 6. The Barber declaration represents that plaintiffs Kraska and Wilson have each driven vans weighing 14,050 pounds since August 10, 2005. Barber Decl., ¶¶ 4-5, 7-8, Ex. A.

For plaintiffs Andrzejewski, Ankenbruck, Crane, and Pilon, plaintiffs present no other evidence beyond inadmissible declaration paragraphs to refute the declarations of Wolschon and Andrews. Order Re: Motions to Strike at 3. In Wolschon's declaration, he states that Andrzejewski drove a truck that weighed over 10,001 pounds while Crane and Pilon drove trucks that weighed 14,100 pounds or more after August 10, 2005. Wolschon Decl., ¶¶ 4-5, 7. Andrews represents that

Ankenbruck drove a truck that weighed over 10,001 pounds since August 10, 2005. Andrews Decl., ¶ 4.

Cintas has demonstrated that these plaintiffs drove trucks weighing 10,001 pounds or more. As noted above, however, Cintas cannot rely solely on a showing of vehicle weight but also must establish that plaintiffs were involved in interstate commerce (e.g. by crossing state lines). As explained in the Court's Uniform SSR order, filed contemporaneously with this decision, Cintas has not established that each plaintiff's participation in interstate commerce was sufficient to trigger application of the MCA exemption. Accordingly, summary judgment is not warranted for these plaintiffs for the post-August 2005 period.

C.    Non-SSRs Motion

Cintas alleges that it is entitled to partial summary judgment as to plaintiffs Asa Cervantes (February 4, 2002, to September 13, 2003), Eric Nall (January 1, 2002, to March 2002), Stephen Sharp (September 5, 2003, to the present), Jesse Wendt Jr. (August 2004 to September 17, 2004), and Gary Wright (February 26, 2002, to June 14, 2002), who allegedly were not SSRs and/or paid hourly during these time periods, and thereby not within the scope of the action.[6] The remaining time periods for these plaintiffs' claims remain unchallenged.

The prior presiding judge held that plaintiffs' FLSA claims could proceed as a conditional collective action on behalf of all persons who work or have worked for Cintas as: "[SSRs], Commission Route Salespersons, Commission Route Sales Representatives, Route Drivers or other persons performing a service and/or delivery function on a non-hourly basis . . . ." May 25, 2004 Order at 1 (Dkt. 159). That order also held that Service Training Coordinators ("STC") specifically were excluded from this litigation. *Id*. at 1-2. In other words, only certain types of plaintiffs who

---

[6] Cintas originally sought summary judgment against fourteen plaintiffs. Cintas now moves for partial summary judgment covering certain time periods relative to the claims of: William Azevedo (January 2003 to November 10, 2005), Frank Barnaby (June 24, 2002 to January 6, 2003), Luis Magdaleno (January 31, 2002, to July 26, 2002), Thomas Orgill (June 2004 to the present), and Robert Ramirez (August 4, 2001, to August 8, 2003). Plaintiffs do not oppose Cintas' motion for these five plaintiffs for the time periods specified above. Opposition at 2. These plaintiffs still have remaining claims for periods not challenged by Cintas. Summary judgment also is not opposed as to plaintiff Wilfred Micho. Opposition at 1. Three other plaintiffs (Daniel Alvis, Deborah Wheeler-Robinson, and Anthony Hamilton) dismissed their claims on January 16, 2009. Summary judgment, therefore, will be granted as to the plaintiffs noted above.

worked on a non-hourly basis could proceed together as members of the asserted collective action.[7] Indeed, two plaintiffs have been dismissed, one of which was a STC, on the ground that their admissions showed that they were not SSRs during the applicable time period. November 13, 2008 Order at 18.

### 1. Plaintiff Cervantes

Cintas seeks partial summary judgment against Cervantes to the extent that his claim concerns the period from February 4, 2002, to August 4, 2003, when he held a Catalog Sales Person ("CSP") position. CSPs neither service nor deliver goods or service customers on a route. Abramovich Decl., ¶ 5. With no other evidence presented by plaintiffs to the contrary, summary judgment for this time period is warranted as Cervantes' job duties fall outside the scope of this litigation.

Cintas further seeks partial summary judgment against Cervantes to the extent his claim covers the period from August 5, 2003, to September 15, 2003, when he was an SSR-in-training, paid hourly. Cintas submits an employment status notification form with handwritten notes stating that Cervantes' job was being changed from a CSP to an SSR, not an SSR-in-training. *Id.*, Ex. L. In fact, in an interrogatory response, Cervantes represents that for this time period he was an SSR. Full Decl., Ex. F at 13. Despite such evidence reflecting non-SSR work activities, Cintas maintains summary judgment is warranted. Indeed, the handwriting on the employment form reads: "Please pay partner hourly rate, for job change to SSR, guaranteed for 13 weeks[.]" Abramovich Decl., Ex. L. This sentence standing alone, however, does not indicate that Cervantes actually was paid hourly as reflected in any payroll records. A statement that Cervantes *should* be paid hourly, does not establish actual payment by the hour. Cintas, therefore, has not carried its burden to show that partial summary judgment is warranted for this time period.

---

[7] Plaintiffs argue that Cintas' motion, if granted, will split the individual plaintiffs' claims, such that certain claims would be barred. Plaintiffs argument fails because only those plaintiffs with duties described above, and who worked on a non-hourly basis, are eligible to participate in this litigation. Those plaintiffs that are exempt or otherwise outside the scope of this action should be dismissed. *See Youngblood v. Vistronix, Inc.*, No. 05-21(RCL), 2006 WL 2092636, at *5 (D.D.C. July 27, 2006) (granting partial summary judgment for portion of time when plaintiff was exempt from the FLSA).

### 2. Plaintiff Sharp

Cintas seeks partial summary judgment against Sharp as to his claim covering the period from September 5, 2003, to the present when he allegedly became an hourly assistant SSR and/or a Route Relief Driver ("RRD"). Cintas submits an employment status notification form with handwritten notes stating that Sharp's job was being changed to "Rt. Relief" and that he should be paid hourly. *Id.*, Ex. I. There is no support in the record for classifying Sharp as an assistant SSR, and Cintas acknowledges that a route driver or a RRD is a generic term not ordinarily used to classify its employees. *Id.*, ¶¶ 21-22. The ambiguity with respect to Sharp's job position aside, Cintas represents that payroll records and a human resources database reflect that he was paid hourly. *Id.*, ¶ 21. The Abramovich declaration, however, does not cite to any specific payroll records. All that remains in support of summary judgment is a similar handwritten page stating that Sharp should be paid hourly. Without the actual payroll records showing that he was paid in those hourly increments, Cintas does not meet its burden of demonstrating the absence of a triable issue of material fact regarding job role and pay structure.

### 3. Plaintiff Wendt

Cintas seeks partial summary judgment against Wendt for his claim covering the period from August 2004, when he allegedly worked as a route skipper on an hourly basis, to September 17, 2004. In an interrogatory response, Wendt maintains that he was a route skipper during the time period at issue. Full Decl., Ex. N at 7. In his declaration, however, Wendt asserts that his job duties and responsibilities as a route skipper did not change from those he shouldered as an SSR. The Abramovich declaration is devoid of any reference to the typical job duties of a route skipper as was presented for CSPs. As for summary judgment based on his alleged hourly pay, the only evidence submitted was another employment notification form. That evidence is inadequate for the same reasons noted above. Partial summary judgment, therefore, is not warranted.

### 4. Plaintiffs Wright and Nall

Cintas seeks partial summary judgment against Wright to the extent his claims cover the period from February 26, 2002, to June 14, 2002, and against Nall on his claims from January 31, 2002, to March 2002 during which both allegedly served as STCs. Nall acknowledged in an

11

interrogatory that he was an STC during this period, and Wright provided a similar acknowledgment in his declaration. *Id.*, Ex. J at 15; Wright Decl., ¶ 4. Even though they may at times have performed service and delivery functions, the prior presiding judge made the determination that STCs, specifically, were not sufficiently similar to the remainder of the SSRs to be a part of the conditional collective. Accordingly, partial summary judgment is warranted.

## IV. CONCLUSION

Cintas' motion for summary judgment for crossing state lines is granted in part and denied in part for plaintiffs who admitted to driving across state lines at least once every four months to make deliveries on their assigned routes as part of their duties as SSRs prior to August 10, 2005. Cintas' motion for summary judgment regarding vehicle weight is denied for plaintiffs who drove vehicles that weighed over 10,001 pounds on their assigned routes as SSRs after August 10, 2005.

Specifically, summary judgment as to these two motions is:

(1) Granted against Bouchard's entire FSLA claim.

(2) Granted against Sims for his claim before June 1, 2003, but denied for any claim after that date.

(3) Granted against Gregory and Rowse for claims accruing before August 10, 2005, but denied for their claims arising after that date.

(4) Denied against Andrzekewski, Ankenbruck, Buckholtz, Crane, Gamble, Hooper, Kamrad, Kraska, Look Jr., Maye, McAdams, Pilon, Schultz, Shrake, J. Smith, Tarango, Tully, and Wilson, for their claims accruing after August 10, 2005.

Cintas' motion for summary judgment and partial summary judgment against plaintiffs that were not SSRs is granted in part and denied in part as follows:

(1) Summary judgment is granted against Micho's entire claim.

(2) Partial summary judgment is granted against: Azevedo (January 2003 to November 10, 2005), Barnaby (June 24, 2002 to January 6, 2003), Magdaleno (January 31, 2002, to July 26, 2002), Nall (January 31, 2002, to March 2002), Orgill (June 2004 to the present), Ramirez (August 4, 2001, to August 8, 2003), and Wright (February 26, 2002, to June 14, 2002).

(3) Partial summary judgment is granted against Cervantes for the period from February 4, 2002, to August 4, 2003, but denied for the period from August 5, 2003, to September 15, 2003.

(4) Partial summary judgment is denied against: Sharp (September 5, 2003, to the present) and Wendt (August 2004 to September 17, 2004).

IT IS SO ORDERED.

Dated: 4/23/09

RICHARD SEEBORG
United States Magistrate Judge

ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGEMENT ON: (A) PLAINTIFFS THAT CROSSED STATE LINES, AND (B) NON-SSRs; (2) DENYING MOTION FOR SUMMARY JUDGMENT ON VEHICLE WEIGHT
C 03-1180 RS