1

2                    UNITED STATES DISTRICT COURT

3              FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                          OAKLAND DIVISION

5

6   PAUL VELIZ, et al., On behalf of Themselves      Case No:  C 03-1180 RGS (SBA)
    and All Others Similarly Situated,

7                    Plaintiffs,                     **ORDER RE CLAUSE
                                                     CONSTRUCTION AWARDS**

8              vs.                                   [Docket 1226, 1258, 1018]

9   CINTAS CORPORATION, an Ohio corporation;
    PLAN ADMINISTRATOR for the Cintas
10  Partners' Plan; and DOES 1-25, inclusive,

11                   Defendants.

12

13          Plaintiffs are Service Sales Representatives ("SSRs") employed by Cintas Corporation who

14  allege that the company misclassified them as "exempt" employees in violation of the Fair Labor

15  Standards Act ("FLSA") and various state laws.  They filed the instant case as a collective action

16  under the FLSA and as a class action with respect to their state law claims.[1]  In April 2004, the

17  Court ordered Plaintiffs to submit their dispute to arbitration, in accordance with the arbitration

18  clause contained in their respective Cintas Employment Agreements.  Plaintiffs submitted their

19  demand for arbitration to the American Arbitration Association ("AAA") in May 2004.

20          Since his appointment, the Arbitrator has issued two Clause Construction Awards for the

21  purpose of determining whether the subject arbitration clauses permit the arbitration to proceed on

22

23

24  _____

25          [1] Federal wage claims cannot be filed as a class action under Rule 23, and instead, must be
    maintained as a "collective action."  29 U.S.C. § 216(b).  "A 'collective action' differs from a class
26  action."  McElmurry v. U.S. Bank Nat. Ass'n, 495 F.3d 1136, 1139 (9th Cir. 2007).  In a class
    action brought under Rule 23, all members of a certified class are bound by the judgment unless
27  they opt-*out* of the suit.  Id.  In contrast, in a collective action under the FLSA, 29 U.S.C. § 216(b),
    only those claimants whose affirmatively opt-*in* by providing a written consent are bound by the
28  results of the action.  Id.

1    a class and/or collective basis.[2]  In his initial Clause Construction Award issued on July 26, 2006

2    Award ("July 2006 Award"), the Arbitrator concluded that class, but not collective, arbitration was

3    allowed under the terms of the arbitration agreements.[3]  On December 11, 2008, he issued a second

4    Claims Construction Award ("December 2008 Award") in which he partially reconsidered his prior

5    decision and concluded that both class *and* collective arbitration are, in fact, permissible.  The two

6    aforementioned Clause Construction Awards form the basis of the various motions presented for

7    determination.

8         The parties are presently before the Court on the following three motions:

9         (1)  Plaintiffs' motion to confirm the December 2008 Award (Docket 1226);

10        (2)  Cintas' motion to vacate the December 2008 Award, or alternatively, to partially

11   confirm the July 2006 Award as to the SSRs who are subject to the post-1996 versions of the

12   arbitration agreement (Docket 1258); and

13        (3)  Cintas' renewed motion to confirm in part and vacate in part the July 2006 Award as to

14   SSRs who are subject to the 1996 version of the arbitration agreement (Docket 1018).

15        Having read and considered the papers filed in connection with this matter, and being fully

16   informed, the Court hereby GRANTS Plaintiffs' motion to confirm and DENIES Cintas' motion to

17   vacate the December 2008 Award.  In addition, the Court GRANTS IN PART and DENIES IN

18   PART Cintas' renewed motion to confirm in part and vacate in part the July 2006 Award issued.

19   The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See

20   Fed.R.Civ.P. 78(b).

21

22

23        [2] The term "Clause Construction Award" refers to an arbitrator's ruling on whether a given
     arbitration agreement authorizes the arbitration to proceed on a class basis.  Rule 3 of the
24   Supplementary Rules for Class Arbitrations provides, in part, that "[u]pon appointment, the
     arbitrator shall determine, as a threshold matter, in a reasoned partial Revised Award on the
25   construction of the arbitration clause, whether the applicable arbitration clause permits the
     arbitration to proceed on behalf or against a class (the 'Clause Construction Award')."  (Goldsmith
26   Decl. in Supp. of Pls.' Mot. to Confirm Arb. Award ("Goldsmith Decl."), Ex 16 (Docket 1228).)

27        [3] The Arbitrator and the parties use the terms "arbitration agreement" and "arbitration
     clause" interchangeably, and the Court does so here as well.  However, the Court notes that the
28   arbitration requirement is contained in a clause which is part of an Employment Agreement.

I.     **BACKGROUND**

   A.     **THE COURT COMPELS ARBITRATION**

Plaintiffs are SSRs employed by Cintas, which is a nationwide manufacturer and supplier of uniforms and other work apparel.  On March 19, 2003, Plaintiffs filed the instant action claiming that Cintas improperly classified them as "exempt" in order to avoid paying overtime wages.  The FLSA claim is alleged as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), "on behalf of all persons who were, are, or will be employed by defendant Cintas nationwide as SSRs throughout the United States," while the state law claims are alleged on a class action basis.  (Compl. ¶¶ 2, 32.)  The Complaint names Cintas Corporation and the Cintas Partners' Plan as Defendants.

Each of the SSRs signed an Employment Agreement which includes a provision requiring the employee to submit any employment-related disputes to arbitration in the county and state where the employee is or was employed (also referred to as the "place-of-arbitration" provision).  Shortly after the commencement of this action, Cintas filed a motion to compel arbitration, pursuant to section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.  (Docket 45.)  On April 5, 2004, the Court granted the motion to compel as to 55 of the 65 plaintiffs, but denied the motion as to the remaining plaintiffs, who have been allowed to litigate their claims in court.  (Docket 140.)  As a result of the Court's ruling, Plaintiffs filed a Demand for Classwide Arbitration with the AAA in San Francisco on May 4, 2004.  The parties mutually selected Bruce Meyerson as the Arbitrator.

Plaintiffs subsequently moved for reconsideration of the order compelling arbitration.  Among other things, Plaintiffs argued that reconsideration was warranted on the ground that the arbitration clause has been rendered unconscionable as a result of Cintas' then newly-disclosed position that the place-of-arbitration provision precluded them from proceeding on a class or collective basis.  On May 4, 2005, the Court ruled on the motion and concluded that Plaintiffs' inability to proceed with the arbitration on a class or collective basis did not impair their substantive rights, and hence, did not render the agreements unconscionable.  (Docket 426 at 5.)  In addition, the Court clarified that its prior decision could not be construed to compel arbitration

1  outside this judicial district, and therefore, ruled that its Order applied only to the 55 plaintiffs at

2  issue.  (Id. at 13.)[4]

3  **B.   NUMEROUS CLAIMANTS OPT-IN**

4  On May 25, 2004, the Court granted Plaintiffs' request to facilitate notice under section

5  16(b) of the FLSA ("Notice").  (Docket 159.)  The Notice specified that the action is proceeding as

6  a "conditional collective action" under 29 U.S.C. § 216(b), and notified possible participants of the

7  action and enclosed a Consent to Sue form.  (Id. at 2.)  Eventually, approximately 2,400 plaintiffs

8  submitted consent forms.  Cintas responded by filing a motion to stay the litigation as to

9  approximately 1,900 of these opt-in plaintiffs ("opt-in plaintiffs"), who had signed Employment

10  Agreements which contain an arbitration provision.  (Docket 445 at 1-2.)  The Court granted

11  Cintas' motion on February 16, 2006, and stayed further litigation by the opt-in plaintiffs until they

12  had arbitrated their disputes with Cintas "in accordance with the terms of the[ir] agreement."

13  (Docket 516 at 3.)

14  **C.   CINTAS FILES 70 PETITIONS TO COMPEL ARBITRATION**

15  Shortly after obtaining a favorable ruling on its motion to stay, Cintas filed 70 separate

16  petitions to compel arbitration in every district court throughout the United States where at least

17  one of the 1,900 opt-in plaintiffs was employed.[5]  Respondents responded by filing a motion before

18  the Judicial Panel on Multidistrict Litigation ("MDL Panel") to transfer the petitions to this Court

19  for coordinated MDL proceedings.  Cintas opposed the motion.

20  On August 18, 2006, the MDL Panel granted Respondents' motion and issued a Transfer

21  Order transferring the 70 actions to this Court under MDL-1782.  See In re Cintas Corp. Overtime

22  Pay Arbitration Litig., C 06-1781 SBA.  The MDL Transfer Order stated that "[r]esolution of the

23  actions in this docket will require each of the 70 district courts where Cintas has brought suit to

24

25  [4] Later, additional opt-in plaintiffs were deemed subject to the Court's order compelling
26  arbitration, bringing the number of plaintiffs compelled to arbitrate to 102 persons, who are
   referred herein as the "Compelled Plaintiffs."

27  [5] Each of the respondents against whom Cintas filed a petition also is a party in this action.
   The Court refers to "Respondents" when discussing the Multidistrict Litigation action, In re Cintas
28  Corp. Overtime Pay Arbitration Litig., Case No. C 06-1781 SBA.

construe identical contractual arbitration clauses to determine i) whether the parties named in each motion to compel are *refusing to arbitrate* within the meaning of § 4 of the Federal Arbitration Act, and/or ii) whether the parties are complying with that obligation by seeking to arbitrate collectively in an arbitration proceeding already occurring in the Northern District of California...."  (C 06-1781 SBA, Docket 1 at 1-2 (emphasis added).)

The parties submitted briefing on the issues specified in the Transfer Order.  On January 12, 2007, the Court issued a Suggestion of Remand Order ("Remand Order") in which it concluded that the Respondents were "refusing to arbitrate" by virtue of their decision to opt-in to the collective action instead of pursuing their claims individually through arbitration.  (Id., Docket 52 at 6, 10.)[6]  Citing the Arbitrator's July 2008 Award (discussed *infra*), the Court also noted that the Respondents were "*not* parties to the ongoing San Francisco arbitration," and that only certain of the Plaintiffs had been compelled to arbitrate.  (Id. at 9 (emphasis in original).)  Given these conclusions, the Court Order recommended that the MDL Panel remand the cases to the transferor courts.  (Id., Docket 26.)

On January 17, 2007, Plaintiffs filed a motion to certify the Court's Remand Order for interlocutory appeal under 28 U.S.C. § 1292(b), and to stay the action pending appeal.  The Court granted Plaintiffs' motion and stayed the Remand Order.  (C 06-1781 SBA, Docket 57.)  The appeal remains pending before the Ninth Circuit.

### D.     THE JULY 27, 2006 CLAUSE CONSTRUCTION AWARD

#### 1.      The Arbitrator Interprets the Arbitration Agreement

In the meantime, the parties submitted cross-motions to the Arbitrator on the issue of clause construction; i.e., whether the arbitration agreements at issue authorize a class or collective action.  On July 27, 2006, the Arbitrator issued his initial Clause Construction Award.  The Arbitrator ostensibly ruled that the arbitration agreements did not permit collective or class arbitration.  He

---

[6] Section 4 of the FAA provides, in relevant part, that "[a] party aggrieved by the alleged failure, neglect, or *refusal of another to arbitrate* under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C § 4 (emphasis added).

1  reasoned that "the provision in each arbitration agreement that any arbitration proceeding be held

2  in the location of each SSR's employment with Cintas [i.e., a place-of-arbitration provision] cannot

3  be reconciled with any claimed ambiguity or Claimants' assertion that the individual arbitration

4  agreements permit a class or collective arbitration." (Goldsmith Decl. Ex. 3 at 3.)

5          The Arbitrator recognized that the agreements expressly state that the arbitration is to be

6  governed by relevant federal law, which would make collective arbitration available because the

7  FLSA expressly provides for such a procedure. (Id. at 4.) However, he noted that the Court had

8  previously ruled that Plaintiffs' inability to proceed on a class or collective basis did not impair

9  their substantive rights so long as they could pursue their claims individually. (Id. (referring to

10  May 4, 2005 Order at 5).) Relying on that finding, the Arbitrator found that the reference to

11  "federal law" was an insufficient basis on which to conclude that the arbitration agreements permit

12  class or collective arbitration. (Id.)

13          Separately, the Arbitrator considered the scope of the arbitration. Plaintiffs had argued that

14  all SSRs who filed consents to opt-in should be considered parties to the arbitration. The

15  Arbitrator disagreed and found that only the 102 Compelled Plaintiffs (consisting of the 55 original

16  SSRs and another small group who had stipulated they would arbitrate) were actual claimants in

17  this District. As to the 1,900 opt-in plaintiffs, the Arbitrator stated that "[b]ecause I have

18  concluded that the Cintas arbitration agreement requires arbitration in the location where the SSR's

19  worked, the 1,900 opt-in claimants, to the extent that they have not been compelled to arbitrate by

20  the District Court in the Northern District of California, may not become parties to this

21  proceeding." (Id. at 7.) [7]

22

23

24          [7] As noted previously, the term "Compelled Plaintiffs" refers to the 102 SSRs that have
    been deemed subject to the Court's Order compelling arbitration issued on April 5, 2004. The
25  reference to "opt-in plaintiffs" refers to the group of approximately 1,900 claimants who signed
    and returned the consent forms to become a part of the collective action who are subject to Cintas'
26  arbitration clause, but who have not been compelled to arbitrate. However, the Arbitrator has now
    ruled that the 1,900 opt-in plaintiffs may join the 102 Compelled Plaintiffs in the ongoing
27  arbitration. On the other hand, Cintas insists that the opt-in plaintiffs must arbitrate their claims
    individually in 1 of the 70 judicial districts scattered throughout the country in which Cintas filed
28  its motion to compel arbitration.

### 2.      Plaintiffs Ask the Arbitrator to Reconsider the July 2006 Award

Plaintiffs filed a motion for reconsideration with the Arbitrator in response to the July 2006 Award, which prompted the Arbitrator to issue an Order Clarifying the Clause Construction Award on October 13, 2006.  (Goldsmith Decl. Ex. 4.)  First, the Arbitrator clarified his prior finding that the place-of-arbitration provision, in fact, did *not* preclude *class* arbitration.  (Id. at 2.)  He explained that unlike a collective arbitration, class arbitration does not require a class member to affirmatively become a party to a proceeding.  (Id.)  As such, he saw no conflict in his ruling with the place-of-arbitration provision, since a SSR in a class action is not actually commencing a proceeding.  (Id.)  Second, the Arbitrator clarified his prior conclusion that the 1,900 opt-in plaintiffs could not join in the arbitration with the 102 Compelled Plaintiffs.  The Arbitrator stated that he had reached that conclusion based specifically on his interpretation of the Court's May 4, 2005 Order (in which the Court ruled that an employee's inability to proceed on class or collective basis did not impair the employee's substantial rights), which he considered binding.  (Id. at 2-3.)  Had the Court not made that pronouncement, the Arbitrator claims he would have found that the 1,900 opt-in claimants *could*, in fact, participate in the arbitration to take place in this District.  (Id. at 3.)

### 3.      The Court Requests Clarification from the Arbitrator

After the Arbitrator concluded that he was not empowered to reconsider his July 2006 Award, the parties' filed cross-motions in this Court to confirm in part and vacate in part the Arbitrator's July 2006 Award.  On December 5, 2006, the Court issued an Order on the cross-motions, finding that it was unclear whether the Court was being asked to rule upon the July 2006 Award as originally issued or as modified upon clarification by the Arbitrator.  Reasoning that the Arbitrator had no authority under the doctrine of *functus officio* to reconsider his own ruling, the Court remanded the matter to the Arbitrator "for clarification of the Award, with the instruction that the Arbitrator has the sole authority to interpret the agreements."  (Docket 574 at 7-8.)  Cintas appealed the Court's December 5, 2006 ruling.  (Docket 575.)

The Arbitrator responded to the Court's inquiry in an Order issued on May 7, 2007. (Goldsmith Decl. Ex. 5.)  The Arbitrator acknowledged that in his July 2006 Award, he had

1    concluded that the 1,900 opt-in plaintiffs could not become parties to the arbitration, since that

2    ostensibly would be inconsistent with the place-of-arbitration terms in the arbitration agreements.

3    (Id. at 3.)  Though now believing that his original decision was incorrect, the Arbitrator pointed out

4    that this Court had twice ruled that he had no authority to redetermine any issue he had already

5    decided.  (Id.)  Given that restriction, the Arbitrator concluded that he was bound by the Court's

6    decision and that no further clarification or reconsideration was permitted.  (Id.)

7                    **4.       Motions to Confirm/Vacate the July 2006 Award**

8            In light of the Arbitrator's response to the Court's request for clarification, the parties again

9    filed cross-motions to confirm in part and vacate in part the Arbitrator's July 2006 Award.  (Docket

10   653, 658.)  Plaintiffs sought to confirm the portion of that award that allowed the 102 Compelled

11   Plaintiffs to arbitrate in this District, and to vacate the portion of his ruling relating to 1,900 opt-in

12   plaintiffs.  Cintas sought to confirm the Arbitrator's interpretation of the arbitration agreements as

13   foreclosing class or collective arbitration.  In addition, Cintas moved to vacate his ruling insofar as

14   it found that the 102 Compelled Plaintiffs may proceed in a class or collective arbitration.

15           On September 5, 2007, the Court issued its Order granting Cintas' motion to confirm in part

16   and vacate in part the Arbitrator's July 2006 Award, and denying Plaintiffs' motion in its entirety.

17   (Docket 677.)  At the outset, the Court clarified that the only decision under review was the July

18   2006 Award, and that the two subsequent clarifications (issued on October 13, 2006 and May 7,

19   2007) were not being considered.  (Id. at 8-9.)  The Court vacated the award to the extent that it

20   allowed the 102 Compelled Plaintiffs to proceed with their FLSA claims on a collective basis and

21   their state law claims on a class basis.  In reaching this conclusion, the Court explained that the

22   Arbitrator's finding that class or collective arbitration was precluded under the arbitration

23   agreements could not be reconciled with his finding that nothing in the arbitration agreement

24   foreclosed them from being part of a collective or class action.  (Id. at 12.)  As to the 1,900 opt-in

25   claimants, the Court concluded that the aforementioned determination regarding the 102

26   Compelled Plaintiffs foreclosed them from being considered class members, and therefore, vacated

27

28

1   that portion of the July 2006 Award as well.  (Id. at 14-15.)  Plaintiffs appealed the Court's ruling.

2   (Docket 689.)[8]

3               **5.        The Ninth Circuit's Reversal**

4           On April 8, 2008, the Ninth Circuit issued a Memorandum Decision, vacating the Court's

5   Orders issued on December 5, 2006 and September 5, 2007.  (Goldsmith Decl. Ex. 2 at 3.)  The

6   panel held that the Court erred in finding that the doctrine of *functus officio* precluded the

7   Arbitrator from reconsidering his July 2006 Award.  (Id. at 2-4.)  The court noted that four of the

8   five versions of the arbitration agreement expressly permit the Arbitrator to reconsider a prior

9   decision.  (Id. at 2.)  As such, the issue of reconsideration presented a question of contract

10  interpretation for the Arbitrator, not the district court, to decide.  (Id. at 3.)

11          The court of appeal instructed that the Arbitrator was vested with authority to reconsider his

12  July 2006 Award.  The court pronounced:  "We remand with instructions to the district court to

13  remand to the arbitrator for *de novo* consideration.  The arbitrator should determine in the first

14  instance whether he has the authority to reconsider his prior award as to any or all of the plaintiffs,

15  and if so, whether to redetermine his first award."  (Id. at 4.)   Notably, the Ninth Circuit added that

16  "[o]n remand, the arbitrator is not bound to follow the district court's view of whether the plaintiffs

17  have the ability to proceed on a class or collective basis.  Rather, he is free to exercise the full

18  extent of his authority under the arbitration agreements."  (Id.)

19          **E.        THE ARBITRATOR'S RULING ON REMAND**

20          On August 1, 2008, the Arbitrator issued a ruling on the issue of whether he had the

21  "authority to reconsider [his] prior ruling on the issue of clause construction with respect to any or

22  all the claimants in this proceeding."  (Goldsmith Decl. Ex. 6 at 1.)  Cintas argued, *inter alia*, that

23  the Arbitrator had no power to reconsider his July 2006 Award because the 1996 arbitration

24  agreements lacked a provision allowing for a motion for reconsideration.  (Id. at 2.)  The Arbitrator

25  noted that although the post-1996 agreements contained a provision allowing for reconsideration,

26  ────────────────

27          [8] On November 19, 2007, part of this action was reassigned, upon stipulation of the parties, to Magistrate Judge Richard Seeborg.  Specifically, only the opt-in plaintiffs and those parties who the Court has found are subject to binding arbitration remain before this Court.  The Plaintiffs who

28  are proceeding with litigation (not arbitration) are before Magistrate Judge Seeborg.

the 1996 agreements did not.  (<u>Id.</u> at 3.)  Applying basic principles of contract interpretation, the Arbitrator reasoned that "there is only one logical way to interpret the 1996 arbitration agreements—as not providing for reconsideration."  (<u>Id.</u>)  However, since the post-1996 agreements did allow for reconsideration, the Arbitrator concluded that he had the authority "to reconsider the Clause Construction Award with respect to *at least all of those Claimants whose arbitration agreements permit such reconsideration.*"  (<u>Id.</u> at 4 (emphasis added).)

### F.   THE DECEMBER 11, 2008 CLAUSE CONSTRUCTION AWARD

Having determined that he had the ability to reconsider the July 2006 Award "with respect to at least all of those Claimants whose arbitration agreements permit such reconsideration," the Arbitrator considered further briefing on the second question reserved for the Arbitrator, which was to determine whether the July 2006 Award *should* be reconsidered.  To that end, on December 11, 2008, the Arbitrator issued a Clause Construction Award and Ruling on Scope of Arbitration on Remand from the Ninth Circuit Court of Appeals (i.e., the December 2008 Award) in which he concluded that collective arbitration *is* permissible.  (Goldsmith Decl. Ex. 1.)

The Arbitrator began his analysis by observing as a threshold matter that "[t]he primary issue before [him] concerns whether the arbitration agreements entered into between Cintas and its [SSRs] permit *collective* arbitration."  (<u>Id.</u> at 2 (emphasis added, footnote omitted).)  As for the matter of *class* arbitration, the Arbitrator noted that he had previously found in his July 2006 Award that class arbitration was allowed and therefore that issue was not being revisited.  The Arbitrator stated:   "In the initial Clause Construction Award, I found that the arbitration agreements permitted class arbitration.  That ruling is not being reconsidered.  Thus, the discussion in this Award shall be limited only to collective arbitrations."  (<u>Id.</u> at 2 n.1.)

The Arbitrator then reversed himself on the issue of collective arbitration which, in his July 2006 Award, he had concluded was not permitted under the terms of Cintas' arbitration clause.  He explained that the arbitration clause contains two seemingly inconsistent provisions.  On the one hand, the employee is required to arbitrate in the county and state where he or she works.  On the other hand, the arbitration is to take place in accordance with all "relevant" federal laws, meaning that the employee should have the right under the FLSA to become a part of a collective action,

1    since that procedural mechanism is expressly permitted under the statute.  (Id. at 3.)  Recognizing

2    the need to harmonize these provisions, the Arbitrator explained that "[t]hese two provisions can be

3    given meaning by finding that the place-of-arbitration provision is limited to situations where an

4    employee brings an individual claim as there would be no inconsistency between the place-of-

5    arbitration provision and the applicable federal law."  (Id. at 5.)  The Arbitrator then noted that to

6    preclude an employee from opting in to an existing collective action would be tantamount to

7    waiving a substantive right afforded under the FLSA, which he believed would be unreasonable in

8    the absence of an express waiver.  (Id. at 5-6.)

9          Aside from the issue of collective arbitration, the Arbitrator also addressed whether the

10   1,900 opt-in plaintiffs could be part of a collective action against Cintas.  Citing the Court's

11   Remand Order issued in the MDL action, In re Cintas Corp. Overtime Pay Arbitration Litig., C 03-

12   1180 SBA, the Arbitrator acknowledged the Court's prior determination that the opt-in plaintiffs

13   were not part of the ongoing arbitration in this District.  (Id. at 10.)  However, the Arbitrator

14   explained that the Court's finding was predicated on *his* conclusion in the July 2006 Award that the

15   place-of-arbitration provision meant that opt-in plaintiffs could not join those proceedings.  (Id.)

16   Since he had now revisited that issue and concluded that the 1,900 opt-in plaintiffs may properly be

17   a part of a collective arbitration, the Arbitrator opined that the Court's ruling was no longer

18   controlling.  (Id.)

19         Ultimately, the Arbitrator summarized his findings as follows:  "(1) the parties' arbitration

20   agreement permits a collective and class arbitration, (2) there are 102 SSR's who are claimants in

21   the arbitration in the Northern District of California, and (3) the consents of the Stay Motion

22   Plaintiffs [i.e., the 1,900 opt-in plaintiffs] have properly been filed in this arbitration."  (Id. at 10.)

23   The Arbitrator also indicated that the next step in the process is to "proceed with a determination of

24   class certification."  (Id. at 11.)  However, the Arbitrator stayed his order pending confirmation of

25   his December 2008 Award by this Court, as required under AAA Supplementary Rule 3 which

26   governs class actions.  (Id.)

27

28

1

**G.    MOTIONS NOW BEFORE THE COURT**

2

The Arbitrator's December 2008 Award has triggered a series of motions by the parties.

3

First, Plaintiffs move to confirm the December 2008 Award.  (Docket 1226.)  Cintas'

4

opposition to this motion is identical to Cintas' motion to vacate, which is described in the

5

following paragraph.

6

Second, Cintas has filed a motion to vacate the December 2008 Award.  In the alternative,

7

Cintas requests that the Court confirm the Arbitrator's determination in the July 2006 award that

8

class arbitration is not permitted under the terms of the arbitration clauses at issue.  Cintas claims

9

that such conclusion is binding as to those Plaintiffs who are subject to the *post-1996* versions of

10

the arbitration agreement.

11

The final motion before the Court is Cintas' renewed motion to confirm in part, and vacate

12

in part, the July 2006 Award as to those SSRs who are parties to the *1996 version* (as opposed to

13

the post-1996 versions) of the arbitration agreement.  (Docket 1018.)  With respect to those

14

particular Plaintiffs, Cintas maintains that in his August 1, 2008 Order, the Arbitrator recognized

15

the 1996 agreement did not permit reconsideration of an arbitration award.  As such, Cintas claims

16

that the parties to the 1996 version of the arbitration agreement are bound by the determination in

17

his July 2006 Award that neither class nor collective arbitration is permitted.[9]

18

The Court discusses these motions seriatim.[10]

19

**II.    LEGAL STANDARD**

20

Section 9 of the FAA provides that a party to an arbitration may apply "for an order

21

confirming the award, and thereupon the court must grant such an order unless the award is

22

vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.

23

Section 10 provides that an award may be vacated for various reasons including fraud, corruption,

24

---

25

[9] The distinction made by Cintas between the SSR's who signed the 1996 version of the arbitration agreement versus those who signed the post-1996 versions is one made relatively

26

recently by Cintas.  The parties have not indicated how many of the 1,900 opt-in plaintiffs are subject to either the 1996 version or the post-1996 version of the agreements.

27

[10] In the MDL Case, In re Cintas Corp. Overtime Pay Arbitration Litig., Case No. 06-1781

28

SBA, Cintas has filed a motion to enjoin the arbitration from proceeding in this District, which is addressed in a separate order filed contemporaneously in that action.

1 | or misconduct by the arbitrator, or "where the arbitrators exceeded their powers, or so imperfectly

2 | executed them that a mutual, final, and definite award upon the subject matter submitted was not

3 | made." 9 U.S.C. § 10.  Absent a statutory basis for vacating or modifying an award, an arbitration

4 | award is considered proper and the Court "must grant" a motion to confirm the arbitration award.

5 | See Hall Street Assoc., L.L.C. v. Mattel, Inc., --- U.S. ---, 128 S.Ct. 1396, 1405 (2008).  "The

6 | [FAA] *presumes* that arbitration awards will be confirmed[.]"  Rosensweig v. Morgan Stanley &

7 | Co., 494 F.3d 1328, 1333 (11th Cir. 2007) (emphasis added).

8 |      "[J]udicial review of an arbitrator's decision 'is both limited and highly deferential.'"

9 | Barnes v. Logan, 122 F.3d 820, 821 (9th Cir. 1997) (citation omitted); Van Waters & Rogers, Inc.

10 | v. International Bd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., 56 F.3d 1132,

11 | 1135 (9th Cir. 1995) ("[judicial] review of an arbitrator's decision is extremely narrow").[11]

12 | "Confirmation of an arbitration award is required even in the face of erroneous misinterpretations

13 | of law.  It is not even enough that the [arbitrator] may have failed to understand or apply the law."

14 | Schoenduve Corp., 442 F.3d at 735; Eastern Assoc. Coal Corp. v. Mine Workers, 531 U.S. 57, 62

15 | (2000) (noting that if an "'arbitrator is even arguably construing or applying the contract and acting

16 | within the scope of his authority,' the fact that 'a court is convinced he committed serious error

17 | does not suffice to overturn his decision.'").

18 |      "An arbitrator's decision must be upheld unless it is completely irrational or it constitutes a

19 | manifest disregard of the law."  Schoenduve Corp. v. Lucent Techs., Inc., 442 F.3d 727, 735 (9th

20 | Cir. 2006) (internal quotations and citations omitted).  "[F]ederal courts of appeals have repeatedly

21 | held, 'manifest disregard of the law' means something more than just an error in the law or a

22 | failure on the part of the arbitrators to understand or apply the law.  It must be clear from the record

23 | that the arbitrators recognized the applicable law and then *ignored it*."  Id. (internal quotations and

24 | citation omitted, emphasis added); e.g., Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Ariz.

25 |

26 |      [11] The rationale for limiting judicial review is to further the purposes of arbitration.

27 | Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003) (en banc) ("Broad judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, [i.e., speed and informality,] rendering informal arbitration merely a prelude to a more

28 | cumbersome and time-consuming judicial review process.").

1  Mech. & Stainless, Inc., 863 F.2d 647, 653 (9th Cir. 1988) (manifest disregard shown when the

2  arbitrator's award "violates the law").  "As long as the award 'draws its essence' from the contract,

3  meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce

4  it."  Sheet Metal Worker's Int'l Ass'n Local Union No. 359 v. Madison Indus., 84 F.3d 1186, 1190

5  (9th Cir. 1996).

6  **III.      DISCUSSION**

7          **A.      PLAINTIFFS' MOTION TO CONFIRM AND CINTAS' MOTION TO VACATE THE
8                   DECEMBER 2008 AWARD**

9          Plaintiffs seek to confirm the December 2008 Award, while Cintas seeks to vacate it.

10  (Docket 1226, 1258.)  As noted, the presumption is that an arbitration award should be confirmed.

11  See Rosensweig, 494 F.3d at 1333.  Therefore, Cintas bears a heavy burden of showing that the

12  December 2008 Award must be vacated.  See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95,

13  110 (2d Cir. 2006) ("A party moving to vacate an arbitration award has the burden of proof, and

14  the showing required to avoid confirmation is very high."); accord Collins v. D.R. Horton, Inc.,

15  505 F.3d 874, 879 (9th Cir. 2007) (party challenging arbitration award has the burden of showing

16  manifest disregard of the law).

17               **1.      Conflict with the Remand Order**

18          Cintas first contends that the December 2008 Award amounts to a manifest disregard of the

19  law on the ground that it allegedly conflicts with the Court's Remand Order, which the Court

20  issued in the MDL case, In re Cintas Corp. Overtime Pay Arbitration Litig., C 03-1180 SBA.

21  (Cintas Opp'n at 11-14.)  In that decision, the Court concluded that the respondents (i.e., the SSRs

22  against whom Cintas had filed its motions to compel arbitration in 70 different judicial districts)

23  were "refusing to arbitrate" within the meaning of section 4 of the FAA by choosing to opt-in to

24  this case instead of pursuing their claims individually through arbitrations commenced in their

25  respective places of employment.  (See Opp'n at 12-13.)  According to Cintas, the December 2008

26  Award improperly "negates" the Remand Order because it now facilitates the 1,900 opt-in

27  claimants' ability to proceed with a collective arbitration in this District.  (Id.)

28

1   Though both parties have framed their arguments under the "manifest disregard of the law"

2   standard, the Court observes that Cintas' argument is more appropriately analyzed as a question of

3   claim or issue preclusion.  In other words, the pivotal issue is whether the Arbitrator, in considering

4   whether collective arbitration is permissible, should have given preclusive effect to the Court's

5   Remand Order.  See Collins v. D.R. Horton, Inc., 505 F.3d 874, 880 (9th Cir. 2007) (noting that

6   doctrines of claim and issue preclusion may apply to arbitration proceedings).  The short answer is

7   "no," because the Remand Order was not a final judgment on the merits, which is required for

8   application of both collateral estoppel and res judicata.  See Kendall v. Visa U.S.A., Inc., 518 F.3d

9   1042, 1050 (9th Cir. 2008); Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 713 (9th

10  Cir. 2001).  As a result, the Arbitrator was under no obligation to accord the Remand Order

11  preclusive effect which would, in any event, have been his decision to make in the first instance.

12  See Collins, 505 F.3d at 880 (arbitrator decides whether issue or claim preclusion applies).

13       Cintas' argument fares no better when analyzed as a manifest disregard of the law.  As

14  noted, Cintas bears the burden of showing that the Arbitrator understood and correctly stated the

15  law but chose to ignore it.  See Carter, 374 F.3d at 838.  "The governing law alleged to have been

16  ignored by the arbitrators must be well defined, explicit, and clearly applicable."  Carter v. Health

17  Net of Calif., Inc., 374 F.3d 830, 838 (9th Cir. 2004).  The cases that have found a manifest

18  disregard of the law involve arbitration awards that contravene a controlling statute or case law that

19  is directly on point.  Compare Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1293

20  (9th Cir. 2009) (reversing arbitrator's award that was contrary to California Business & Professions

21  Code § 16600 and "well-established California law") with Luong v. Circuit City Stores, Inc., 368

22  F.3d 1109, 1112 (9th Cir. 2004) (holding that the arbitrator's allegedly expansive reading of legal

23  precedent was not tantamount to ignoring the law).  In this case, Cintas fails to present any legal

24  authority to support the notion that a court order, which was issued in a different case and has been

25  stayed, constitutes the type of "well defined, explicit and clearly applicable law" necessary to

26  implicate the manifest disregard standard.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14

The above notwithstanding, even if there were tension between the December 2008 Award and the Remand Order, that still would not suffice to vacate the award.  For purposes of a motion to confirm or vacate an arbitration award, the central question presented is whether the December 2008 Award "draws its essence" from the arbitration agreements, i.e., is the Arbitrator's interpretation plausible on its face.  See Madison Indus., 84 F.3d at 1190.  The Court finds that it is.  Properly applying the maxim that all provisions of a contract must be given effect, the Arbitrator sought to harmonize the arbitration agreement's requirement that federal law be followed with the place-of-arbitration provision.  (Goldsmith Decl. Ex. 1 at 4.)  He did so by interpreting the place-of-arbitration provision to apply where the employee seeks to bring an individual claim, but not where the employee simply desires to opt-in to an existing collective action, where he would be bound by the result of any judgment rendered upon conclusion of the arbitration.  (Id. at 4-5.)  He did not ignore any controlling statute or legal precedent in reaching that conclusion.  Rather, the Arbitrator simply interpreted the provisions of the arbitration agreement, which is precisely what the Ninth Circuit permitted him to do.

15
16
17
18
19
20
21
22
23
24
25

At most, Cintas has shown a conflict between the Arbitrator and the Court's interpretation of the arbitration clause.  As a matter law, that is insufficient to warrant vacating the award.  See Luong, 368 F.3d at 1112 (affirming dismissal of petition to vacate arbitration award "without expressing a view one way or the other on whether the arbitrator" interpreted the law correctly where it was clear that he did not "ignore" the law); Schoenduve Corp., 442 F.3d at 735 ("Confirmation of an arbitration award is required even in the face of erroneous misinterpretations of law.") Thompson v. Tega-Rand Int'l, 740 F.2d 762, 763 (9th Cir.1984) (per curiam) ("Manifest disregard of the law has been defined as something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.").[12]

26
27
28

[12] To the extent that the Remand Order could be deemed "controlling law," the record establishes that he did not ignore the Order.  He readily acknowledged the ruling and provided a cogent explanation why he did not believe that there was any conflict between his award and the Remand Order.  Even if his legal analysis in that respect were flawed, the law cited above confirms that legal errors do not show a manifest disregard of the law.

## 2.        Limitation on Number of Motions for Reconsideration

Cintas next argues that the Arbitrator exceeded his authority by considering a "second" motion for reconsideration by Plaintiffs with respect to the Arbitrator's July 2006 Award.  (Opp'n at 15-19.)  In particular, Cintas points to language in the arbitration agreements conferring the Arbitrator with the authority to "decide *a* motion for reconsideration of the arbitration award."  (Id. (emphasis added).)  Cintas seizes upon the singular use of the term "reconsideration" as meaning that only one reconsideration motion could be filed, and that Plaintiffs had filed two motions, ostensibly in violation of the arbitration agreement.  (Id.)  This argument is frivolous.

The Ninth Circuit held that it is solely the Arbitrator's decision to decide the scope of his authority to reconsider his July 2006 Award.  (Goldsmith Decl. Ex. 2 at 4.)  Thus, to the extent the Arbitrator interpreted the arbitration agreements to confer him with discretion to consider more than "one" motion for reconsideration, such was entirely his prerogative.  In addition, the Court notes that after Plaintiffs filed their initial motion for reconsideration, Cintas filed its own motion for reconsideration.  As such, it strains credulity that Cintas now argues that the Arbitrator is strictly limited to "one" motion for reconsideration.  That Cintas disagrees with the Arbitrator's interpretation of the agreements does not demonstrate a manifest disregard of the law.  E.g., Kyocera Corp., 341 F.3d at 998.[13]

Cintas also attempts to again invoke the doctrine of *in functo officio* and argues that the Arbitrator had no authority to reconsider his July 2006 Award and reach a different result in his December 2008 Award regarding whether the agreements permitted collective arbitration.  (Cintas Opp'n at 20-21.)  More specifically, Cintas points to the Arbitrator's Order of October 13, 2006 as proof that the Arbitrator himself recognized that he lacked any power to change his July 2006 Award, and that such acknowledgement foreclosed his ability to render the December 2008 Award.  This contention borders on frivolous.  The Arbitrator issued his October 2006 Order to clarify his July 2006 Award.  He did not find that that he was *functo officio*.  But even if he did, the Ninth Circuit's ruling unambiguously states that it is within the Arbitrator's purview to decide whether he

---

[13] Cintas has not provided the Court with a copy of the "second" motion for reconsideration.  (See Opp'n at 15.)

has the ability under the terms of the arbitration agreements to revisit prior decisions.  (Goldsmith Decl. Ex. 2 at 4.)  Thus, whether or not the Arbitrator declared himself *functus officio* is beside the point, since he ultimately decided, following remand, that the agreements vested him with such power.[14]

> **B.  CINTAS MOTION TO VACATE, OR ALTERNATIVELY, TO CONFIRM IN PART THE JULY 2006 AWARD AS TO CLAIMANTS SUBJECT TO POST-1996 VERSIONS OF THE ARBITRATION AGREEMENT**

The next motion before the Court is Cintas' motion to partially confirm the July 2006 Award.  Cintas seeks to confirm the Arbitrator's determination that class arbitration is not available specifically as to those claimants who are subject to post-1996 arbitration agreements.  (Cintas Mot. at 10-11.)[15]  Though Cintas' argument is not a model of clarity, it may be fairly summarized as follows.  Cintas contends that in his July 2006 Award, the Arbitrator concluded that the arbitration agreements do *not* permit class arbitration.  That ruling remains intact and must be confirmed, Cintas insists, because the Arbitrator stated in his December 2008 Award that he was *not* reconsidering his finding on *class* arbitration.  (Id.)

As an initial matter, Cintas' characterization of the Arbitrator's finding in his December 2008 Award is not completely accurate.  While the Arbitrator did state that he was not reconsidering the issue of class arbitration, he clarified that reconsideration was unnecessary because he already had concluded in the July 2006 Award that the Employment Agreements permit arbitration on a class action basis.  (See Goldsmith Decl. Ex. 1 at 2:6-7 ("In my initial Clause Construction Award I concluded that the parties' arbitration agreements permitted a class arbitration…."); id. at 2 n.1 ("In the initial Clause Construction Award I found that the arbitration

---

[14] The remainder of Cintas' brief does little more than argue that the Arbitrator misinterpreted the arbitration clause.  (Opp'n at 21-25.)  Even if Cintas is correct, that does not demonstrate that that the Arbitrator's decision was completely irrational or a manifest disregard of the law.  See Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Ariz. Mech. & Stainless, Inc., 863 F.2d 647, 653 (9th Cir. 1988) (an arbitration award must be confirmed "even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.").

[15] This motion is identical in every respect to Cintas' opposition to Plaintiffs' motion to confirm the December 2008 Award.  However, for clarity, the Court discusses Cintas' alternative request separately in this section.

1   agreements permitted class arbitration.  That ruling is not being reconsidered.").   Cintas tacitly

2   acknowledges as much, but maintains that the Arbitrator's statement directly contradicts what he

3   actually found in the July 2006 Award.  (Cintas Mot. at 3.)

4            Cintas contends that the Arbitrator's characterization of his earlier ruling on the issue of

5   class arbitration contradicts what he actually founds in the July 2006 Award.  At first blush, there

6   appears to be some internal inconsistency in the July 2006 Award regarding class arbitration.  In

7   the July 2006 Award, the Arbitrator states initially that in light of the place-of-arbitration

8   requirement, the arbitration agreement's reference to "federal laws" (which necessarily would

9   include the collective action provisions of the FLSA) was insufficient to demonstrate that the

10  agreements permitted class or collective arbitration.  (Goldsmith Decl. Ex. 4 at 3-4.)  Yet, later in

11  the award, he notes that "there is nothing in the arbitration agreement that would prevent these

12  employees … from being part of a FLSA collective action or class action…."  (Id. at 6.)  Perhaps

13  acknowledging the potential ambiguity in his findings, the Arbitrator subsequently clarified that he

14  did not mean to suggest that class arbitration was not allowed.  (Id. at 2.)   He further explained that

15  because class arbitration "does not require class members to become a party to another

16  proceeding," there was no conflict with the place-of-arbitration clause.  (Id.)

17           As discussed above, the Court previously found that the Arbitrator's apparent

18  reconsideration of his July 2006 Award was legally ineffective under the doctrine of *functus*

19  *officio*.  However, that finding has since been vacated by the Ninth Circuit, leaving the Arbitrator

20  free to clarify his July 2006 Award as finding that class arbitrations are allowed.  Since there is no

21  contradiction between the July 2006 Award, as clarified, and the Arbitrator's interpretation of that

22  award in his December 2008 Award, there is no factual or legal basis on which to conclude that the

23  July 2006 Award should be confirmed in the manner advocated by Cintas.[16]

24

25

26

27          [16] Cintas' argument elevates form over substance.  The Arbitrator was granted the authority
    to assess both whether he could reconsider his July 2006 Award, and if so, whether reconsideration
    was warranted.  Thus, even if the Arbitrator's Initial Award unequivocally found that class
28  arbitration was unavailable, the Arbitrator had the discretion to reconsider that decision.

C.   **CINTAS' RENEWED MOTION TO CONFIRM IN PART AND VACATE IN PART THE JULY 2006 AWARD**

1.   **Cintas' Request to Confirm the July 2006 Award as to Claimants Subject to the 1996 Version of the Arbitration Agreement**

The final Cintas motion requests an Order confirming the July 2006 Award, but only as it applies to those Plaintiffs who are subject to the *1996 version* of the arbitration agreement.   Cintas argues that in his July 2006 Award, the Arbitrator found that the arbitration agreements could not be construed to authorize a class or collective arbitration in light the place-of-arbitration provision. (Goldsmith Decl. Ex. 3 at 3.)   Though the Arbitrator subsequently opined that he had erred in reaching that conclusion, this Court, in its September 5, 2007 decision, ruled that under the doctrine of *functus officio* he was precluded from correcting his error, and confirmed the July 2006 Award as it was issued.   The Ninth Circuit disagreed and vacated the Court's ruling, noting that four of the five versions of the arbitration agreements at issue contained a clause permitting the Arbitrator to reconsider a prior decision.   In view of those clauses, the appellate panel held that the Arbitrator should have been allowed to decide whether those agreements conferred him with authority to issue a new arbitration award.   (Id. Ex. 2 at 3.)

Cintas contends that, notwithstanding the Ninth Circuit's decision and the Arbitrator's December 2008 Award, the *July 2006 Award* is still the operative award as to those claimants who are signatories to the 1996 version of the arbitration agreement.   The Court agrees.   "It is [a] fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration."   International  Bd. of Teamsters, Local 631 v. Silver State Disposal Serv., Inc., 109 F.3d 1409, 1411 (9th Cir. 1997) (citation and internal quotations omitted).

In his August 1, 2008 Order, the Arbitrator considered the parties' respective positions on the issue of whether he had the power to reconsider the July 2006 Award as to any or all the claimants.   With regard to the 1996 version of the arbitration agreement, he noted that it lacks a provision for seeking reconsideration.   (Goldsmith Decl. Ex. 6 at 3.)   Given that omission, coupled with the fact that the post-1996 agreements include such a clause, the Arbitrator concluded that "there is only one logical way to interpret the 1996 arbitration agreements—as not providing for

reconsideration." (Id.)  In contrast, the Arbitrator concluded that the post-1996 agreements, which contain an express reconsideration clause, conferred upon him the necessary authority "to reconsider the Clause Construction Award at least *with respect to all of those Claimants whose arbitration agreements permit such reconsideration*." (Id. at 4 (emphasis added.)  This same qualification is repeated in the introductory paragraph of the December 2008 Award.  (Id. Ex. 1 at 1 (emphasis added.))[17]   The only logical conclusion for the Court to draw from the record is that the December 2008 Award, and its new conclusion that the collective arbitration *is* permissible, applies only to claimants bound by the post-1996 version of the arbitration agreement.

With regard to SSRs subject to the 1996 agreement, the Arbitrator's Order of August 1, 2008 conclusively determined that the July 2006 Award is not subject to reconsideration.  Once the Arbitrator recognized that he had no authority to reconsider and his authority was exhausted, the July 2006 Award became final as to these specific claimants because he could not change his prior conclusion that class or collective arbitration is impermissible under the arbitration agreements.  Though he subsequently changed his mind on that issue, the fact remains that he admittedly had no power to apply his December 2008 Award to the claimants bound by the 1996 version of the arbitration agreement.

Plaintiffs contend that the July 2006 Award cannot be confirmed because it has been superseded by the December 2008 Award, which they assert is the only operative award subject to confirmation.  (Pls.' Opp'n at 1.)  That contention is belied by the December 2008 Award itself, which clearly states that the Arbitrator was reconsidering the specific issue of whether the arbitration agreements that permit reconsideration permit collective arbitration.  Though the Arbitrator recites that he was writing "on a totally clean slate," it is clear that he was referring only to the aforementioned issue.  Moreover, the Arbitrator expressly states that not all of the rulings in his July 2006 Award are being reconsidered.  (See Goldsmith Decl. Ex. 1 at 2 n.1 ("In the initial

---

[17] The first sentence of the Revised Award states, "Following the Memorandum Decision of the Ninth Circuit Court of Appeals on April 8, 2008, I determined, in accordance with that decision, that I had the authority to reconsider the initial Clause Construction Award *with respect to those Claimants whose arbitration agreements permitted such reconsideration*." (Goldsmith Decl. Ex. 1 at.)

1   Clause Construction Award I found that the arbitration agreements permitted a class arbitration.

2   *That ruling is not being reconsidered*.").)  Thus, the terms of the Arbitrator's December 2008

3   Award confirm that he did not intend it to completely supersede his July 2006 Award.

4           Equally without merit is Plaintiffs' assertion that the Arbitrator's August 1, 2008 Order did

5   not render the July 2006 Award final as to any claimants.  (Pls.' Opp'n at 5.)  To support this

6   contention, Plaintiffs seize upon the Arbitrator's statement that he had the power to reconsider the

7   July 2006 Award "at least" as to those claimants whose arbitration agreements contained an

8   express reconsideration clause.  (Pls.' Opp'n at 6.)  The inference posited by Plaintiffs is that his

9   reference to "at least" means that the Arbitrator left open the possibility that the claimants subject

10  to the 1996 agreements also could seek reconsideration, even though those agreements contained

11  no such provision.  However, when read in context, the only logical interpretation of the reference

12  to "at least" is that the Arbitrator intended it to reflect his recognition that his authority to

13  reconsider the July 2006 Award was limited only to those claimants whose agreements included

14  the reconsideration clause.

15          Finally, the Court finds no merit to Plaintiffs' assertion that the August 1, 2008 Order

16  lacked indicia of being a clause construction award.   Whether that Order was intended to be an

17  actual clause construction award is inapposite.  Rather, it is the Arbitrator's finding regarding the

18  scope of his authority, i.e., that the 1996 agreement did not allow him to reconsider the July 2006

19  Award, that rendered the July 2006 Award *final* as to the claimants who signed that version of the

20  agreement.  Once the Arbitrator concluded that the 1996 arbitration agreement did not allow him to

21  reconsider the July 2006 Award, there simply was no further action he could have taken with

22  respect to those particular claimants in connection with the July 2006 Award– even if he now

23  disagrees with that decision.  Thus, while the Arbitrator may not have explicitly stated that the July

24  2006 Award was *final* as to those claimants subject to the 1996 agreement, his determination that

25  the lack of an express reconsideration clause deprived him of the authority to reconsider his prior

26  decision nets the same result.

27          At bottom, the Court concurs with Cintas that the July 2006 Award, not the December 2008

28  Award, is controlling as to those claimants who are subject to the 1996 agreement.  Those

1    claimants are bound by the Arbitrator's prior determination that collective arbitration is not

2    available under the applicable agreements.  As such, the Court agrees that the July 2006 Award

3    should be confirmed, but only as to parties subject to the 1996 version of the employment

4    agreements.[18]

5
              **2.**     **Cintas' Request to Vacate the July 2006 Award as to the 102 Compelled**
6                             **Plaintiffs**

7         Cintas next argues that the Court must *vacate* the Arbitrator's July 2006 Award with respect

8    to its conclusion that the 102 Compelled Plaintiffs may act as a putative class in the ongoing

9    arbitration pending in this District.  (Cintas Mot. at 17-18; Goldsmith Decl. Ex. 3 at 5:1-10, 8:3-5.)

10    Specifically, Cintas claims that it is inconsistent for the Arbitrator to have on the one hand

11    concluded that the arbitration agreements do not permit collective or class arbitration, and at the

12    same time find that nothing in those agreements precluded the Compelled Plaintiffs from being part

13    of a collective or class action.  (Cintas Mot. at 18.)  However, unlike the above scenario involving

14    claimants subject to the 1996 agreement, the operative award with respect to the Compelled

15    Plaintiffs is *not* the July 2006 Award, but rather, the December 2008 Award.

16         The matter of status of the 102 Compelled Plaintiffs was addressed specifically in the

17    December 2008 Award.  In its now vacated Order of September 5, 2007, the Court concluded that

18    the 102 Compelled Plaintiffs could not be deemed parties to the arbitration due to apparent

19    inconsistencies in the July 2006 Award relating to the availability of class or collective arbitration.

20    (Docket 677, Order at 12-13.)  However, the Arbitrator expressly addresses this concern in his

21    December 2008 Award by unequivocally confirming that class and collective arbitration are

22    permissible, and that the 102 Compelled Plaintiffs are "claimants in an arbitration in the Northern

23    District of California[.]"  (Goldsmith Decl. Ex. 1 at 10.)  As such, the record confirms that the

24    December 2008 Award, not the July 2006 Award, is the operative award as to the 102 Compelled

25

26
                      [18] This conclusion does not foreclose *class* arbitration.  As discussed in the prior section,
27 the Arbitrator found in the July 2006 Award that class arbitration is permissible.  Thus, the partial
confirmation of the July 2006 Award only applies to the Arbitrator's finding regarding collective
28 arbitration.

1  Plaintiffs.   Cintas' motion to vacate the July 2006 Award as to the Compelled Plaintiffs is thus

2  moot.

3              **3.      Plaintiffs' Request to Vacate a Portion of the July 2006 Award**

4        Plaintiffs' opposition includes a request that the Court vacate the portion of the July 2006

5  Award concerning the ability of the 1,900 opt-in claimants to arbitrate their dispute in this District.

6  (Pls. Opp'n at 20-25.)  Such a request should have been presented by way of a noticed motion, not

7  as an argument in an opposition brief.  In addition, Plaintiffs' request appears to be outside the

8  three-month limitations period within which challenges to an arbitration award must be brought.

9  See 9 U.S.C. § 12.  The Court therefore declines to consider Plaintiffs' improper and untimely

10  request.

11  **IV.      CONCLUSION**

12        For the reasons stated above,

13        IT IS HEREBY ORDERED THAT:

14        1.      Plaintiffs' motion to confirm the December 2008 Award (Docket 1226) is

15  GRANTED.

16        2.      Cintas' motion to vacate the December 2008 Award (Docket 1258) is DENIED in

17  its entirety.

18        3.      Cintas' renewed motion to confirm in part and vacate in part the July 2006 Award

19  (Docket 1018) is GRANTED with respect to those Claimants who are subject to the 1996 version

20  of the arbitration agreement, and DENIED as to the 102 Compelled Plaintiffs.

21        IT IS SO ORDERED.

22

23  Dated: June 19, 2009                    _____

24                                     Hon. Saundra Brown Armstrong
                                        United States District Judge
25

26

27

28