Michael Rubin (S.B. No. 80618)
Scott A. Kronland (S.B. No. 171693)
Eileen B. Goldsmith (S.B. No. 218029)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
(415) 421-7151 - Office
(415) 362-8064 - Fax
mrubin@altshulerberzon.com

Theresa M. Traber (S.B. No. 116305)
Laboni A. Hoq (S.B. No. 224140)
TRABER & VOORHEES
128 North Fair Oaks Avenue
Pasadena, California 91103
(626) 585-9611 - Office
(626) 585-1400 - Fax
tmt@tvlegal.com

Steven W. Pepich (S.B. No. 116086)
Theodor J. Pintar (S.B. No. 131372)
James A. Caputo (S.B. No. 120485)
Lawrence A. Abel (S.B. No. 129596)
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058 - Office
(619) 231-7423 - Fax
stevep@cgsrr.com

(Additional counsel on following page)

Attorneys for Plaintiffs and Claimants PAUL VELIZ, et al.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**ARBITRATION PROCEEDING BEFORE**
**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| PAUL VELIZ et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CINTAS CORPORATION et al., <br><br> Defendants. <br><br>——————————————— <br><br> PAUL VELIZ et al., <br><br> Claimants, <br><br> vs. <br><br> CINTAS CORPORATION et al., <br><br> Respondents. | USDC Case No. C 03-1180 RGS (MEJ) <br> AAA Case No. 11 160 01323 04 <br><br> **PLAINTIFFS' UNOPPOSED APPLICATION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **[DECLARATIONS OF MICHAEL RUBIN, THERESA M. TRABER AND STEVEN W. PEPICH FILED CONCURRENTLY]** |

Nancy Juda, Esq.
ROBBINS GELLER RUDMAN & DOWD LLP
1100 Connecticut Ave., N.W., Suite 730
Washington, D.C. 20036
(202) 822-2024- Office
(202) 828-8528- Fax

Attorneys for Plaintiffs and Claimants PAUL VELIZ, *et al.*

**PLAINTIFFS' UNOPPOSED APPLICATION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on June 3, 2011 at 2:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom of the Honorable Richard Seeborg, in Courtroom 3 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, Seventeenth Floor, San Francisco, California, Plaintiffs will and hereby do move this Court for an order awarding to Class Counsel, on behalf of Plaintiffs, attorneys' fees of $6,000,000 and reimbursement of litigation costs of $694,592 as provided for in paragraph 75 of the Settlement Agreement in this case.

The Application is based on this Notice; the attached Memorandum of Points and Authorities; the Agreement to Settle Class and Collective Litigation and Arbitration Between Plaintiff Paul Veliz *et al.*, and Defendant Cintas Corporation (filed on 11/3/10, Docket No. 1634-3); the declarations of Michael Rubin, Theresa M. Traber and Steven W. Pepich filed concurrently herewith; the pleadings and papers filed in this case; and any oral argument this Court permits.

Dated: April 29, 2011            Respectfully submitted,

                                 TRABER & VOORHEES


                                 By _____/s/_____
                                         Laboni A. Hoq
                                      Attorneys for Plaintiffs

**PLAINTIFFS' UNOPPOSED APPLICATION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**    1

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     THE REQUESTED FEE AND COST AWARD IS REASONABLE AND
APPROPRIATE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.     The Fees Sought Are Reasonable Under the Percentage Approach. . . . . . . . . . . 6

          1.     The Requested Fee Award is Reasonable in Light of
the Exceptional Results Achieved and the
Complexity and Risk of Continued Litigation.. . . . . . . . . . . . . . . . . . . . 8

          2.     An Attorneys' Fee Award of 26% Percent of the
Common Fund is Reasonable when Compared with
Fee Awards in Similar Cases.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     B.     A Lodestar Cross-Check Confirms the Reasonableness of the Proposed
Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     C.     The Costs for Which Class Counsel Seek Reimbursement Are Reasonable.. . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## FEDERAL CASES
*In re Activision Sec. Litigation*,
    723 F. Supp. 1373 (N.D. Cal. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Antonopulos v. N. America Thoroughbreds, Inc.*,
    1991 U.S. Dist. LEXIS 12579 (S.D. Cal. May 6, 1991). . . . . . . . . . . . . . . . . . . . . . . 11

*Chu v. Wells Fargo Investments, LLC*,
    2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 16, 2011). . . . . . . . . . . . . . . . . . . . . 6-7

*Cicero v. DirecTV, Inc.*,
    2010 U.S. Dist. LEXIS 86920 (C.D. Cal. July 27, 2010). . . . . . . . . . . . . . . . . . . . . . 10

*Faigman v. AT&T Mobility LLC*,
    2011 U.S. Dist. LEXIS 15825 (N.D. Cal. Feb. 16, 2011). . . . . . . . . . . . . . . . . . . . . . 11

*Florida v. Dunne*,
    915 F.2d 542 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Heritage Bond Litigation*,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005). . . . . . . . . . . . . . . . 10, 11, 12

*In re Immune Response Securities Litigation*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re M.D.C. Holdings Sec. Litigation*,
    1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990). . . . . . . . . . . . . . . . . . . . 7, 11

*McPhail v. First Command Finance Planning, Inc.*,
    2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009). . . . . . . . . . . . . . . . . . . 11, 12

*In re Media Vision Technology Sec. Litigation*,
    913 F. Supp. 1362 (N.D. Cal. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Mercury Interactive Corp. Sec. Litigation*,
    2011 U.S. Dist. LEXIS 28296 (N.D. Cal. March 3, 2011). . . . . . . . . . . . . . . . . . . 7, 11

*In re Omnivision Technologies*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 10

*Ozga v. U.S. Remodelers, Inc.*,
    2010 U.S. Dist. LEXIS 91196 (N.D. Cal. Aug. 9, 2010). . . . . . . . . . . . . . . . . . . . . . 10

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Principe v. Ukropina (In re Pacific Enterprises Sec. Litigation)*,
    47 F.3d 373 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Singer v. Becton Dickinson & Co.*,
   2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010). . . . . . . . . . . . . . . . . . . . . . 10-11

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6, 7

*Stolt-Nielsen v. AnimalFeeds International Corp.*,
   130 S. Ct. 1758 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stuart v. RadioShack Corp.*,
   2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010). . . . . . . . . . . . . . . . . . . . . . . 10

*Tasso Koumoulis v. LPL Finance Corp.*,
   2010 U.S. Dist. LEXIS 124117 (S.D. Cal. Nov. 19, 2010). . . . . . . . . . . . . . . . . . 1, 7, 14

*Torrisi v. Tucson Electric Power Co.*,
   8 F.3d 1370 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Twin Falls*,
   806 F.2d 862 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 11

*In re Washington Public Power Supply System Sec. Litigation*,
   19 F.3d 1291 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wietzke v. Costar Realty Information, Inc.*,
   2011 U.S. Dist. LEXIS 20605 (S.D. Cal. Mar. 2, 2011). . . . . . . . . . . . . . . . . . . 1, 10, 13

*Williams v. Costco Wholesale Corp.*,
   2010 U.S. Dist. LEXIS 67731 (S.D. Cal. July 7, 2010). . . . . . . . . . . . . . . . . . . . . 11, 12

**FEDERAL STATUTES**

28 U.S.C. §1292(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. §§ 1001 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. 29 U.S.C. §§ 201 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

9 U.S.C. §3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9 U.S.C. §4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

Class Counsel from the law firms of Altshuler Berzon LLP, Traber & Voorhees, and Robbins, Geller, Rudman and Dowd LLP have collectively devoted thousands of hours to this litigation on behalf of the plaintiff classes over the past eight years. Their efforts culminated in a settlement that will create a $22.75 million common fund for the benefit of plaintiffs. Defendant Cintas Corporation ("Cintas") has also agreed to pay the employer's share of payroll taxes owed on plaintiffs' settlement payments, an additional value of approximately $1.25 million. Class Counsel now seek $6 million in attorneys' fees, or 26 % of the common fund, and $694,592.43 in litigation costs, which is less than the $720,000.00 preliminarily approved by the Court and provided for in paragraph 75 of the Settlement Agreement.

The guiding principle governing fee awards in common fund cases is that awards must be reasonable under the circumstances. *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990). Fee awards typically range from 20% to 30% of the common fund, with 25% as the benchmark in the Ninth Circuit. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward based on the large number of hours invested in the case by plaintiffs' counsel or other relevant circumstances. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (quoting *Six Mexican Workers*, 904 F.2d at 1311); *Tasso Koumoulis v. LPL Fin. Corp.*, 2010 U.S. Dist. LEXIS 124117 at *13 (S.D. Cal. Nov. 19, 2010). In light of the complexity and risk of this litigation, the favorable result achieved for plaintiffs, and the fact that the work plaintiffs' attorneys did on behalf of the class has a market value of more than $19.5 million, plaintiffs requested fee award of 26% percent is reasonable. Plaintiffs' additional request for $694,592 to cover the out of pocket costs their attorneys have expended in this hard-fought nationwide class action on behalf of over 23,000 class members is reasonable as well. *Wietzke v. Costar Realty Info., Inc.*, 2011 U.S. Dist. LEXIS 20605 at *18-19 (S.D. Cal. Mar. 2, 2011).

Upon exercising billing discretion, Plaintiffs seek less than the maximum allowable costs of $720,000 set forth in the Settlement Agreement.

Pursuant to the Court's order granting preliminary approval of the pending settlement on December 8, 2010, the court-approved notice of settlement was mailed to class members on January 7, 2011. The notice set forth the maximum amount requested in attorney's fees and costs and the procedure for objecting to this proposed award. Not a single class member has objected to any aspect of the settlement, including the fees and costs.

The fees and costs sought are intended to cover all work performed in the case to date and all future work, including communicating with class members and the Claims Administrator, addressing any opt-out plaintiffs' concerns, obtaining final approval by the Court and Arbitrator of the Settlement Agreement, handling any appeals (though because there are no known objectors, no appeals are anticipated) and assisting the claims administrator to calculate settlement payments and distribute settlement checks.

## STATEMENT OF FACTS

The *Veliz* litigation was filed on March 18, 2003 in the Northern District of California by plaintiffs Paul Veliz *et al.* against defendants Cintas Corporation and the Plan Administrator of the Cintas Partners' Plan (Case No. C-03-1180-RGS (MEJ)). Plaintiffs asserted wage and hour claims individually and as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. 29 U.S.C. §§ 201 *et seq.* ("FLSA"), as well as class claims for violation of various states' laws on behalf of classes of similarly situated individuals. Plaintiffs also asserted, both individually and on a nationwide class basis, that Cintas violated the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

Plaintiffs amended their complaint on May 16, 2003, alleging that Cintas violated the laws of California, Colorado, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey and New York ("FAC"). Plaintiffs filed a Second Amended Complaint on February 26, 2006, expanding the class-wide wage and hour claims to include claims under the laws of Kentucky, Maryland, Massachusetts, Minnesota, New Mexico, Ohio, Pennsylvania, Washington and West Virginia.

Shortly after plaintiffs filed their FAC, Cintas filed a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §3, alleging that plaintiffs were subject to binding arbitration agreements requiring them to arbitrate rather than litigate their wage and hour claims. On May 4, 2004, claimants Paul Veliz *et al.* filed a Demand for Class-wide Arbitration Under the AAA Employment Arbitration Rules and Supplementary Rules for Class Arbitration ("the *Veliz* Arbitration"), which they amended on July 8, 2004, and again on July 31, 2009, seeking relief in a collective and class arbitration under the FLSA and the wage and hour laws of 18 states. The state law class claims alleged in the *Veliz* Arbitration include violations of the laws of California, Colorado, Connecticut, Illinois, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, Washington and Wisconsin.

On May 25, 2004, U.S. District Judge Saundra Brown Armstrong ordered that facilitated notice be provided under the FLSA to certain similarly situated individuals, and approximately 2,400 individuals filed FLSA Consent-to-Sue forms. Judge Armstrong later ruled that approximately 1,900 of those individuals were required to arbitrate their FLSA and state law claims against Cintas. Plaintiffs' putative nationwide class action for violation of ERISA remained in federal court, but was stayed pending the resolution of plaintiffs' state and federal wage and hour claims.

In March 2006, Cintas filed petitions to compel arbitration under Section 4 of the FAA, 9 U.S.C. §4, against each of the approximately 1,900 individuals who had filed Consent-to-Sue forms and whose FLSA and state law claims had been stayed pending arbitration. These petitions were filed in 70 federal district courts in the judicial districts in which each of the 1,900 individuals last worked for Cintas because Cintas contended that this is what the parties' arbitration agreements required. The Judicial Panel on Multidistrict Litigation ordered these cases be consolidated for pretrial proceedings before Judge Armstrong (collectively, "the MDL cases"). On January 9, 2007 (amended April 10, 2007), Judge Armstrong granted Cintas' motion for a ruling that the respondents in the MDL cases were failing, refusing or neglecting to arbitrate in accordance with the terms of their agreements. However, Judge Armstrong subsequently granted respondents' petition to certify an interlocutory appeal from that ruling pursuant to 28

1  U.S.C. §1292(b), and that appeal is currently pending in the Ninth Circuit.

2        In the *Veliz* Litigation, the parties engaged in extensive discovery, including propounding
3  and responding to hundreds of sets of individualized interrogatories, requests for admissions, and
4  requests for the production of documents. *See* Declaration of Theresa Traber ("Traber Decl."),
5  ¶31. Cintas served on approximately 500 opt-in litigation plaintiffs up to eleven sets of
6  individualized discovery requests and deposed ten litigating plaintiffs. *Id*. Plaintiffs served
7  Cintas with 20 sets of written discovery requests and took Rule 30(b)(6) depositions of six of
8  Cintas' corporate representatives. *Id*. Plaintiffs also engaged an expert, Dr. Richard Drogin, who
9  provided information about the range of damages plaintiffs were seeking. *Id*.,¶32. Class
10 Counsel expended significant resources in carrying out these discovery efforts over the course of
11 several years, including paying considerable out-of-pocket costs and incurring extensive attorney
12 and paralegal time. *See* Traber Decl., ¶¶43-44 and Exhibit ("Exh.") 1; Declaration of Michael
13 Rubin ("Rubin Decl."), ¶¶12-13 & Exh. 2; Declaration of Steven W. Pepich ("Pepich Decl."),
14 ¶¶5-6.

15       In the *Veliz* Arbitration, the parties had yet to commence formal discovery, but claimants'
16 counsel conducted an extensive factual investigation into the arbitrating claimants' claims
17 through detailed surveys and telephone interviews in order to estimate alleged damages for
18 overtime and/or meal and rest break claims. Traber Decl., ¶33. Class Counsel devoted
19 significant resources to this extensive investigation and analysis, including hundreds of hours of
20 attorney and paralegal time. *Id*. At the time of the settlement, the parties were poised to
21 commence discovery on the next stage of the arbitration, including class and collective
22 certification issues. At the same time, however, the parties had filed Ninth Circuit cross-appeals
23 of the district court's order confirming in part the arbitrator's award allowing claimants to
24 proceed with a single class and collective arbitration, which Cintas sought to overturn based on
25 its interpretation of the parties' arbitration agreements.

26       The parties engaged in extensive motion practice in both the *Veliz* Litigation and the *Veliz*
27 Arbitration, including motions to dismiss, for summary judgment, and to resolve discovery
28 disputes. Still unresolved are the disputed issues of whether the FLSA claims may proceed to

trial on a collective basis and whether any classes will be certified to pursue state law claims. Also unresolved are two sets of cross-appeals involving issues raised by the arbitration and the MDL proceeding. Many of the vigorously contested issues in the *Veliz* Litigation and the *Veliz* Arbitration have been novel and pose extensive substantive and procedural complexities.

The parties also engaged in extensive mediation, as well as settlement discussions through their respective attorneys. The parties mediated before the Hon. Ellen Sickle James, Ret., on November 16, 2006 and the Hon. Wayne Brazil on January 31, 2008. The parties also participated in three separate mediation sessions with the Hon. James Warren, Ret., of JAMS on December 10, 2008, May 6, 2009, and June 17-18, 2009, before agreeing to a global settlement.

On August 5, 2009, the parties agreed to a global settlement in principle through their agreement to a mediator's proposal following four days of mediation before Judge Warren.[1] Cintas agreed to pay $22.75 million to a common fund in return for dismissal with prejudice of each of the parties' pending lawsuits, including the *Veliz* Litigation, the *Veliz* Arbitration and Cintas' MDL Cases. Cintas also agreed to pay the employer's share of any payroll taxes owed on Plaintiffs' settlement payments, which taxes are estimated at $1.25 million. Finally, Cintas agreed not to oppose Plaintiffs' motion for an award of up to $6 million in fees and $720,000 in costs. *See* Settlement Agreement, ¶75 (filed on 11/3/10, Docket No. 1634-3).

Despite agreeing to these basic settlement terms on August 5, 2009, the parties' final settlement agreement took another year to negotiate and document. The number and complexity of claims asserted and being settled in the case, the fact that they were being litigated in multiple fora and were at different stages of development on their merits, the large size of the nationwide class (in excess of 23,000 people), and the appropriate scope of the release were all factors that contributed to the complexity of negotiating the final Settlement Agreement. In the process of negotiating the final terms of the agreement, the parties submitted certain disputes over terms to Judge Warren, acting in his capacity as arbitrator, for binding arbitral resolution as set forth in the mediator's proposal. *See* Settlement Agreement, ¶¶13-15.

---

[1] To advance settlement and benefit the plaintiff class, Robbins Geller agreed to waive their fees, and Altshuler Berzon and Traber & Voorhees agreed to seek a fee award that is less than the full fees they expended. Pepich Decl., ¶4; Rubin Decl., ¶8; Traber Decl., ¶41.

On December 8, 2010, the Court and Arbitrator preliminarily approved the settlement of all litigation and arbitration in this case. Since then, Class Counsel have expended significant time working with the court-approved Claims Administrator, Dahl Inc., to ensure that the Notice of the settlement was properly distributed to class members, and responding to class member inquiries to ensure class members' ability to file claims, make objections to and/or opt out of the settlement. Class Counsel's work has continued since the end of the claim period, including analyzing claim statistics and preparing the final approval papers now being presented to the Court and Arbitrator. Even after the Court and Arbitrator grant final approval of the settlement, Class Counsel's work will continue until the time to file any appeals of those orders has expired, and settlement payments have been made to class members.

## ARGUMENT

**I.   THE REQUESTED FEE AND COST AWARD IS REASONABLE AND APPROPRIATE**

The common fund doctrine permits attorneys who create or preserve a fund to which others have claims to recover reasonable attorneys' fees and the costs of litigation from the fund. *E.g.*, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *Six Mexican Workers*, 904 F.2d at 1311; *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *In re Omnivision Techs.*, 559 F. Supp.2d 1036, 1046 (N.D. Cal. 2000). The district court may, in its discretion, use either a percentage approach or a lodestar approach to determine whether a proposed fee award is reasonable. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *In re Omnivision Techs.*, 559 F. Supp.2d at 1046. "The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund." *Id*. Class Counsel request that the court use the percentage approach to award 26% of the common fund as attorney's fees and an additional $694,592.43 in litigation costs.

**A.   The Fees Sought Are Reasonable Under the Percentage Approach**

In general, courts in this circuit utilize the percentage approach rather than the lodestar approach in common fund cases. *See*, *e.g.*, *Chu v. Wells Fargo Invs., LLC*, 2011 U.S. Dist. LEXIS 15821 at *11 (N.D. Cal. Feb. 16, 2011) ("Courts in this Circuit usually apply the

percentage method to determine attorneys' fees but then use the lodestar method to cross-check the reasonableness of the percentage to be awarded"); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 ("use of the percentage method in common fund cases appears to be dominant"); *In re M.D.C. Holdings Sec. Litigation*, 1990 U.S. Dist. LEXIS 15488 at *24 (S.D. Cal. Aug. 30, 1990) ("Compensation of class counsel in common fund cases on a percentage of the recovery method makes eminently good sense"); *In re Activision Sec. Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("in class action common fund cases the better practice is to set a percentage fee"). The percentage approach incentivizes efficiency both by encouraging counsel to settle cases expeditiously and by saving the court the tiresome task of dissecting voluminous attorney and paralegal timesheets. *In re M.D.C. Holdings Sec. Litigation,* 1990 U.S. Dist. LEXIS 15488 at *25-26; *In re Activision Sec. Litigation*, 723 F. Supp. at 1378-79.

Attorneys' fees in common fund cases generally range from 20% to 30% of the total common fund. *Six Mexican Workers*, 904 F.2d at 1311; *In re Mercury Interactive Corp. Sec. Litig.*, 2011 U.S. Dist. LEXIS 28296 at *7 (N.D. Cal. March 3, 2011). In the Ninth Circuit, 25% of the common fund is the benchmark for fee awards, *e.g.*, *Vizcaino*, 290 F.3d at 1047-48, but may be adjusted upward or downward depending on the circumstances. *E.g.*, *Six Mexican Workers*, 904 F.2d at 1311; *In re Mercury Interactive Corp. Sec. Litig.*, 2011 U.S. Dist. LEXIS 282962 at *7.

Factors relevant to the determination of whether a fee award is appropriate include "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048-50). The "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *E.g.*, *Six Mexican Workers*, 904 F.2d at 1311; *Tasso Koumoulis*, 2010 U.S. Dist. LEXIS 124117 at *13. All five factors support approval of the fee award requested by Class Counsel.

      **1.      The Requested Fee Award is Reasonable in Light of the Exceptional Results Achieved and the Complexity and Risk of Continued Litigation**

The achievement of a $22.75 million settlement for the plaintiff class is an exceptional result in light of the complexity and uncertainty of ongoing litigation. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."). The *Veliz* litigation and arbitration have been unusually complex, both procedurally and on the merits. These proceedings have involved litigation in three separate proceedings, and all stages of litigation just prior to trial.

In the *Veliz* litigation, the parties engaged in labor-intensive written discovery propounded to as many as 500 class members, as well as depositions of numerous percipient and Rule 30(b)(6) witnesses taken all around the country. Traber Decl., ¶31; Pepich Decl., ¶3. The parties also engaged an expert who carried out fact intensive damages analysis of plaintiffs' wage claims. Traber Decl., ¶32; Pepich Decl., ¶8. Plaintiffs' expert Richard Drogin provided damages declarations that were instrumental in the parties negotiation of this settlement. Pepich Decl., ¶8.

The parties in the *Veliz* litigation also filed numerous motions for summary judgment. Cintas filed more than 14 such motions, while plaintiffs filed their own affirmative summary judgment motion. Those motions dealt with complex legal and factual issues, including whether Cintas met its burden of proof on its Motor Carrier Act ("MCA") defense to certain plaintiffs' FLSA claims, one of Cintas' primary defenses to the FLSA and various states' overtime laws.

Despite the parties' heavy motions practice, there remain a number of key issues yet to be litigated and decided before trial. Among those are whether Cintas will have to respond to additional discovery requests regarding its MCA defense and whether the litigation will proceed on a class and/or collective basis. As of the date of the settlement, plaintiffs had yet to file their motions for class certification of their state law claims, and Cintas had yet to file its motion to decertify the conditionally certified FLSA collective action. Thus, at the time of the settlement, the outcome of the *Veliz* litigation was highly uncertain. Had the plaintiffs failed to obtain class and/or collective action status, the relative strength of their claims would have been greatly diminished as they would have had to pursue their claims on an individual basis.

In the *Veliz* arbitration, at the time of settlement of the case, the parties were poised to commence discovery relevant to plaintiffs' motions for class certification of the 18 alleged state law classes in arbitration, as well as their motion for certification of the FLSA collective action. Also pending at that time was the parties' cross-appeal in the Ninth Circuit challenging portions of the district court's order confirming the Arbitrator's clause construction award. The clause construction award held, among other things, that the parties' arbitration agreement allowed arbitrating claimants to pursue their wage claims in a class and collective action in a single arbitration proceeding in the Northern District of California. Had Cintas succeeded in overturning this award on appeal, thus obtaining a ruling that claimants' arbitration agreement required them to pursue their wage claims in the judicial district in which they last worked, claimants would likely not have the resources to pursue their claims individually. Adding to the uncertainty of the pending class and collective arbitration was plaintiffs' interlocutory appeal of the MDL court's ruling on a related issue. On January 9, 2007 (as amended on April 10, 2007), Judge Armstrong ruled that the employee respondents in Cintas' MDL action were "failing, refusing or neglecting" to arbitrate in accordance with the terms of their arbitration agreement, despite the fact that they were pursuing their arbitration claims in the *Veliz* Arbitration. MDL Case No. 06-1781, Dkt. 25, 52. Thus, further pursuit of the *Veliz* arbitration was highly risky.

Finally, a looming issue hovering over both the pending appeals and the arbitration generally was the effect of *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010). *Stolt-Nielsen* held, at least with respect to a commercial arbitration agreement subject to maritime law, that where the arbitration clause does not explicitly state whether a case can proceed as a class action, the arbitrator exceeds his authority by granting class status. *Id.* at 1775-77. As with the unresolved issues pending in this Court and before the Arbitrator, these unresolved appeals raised substantial risks for the parties and would have the potential of radically altering the strengths and weaknesses of the parties' positions in this matter.

Plaintiffs' attorneys are highly skilled and experienced, with well-established records of successful representation of large classes in wage and hour cases. *See* Rubin Decl., ¶¶1-6 & Exh. 1; Traber Decl., ¶¶2-28; Pepich Decl., ¶2 & Exh. A. They provided high quality representation

for the plaintiff class over the more than eight years of vigorous litigation that has ensued. As discussed, Class Counsel have engaged in extensive discovery and motion practice, multiple interlocutory appeals, and negotiation of the terms of the Settlement Agreement. The investment by Class Counsel of tens of thousands of hours and hundreds of thousands of dollars in costs on a contingency basis weighs in favor of the proposed award. *See* Traber Decl., ¶¶41-33 & Exh. 1; Rubin Decl., ¶¶8, 12-13 & Exh. 2; Pepich Decl., ¶¶3, 5-6. This is particularly so because the risk of nonpayment is high given the uncertainty of whether plaintiffs will be able to pursue their claims collectively or as a class action. *Wietzke*, 2011 U.S. Dist. LEXIS 20605 at *16; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 at *68 (C.D. Cal. June 10, 2005) ("Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award."); *In re Omnivision Techs.*, 559 F. Supp.2d at 1046 ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.").

### 2. An Attorneys' Fee Award of 26% Percent of the Common Fund is Reasonable when Compared with Fee Awards in Similar Cases

When compared with similar common fund cases, the fees requested by plaintiffs are modest. Courts in this Circuit regularly award fees exceeding the 25% benchmark in complex and risky litigation. *See, e.g.*, *Principe v. Ukropina (In re Pacific Enters. Sec. Litig.)*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding one third of $12 million common fund in complex, high-risk litigation); *Ozga v. U.S. Remodelers, Inc.*, 2010 U.S. Dist. LEXIS 91196 at *6-9 (N.D. Cal. Aug. 9, 2010) (finding risk of litigation, uncertain state of law, and benefit to class justified 29% fee award); *Stuart v. RadioShack Corp.*, 2010 U.S. Dist. LEXIS 92067 at *12, *16-18 (N.D. Cal. Aug. 9, 2010) (awarding one third where case involved a novel legal issue and litigation was risky); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-17 (C.D. Cal. July 27, 2010) (finding 30% award appropriate in light of complexity of case, extensive discovery and awards in similar wage and hour class actions); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 at *20-23 (S.D. Cal. June 1, 2010) (finding that complexity and risk of

litigation and favorable result justified 33.33% award); *McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S. Dist. LEXIS 26544 at *16, 20-23 (S.D. Cal. Mar. 30, 2009) (awarding 30% of first $10 million and 25% of remaining $2 million in common fund after extensive discovery over four years in complex case); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 at *60, 66-70 (awarding 33 1/3% of approximately $27.8 million settlement in exceptionally complex and risky case) (S.D. Cal. Mar. 30, 2009); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 U.S. Dist. LEXIS 12579 at *5-9 (S.D. Cal. May 6, 1991) (awarding one-third in light of risk, complexity, and result achieved); *In re M.D.C. Holdings Sec. Litigation*, 1990 U.S. Dist. LEXIS 15488 at *20-22, 31-32 (awarding 30% of $16.6 million common fund).

**B.    A Lodestar Cross-Check Confirms the Reasonableness of the Proposed Fees**

The lodestar method is used to cross-check the reasonableness of a percentage-based fee award. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050; *In re Mercury Interactive Corp. Sec. Litig.*, 2011 U.S. Dist. LEXIS 28296 at *7-8; *McPhail*, 2009 U.S. Dist. LEXIS 26544 at *23. "[T]he lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. The lodestar may then be adjusted up or down by an appropriate multiplier, based on factors not subsumed in the initial calculation of the lodestar." *Faigman v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 15825 at *7-8 (N.D. Cal. Feb. 16, 2011) (citation omitted). The fact that the lodestar amount exceeds the percentage amount without applying any multiplier is another factor bearing on the reasonableness of the requested fee. *See*, *e.g.*, *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 67731 at *18-19 note 1 (S.D. Cal. July 7, 2010); *McPhail,* 2009 U.S. Dist. LEXIS 26544 at *23; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 at *73.

Class Counsel have maintained contemporaneous time records and have provided lodestar figures in the declarations filed with this motion.[2] As of the time plaintiffs filed this motion, Class Counsel at Altshuler Berzon LLP spent 6,053.11 hours working on this case, and

---

[2] Because they are voluminous, Class Counsel will submit their contemporaneous time records to the Court for *in camera* review upon request.

Altshuler Berzon law clerks and paralegals spent an additional 855.5 hours, for a lodestar of $4,267,710. Rubin Decl., ¶8. Class Counsel at Traber & Voorhees spent 5,860 hours working on the case, and Traber & Voorhees law clerks and paralegals contributed an additional 1,611.05 hours for a lodestar of $3,603,741.25. Traber Decl., ¶41. Class Counsel at Robbins, Geller, Rudman & Dowd LLP and their law clerks and paralegals have worked in excess of 27,500 hours for a lodestar exceeding $12 million. Pepich Decl., ¶3. Thus, the total market value, or lodestar, of the work done on behalf of the settling class in this matter is almost $20,000,000. The requested fee award of $6,000,000 is modest in relation to the value of the work done by Class Counsel in litigating this complex case. This fact further supports a finding that the proposed award of $6 million is reasonable. *See Williams*, 2010 U.S. Dist. LEXIS 67731 at *18-19 note 1; *McPhail,* 2009 U.S. Dist. LEXIS 26544 at *23; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 at *73.

Class counsel's work in this case is ongoing, and will continue through the time to file appeals has expired and all settlement checks have been mailed to class members. Since the time they filed their preliminary approval papers, Class Counsel and their support staff has spent additional time assisting with the claims process – including responding to class member inquiries and assisting the claims administrator carry out its duties set forth in the Settlement Agreement – and preparing plaintiffs' motion for final approval of this settlement. Upon final approval of the settlement, class counsel will spend additional time assisting the claims administrator calculate settlement payments and distribute settlement checks in accordance with the Settlement Agreement. Traber Decl., ¶44; Rubin Decl., ¶13.

For all of these reasons, plaintiffs request for $6 million in fees is reasonable and should be awarded by the Court.

**C.  The Costs for Which Class Counsel Seek Reimbursement Are Reasonable**

Class Counsel have incurred substantial, though reasonable, costs that were necessary to successfully litigate this lengthy and complex class and collective action. *See* Traber Decl., ¶43 & Exh. 1; Rubin Decl., ¶12 & Exh. 2; Pepich Decl., ¶5. Reasonable and necessary costs and expenses incurred by attorneys who succeed in creating a common fund are reimbursable from

that fund. *Wietzke*, 2011 U.S. Dist. LEXIS 20605 at *18-19 (citing *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)). The costs for which Class Counsel seek reimbursement are identified in the declarations submitted concurrently with plaintiffs' motion for preliminary approval of the class and collective action settlement. *See* Traber Decl., ¶43 & Exh. 1; Rubin Decl., ¶12 & Exh. 2; Pepich Decl., ¶5.

Among the costs sought are out-of-pocket expenses necessarily incurred by Class Counsel in prosecuting the nationwide wage and hour collective action. Those costs include the cost of sending notice and communicating with class members, including expenditures for photocopies, postage, and telephone; investigator service costs; court filing and arbitration fees; mediation fees; legal research fees; court reporter fees; and costs associated with travel for depositions, court appearances, mediations and other case-related matters. *See Id*. All of these costs were necessary to properly litigate this hard-fought nationwide collective and class proceeding simultaneously in court and arbitration. *See, e.g.*, *Wietzke*, 2011 U.S. Dist. LEXIS 20605 at *18-19; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).

Also among the costs sought are the costs Class Counsel has expended to retain expert and consultants whose work – including preparing damages calculations – was "crucial and indispensable" to the ultimate settlement of the case, as set forth in the accompanying declarations of counsel. *See* Pepich Decl., ¶¶7-8; Traber Decl., ¶32. For this reason, these costs should be awarded to plaintiffs. *Wietzke*, 2011 U.S. Dist. LEXIS 20605 at *18-19; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. at 1366 (*citing United States v. Twin Falls*, 806 F.2d 862, 877 (9th Cir. 1986)).

The costs sought are the very kinds that courts in this Circuit have frequently held to be reasonable in wage and hour cases. In *Wietzke,* a recent wage and hour class action settlement involving both a nationwide FLSA claims as well as California state law claims, the court held that costs "incurred for mediation, amounts paid for court filing fees, document copying fees, legal research charges, travel expenses, and delivery charges ... were reasonably incurred in the prosecution of this matter, and are of the type that are normally billed to and paid for by the client." *Id*. at *20. In addition, expert and consultant fees like the ones plaintiffs are seeking

here are also routinely granted in cases like this one. *Id*. (granting expert witness fees for preparing the damages analysis in wage and hour case used to negotiate settlement). Here, soon after plaintiffs submitted a supplemental expert declaration projecting damages for the FLSA litigating plaintiffs, the parties settled the case. *See* Pepich Decl., ¶8.

The total amount of costs incurred by class counsel exceeds the maximum $720,000 allowable under the Settlement Agreement. *See* Traber Decl., ¶43 & Exh. 1; Rubin Decl., ¶12 & Exh. 2; Pepich Decl., ¶5. However, plaintiffs have exercised billing discretion such that they are only seeking $694,592.43, significantly less than the amount Class Counsel actually invested in this case. *C.f. Tasso Koumoulis*, 2010 U.S. Dist. LEXIS 124117 at *12-13 (authorizing anticipated costs associated with Class Counsel's attendance at the final approval hearing). The total amount of costs expended by class counsel is reasonable in light of the number of claims prosecuted, the size of the nationwide class (over 23,000 members), and the fact that it has taken eight years of hard-fought litigation to successfully settle the case. For all of these reasons, the court should approve the request for $694,592.43 in costs.

## CONCLUSION

For the foregoing reasons, the requested award of $6 million in attorneys' fees is reasonable, as is an award of costs and expenses in the amount of $694,592.43. The Court should approve the requested award of attorneys' fees and costs from the settlement fund.

Dated: April 29, 2011            Respectfully submitted,

TRABER & VOORHEES

By _____/s/_____
       Laboni A. Hoq
     Attorneys for Plaintiffs

**PLAINTIFFS' UNOPPOSED APPLICATION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**                    14